UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IOWA STUDENT LOAN LIQUIDITY CORPORATION, Individually and on Behalf of All Others Similarly Situated,<br><br>                               Plaintiff,<br><br>                v.<br><br>IKB DEUTSCHE INDUSTRIEBANK, AG; IKB CREDIT ASSET MANAGEMENT, GmbH; MOODY'S INVESTORS SERVICE, INC.; MOODY'S INVESTOR SERVICE LIMITED; THE MCGRAW-HILL COMPANIES, INC. (d/b/a STANDARD & POOR'S RATING SERVICES); FITCH, INC.; WINIFRED REINKE and STEFAN ORTSEIFEN,<br><br>                          Defendants. | CIVIL ACTION NO. 09-CV-8822 (SAS) |
| KING COUNTY, WASHINGTON, Individually and on Behalf of All Others Similarly Situated,<br><br>                               Plaintiff,<br><br>                v.<br><br>IKB DEUTSCHE INDUSTRIEBANK, AG; IKB CREDIT ASSET MANAGEMENT, GmbH; MOODY'S INVESTORS SERVICE, INC.; MOODY'S INVESTOR SERVICE LIMITED; THE MCGRAW-HILL COMPANIES, INC. (d/b/a STANDARD & POOR'S RATING SERVICES); FITCH, INC.; WINIFRED REINKE and STEFAN ORTSEIFEN ,<br><br>                          Defendants. | CIVIL ACTION NO. 09-CV-8387 (SAS) |

## DEFENDANT FITCH, INC.'S MEMORANDUM OF
## LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINTS

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Martin Flumenbaum
Roberta A. Kaplan
Andrew J. Ehrlich
1285 Avenue of the Americas
New York, New York 10019-6064
Tel. (212) 373-3000
*Attorneys for Defendant Fitch, Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ......................................................................... 1

FACTUAL ALLEGATIONS ............................................................................... 4

ARGUMENT ........................................................................................................ 5

I.   Plaintiffs Fail to Adequately Plead a Misstatement or Omission of Fact or Opinion ........ 5

    A.   Plaintiffs Fail to Identify Any Statement of Fact Made by Fitch ......................... 6

    B.   Plaintiffs Fail to Offer Specific Facts Supporting the Inference That Fitch's Rhinebridge Ratings Did Not Reflect Opinions Truly Held By Fitch Analysts ............................................................................... 7

II.  Plaintiffs' Generalized Allegations About Conflicts of Interest Fail to State a Claim ........ 11

    A.   Generalized Conflict of Interest Allegations Lack the Requisite Particularity ..................................................................................... 12

    B.   Prior Disclosure of Potential Conflicts of Interest Defeats Plaintiffs' Reasonable Reliance on the Rating Opinions ....................................... 15

    C.   Generalized Conflict-of-Interest Allegations Are Time-Barred ........................... 16

III. Plaintiffs Fail to Adequately Plead an Intent to Defraud ................................................. 17

CONCLUSION ................................................................................................... 19

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Abu Dhabi Commercial Bank* v. *Morgan Stanley & Co.*,
    651 F. Supp. 2d 155 (S.D.N.Y. 2009).......................................5, 6, 7, 11, 13, 18

*AIG Global Secs. Lending Corp.* v. *Banc of Am. Secs., LLC*,
    No. 01 Civ. 11448, 2005 WL 2385854 (S.D.N.Y. Sept. 25, 2005)...............................18n

*Ashcroft* v. *Iqbal*,
    556 U.S. ___,129 S. Ct. 1937 (2009)...............................................6

*ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)...............................................6

*Bell Atl. Corp.* v. *Twombly*,
    550 U.S. 544 (2007)...............................................6

*In re BISYS Sec. Litig.*,
    397 F. Supp. 2d 430 (S.D.N.Y. 2005)...............................................9

*In re Citigroup S'holder Derivative Litig.*,
    No. 07 Civ. 9841 (SHS), 2009 WL 261076 (S.D.N.Y. Aug. 25, 2009) .................... 18, 19

*Compuware Corp.* v. *Moody's Investors Services, Inc.*,
    499 F.3d 520 (6th Cir. 2007) ...............................................6

*In re Credit Suisse First Boston Corp.*,
    431 F.3d 36 (1st Cir. 2005)...............................................8

*Edison Fund* v. *Cogent Investment Strategies Fund, Ltd.*,
    551 F. Supp. 2d 210 (S.D.N.Y. 2008).......................................12, 18, 19

*Fogarazzo* v. *Lehman Bros., Inc.*,
    341 F. Supp. 2d 274 (S.D.N.Y. 2004).......................................8, 17, 18

*In re Integrated Res. Real Estate Ltd. P'ships Sec. Litig.*,
    850 F. Supp. 1105 (S.D.N.Y. 1994)...............................................16

*In re JP Morgan Chase Sec. Litig.*,
    363 F. Supp. 2d 595 (S.D.N.Y. 2005)...............................................19

*Kalnit* v. *Eichler*,
    264 F.3d 131 (2d Cir. 2001)...............................................19n

*Katz* v. *Image Innovation Holdings,*
    542 F. Supp. 2d 269 (S.D.N.Y. 2008)..................................................................... 13n

*Kramer* v. *Time Warner, Inc.,*
    937 F.2d 767 (2d Cir. 1991)............................................................................. 14

*Lerner* v.*Fleet Bank, N.A.,*
    459 F.3d 273 (2d Cir. 2006)............................................................................... 7

*Marcus* v. *Frome,*
    329 F. Supp. 2d 464 (S.D.N.Y. 2004)................................................................. 6

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.,*
    273 F. Supp. 2d 351 (S.D.N.Y. 2003)................................................... 11, 12, 17

