UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KING COUNTY, WASHINGTON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>-vs-<br><br>IKB DEUTSCHE INDUSTRIEBANK AG, et al.,<br><br>Defendants. | Civil Action No. 1:09-cv-08387 (SAS)<br>ECF Case |
| IOWA STUDENT LOAN LIQUIDITY CORPORATION, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>-vs-<br><br>IKB DEUTSCHE INDUSTRIEBANK AG, et al.,<br><br>Defendants. | Civil Action No. 1:09-cv-08822 (SAS)<br>ECF Case |

**REPLY MEMORANDUM OF LAW OF DEFENDANTS IKB DEUTSCHE INDUSTRIEBANK AG AND IKB CREDIT ASSET MANAGEMENT GMBH IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINTS UNDER RULES 12(b)(2) and 12(b)(1) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

**LOWENSTEIN SANDLER PC**
Attorneys at Law
1251 Avenue of the Americas
New York, New York  10020
212.262.6700
Attorneys for Defendants
   IKB Deutsche Industriebank AG and
   IKB Credit Asset Management GmbH

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................... ii

I.  IKB IS NOT SUBJECT TO PERSONAL JURISDICTION UNDER CPLR 302 ................................................................................................ 1

    A.  IKB Has Not Transacted Business In New York Under CPLR 302(a)(1) ............. 1

    B.  IKB Did Not Cause Injury In New York Under CPLR 302(a)(3) ......................... 3

    C.  Plaintiffs Did Not Plead That IKB Was Involved In A Conspiracy ...................... 3

II. IKB IS NOT SUBJECT TO PERSONAL JURISDICTION UNDER CPLR 301 ................................................................................................ 4

    A.  IKB Is Not A "Mere Department" Of Lone Star .................................................... 4

    B.  IKB Capital Corporation Is Not A "Mere Department" Of IKB ........................... 5

    C.  Rhineland Funding Capital Corporation Is Not A "Mere Department" Of IKB ................................................................................................................... 5

# **TABLE OF AUTHORITIES**

**Pages**

**CASES**

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
    171 F.3d 779 (2d Cir. 1999) ................................................................................ 3

*Chrysler Capital Corp. v. Century Power Corp.*,
    778 F. Supp. 1260 (S.D.N.Y. 1991) .................................................................... 4

*Jazini v. Nissan Motor Co. Ltd.*,
    148 F.3d 181 (2d Cir. 1998) ........................................................................ 2, 4, 5

*Lehigh Valley Indus., Inc. v. Birenbaum*,
    527 F.2d 87 (2d Cir. 1975) .................................................................................. 3

*Porter v. LSB Indus., Inc.*,
    192 A.D.2d 205, 600 N.Y.S.2d 867 (4th Dep't 1993) ........................................ 5

*Taberna Capital Mgmt. LLC v. Dunmore*,
    No. 08 Civ. 1817, 2008 WL 2139135 (S.D.N.Y. May 20, 2008) ....................... 2

*Volkswagenwerk A.G. v. Beech Aircraft Corp.*,
    751 F.2d 117 (2d Cir. 1984) ..................................................................... 1, 2, 4, 5

**STATUTES**

N.Y. C.P.L.R. 301 ........................................................................................................ 4

N.Y. C.P.L.R. 302 ..................................................................................................... 1, 3

The IKB Defendants respectfully submit this reply memorandum of law in further support of their motion to dismiss the Plaintiffs' Complaints pursuant to Fed. R. Civ. P. 12(b)(2) and for lack of standing.[1]

## I.   IKB Is Not Subject To Personal Jurisdiction Under CPLR 302

### A.   IKB Has Not Transacted Business In New York Under CPLR 302(a)(1)

Plaintiffs advance two theories as to why IKB should be held to have "transacted business" in New York:  (a) the actions in New York of the Rhinebridge entities (though plaintiffs never specify which one) may be imputed to IKB; and/or (b) steps IKB "must have" taken in "arranging" the Rhinebridge SIV constitute the transaction of business in New York. Yet, there is no factual or legal basis for either theory.

