UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KING COUNTY, WASHINGTON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>-vs-<br><br>IKB DEUTSCHE INDUSTRIEBANK AG, et al.,<br><br>Defendants. | Civil Action No. 1:09-cv-08387 (SAS)<br>ECF Case |
| IOWA STUDENT LOAN LIQUIDITY CORPORATION, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>-vs-<br><br>IKB DEUTSCHE INDUSTRIEBANK AG, et al.,<br><br>Defendants. | Civil Action No. 1:09-cv-08822 (SAS)<br>ECF Case |

**REPLY MEMORANDUM OF LAW OF DEFENDANTS IKB DEUTSCHE INDUSTRIEBANK AG AND IKB CREDIT ASSET MANAGEMENT GMBH IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINTS UNDER RULES 9(b) AND 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

**LOWENSTEIN SANDLER PC**
Attorneys at Law
1251 Avenue of the Americas
New York, New York  10020
212.262.6700
Attorneys for Defendants
   IKB Deutsche Industriebank AG and
   IKB Credit Asset Management GmbH

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

ARGUMENT ............................................................................................................................ 1

PLAINTIFFS' FRAUD CLAIMS MUST BE DISMISSED ..................................................... 1

    A.    IKB Did Not Utter Anything Other Than A Truthful Statement Of Fact .............. 1

    B.    Rhinebridge Did Not Breach The Major Capital Loss Test Prior To June 27, 2007 ...................................................................................................................... 4

    C.    Plaintiffs Have Failed To Plead The Essential Element Of Justifiable Reliance ................................................................................................................ 5

    D.    The Bespeaks Caution Doctrine Bars Plaintiffs' Fraud Claims ............................ 6

    E.    Plaintiffs Have Not Adequately Pled That The IKB Defendants Acted With Scienter ........................................................................................................ 8

CONCLUSION ........................................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Pages**

**CASES**

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*,
   651 F. Supp. 2d 155 (S.D.N.Y. 2009) ................................................................................*passim*

*Compuware Corp. v. Moody's Investors Servs.*,
   499 F.3d 520 (6th Cir. 2007) ................................................................................................... 7

*Halperin v. eBanker USA.com, Inc.*,
   295 F.3d 352 (2d Cir. 2002) .................................................................................................... 8

*In re Fitch, Inc.*,
   330 F.3d 104 (2d Cir. 2003) .................................................................................................... 7

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
   273 F. Supp. 2d 351 (S.D.N.Y. 2003) ................................................................................. 7, 8

*In re NovaGold Res. Inc. Sec. Litig.*,
   629 F. Supp. 2d 272 (S.D.N.Y. 2009) ................................................................................. 7, 8

*J&R Mktg., SEP v. Gen. Motors Corp.*,
   549 F.3d 384 (6th Cir. 2008) ..........................................................................................*passim*

*Rubin v. MF Global, Ltd.*,
   634 F. Supp. 2d 459 (S.D.N.Y. 2009) ..................................................................................... 7

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*,
   531 F.3d 190 (2d Cir. 2008) .................................................................................................... 9

*Wight v. BankAmerica Corp.*,
   219 F.3d 79 (2d Cir. 2000) ...................................................................................................... 9

*Yu v. State Street Corp.*,
   -- F. Supp. 2d --, 2010 WL 668645 (S.D.N.Y. Feb. 25, 2010) ........................................... 5, 6

The IKB Defendants respectfully submit this reply memorandum of law in further support of their motion to dismiss the Plaintiffs' Complaints pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of standing and failure to state a claim.[1]

## PRELIMINARY STATEMENT

Citing this Court's decision in *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, 651 F. Supp. 2d 155 (S.D.N.Y. 2009), on virtually every page of their opposition brief, Plaintiffs behave as if this case is a carbon copy of that one. It is not. The IKB Defendants' 12(b)(6) motion relies almost entirely on arguments that were never addressed in *Abu Dhabi*, or, to the extent they were addressed, were decided in a manner unfavorable to Plaintiffs. Indeed, because Plaintiffs try to force every issue presented by this motion into the four corners of the *Abu Dhabi* opinion, they end up failing to respond altogether to many of the IKB Defendants' arguments, giving irrelevant responses to others, and undermining many of their own positions. Nothing in Plaintiffs' opposition papers refutes any of the myriad reasons demonstrated by IKB for why the Complaints must be dismissed. IKB's motion should be granted in its entirety.