*Mitchell* v. *Home,*
    377 F. Supp. 2d 361 (S.D.N.Y. 2005)............................................................ 13n

*Morse* v. *Weingarten,*
    777 F. Supp. 312 (S.D.N.Y. 1991) ................................................................. 18n

*Novak* v. *Kasaks,*
    216 F.3d 300 (2d Cir. 2000)............................................................................... 9

*Podany* v. *Robertson Stephens, Inc.,*
    318 F. Supp. 2d 146 (S.D.N.Y. 2004)................................................................. 7

*Rothman* v. *Gregor,*
    220 F.3d 81 (2d Cir. 2000)................................................................................ 4n

*In re Salomon Analyst Level 3 Litig.,*
    350 F. Supp. 2d 477 (S.D.N.Y. 2004)...................................................... 7, 10, 11, 19

*In re Salomon Winstar Litig.,*
    373 F. Supp. 2d 241 (S.D.N.Y. 2005)............................................................... 17

*Sazerac Co., Inc.* v. *Falk,*
    861 F. Supp. 253 (S.D.N.Y. 1994) .................................................................. 14

*Steed Finance LDC* v. *Nomura Sec. Int'l, Inc.,*
    No. 00 Civ. 8058 (NRB), 2004 WL 2072536 (S.D.N.Y. Sept. 14, 2004) ...................... 16

*In re Towers Financial Corp. Noteholders Litig.,*
    No. 93 CIV.0810 (WK) (AJP), 1996 WL 393579 (S.D.N.Y. Jul. 15, 1996)................... 14

## STATUTES AND RULES

17 C.F.R. § 240.10b-5.................................................................................. 18

Fed. R. Civ. P. 9(b) ..................................................................................... 6

Fed R. Civ. P. 12(b)(6)................................................................................ 1

N.Y. C.P.L.R. § 213(8) ............................................................................... 17

Defendant Fitch, Inc. ("Fitch") respectfully submits this memorandum in support of its motion to dismiss the putative class action complaints ("Complaints") of Plaintiff King County, Washington ("King County") and Plaintiff Iowa Student Loan Liquidity Corporation ("Iowa," and together with King County, "Plaintiffs") with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

## PRELIMINARY STATEMENT

Plaintiffs are sophisticated investors who freely elected to invest in Rhinebridge Plc., an investment vehicle that held subprime asset-backed securities, and that collapsed soon after the outbreak of the current global credit crisis. Unable to accept the consequences of their financial decision, Plaintiffs now wish to shift their losses to a variety of entities—including Fitch, a credit rating agency that rated Rhinebridge notes—on the theory that Fitch should have warned them from making what, in hindsight, was a bad investment. Plaintiffs' unlikely theory is that Fitch, among others, knew that Rhinebridge's collapse was coming but opted to remain silent about it. In fact, Fitch, like so many others, failed to anticipate the national economic meltdown in 2007 that would cause thousands of investment vehicles, including Rhinebridge, to fail. And, significantly for purposes of this motion, the Complaints are entirely bereft of allegations directed to Fitch specifically that would support Plaintiffs' charges of fraud.

---

[1]   The putative class action complaints in these two matters are substantively identical, and the Court has set them on an identical schedule. Accordingly, Fitch submits this motion to dismiss in connection with the complaints in both actions. Citations to the Complaints in this memorandum are to both complaints unless otherwise specified. Additionally, Fitch joins in and adopts by reference the motion to dismiss being filed today on behalf of Moody's Investors Service, Moody's Investor Service Limited (collectively, "Moody's"), and the McGraw Hill Companies, Inc. (d/b/a Standard & Poor's Rating Services) ("Standard & Poor's") by counsel for the McGraw-Hill Companies, but makes this additional submission to address issues unique to Fitch.

Critically, Plaintiffs do not cite—because they cannot—a single statement of fact by Fitch that they believe fraudulently induced them to invest in Rhinebridge. Instead, they argue that, in hindsight, Fitch's credit rating *opinions* with respect to Rhinebridge were inaccurate. It is undisputed that these credit ratings reflected nothing more than Fitch's opinion and judgment regarding Rhinebridge's creditworthiness. It is also undisputed that Fitch provided ample disclaimers that their rating opinions were not statements of fact and that Rhinebridge could decline in value notwithstanding these ratings.

Fitch is not a party to the *Abu Dhabi* case pending before this Court. But under the standards set forth in the Court's *Abu Dhabi* opinion, these Complaints cannot be sustained as to Fitch. The Court made clear in *Abu Dhabi* that where an *opinion* is alleged to be false, an honest mistake on the part of a defendant is insufficient to state a claim—a plaintiff must allege with specificity that Fitch *knew* its rating opinions of Rhinebridge to be inaccurate at the time that they were issued. Here, Plaintiffs are unable to offer any specific facts in support of that assertion.

Although Plaintiffs assert claims against all three major rating agencies, they simply offer indiscriminate allegations about them, with no differentiation among parties. Indeed, in the entirety of each Complaint, there are only two statements which explicitly refer to Fitch's state of mind at all, neither of which pertains to Rhinebridge: one is a statement by the CEO of one of Fitch's principal competitors made while defending his own company's ratings practices, and the other is an entirely general statement by an undisclosed private investor. The Complaints do not allege any facts to support the reliability of either of these statements. And even if these statements were reliable, neither of them supports Plaintiffs' theory that Fitch knew its credit rating opinions were inaccurate. Indeed, according to the Complaints, the so-called private investor stated that "[Fitch was] highly confident regarding their models and ratings." Under *Abu Dhabi*, and a host of other

cases in this Circuit, such generalized allegations concerning a purportedly fraudulent opinion do not pass muster.