Plaintiffs first argue that the sale of Rhinebridge commercial paper by dealers located in New York, and other acts of Rhinebridge participants in New York, should be attributed to IKB.  Plaintiffs offer no legal theory under which these contacts could be imputed to IKB.  The absence of authority is particularly noteworthy, given that the majority of Plaintiffs' brief is dedicated to the factors for piercing the veil for jurisdictional purposes set forth in *Volkswagenwerk A.G. v. Beech Aircraft Corp.*, 751 F.2d 117 (2d Cir. 1984).  This is a studied omission, for none of the *Beech* factors is present here.

As a preliminary matter, Plaintiffs' position is novel.  We have found no authority applying *Beech* to pierce a structured transaction such as an SIV.  A core feature of an SIV, as the name connotes, is the establishment of special purpose vehicles -- such as Rhinebridge PLC, the Irish issuer, and Rhinebridge LLC, the Delaware co-issuer.  The Rhinebridge SIV's operation was accomplished through a series of contracts that dictated the rights and obligations of each SIV participant.  No party to the Rhinebridge SIV transaction, including IKB, could unilaterally depart from the terms of the contracts.  (Braun Reply Decl. ¶¶ 8-13.)

---

[1]   Capitalized terms not otherwise signified carry the same meaning as defined in the IKB Defendants' moving submission.

Against this backdrop, *Beech* is inapposite. In fact, the very first *Beech* factor, ownership, is absent. IKB has no ownership of either Rhinebridge PLC or Rhinebridge LLC. Nor did IKB appoint the Rhinebridge officers; rather, they are appointed by Wilmington Trust SP Services (Dublin) Limited. Plaintiffs also fail to allege any "financial support" by IKB to Rhinebridge. Nor is Rhinebridge a "shell" without persons to conduct its affairs. Rather, Rhinebridge entered into contracts with the various participants in the structure to operate its affairs. (*Id.* ¶¶ 4-15.)

Plaintiffs next assert that IKB "arranged" for the Rhinebridge SIV to enter into agreements with placement agents in New York (although IKB is not a party to those contracts) and "[t]here is no question that IKB would have performed these services [of the placement agents] if need be." Putting aside for the moment that non-party Morgan Stanley was the arranger of this SIV (*id.* ¶ 15), Plaintiffs' supposition as to what IKB might have done in New York in connection with the establishment of the SIV is legally irrelevant.

In *Jazini v. Nissan Motor Co. Ltd.*, 148 F.3d 181 (2d Cir. 1998), the Second Circuit rejected plaintiff's attempt to obtain jurisdiction over the foreign parent of a U.S. company, Nissan-U.S., because plaintiff could not meet the *Beech* factors. Notably, the Court stated that companies may "carefully structure" their operations to avoid personal jurisdiction. *Id.* at 186. Of course, Nissan-U.S. did not spring from the ground. Rather, as with any wholly owned subsidiary, the parent must incorporate, capitalize and staff it initially. Yet, the *Nissan* Court never even considered such organizational acts as jurisdictionally relevant. *A fortiori*, in dealing with an SIV, which involves a group of contractual participants and the creation of one or more special purpose entities, such structuring activity should have no jurisdictional impact.

Nor does *Taberna Capital Mgmt. LLC v. Dunmore*, No. 08 Civ. 1817, 2008 WL 2139135 (S.D.N.Y. May 20, 2008), support Plaintiffs' position. There, the defendants attempted to defeat the ability of a New York plaintiff to collect on a note by creating a dummy New York corporation to which they transferred the assets of the obligor on the note. In *Dunmore*, compelling indicia of fraud existed, including internal emails, and the fact that the "dummy"

corporation had made an inexplicable transfer of $250,000 to one of the defendants. By contrast, Plaintiffs do not assert that the Rhinebridge SIV failed to function in accordance with its organic documents, or explain why any of the other participants would allow IKB to dominate the SIV in derogation of their rights. Nor is IKB even alleged to have created a New York corporation, as the Rhinebridge companies are both foreign.