## ARGUMENT

## PLAINTIFFS' FRAUD CLAIMS MUST BE DISMISSED

**A.   IKB Did Not Utter Anything Other Than A Truthful Statement Of Fact**

As IKB explained in its moving brief (IKB Mem. at 7-9), the dissemination of the supposedly false Top Ratings by means of the PPM and other communication channels, even if attributable to IKB, constitutes a truthful statement of fact that is not actionable in fraud. *See J&R Mktg., SEP v. Gen. Motors Corp.*, 549 F.3d 384, 392-93 (6th Cir. 2008). On virtually identical facts, the Court of Appeals for the Sixth Circuit held in *J&R Marketing* that an issuer's disclosure in its offering materials of credit ratings that rating agencies have assigned to the

---

[1]   Plaintiffs' Memorandum of Law in Opposition to the IKB Defendants' Motion to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) is referred to herein as the "Pl. Mem." and IKB's moving brief is referred to as the "IKB Mem." All other capitalized terms used herein have the same meanings as in the IKB Mem.

1

issuer is not actionable in fraud absent an express warranty of the ratings' accuracy by the issuer or allegations that the issuer gave the rating agencies false information. *Id*. at 393.

Neither exception is present here. *First*, when the rhetoric is stripped from their Complaints, Plaintiffs in substance allege nothing more against the IKB Defendants than the plaintiffs in *J&R Marketing* did against GMAC -- to wit, that IKB supposedly communicated the Top Ratings "directly to plaintiff and other members of the Class through, *inter alia*, a commonly used investment platform provided by Bloomberg and confirmed [the ratings] via Private Placement Memoranda and other written materials concerning Rhinebridge." (KC Compl. ¶ 79.) The plain text of the PPM -- which repeatedly informs investors that the Top Ratings constitute the Rating Agency Defendants' opinions and that the Rating Agency Defendants should be consulted about what they mean -- establishes that IKB never gave a warranty. (*See* IKB Mem. at 8-9; PPM at ii, x, 6, 19, 48-49.) *Second*, Plaintiffs' entire theory of liability against the Rating Agency Defendants is premised on their receipt of only truthful information from IKB during the ratings formulation process. (*See, e.g.*, IKB Mem. at 4; KC Compl. ¶ 120.) Accordingly, under *J&R Marketing*, Plaintiffs cannot state a claim for fraud against IKB.

Plaintiffs' two attempts to get around *J&R Marketing* fail. (Pl. Mem. at 9-10.) Their invocation of the group pleading doctrine, relying on *Abu Dhabi*, is a red herring. (*See id.* at 9 (quoting 651 F. Supp. 2d at 177).) The group pleading doctrine addresses the question of attribution, *i.e.*, of how to link the alleged misstatements to the party accused of the fraudulent intent. *See Defer LP v. Raymond James Fin., Inc.*, 654 F. Supp. 2d 204, 213-14 (S.D.N.Y. 2009).[2] The IKB Defendants, however, are not contesting the issue of attribution here. IKB's

---

[2] Group pleading enables plaintiffs to attribute to particular defendants (who are usually insiders like corporate directors and officers) the allegedly false statements contained in unsigned documents, such as offering memoranda, that constitute "the collective work of those individuals with direct involvement in the everyday business of the company." *See Abu Dhabi*, 651 F. Supp. 2d at 177 (quoting *Adelphia Recovery Trust v. Bank of Am., N.A.*, 624 F. Supp. 2d 292, 316 (S.D.N.Y. 2009)) (internal quotation omitted).