Unable to offer the specific facts that the law demands, Plaintiffs lard the Complaints with conclusory and generalized allegations that fall far short of the heightened pleading standard required in a fraud case. For example, Plaintiffs' allegations that Fitch's models were outdated and that the Rhinebridge securities' credit ratings were inflated constitute nothing more than an *ex post facto* criticism of Fitch's rating opinions. The law is clear that such "fraud by hindsight" allegations cannot survive a motion to dismiss. Similarly, Plaintiffs devote pages to rehashing Congressional and SEC statements regarding general statements of how conflicts of interest might affect credit rating agencies, but none of the cited statements name Fitch specifically, much less Fitch's ratings of Rhinebridge securities. The law is clear in this Circuit that such generalized allegations are insufficient to satisfy the pleading requirements.

Plaintiffs also fail to adequately plead that Fitch had the requisite scienter. Their sole allegation in this regard is that Fitch received large fees in exchange for issuing certain ratings to Rhinebridge-issued securities, and that it therefore had a motive to defraud investors. Again, the law is clear that general allegations about a profit motive are insufficient to sustain a pleading of fraudulent intent.

Stripped of their sweeping generalizations, the Complaints lack any substance against Fitch. Measured against the demanding pleading standards embraced in this Circuit—and by this Court in *Abu Dhabi*—the Complaints should be dismissed as to Fitch.

## FACTUAL ALLEGATIONS[2]

Fitch, a Delaware corporation based in New York, is a credit rating agency that provides opinions on the creditworthiness of securities. Fitch is one of several such agencies that has been recognized by the Securities and Exchange Commission ("SEC") as a "nationally recognized statistical rating organization" ("NRSRO"). (Compls. ¶¶ 41-42.) Credit ratings are, according to Plaintiffs, opinions that communicate "specific information about the strength and quality of an investment." (*Id.* ¶ 5.)

Fitch, along with Defendants Moody's and Standard & Poor's, provided opinions in the form of ratings regarding the creditworthiness of securities issued by a "structured investment vehicle" ("SIV") called Rhinebridge Plc.[3] (*Id.* ¶¶ 2, 7.) Specifically, Fitch assigned F1+ and AAA ratings to the senior debt securities ("Senior Notes") issued by Rhinebridge in a private placement on or about June 27, 2007. (*Id.* ¶¶ 2, 70.) In connection with this private placement, Rhinebridge provided to investors a private placement memorandum, which is cited in the Complaints. Although the private placement memorandum included the ratings Fitch had ascribed to the securities issued by Rhinebridge, the memorandum was not authored by Fitch.[4]

---

[2]   The facts set forth herein are taken from the allegations in the Complaints, which are assumed true only for purposes of this motion (and many of which will be subject to dispute if this action proceeds), or from documents referred to or incorporated by reference therein and attached as Exhibits to the Declaration of Andrew J. Ehrlich dated January 15, 2009 ("Ehrlich Decl.").

[3]   An SIV raises short-term funds (generally short- and medium-term debt) and uses those funds to buy more long-term assets, including residential mortgage-backed securities ("RMBS") and other asset-backed securities. (Compls. ¶¶ 35, 37.)

[4]   The private placement memorandum is cited in the Complaints, *see, e.g.,* Compls. ¶¶ 67, 74, and hence may properly be considered on this motion. *See Rothman* v. *Gregor*, 220 F.3d 81, 88-89 (2d Cir. 2000). Excerpts from the relevant private placement memorandum are attached to the Ehrlich Decl. as Exhibit A.

In the summer of 2007, at almost exactly the time that Rhinebridge securities were issued, the world entered what was to become the greatest international economic crisis since the Great Depression.  In August 2007, approximately six weeks after Rhinebridge was launched, Fitch issued a warning that it might lower its Rhinebridge ratings on concerns that given market developments, the SIV would be unable to secure funding going forward to service its obligations. On or about October 18, 2007, Rhinebridge defaulted on its Senior Note payments, and Fitch immediately downgraded its ratings of those securities to "junk." (Compls. ¶ 168.)  Three days later, on October 22, 2007, Rhinebridge went into receivership and the Senior Notes collapsed in value. (*Id.* ¶ 14.)

Plaintiffs allege that "Rhinebridge raised money from investors like plaintiff," (Compls. ¶ 8), and that they and "others similarly situated have suffered millions of dollars in damages" as a result of Rhinebridge's collapse, (Compls. ¶ 15), but do not state either when they purchased any Senior Notes or how many Senior Notes were purchased.  Plaintiffs fail to include any allegations explaining what role, if any, Fitch's ratings played in their investment decisions, nor do they identify any misstatements of fact by Fitch.

## ARGUMENT

### I.
### Plaintiffs Fail to Adequately Plead a Misstatement or Omission of Fact or Opinion

As is well-settled, to state a fraud claim under New York law, a plaintiff must allege (1) a misrepresentation or omission of material fact, (2) which the defendant knew to be false, (3) which the defendant made with the intention of inducing reliance, (4) upon which the plaintiff reasonably relied, and (5) which caused injury to the plaintiff. *See Abu Dhabi Commercial Bank* v. *Morgan Stanley & Co.*, 651 F. Supp. 2d 155, 171 (S.D.N.Y. 2009) (hereinafter "*Abu Dhabi*").

Although not a statement of fact, "[a]n opinion may still be actionable if the speaker does not genuinely or reasonably believe it or if it is without basis in fact." *Id*. at 176 (citing *In re IBM Corp. Sec. Litig.*, 163 F.3d 102, 109 (2d Cir. 1998)). Regardless of the nature of the allegation, however, Plaintiffs must state them with particularity, as required by Rule 9(b). Fed. R. Civ. P. 9(b); *Marcus* v. *Frome*, 329 F. Supp. 2d 464, 475 (S.D.N.Y. 2004).