Simply stated, Plaintiffs have not established, nor can they, that the alleged connections to New York of non-IKB participants in the Rhinebridge SIV somehow pass through to IKB. Similarly, Plaintiffs utterly fail to demonstrate how IKB's underlying purchases of assets that were later included in the Rhinebridge Investment Portfolio, pursuant to the Forward Sale Agreement, are jurisdictionally relevant. Plaintiffs have not made a *prima facie* showing for long-arm jurisdiction to attach under CPLR 302(a)(1).

B.   **IKB Did Not Cause Injury In New York Under CPLR 302(a)(3)**

Plaintiffs aver, alternatively, that IKB's conduct somehow constitutes a tort committed outside New York that caused injury in New York. *See* CPLR 302(a)(3). This too is wrong. An "injury" occurs where the first or "original event" in causing the injury takes place. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 791 (2d Cir. 1999). In cases involving fraud, the situs of the injury is where the original reliance on the alleged misrepresentation occurred. *Id.* at 792. King County is located in Washington and its original injury took place there. Iowa Student Loan is located in Iowa and its interrogatory responses demonstrate that its original reliance took place either in Iowa or in Montana, where its investment advisor is located. It, in fact, did not even buy the Senior Notes from New York, but rather through a broker in Minnesota. (Braun Decl. Ex. J.)

C.   **Plaintiffs Did Not Plead That IKB Was Involved In A Conspiracy**

Finally, Plaintiffs attempt to impute the actions of all other parties to IKB, by asserting IKB was engaged in a "conspiracy." Under New York law, "the bland assertion of conspiracy . . . is insufficient to establish jurisdiction for the purposes of 302(a)(2)." *Lehigh Valley Indus., Inc. v. Birenbaum*, 527 F.2d 87, 93-94 (2d Cir. 1975). Rather, to support the

3

exercise of long arm jurisdiction, plaintiff must make a *prima facie* showing of conspiracy to commit a tort in New York and allege sufficient facts that would allow the court to conclude that the defendant was a member of the conspiracy. *Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260, 1266-67 (S.D.N.Y. 1991). The Complaints are devoid of any specific facts describing a conspiracy to commit a tort in New York, let alone facts showing that IKB was a member of such a conspiracy. Plaintiffs' conclusory allegation of conspiracy, without more, is insufficient to establish jurisdiction under New York's long-arm statute.

## II.     IKB Is Not Subject To Personal Jurisdiction Under CPLR 301

Plaintiffs claim that IKB is subject to general jurisdiction in New York, because it is a "mere department" of, or dominates or controls any one of various entities. Plaintiffs fail to make a showing of the *Beech* factors with regard to any of these entities.

### A.     IKB Is Not A "Mere Department" Of Lone Star

*First*, Plaintiffs contend that IKB is controlled by its largest shareholder, LSF6 Europe Financial Holdings, L.P. ("LSF6"). However, the Court need not reach the issue of control under *Beech* -- though non-existent in any event -- because LSF6 is a Delaware limited partnership with its principal place of business in Dallas, Texas. Nor is LSF6's manager resident in New York. All companies germane to Plaintiffs' bald assertion are either Delaware or Bermuda entities with their principal place of business in Texas. Furthermore, the owner of Lone Star Europe Holdings, Ltd., John P. Grayken, is also not domiciled in New York.[2] (Freitag Decl. ¶4.) *Second*, even if IKB had a New York based parent, which it does not, Plaintiffs fail to allege facts sufficient to satisfy *Beech*. Only 5 of 15 supervisory board members of IKB AG have any affiliation with LSF6. *See* 148 F.3d at 185 (appointment of 1 in 4 executive managers insufficient). Likewise, LSF6 has no delegates on IKB's management board which, under the German Stock Corporation Act, manages the operations of the company. No Lone Star related

---

[2] Plaintiffs' citation to Lone Star's website that refers to an "acquisition team" having been located in New York simply does nothing to contradict the domicile of the entities that actually own or control LSF6. *See Nissan*, 148 F.3d at 186 (website reference to fact that all subsidiaries act with parent as one "global company" irrelevant to jurisdictional analysis).