argument, rather, is concerned with the PPM's content -- *i.e.*, that even if attributable to IKB, the PPM's disclosure of the Top Ratings assigned to the Senior Notes by the Rating Agency Defendants is not a warranty of the accuracy of those opinions, but simply a truthful representation that they are, in fact, the opinions that the Rating Agency Defendants have expressed. That is what *J&R Marketing* teaches, and there is nothing in the group pleading doctrine that would support a contrary holding.[3]

Plaintiffs' other argument for distinguishing *J&R Marketing* on the grounds that, unlike in that case, the IKB Defendants supposedly "collaborated" with the rating agencies to "structure and rate the bond offering" fares no better. (Pl. Mem. at 9 & n.11.) The alleged conduct that Plaintiffs characterize in conclusory fashion as "collaboration" is really nothing of the sort. According to the Complaints, IKB supposedly "obtained" the Top Ratings and "collaborated" with the Rating Agency Defendants simply by following the instructions it was given to enable each agency to issue the Top Ratings in accordance with its own rating criteria and methodologies. (*See* IKB Mem. at 4, 9; KC Compl. ¶¶ 10, 39, 43-54, 58-63, 67-77.) For example, the Rating Agency Defendants told IKB what types and volumes of assets to buy for Rhinebridge, what types of credit enhancement and subordination protection to include, etc. -- all with the understanding that if IKB followed those instructions then the Rhinebridge Senior Notes would be eligible for the Top Ratings. (KC Compl. ¶¶ 39, 43-54.)

This kind of alleged "collaboration" -- if it can be called that -- actually strengthens the argument for applying the holding of *J&R Marketing* to this case. The credit

---

[3] The absurdity of the Plaintiffs' position is made apparent by their assertion that "in *Abu Dhabi*, the Court explicitly distinguished cases that were factually similar to *J&R Marketing* because in those cases, 'plaintiffs had failed to establish any inside link between the defendant and the issuer or a direct connection between the defendant and the document alleged to contain misstatements.'" (Pl. Mem. at 10 n.11.) This assertion is nonsensical. In *J&R Marketing*, the primary defendant (GMAC) *was* the issuer, and the issuer's statements in its own offering materials about its credit ratings were directly at issue. 549 F.3d at 388, 392-93. Thus, *J&R Marketing* is nothing at all like the group pleading cases that were distinguished in *Abu Dhabi* -- which is not surprising, since neither *J&R Marketing*, nor IKB's argument for dismissal here, has anything to do with the group pleading doctrine.

3

ratings are the only purportedly false statements that Plaintiffs have identified, and it is undisputed that the Rating Agency Defendants decided which ratings to assign to Rhinebridge. It makes no sense to treat the IKB Defendants as giving investors a *de facto* warranty of the accuracy of those ratings when IKB (i) merely followed the Rating Agency Defendants' instructions about how to structure Rhinebridge (including by purchasing assets that were also rated by the Rating Agency Defendants), (ii) did not create or apply the models and methodologies used by the Rating Agency Defendants to develop those instructions and decide which ratings to assign to the Senior Notes, and (iii) did not mislead the rating agencies in any way about the structure of Rhinebridge or its portfolio of assets. Indeed, consistent with *J&R Marketing*, a reasonable investor in these circumstances would assume that IKB merely conveyed the assigned ratings to investors without a warranty and left it to the Rating Agency Defendants to explain and justify their opinions. *See* 549 F.3d at 393. This is especially true where, as explained above, the PPM went out of its way to inform investors that IKB was not providing a warranty of the credit ratings assigned to the Senior Notes. (*See* IKB Mem. at 8-9.) In short, the dissemination of the Top Ratings in the PPM constituted a truthful statement of fact, which cannot support a fraud claim against the IKB Defendants.[4]

**B.   Rhinebridge Did Not Breach The Major Capital Loss Test Prior To June 27, 2007**

Plaintiffs' allegation, essential to their theories of both falsity and scienter, that Rhinebridge breached the Major Capital Loss Test (*i.e.*, that its asset portfolio degraded in value by 8% or more) before June 27, 2007 is improperly pled on "information and belief" and should be disregarded by the Court. (*See* IKB Mem. at 10-12.) In their opening brief, the IKB Defendants painstakingly documented the deficiencies in the purported "facts" underlying this

---

[4]   Plaintiffs attempt to premise their theory of falsity on the idea that the Rating Agency Defendants' models were based on obsolete, inaccurate pre-2000 data should be rejected. (*See* Pl. Mem. at 8.) Despite Plaintiffs' liberal use of the generic term "defendants," there is not a single particularized allegation in the Complaints that even suggests that IKB was involved in any way in the construction, revision or evaluation of the models used by the Rating Agency Defendants to generate the ratings for the Rhinebridge Senior Notes.