In determining whether Plaintiffs have satisfied these pleading requirements, the Court need not accept conclusions that are unsupported by the facts alleged, legal conclusions, bald assertions, or unwarranted inferences. *See Bell Atl. Corp.* v. *Twombly,* 550 U.S. 544, 555-56 (2007) (citing cases). Indeed, to survive a motion to dismiss, a plaintiff must plead "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft* v. *Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009). Dismissal is appropriate where a plaintiff fails "to raise a right to relief above a speculative level." *ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

## A.      Plaintiffs Fail to Identify Any Statement of Fact Made by Fitch

Put simply, the Complaints nowhere allege Fitch made a false or misleading statement of fact. The crux of the Complaints, as it relates to Fitch, is that Fitch issued purportedly "false and misleading" "Top Ratings." (Compls. ¶ 3.) These ratings, of course, by definition, are opinions. *See, e.g.*, *Compuware Corp.* v. *Moody's Investors Services, Inc.*, 499 F.3d 520, 529 (6th Cir. 2007) (noting that a credit rating "is a predictive opinion, dependent on a subjective and discretionary weighing of complex factors"). And, to the extent the Plaintiffs make allegations about supposed false statements in the private placement memorandum, that document was undisputedly not authored by Fitch.

**B.**     **Plaintiffs Fail to Offer Specific Facts Supporting the Inference That Fitch's Rhinebridge Ratings Did Not Reflect Opinions Truly Held By Fitch Analysts**

Fitch's credit rating opinions in connection with Rhinebridge securities are the only statements Plaintiffs allege to have been fraudulent.  (Compls. ¶¶ 2-4.)  It is indisputable that these credit ratings were statements of Fitch's opinions and assessments, not fact.  As this Court recognized in *Abu Dhabi*, as statements of opinions, Fitch's credit ratings could only have been false if Fitch did not truly hold those opinions.  *See Abu Dhabi*, 651 F. Supp. 2d at 176; *In re Salomon Analyst Level 3 Litig.*, 350 F. Supp. 2d 477, 490 (S.D.N.Y. 2004) (hereinafter "*Level 3*") (stating that a "statement [of opinion] (unlike a statement of fact) cannot be false at all unless the speaker is knowingly misstating his truly held opinion"); *Podany* v. *Robertson Stephens, Inc.*, 318 F. Supp. 2d 146, 153-54 (S.D.N.Y. 2004) ("The *sine qua non* of a securities fraud claim based on false opinion is that defendants deliberately misrepresented a truly held opinion.") (citing *Virginia Bankshares, Inc.* v. *Sandberg*, 501 U.S. 1083, 1095-96 (1991)) (granting motion to dismiss).

As the Court is aware, Fitch was not a party to *Abu Dhabi*, but Fitch recognizes, of course, the significance of the Court's opinion in that case to this one.  Nevertheless, under the standards set forth in that opinion, the claims against Fitch should be dismissed.  To establish that Fitch did not believe its own credit rating opinions, Plaintiffs must, at a minimum, (1) specify the ratings that they contend were fraudulent; (2) state where and when the ratings were made; and (3) explain why the statements were fraudulent (i.e., that Fitch did not believe the rating opinions were accurate).  *See Lerner* v. *Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006); *see also Level 3*, 350 F. Supp. 2d at 493 ("[M]erely alleging 'undisclosed motivations' that *might* lead someone to misrepresent his true opinion does not suffice.").  As the First Circuit made clear on analogous facts, "[C]onclusory allegations regarding an analyst's hidden beliefs are not sufficient to ground an

assertion of subjective falsity." *In re Credit Suisse First Boston Corp.*, 431 F.3d 36, 49 (1st Cir. 2005), *overruled on other grounds by ACA Fin. Guar. Corp.* v. *Advest, Inc.*, 512 F.3d 46 (1st Cir. 2008). Indeed, this Court also addressed analogous allegations of false opinions in the equity research analyst context, and found those allegations sufficient in substantial part because there were specific allegations concerning the defendant banks' conduct with respect to the security at issue in the litigation. *See Fogarazzo* v. *Lehman Bros., Inc.*, 341 F. Supp. 2d 274, 294-295 (S.D.N.Y. 2004) (citing the allegation that the defendants exerted pressure on analysts with respect to a particular stock so that the bank could win appointment as underwriter for two specific offerings).

Plaintiffs do not come close to meeting this standard. With respect to the state of mind of the Rating Agency Defendants, Plaintiffs cite a number of statements by employees and officers of the other two rating agency defendants, including quotations from newspaper articles (Compls. ¶¶ 55, 84-85, 94-95, 99, 104), testimony before Congress (*id.* ¶¶ 56, 102-103), presentations to boards of directors (*id.* ¶¶ 105-106, 154), an internal email (*id.* ¶ 101), an "instant message" conversation (*id.* ¶ 100), other documents (*id.* ¶¶ 155, 164), and other unpublished statements (*id.* ¶¶ 151-154, 159-160, 165).[5] Such allegations, which have no bearing at all on the Rhinebridge SIV, cannot even begin to form the basis of a claim in this case, and certainly say nothing whatsoever about Fitch. Indeed, Plaintiffs have not alleged any specific statements by *anyone* at Fitch, much less facts to suggest that Fitch did not believe its ratings of Rhinebridge were accurate. Indeed, Plaintiffs offer only two statements that explicitly pertain to Fitch's state of mind

---

[5]  To be clear, Fitch in no way suggests that those statements are sufficient to state a claim as against the other rating agency defendants; Fitch cites these statements merely to underscore the total absence of pleading against Fitch.

at all, and neither of which applies to Rhinebridge.[6]  The first of these is an isolated statement by the CEO of one of Fitch's competitors, Moody's, made while defending his own company's ratings practices.  (Compls. ¶¶ 9, 106.)  The second is a statement supposedly made during a call between Fitch analysts and an anonymous "private investor."  (Compls. ¶ 157.)