4

entity has a financial commitment to IKB. The only instance to which Plaintiffs cite, a one-time €225 million capital infusion, was a required condition of the purchase. (*Id.* ¶¶ 5-13.)

### B.  IKB Capital Corporation Is Not A "Mere Department" Of IKB

Plaintiffs similarly fail to establish that IKB dominates IKB CC. For this proposition Plaintiffs rely on the mere fact that IKB AG, as the 100% shareholder of IKB CC, elects IKB CC's directors. This is of no moment. *Porter v. LSB Indus., Inc.*, 600 N.Y.S.2d 867, 873 (App. Div. 1993) (overlap of officers/directors intrinsic in parent/subsidiary relationship). Plaintiffs are also mistaken in their contention regarding the source of the IKB CC board salaries. Furthermore, to establish "financial dependence" Plaintiffs grossly mis-cite a page of IKB's financial statements. Plaintiffs assert that IKB must be supporting IKB CC because IKB CC "lost €1.6 billion" last year. In fact, the page in question shows a €1.6 **m**illion reduction in shareholder's equity, not **b**illion. This is hardly surprising as IKB CC is liquidating its assets, and ceased doing business in 2008 as part of a planned winding up of the company. Moreover, Plaintiffs' exhibit shows that even under these circumstances, IKB CC still has positive shareholder equity of over €38 million. (Schaum Decl. ¶¶ 2-11.) Finally, the fact that IKB CC's activities are part of IKB's global "strategy" is immaterial. *Nissan*, 148 F.3d at 185.

### C.  Rhineland Funding Capital Corporation Is Not A "Mere Department" Of IKB

RFCC is a Delaware corporation that was part of the Rhineland programme, an asset backed commercial paper (ABCP) conduit. IKB has no ownership in RFCC and RFCC is not a subsidiary of IKB. RFCC's directors were appointed by Lord Securities, not by IKB. This alone is fatal under *Beech*. Further, RFCC was not "financially dependent" on IKB as Plaintiffs purport. Plaintiffs' allegation that RFCC was consolidated onto IKB's financial statements is irrelevant. Indeed, most wholly owned subsidiaries are consolidated in the parent's financial statements, but this does not impact a jurisdictional analysis. As with Rhinebridge, the Rhineland programme involved a series of contracts which defined the rights of the participants. RFCC's existence lends nothing to Plaintiffs' claim of jurisdiction over IKB in New York. (Schirmer Decl. ¶¶ 3-7.)

6

| | |
|---|---|
| Dated: March 17, 2010<br>New York, New York | **LOWENSTEIN SANDLER PC**<br><br>By:  s/ John J.D. McFerrin-Clancy<br>   Zachary D. Rosenbaum<br>   John J.D. McFerrin-Clancy<br>   Thomas E. Redburn, Jr.<br>   Jennifer J. McGruther<br>   1251 Avenue of the Americas<br>   New York, New York  10020<br>   Tel.: 212.262.6700<br>   Fax: 212.262.7402<br>   -and-<br>   65 Livingston Avenue<br>   Roseland, New Jersey  07068<br>   Tel.: 973.597.2500<br>   Fax: 973.597.2400<br>   zrosenbaum@lowenstein.com<br>   jmcferrin-clancy@lowenstein.com<br>   tredburn@lowenstein.com<br>   jmcgruther@lowenstein.com<br><br>   *Attorneys for Defendants*<br>     *IKB Deutsche Industriebank AG and*<br>     *IKB Credit Asset Management*<br>     *GmbH* |