4

belief -- which consist of nothing but press reports and other publicly-available information about general trends in the subprime mortgage market and the implosion of two Bear Stearns funds that had nothing to do with Rhinebridge. (*Id.*) Plaintiffs' only response to IKB's arguments is to repeat (without any elaboration or further factual support) a few of these same deficient allegations, while giving special emphasis to the Complaints' bald contention that the Bear Stearns funds were supposedly "invested in the same kinds of risky mortgage-backed securities held by Rhinebridge." (*See* Pl. Mem. at 8 n.10; KC Compl. ¶ 118(a) (emphasis deleted).) But that kind of conclusory statement, lacking any specific allegations about the contents of Rhinebridge's portfolio to back it up, is not even enough to satisfy Rule 8's plausibility standard, let alone the particularity requirement under Rule 9(b).[5] Thus, Plaintiffs cannot premise their fraud claim on any alleged breach of the Major Capital Loss Test.

C.     **Plaintiffs Have Failed To Plead The Essential Element Of Justifiable Reliance**

Plaintiffs cite *Abu Dhabi* for the proposition that they can adequately plead reasonable reliance merely by alleging that they relied on the accuracy of the Top Ratings and that IKB had access to non-public information that even sophisticated buyers could not obtain. (Pl. Mem. at 21 (quoting 651 F. Supp. 2d at 181).) In doing so, they ignore the arguments that IKB actually made for why Plaintiffs' reliance was not sufficiently pled in this case -- arguments that were neither made nor addressed in *Abu Dhabi*.

In particular, by not responding to the point, Plaintiffs effectively concede that they are charged with knowledge of all of the publicly-available information on which they seek to plead a pre-June 27, 2007 breach of the Major Capital Loss Test. (*See* IKB Mem. at 11-12.);

---

[5]  *See Yu v. State Street Corp.*, -- F. Supp. 2d --, 2010 WL 668645, *8-9 (S.D.N.Y. Feb. 25, 2010) (holding that plaintiff's allegations that Fund overstated the value of mortgage-related instruments did not state a plausible claim of actionable misstatements under Rule 8 where the complaint contained "no averments about which securities were overvalued" and, though it stated that "troubles in the subprime mortgage market (rising delinquency, default, and early payment rates, and resulting losses to subprime lenders) began emerging before the write-downs occurred, . . . d[id] not contain allegations ***showing*** that those market events diminished the value of the Fund's holdings" (emphasis added)).

*see also Yu*, 2010 WL 668645, at *6 ("Investors are presumed to be aware of public information concerning market trends."). Because Plaintiffs themselves allege that knowledge of these publicly-available materials "strongly supports the conclusion that Rhinebridge's mortgage-backed assets had crashed in value before June 27, 2007" (KC Compl. ¶ 118), their own presumed knowledge of these same materials means that they also should have reached the same conclusion. (*See* IKB Mem. at 11-12.)

Moreover, Plaintiffs' knowledge of these materials renders their contention that Rhinebridge did not provide them with lists of the securities in the portfolio fatal to their fraud claim. (*See* Pl. Mem. at 21 (quoting KC Compl. ¶ 11).) Plaintiffs concede that they knew (or at least should have known) that the bottom had fallen out of the market for mortgage-backed securities, but went ahead and bought the Senior Notes anyway even though they also knew that they lacked specifics about the portfolio's contents.[6] Plaintiffs' failure to even ask about which assets would be included in Rhinebridge's portfolio prior to buying the Senior Notes is exactly the kind of conduct that is "so utterly unreasonable, foolish or knowingly blind as to compel the conclusion that whatever injury [Plaintiffs] suffered was [their] own responsibility." *Abu Dhabi*, 651 F. Supp. 2d at 172; (*see also* IKB Mem. at 17-18.) Accordingly, Plaintiffs' alleged reliance on the Top Ratings was unreasonable as a matter of law.