These statements are entirely generalized and totally insufficient to sustain Plaintiffs' heavy pleading burden.  First, and most fundamentally, neither statement was made with respect to Fitch's ratings of Rhinebridge.  The significance of this cannot be overstated:  the Complaints are entirely devoid of *any* statements explaining why Fitch did not truly believe its *Rhinebridge* ratings. Second, the Complaints completel y fail to allege that either the Moody's executive or the undisclosed "private investor" were in a position to know how Fitch determined its credit rating opinions.  *See, e.g., Novak* v. *Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000) (holding that plaintiffs must plead "with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged"); *see also In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430, 442 (S.D.N.Y. 2005) (refusing to consider the alleged statements of confidential witnesses where plaintiffs failed to plead facts sufficient to "infer that these witnesses possess[ed] the information contained in their alleged statements").  Indeed, with respect to the private investor call, Plaintiffs fail to disclose the identities of either the so-called "private investor" or the Fitch analyst(s) who purportedly made the statements, or any context in which those statements were purportedly made.

---

[6]   Plaintiffs allege that the Rating Agencies played a role in "structuring" and monitoring Rhinebridge.  (Compls. ¶¶ 43-57.)  However, these allegations do not describe any specific misrepresentation or omission made by Fitch (aside from the ratings), nor do they provide any support for the argument that Fitch did not truly hold its opinions concerning Rhinebridge.  Even if accepted as true, the generalized allegations of structuring and monitoring Rhinebridge, absent other, more specific allegations related to Fitch, are not sufficient to plead common law fraud. (See *infra* Section II.A.)

Plaintiffs also have entirely ignored Fitch's numerous warnings and disclaimers regarding its credit ratings and the risks of investing in Rhinebridge's securities. In *Level 3*, Judge Lynch held that where research reports described in detail specific risk factors associated with the published opinion and laid out the underlying analysis upon which the opinion was based, it was less likely that the defendant intended to defraud plaintiff. *See Level 3*, 350 F. Supp. 2d at 490-491. The same reasoning applies here. Rhinebridge's private placement memorandum (Ehrlich Decl. Ex. A), which listed the credit ratings Fitch issued to Rhinebridge, also contained an extensive list of explicit disclaimers and risks concerning the rating opinions. Also, significantly, on July 4, 2007, Fitch issued a research report explaining its ratings of Rhinebridge, which also included extensive disclaimers.[7] These disclaimers and risks include:

- "Ratings are not a recommendation to buy, sell, or hold any security. Ratings do not comment on the adequacy of the market price [or] the suitability of any security for a particular investor . . . ." (Ehrlich Decl. Ex. B at 16.)

- "U.S. Residential Structured Finance Securities are subject to various risks. Credit risk arises from losses due to defaults by the borrowers in the underlying mortgage loans." (Ehrlich Decl. Ex. A at 14.)

- "Recent developments in the U.S. residential mortgage market, including the nonprime sector, could adversely affect the performance and market value of various Investments in the Structured Finance Sector, which could adversely affect the holders of the Medium Term Notes." (*Id.* at 15.)

- "[I]n recent months housing prices and appraisal values in many U.S. states have declined or stopped appreciating, after extended periods of significant appreciation. A continued decline or an extended flattening of those values may result in additional increases in delinquencies and losses on residential mortgage loans generally." (*Id.*)

As in *Level 3*, the specific identification of risks in conjunction with a statement of opinion here simply serves to heighten Plaintiffs' burden to plead specific facts demonstrating that Fitch did not believe its opinion—a burden that Plaintiffs entirely abdicate. Given the dearth of

---

[7]   The research report is attached to the Ehrlich Decl. as Exhibit B.

specific facts to support their claim against Fitch, Plaintiffs resort to conclusory and highly speculative assertions that amount to nothing more than, "Fitch should have known its assumptions were too optimistic."   But as Judge Lynch aptly concluded in *Level 3*, "[e]ven if one credits the plaintiffs' view that [the analyst] was excessively optimistic, merely being the most blotto of all the drunken sailors on shore does not amount to securities fraud." 350 F. Supp. 2d at 492.

For all of these reasons, Plaintiffs' Complaints lack the specificity required to sustain a fraud claim against Fitch.

## II.
## Plaintiffs' Generalized Allegations About Conflicts of Interest Fail to State a Claim

Unable to allege any specific facts to support their claim, Plaintiffs resort to blanket insinuations by contending, generally, that the opinions of the Rating Agency Defendants are infected by conflicts of interest.   As this Court held in *Abu Dhabi*, generalized allegations of conflicts of interest affecting an analyst's opinion, without any more specific allegations about why the opinion is supposedly compromised, are insufficient to establish a claim for fraud.  *See Abu Dhabi*, 651 F. Supp. 2d at 179 ("The existence of conflicts of interest alone typically is not sufficient to establish that defendants 'knowingly' made a false and misleading statement."); *see also Level 3*, 350 F. Supp. 2d at 492 ("[G]eneralized allegations about conflicts of interest . . . are not sufficient, standing alone, to satisfy the particularity requirements."); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 273 F. Supp. 2d 351, 373 (S.D.N.Y. 2003) (hereinafter "*Merrill Lynch*") ("[T]he pleading of a motive to issue false statements does not establish that false statements were in fact issued.").