**D.     The Bespeaks Caution Doctrine Bars Plaintiffs' Fraud Claims**

Plaintiffs' attempt to avoid application of the bespeaks caution doctrine is without merit. *First*, as explained in IKB's moving brief (IKB Mem. at 13-15), the credit ratings

---

[6] Plaintiffs' *post hoc* rationalization that, even with the lists, "it was not possible to ascertain the true market values" of the assets because they were not publicly traded rings hollow. (*See* Pl. Mem. at 21 (quoting KC Compl. ¶ 11).) Under their own theory of the case, merely seeing the list of assets and confirming that they contained "the same kinds of risky mortgage-backed securities held by" the Bear Stearns funds would have told them all they claim they needed to know. Moreover, there was nothing to stop Plaintiffs from simply asking Rhinebridge or IKB for the latest "marks to market" for the assets in the portfolio, or from appraising the value of the assets under any other acceptable methodology. *See Yu*, 2010 WL 668645, at *8 (noting that there is no "single, objectively acceptable method for valuing" complex asset-backed instruments).

6

assigned to the Senior Notes by the Rating Agency Defendants are forward-looking statements protected by the bespeaks caution doctrine because they touch upon forward-looking concerns. *See Rubin v. MF Global, Ltd.*, 634 F. Supp. 2d 459, 467 (S.D.N.Y. 2009). IKB cited no less than three Court of Appeals cases that establish that credit ratings are predictive opinions by the rating agencies about an issuer's future creditworthiness and risk of a future default. (IKB Mem. at 14 (citing *In re Fitch, Inc.*, 330 F.3d 104, 106 (2d Cir. 2003); *J&R Mktg.*, 549 F.3d at 392; *Compuware Corp. v. Moody's Investors Servs.*, 499 F.3d 520, 522 (6th Cir. 2007)).) Plaintiffs do not even acknowledge these cases, let alone try to refute or distinguish them. In fact, Plaintiffs themselves confirm the credit ratings' forward-looking nature by alleging that, among other things, they communicated to investors that Rhinebridge had an extremely low probability of default or of transitioning to junk status, and a reasonably high likelihood of a high recovery in the event of a default -- all of which are predictions about the future. (Pl. Mem. at 7.)[7]

   *Second*, Plaintiffs once again evade the real issue when they assert that the Risk Disclosures in the PPM did not specifically inform investors that the Top Ratings were false or misleading or render those ratings unimportant to reasonable investors. (*See* Pl. Mem. at 23-24.) Bespeaks caution applies if, in light of the PPM's risk disclosures, a reasonable investor would not have been misled by the Top Ratings into believing that the Senior Notes were as safe as US Treasury securities or highly-rated corporate bonds because, as Plaintiffs allege, the ratings concealed the risks posed by the supposedly toxic, subprime mortgage-related assets in

---

[7]  Although they also argue that the ratings constitute representations of present fact because they communicated to investors opinions about the risks posed by Rhinebridge "at the particular point in time that the rating was issued," (Pl. Mem. at 23), that argument was rejected in a case that Plaintiffs themselves cite. *See In re NovaGold Res. Inc. Sec. Litig.*, 629 F. Supp. 2d 272, 292 (S.D.N.Y. 2009) (cited at p.13 of the Pl. Mem.) ("Any projection or forward-looking statement necessarily has its basis in current conditions, but this does not change the fact that it uses those current conditions to make some kind of prediction about the future."); *see also Abu Dhabi*, 651 F. Supp. 2d at 176 (holding that credit ratings are opinions); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 273 F. Supp. 2d 351, 376 (S.D.N.Y. 2003) (holding that "mixed statements consisting of forward looking and non-forward looking factors are nonetheless treated by courts as forward looking" (quotation omitted)).