11

**A.      Generalized Conflict of Interest Allegations Lack the Requisite Particularity**

Notwithstanding the clear teaching of the case law, at bottom, what Plaintiffs here allege is precisely this: that Fitch had a conflict of interest. These allegations do not differentiate Fitch from any other Defendant, and the allegations do not specify how or why the supposed conflicts affected Fitch's Rhinebridge rating. Plaintiffs devote pages to these generalized allegations of conflicts, the bulk of which are based on public statements by members of Congress, the Securities and Exchange Commission, or other Rating Agency Defendants—not one of which specifically refers to Fitch's ratings of Rhinebridge. (Compls. ¶¶ 84-107.) In all of these citations to Congressional hearings, documents produced to Congress, SEC findings, or statements by the other Rating Agencies, Plaintiffs cite *not one single statement attributable to or about Fitch* that suggests Fitch's ratings (much less Fitch's Rhinebridge ratings) were affected by conflicts of interest. And generalized statements by regulators, or statements by and about other defendants, clearly do not constitute facts pleaded with sufficient particularity *against Fitch*. See *Merrill Lynch*, 273 F. Supp. 2d at 374 (holding that conclusions of the New York Attorney General "fail[ed] to constitute well-pleaded facts").

Similarly, Plaintiffs' allegations that Fitch was motivated by the promise of large fees to defraud investors (Compls. ¶¶ 58-66) are insufficient to satisfy the pleading standards; indeed, it is well settled that the desire for compensation, alone, cannot give rise to a fraud claim. *See Edison Fund* v. *Cogent Investment Strategies Fund, Ltd.*, 551 F. Supp. 2d 210, 227 (S.D.N.Y. 2008) (finding a "desire to continue to obtain management fees" to be a "generalized allegation of motive").

Moreover, in *Abu Dhabi*, plaintiffs alleged that "both Rating Agencies independently unveiled new credit-rating models that eased the Rating Agencies' standards for evaluating the creditworthiness of nonprime securities like the Cheyne SIV." *Abu Dhabi*, 651 F. Supp. 2d at 178.

12

Plaintiffs make no such specific allegation about Fitch here. In fact, Fitch was the first rating agency to disclose its concerns regarding Rhinebridge when it placed the fund on "Rating Watch Negative" on August 22, 2007.[8] As noted above, Fitch placed Rhinebridge on "Rating Watch Negative" after discovering the fund had exceeded its maximum limit for RMBS in August 2007, less than two months after the private placement, noting the "uncertainty in Rhinebridge's ability to secure continued funding in the [commercial paper] market" and that "of late, the market value of the assets have come under extreme pressure." (Ehrlich Decl. Ex. C.) Fitch's proactive approach to monitoring Rhinebridge's assets and its swift response to changes in the fund's portfolio completely undermine Plaintiffs' claim that Fitch knew Rhinebridge's credit rating opinions were false.

Further, in *Abu Dhabi,* the plaintiffs alleged that defendants had access to, and were in possession of, material non-public information. *See Abu Dhabi*, 651 F. Supp. 2d at 178. This information included, *inter alia*, statistical information about mortgage loan performance and weekly reports from the issuer that "provided the exact composition of the Cheyne SIV portfolio, as well as a determination of the market value of these assets . . . ." *See Abu Dhabi* First Amended Complaint, No. 1:08-CV-07508, at ¶ 251 (Mar. 30, 2009). Here, Plaintiffs generally allege that the rating agencies had access to material non-public information and that they should have disclosed that information (Compls. ¶¶ 166-167.) However, Plaintiffs simply fail to identify any non-public information in Fitch's possession which caused Fitch to believe that Rhinebridge's credit ratings should be lowered before Fitch actually lowered those ratings.

---

[8] *See Fitch Places Rhinebridge's CP and Notes on Rating Watch Negative*, Aug. 22, 2007, attached to the Ehrlich Decl. as Exhibit. C. On a motion to dismiss, a court "may consider documents that the plaintiffs relied on in bringing suit and that are either in the plaintiffs' possession or the plaintiffs knew of when bringing suit, or matters of which judicial notice may be taken." *Katz* v. *Image Innovations Holdings, Inc.*, 542 F. Supp. 2d 269, 271 (S.D.N.Y. 2008). Courts may take judicial notice of press releases as matters of public record. *See Mitchell* v. *Home*, 377 F. Supp. 2d 361, 367 n.1 (S.D.N.Y. 2005).

Indeed, the allegation about the non-disclosure of material non-public information can be flatly rejected here, based on Plaintiffs' own pleading, which incorporates the Rhinebridge private placement memorandum. According to that document, to which the Complaints refer repeatedly, Plaintiffs received exactly the same information as the Rating Agencies regarding Rhinebridge, including information regarding the composition of Rhinebridge's investment portfolio. (Ehrlich Decl. Ex. A at 114 (stating that Rhinebridge will provide monthly investment reports "to the Rating Agencies . . .[and] the holders of the Notes" including, *inter alia*, "the Investments contained in the Investment Portfolio" and "whether the Issuer has breached any of the Compliance Tests.").) Plaintiffs cannot now cherry-pick portions of the private placement memorandum that they believe support their claims and ignore the portions that do not. As the Second Circuit has held, district courts should consider the entirety of offering statements cited by plaintiffs because otherwise "complaints that quoted only selected and misleading portions of such documents could not be dismissed under Rule 12(b)(6) even though they would be doomed to failure." *Kramer* v. *Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *see also Sazerac Co., Inc.* v. *Falk*, 861 F. Supp. 253, 257 (S.D.N.Y. 1994) ("[I]f the allegations of a complaint are contradicted by the documents made a part thereof, the document controls and the court need not accept as true the allegations of the complaint."); *In re Towers Financial Corp. Noteholders Litig.*, No. 93 CIV.0810 (WK) (AJP), 1996 WL 393579, at * 10 (S.D.N.Y. Jul. 15, 1996) ("Courts in this Circuit have held that plaintiffs cannot base a Rule 10b-5 claim on allegations that are taken out of context and which contradict the express language of the Offering Memoranda.")