Rhinebridge's portfolio.  *See Halperin v. eBanker USA.com, Inc.*, 295 F.3d 352, 357 (2d Cir. 2002).  It is beyond cavil that the PPM disclosed those very risks as part of its comprehensive discussion of the nature of the securities that would comprise Rhinebridge's portfolio, the recent negative developments in the residential mortgage market (especially as they pertained to subprime loans), and the effect that those negative developments could have on the value of the portfolio.  (*See* IKB Mem. at 15-17; PPM at 12-16.)  Indeed, Plaintiffs all but ***admit*** the risks were disclosed (*see* Pl. Mem. at 23), which makes it impossible for a reasonable investor to have believed that it was buying nearly risk free debt securities akin to T-Bills just because those securities had the equivalent of a AAA rating.  Because the PPM accurately conveyed to investors the risks of an investment in Rhinebridge's Senior Notes -- including the very risks that Plaintiffs claim the Top Ratings concealed -- it did not need to specifically discredit Rhinebridge's ratings in order to gain the protection of the bespeaks caution doctrine.  *See In re NovaGold Inc. Sec. Litig.*, 629 F. Supp. 2d at 294 (rejecting argument that registration statement did not warn of the specific risk that plaintiffs claimed was not disclosed; the registration statement warned of the risk at a higher level of generality).[8]

### E.     Plaintiffs Have Not Adequately Pled That The IKB Defendants Acted With Scienter

Plaintiffs simply ignore most of the points that IKB made in the course of demonstrating that the Complaints fail to plead a strong inference of scienter against IKB.  (*See*

---

[8]  Plaintiffs' contention that IKB's bespeaks caution argument is "nearly identical" to an argument that this Court supposedly rejected in *Abu Dhabi* is itself "inexplicable."  (*See* Pl. Mem. at 22 n.19 (quoting 651 F. Supp. 2d at 180).)  *Abu Dhabi* never mentions the bespeaks caution doctrine, and the PPM's comprehensive risk disclosures on which IKB relies go far beyond generic "disclaimers of liability."  Moreover, for the reasons explained in sections B and C *supra*, Plaintiffs have not even come close to adequately pleading that the IKB Defendants knew that the value of Rhinebridge's assets was already crashing when the PPM was distributed to investors in June 2007.  *See In re Merrill Lynch*, 273 F. Supp. 2d at 376 n.56 ("Conclusory allegations that [defendant] knew the reports and ratings were false when made are insufficient to render the bespeaks caution doctrine inapplicable.")  Plaintiffs also knew the same "facts" on which those allegations are based, which precludes them from establishing that they justifiably relied on the ratings -- especially when considered in combination with the PPM's comprehensive risk disclosures.

IKB Mem. at 18-25.)  There is no need to repeat these arguments here, as Plaintiffs concede them.  Instead, we address the more egregious errors made in Plaintiffs' opposition papers.

As a preliminary matter, Plaintiffs get the law wrong.  Their contention that scienter may be pled "generally" is clearly precluded by *Abu Dhabi*, which applies the well-recognized rule in this Circuit that in cases like this one the standards for pleading scienter under common law fraud and Section 10(b) are identical -- the plaintiff must plead particularized facts that give rise to a strong inference of scienter as interpreted by the Supreme Court in *Tellabs*.  *See* 651 F. Supp. 2d at 171.  The Court of Appeals' decision in *Wight v. BankAmerica Corp.*, 219 F.3d 79 (2d Cir. 2000) (cited at page 4 of Pl. Mem.), which involved sham transfers of funds between banks rather than allegedly fraudulent sales of securities, is not to the contrary.  *Id*. at 82, 92.  Thus, for example, Plaintiffs cannot draw any inference of scienter from the alleged breach of the Major Capital Loss Test or IKB's supposed sale of "toxic" assets from its balance sheet because they concede they have made these assertions in purely conclusory fashion without any particularized allegations.  (*See* Pl. Mem. at 12 n.12 and 16 n.15.)