Here, at most, Plaintiffs offer ambiguous assessments regarding the value of Rhinebridge's collective assets based on the decline in value of investment funds managed by the now-defunct Bear Stearns, which bear no relation whatsoever to Rhinebridge. (*See, e.g.*, Compls.

14

¶ 118.)  That Plaintiffs attempt to substantiate their allegations about *Rhinebridge* by citing the performance of some unrelated *Bear Stearns* investment funds is symptomatic of the paucity of the Complaints.

**B.     Prior Disclosure of Potential Conflicts of Interest Defeats Plaintiffs' Reasonable Reliance on the Rating Opinions**

To the extent that Plaintiffs base their common law fraud claim solely on conflicts of interest, Fitch's clear disclosure of these potential conflicts defeats Plaintiffs' reasonable reliance on its rating opinions.  Plaintiffs' conflict of interest allegations (Compls. ¶¶ 84-107) essentially boil down to one potential conflict: the issuer of securities pays the rating agency to provide rating opinions of its securities.  Fitch clearly disclosed this potential conflict in its research report on Rhinebridge, where it stated that "Fitch receives fees from issuers, insurers, guarantors, other obligors, and underwriters for rating securities" and provided the general range of such fees. (Ehrlich Decl. Ex. B at 16.)  The private placement memorandum itself explicitly advised potential investors *not* to rely only on its contents, but to "rely on their own examination of the issuer . . . and the terms of the medium term notes and the offering thereof described herein, including the merits and risks involved" and offered opportunities for investors to request additional information about the fund.  (Ehrlich Decl. Ex. A at viii.)  The potential conflict of interest disclosed by Fitch in its research report certainly qualifies as a risk that Plaintiffs should have examined before investing in Rhinebridge.  Because their fraud claim is essentially based on this one conflict, Plaintiffs' failure to request additional information about the rating process precludes them from reasonably relying on the rating opinions included in the private placement memorandum.  *See Steed Finance LDC* v. *Nomura Sec. Int'l, Inc.*, No. 00 Civ. 8058 (NRB), 2004 WL 2072536, at *8 (S.D.N.Y. Sept. 14, 2004) (fraud claim dismissed where defendant's private placement memorandum "clearly advised

potential investors that they could not rely on [the memorandum] and exhibits thereto as a substitute for their own due diligence"); *see also In re Integrated Res. Real Estate Ltd. P'ships Sec. Litig.*, 850 F. Supp. 1105, 1143 (S.D.N.Y. 1994) (plaintiffs' fraud claim barred where defendants' private placement memorandum "invited review of any relevant documentation used in its preparation," as plaintiffs could not "state a fraud claim based upon material they could have reviewed"). Absent such reasonable reliance, Plaintiffs' fraud claim is barred.

## C.    Generalized Conflict-of-Interest Allegations Are Time-Barred

To the extent that Plaintiffs can proceed strictly on a theory of conflicts-of-interest (and for the reasons set forth above, we respectfully submit they cannot), such a theory is in all events time-barred. Plaintiffs were on inquiry notice that conflicts of interest existed in the ratings industry when the SEC released a report on the rating agencies in January 2003.[9] This report observed that "[c]oncerns have been expressed for a number of years about the potential conflict of interest that arises from the fact that the largest credit rating agencies rely on issuer fees for the vast majority of their revenues." (Ehrlich Decl. Ex. D at 41.) Indeed, the report noted that as early as "the mid-1970s . . . the largest rating agencies began charging issuers for ratings . . . ." (*Id.*) The SEC explicitly described the potential problem:

> "Arguably, the dependence of rating agencies on revenues from the companies they rate could induce them to rate issuers more liberally, and temper their diligence in probing for negative information. This potential conflict could be exacerbated by the rating agencies' practice of charging fees based on the size of the issuance, as large issuers could be given inordinate influence with the rating agencies."

---

[9]    *See* Securities and Exchange Commission, *Report on the Role and Function of the Credit Rating Agencies in the Operation of the Securities Markets* (Jan. 24, 2003), *available at* http://www.sec.gov/news/studies/credratingreport0103.pdf (last visited Jan. 15, 2010), attached to the Ehrlich Decl. as Exhibit D.

(Ehrlich Decl. Ex. D at 41.)  Plaintiffs' generalized conflict-of-interest allegations do no more than repeat the same concerns that were expressed "for a number of years" *before* the SEC released its January 2003 report— concerns that date from "the mid-1970s."

The statute of limitations for common law fraud is six years from the date on which the cause of action accrued.  N.Y. C.P.L.R. § 213(8).  Plaintiffs were or should have been aware of the alleged conflicts of interest in the ratings industry as early as January 2003 (when the SEC released its report) and so were on inquiry notice of the risks of credit ratings by the three largest rating agencies when they decided to invest in Rhinebridge.  Because these conflicts of interest are the only facts that Plaintiffs allege with respect to Fitch's knowledge of false statements and because Plaintiffs were on inquiry notice of these conflicts, their common law fraud claim is time-barred. *See Merrill Lynch*, 273 F. Supp. 2d at 380-81 (holding that plaintiffs were on inquiry notice of the conflicts of interest concerning ratings issued by Merrill Lynch); *Fogarazzo*, 341 F. Supp. 2d at 300 (ruling that plaintiffs' claims were not time-barred, but only because, unlike in *Merrill Lynch*, defendants had not introduced any reports that specifically identified defendants by name as suffering from conflicts of interest); *In re Salomon Winstar Litig.*, 373 F. Supp. 2d 241, 245 (S.D.N.Y. 2005) (holding that claims were time-barred due to plaintiffs being on inquiry notice from the date on which the rated company announced it was filing for bankruptcy).  Because the 2003 SEC Report specifically identifies Fitch and the other Rating Agency defendants as being potentially subject to conflicts of interest, Plaintiffs' common law fraud claims are time-barred.