Moreover, Plaintiffs' attempt to evade the unambiguous holding of *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*, 531 F.3d 190, 195 (2d Cir. 2008), should be rejected outright.  The Second Circuit could not have been clearer in that case when it stated that, to establish scienter against a corporate defendant, "the pleaded facts must create a strong inference that ***someone whose intent could be imputed to the corporation acted with the requisite scienter***."  *Id.* at 195 (emphasis added).  Although Plaintiffs do not necessarily have to name the person (and IKB never claimed they did), they must at least describe in some other manner a high-ranking individual whose conduct undertaken with scienter can be attributed to the corporation.  As regards the IKB Defendants, Plaintiffs simply have not done so.

Plaintiffs' other arguments either fail under existing law or are pled without any factual support.  *First*, Plaintiffs plead no facts that support an inference (strong or otherwise) that the IKB Defendants ever had any knowledge concerning the alleged flaws in the models used by the Rating Agency Defendants to rate the securities issued by Rhinebridge, or were ever

9

in a position to acquire such knowledge. (*See* Pl. Mem. at 13-14.) This is precisely the kind of conclusory allegation that is not acceptable to plead scienter in this Circuit. Although Plaintiffs try to bolster this with an allegation that IKB was aware that the Rating Agency Defendants were operating under a conflict of interest, the "existence of conflicts of interest alone typically is not sufficient to establish that defendants 'knowingly' made a false and misleading statement." *Abu Dhabi*, 651 F. Supp. 2d at 178-79. *Second*, Plaintiffs' reliance on *Abu Dhabi* for the proposition that the remuneration IKB stood to gain from Rhinebridge constitutes a concrete motive to commit fraud is misplaced. *Abu Dhabi* did not address the motives of an entity in IKB's position, since the sponsor of the Cheyne SIV was not a defendant in that case (and although Plaintiffs repeatedly assert that IKB was Rhinebridge's arranger, in fact Morgan Stanley was). Plaintiffs have no other response to the avalanche of case law in this Circuit establishing that the mere desire to obtain substantial fees or other remuneration does not give rise to a strong inference of scienter. (*See* IKB Mem. at 19-20.) *Finally*, the alleged retirements and terminations of IKB senior personnel do not support any inference of scienter because they did not, as Plaintiffs claim, occur "shortly after the Rhinebridge SIV collapsed." (Pl. Mem. at 20.) According to Plaintiffs, all of these personnel changes occurred in July and August 2007. (*Id*.) Rhinebridge, however, did not allegedly collapse until October 2007. (KC Compl. ¶ 168.).[9]

## CONCLUSION

For the reasons set forth above and in its moving brief, IKB's motion should be granted in its entirety. Since Plaintiffs have not indicated what additional facts they would plead in an amended complaint, their informal request for leave to amend should be denied as futile.

---

[9] Plaintiffs also lack standing to assert claims on behalf of purchasers of the European Commercial Paper. (IKB Mem. at 5-6.) The European Commercial Paper, which was issued under its own separate offering memorandum, constituted different debt obligations than the US Commercial Paper that Plaintiffs allegedly purchased. Because Plaintiffs did not buy any of the European Commercial Paper, they have no standing to assert any claims relating to those instruments. *Abu Dhabi*, 651 F. Supp. 2d at 174-75.

Dated: March 17, 2010  **LOWENSTEIN SANDLER PC**
New York, New York

By: ___s/ John J.D. McFerrin-Clancy___
    Zachary D. Rosenbaum
    John J.D. McFerrin-Clancy
    Thomas E. Redburn, Jr.
    Jennifer J. McGruther
    1251 Avenue of the Americas
    New York, New York  10020
    Tel.: 212.262.6700
    Fax: 212.262.7402
    -and-
    65 Livingston Avenue
    Roseland, New Jersey  07068
    Tel.: 973.597.2500
    Fax: 973.597.2400
    zrosenbaum@lowenstein.com
    jmcferrin-clancy@lowenstein.com
    tredburn@lowenstein.com
    jmcgruther@lowenstein.com

    *Attorneys for Defendants*
      *IKB Deutsche Industriebank AG and*
      *IKB Credit Asset Management*
      *GmbH*