### III.
### Plaintiffs Fail to Adequately Plead an Intent to Defraud

As this Court held in *Fogarazzo*, each element of a fraud claim must be separately and adequately pleaded, including scienter.  *See Fogarazzo*, 341 F. Supp. 2d at 293 n.122.  "To

satisfy the pleading requirements with respect to scienter, a plaintiff may either plead 'motive and opportunity to commit fraud' or 'strong circumstantial evidence of conscious misbehavior or recklessness.'" *Abu Dhabi*, 651 F. Supp. 2d at 171.[10]

First, Plaintiffs fail to plead that Fitch's rating opinions constituted conscious misbehavior or recklessness. Indeed, virtually no one in the investment community anticipated the subprime meltdown that occurred in 2007 and Plaintiffs' criticism of Fitch now essentially amounts to a claim of "fraud by hindsight," which has long been rejected in similar Rule 10(b)(5) contexts. *See, e.g.*, *In re Citigroup S'holder Derivative Litig.*, No. 07 Civ. 9841 (SHS), 2009 WL 2610746, at *10 (S.D.N.Y. Aug. 25, 2009) (hereinafter "*Citigroup*") ("[M]edia reports about a downturn in the subprime mortgage industry do not, by themselves, permit the inference that the directors knew or should have known that any of the statements cited in the complaint were misleading"); *Edison Fund*, 551 F. Supp. 2d at 228 ("The Amended Complaint . . . assumes that the defendants should have anticipated future difficulty in the market for sub-prime automobile loans, and this sort of 'fraud by hindsight' allegation cannot survive a motion to dismiss."); *see also Fogarazzo*, 341 F. Supp. 2d at 293 n.122 ("[C]ases of 'fraud in hindsight' do not give rise to claims for securities fraud, but the reason why such claims are not actionable is because of an absence of scienter.").

For example, Plaintiffs' allegations that Fitch's models were outdated (Compls. ¶¶ 150-161) and that Rhinebridge's ratings should have been lower than those of corporate bonds (Compls. ¶¶ 138-145) are nothing more than an *ex post facto* criticism of Fitch's assessment of Rhinebridge's creditworthiness. Plaintiffs have not pleaded—as they must—facts to suggest that

---

[10] New York common law fraud analysis is virtually identical to federal securities fraud analysis. *See Morse* v. *Weingarten*, 777 F. Supp. 312, 319 (S.D.N.Y. 1991) ("Because these elements [of common law fraud] are substantially identical to those governing § 10(b), the identical analysis applies . . ."); *see also AIG Global Secs. Lending Corp.* v. *Banc of Am. Secs., LLC*, No. 01 Civ. 11448 (JGK), 2005 WL 2385854, at *16 (S.D.N.Y. Sept. 26, 2005).

Fitch did not believe its rating opinions of Rhinebridge. *See Edison*, F. Supp. 2d at 228 (holding that plaintiffs did not sufficiently allege that "defendants had information contradicting the representations they made in the offering materials" at the time the representations were made); *Citigroup*, 2009 WL 2610746, at *10. Indeed, the Complaints concede that in 2007, "[Fitch was] highly confident regarding their models and their ratings." (Compls. ¶ 157.) At most, Fitch poorly predicted future trends in home prices, but that does not constitute fraud. *See Level 3*, 350 F. Supp. 2d at 492 (stating that defendant analyst's overly optimistic statements about the future prospects of rated companies were evidence that, at worst, defendant "was incompetent, a bad analyst, even careless," but not fraudulent).

Plaintiffs also fail to allege that Fitch possessed a sufficient motive to commit fraud in this case.[11] As noted above, Plaintiffs' sole allegation—that Fitch received large fees for rating and monitoring Rhinebridge (Compls. ¶¶ 58-66)—represents the kind of generalized allegation of motive that is not sufficient to allege scienter. *See Edison Fund*, 551 F. Supp. 2d at 227 (finding a "desire to continue to obtain management fees" to be a "generalized allegation of motive"); *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 621 (S.D.N.Y. 2005) (rejecting allegations that defendant was motivated to engage in fraud to continue receiving interest and advisory fees because "[t]he incentive to increase profit can be imputed to all corporations and their officers; it is not the type of concrete and personal benefit that suffices to plead a strong inference of scienter.").

## CONCLUSION

For the reasons set for above, Fitch respectfully requests that the Court dismiss Plaintiffs' Complaints with prejudice. Pursuant to this Court's motion rules and procedures, Fitch

---

[11] "Motives that are generally possessed by most corporate directors and officers do not suffice; instead, plaintiffs must assert a concrete and personal benefit to the individual defendants resulting from the fraud." *Kalnit* v. *Eichler*, 264 F.3d 131, 139 (2d Cir. 2001).

certifies to the Court that a pre-motion letter was sent to Plaintiffs on January 13, 2010, to which

Plaintiffs responded on January 14, 2010.

Dated: January 15, 2010
New York, New York

                            Respectfully submitted,

                            ____ /s/ Martin Flumenbaum_____
                            Martin Flumenbaum
                            Roberta A. Kaplan
                            Andrew J. Ehrlich
                            PAUL, WEISS, RIFKIND, WHARTON &
                            GARRISON LLP
                            1285 Avenue of the Americas
                            New York, NY 10019-6064
                            Telephone: 212-373-3000
                            Facsimile:  212-757-3990
                            *Attorneys for Defendant Fitch, Inc.*