**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IOWA STUDENT LOAN LIQUIDITY CORPORATION, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>                v.<br><br>IKB DEUTSCHE INDUSTRIEBANK, AG; IKB CREDIT ASSET MANAGEMENT, GmbH; MOODY'S INVESTORS SERVICE, INC.; MOODY'S INVESTORS SERVICE LIMITED; THE McGRAW HILL COMPANIES, INC. (d/b/a STANDARD & POOR'S RATING SERVICES); FITCH, INC.; WINIFRED REINKE and STEFAN ORTSEIFEN,<br><br>        Defendants. | Civil Action No. 09 Civ. 8822 (SAS) |
| KING COUNTY, WASHINGTON, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>                v.<br><br>IKB DEUTSCHE INDUSTRIEBANK, AG; IKB CREDIT ASSET MANAGEMENT, GmbH; MOODY'S INVESTORS SERVICE, INC.; MOODY'S INVESTORS SERVICE LIMITED; THE McGRAW-HILL COMPANIES, INC. (d/b/a STANDARD & POOR'S RATING SERVICES); FITCH, INC.; WINIFRED REINKE and STEFAN ORTSEIFEN,<br><br>        Defendants. | Civil Action No. 09 Civ. 8387 (SAS) |

## REPLY MEMORANDUM OF MCGRAW-HILL AND MOODY'S IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINTS

Floyd Abrams
Dean Ringel
Brian T. Markley
Jason M. Hall
CAHILL GORDON & REINDEL LLP
80 Pine Street
New York, New York 10005
(212) 701-3000

*Attorneys for Defendants*
*The McGraw-Hill Companies, Inc.*

Joshua M. Rubins
James J. Coster
SATTERLEE STEPHENS BURKE & BURKE LLP
230 Park Avenue, 11th Floor
New York, New York 10169
(212) 818-9200

*Attorneys for Defendants Moody's Investors*
*Service, Inc. and Moody's Investors Service*
*Ltd.*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................................................1

ARGUMENT ................................................................................................................................2

      I.      THE COMPLAINTS DO NOT ADEQUATELY ALLEGE LOSS
            CAUSATION ...................................................................................................2

      II.     THE COMPLAINTS DO NOT ADEQUATELY ALLEGE
            SCIENTER...........................................................................................................6

      III.    PLAINTIFF ISL FAILS TO ALLEGE FACTS ESSENTIAL TO
            STANDING ...................................................................................................10

CONCLUSION ...........................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**  Page

*Abu Dhabi Commercial Bank* v. *Morgan Stanley & Co.*, 651 F. Supp. 2d 155
(S.D.N.Y. 2009) ............................................................................ 2, 9

*In re Ambac Financial Group, Inc.*, No. 08 Civ. 411 (NRB), 2010 U.S. Dist.
LEXIS 16701 (S.D.N.Y. Feb. 22, 2010) ............................................ 4n

*Amida Capital Management II, LLC* v. *Cerberus Capital Management, L.P.*,
669 F. Supp. 2d 430 (S.D.N.Y. 2009) .............................................. 2

*Bloomberg L.P.* v. *Board of Governors of Federal Reserve System*, 649 F.
Supp. 2d 262 (S.D.N.Y. 2009) ......................................................... 2

*In re Countrywide Financial Corp. Securities Litigation*, 588 F. Supp. 2d 1132
(C.D. Cal. 2008) ............................................................................ 4n

*Dura Pharmaceuticals, Inc.* v. *Broudo*, 544 U.S. 336 (2005) ................................... 3-4, 6

*In re IBM Corp. Securities Litigation*, 163 F.3d 102 (2d Cir. 1998) ...................... 9

*In re IMAX Securities Litigation*, 587 F. Supp. 2d 471 (S.D.N.Y. 2008) ............... 8-9

*Langley* v. *Prudential Mortgage Capital*, 546 F.3d 365 (6th Cir. 2008), *reh'g
denied*, 554 F.3d 647 (6th Cir. 2009) ................................................. 2

*Lattanzio* v. *Deloitte & Touche LLP*, 476 F.3d 147 (2d Cir. 2007) ........................ 6

*Lentell* v. *Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005) ................................. 3-4, 4n, 6

*Lerner* v. *Fleet Bank, N.A.*, 459 F.3d 273 (2d Cir. 2006) ........................................ 6

*Leykin* v. *AT&T Corp.*, 423 F. Supp. 2d 229 (S.D.N.Y 2006), *aff'd*, 216 Fed.
App'x 14 (2d Cir. 2007) ................................................................. 4, 6

*Makor Issues & Rights, Ltd.* v. *Tellabs, Inc.*, 513 F.3d 702 (7th Cir. 2008) ........... 7

*In re Merrill Lynch & Co. Research Reports Securities Litigation*, 568 F. Supp.
2d 349 (S.D.N.Y. 2008) ................................................................... 4

*In re NovaGold Resources Inc. Securities Litigation*, 629 F. Supp. 2d 272
(S.D.N.Y. 2009) ............................................................................ 8n

*Rothman* v. *Gregor*, 220 F.3d 81 (2d Cir. 2000) .................................................... 5n

**Cases**                                                                                    <u>Page</u>

*Teamsters Local 445 Freight Division Pension Fund* v. *Dynex Capital, Inc.*,
   531 F.3d 190 (2d Cir. 2008) ................................................................. 7-10

*In re Tycom Ltd. Securities Litigation*, No. 03-CV-1352-PB, 2005 WL 2127674
   (D.N.H. Sept. 2, 2005) ........................................................................ 4n

## PRELIMINARY STATEMENT

In their opposition, Plaintiffs do not (and cannot) identify allegations of loss causation or scienter in the Complaints sufficient to meet their pleading obligations.

As to loss causation, Second Circuit authority required Plaintiffs to allege facts sufficient, if proved, to exclude obvious non-fraud explanations for their losses. Yet, Plaintiffs offer no explanation for the Complaints' failure to address the August 2007 seizure of the credit markets — a liquidity crisis of enormous consequence for a vehicle such as Rhinebridge that needed liquidity to operate, and thus an obvious, non-fraud explanation for Plaintiffs' alleged loss. Instead, Plaintiffs baldly mischaracterize and/or ignore the relevant law. Plaintiffs also suggest, incredibly, that the global phenomenon that gripped capital markets in the summer of 2007 has been overblown — referring to it as a "so-called" crisis that "may" have occurred. Pl. Br. at 12. Plaintiffs' head-in-the-sand approach to binding law and obvious realties of which courts have taken judicial notice is telling.

Tacitly recognizing (as they must) that they cannot avoid well-settled law or the plausible effect of the global liquidity crisis on their alleged losses, Plaintiffs offer a brand new theory of loss causation — that the Rating Agencies were themselves *responsible* for both the global crisis and, in turn, Plaintiffs' losses on the Rhinebridge SIV. This far-fetched theory is not to be found in the allegations of the Complaints. That is not surprising, as the theory is simply not plausible. The only alleged misstatements at issue in this case are the Rating Agencies' allegedly inflated ratings on Rhinebridge. Certainly, Plaintiffs cannot seriously contend that those ratings of a single security (published in June 2007) were responsible for the worldwide liquidity crisis. Nor do the Complaints attempt, in any event, to disentangle any potential effect attributable to the intervening financial crisis from losses allegedly caused by the Rating Agencies' alleged fraud in connection with the Rhinebridge SIV.

As to scienter, this Court has held that while the opinion character of ratings does not

immunize them from liability, a complaint alleging fraud in connection with ratings must plausibly allege that "the Rating Agencies did not genuinely or reasonably believe that the ratings they assigned . . . were accurate and had a basis in fact." *Abu Dhabi Commercial Bank* v. *Morgan Stanley & Co.*, 651 F. Supp. 2d 155, 176 (S.D.N.Y. 2009). One can hardly plead that an opinion was not "genuinely" held without *some* reference to individuals, *i.e.*, the "speaker" who allegedly lacked belief in the opinion. While Plaintiffs need not identify speakers by name, the case law requires them to allege and be prepared to prove that individuals responsible for the opinions (not a corporate aggregation) lacked genuine belief. The Complaints wholly fail in this regard.

## ARGUMENT

### I.  THE COMPLAINTS DO NOT ADEQUATELY ALLEGE LOSS CAUSATION

As a threshold matter, there can be no serious dispute — despite Plaintiffs astonishing attempt to ignore it — that the global capital markets were gripped by a massive liquidity crisis in the summer of 2007. This reality is laid out in our opening brief and has been recognized by other courts in this district and elsewhere. RA Br. at 6-12; *see also Bloomberg L.P.* v. *Board of Governors of Federal Reserve System*, 649 F. Supp. 2d 262, 266 (S.D.N.Y. 2009) ("In 2007, the U.S. economy encountered a serious financial crisis."); *Amida Capital Management II, LLC* v. *Cerberus Capital Management, L.P.*, 669 F. Supp. 2d 430, 433 (S.D.N.Y. 2009) ("July 2007 marked the beginning of what was then called the 'credit crunch,' the first phase of the financial crisis[.]"); *Langley* v. *Prudential Mortgage Capital*, 546 F.3d 365, 367 (6th Cir. 2008) (recognizing crisis "[b]eginning in the summer of 2007"), *reh'g denied*, 554 F.3d 647 (6th Cir. 2009).[1]

---

[1]    Although Plaintiffs ask the Court to ignore the existence of this crisis, they do not seriously contest that it occurred, or that it was a very plausible factor in their alleged losses. Instead, Plaintiffs

Footnote continued on next page.

To be clear, the Rating Agencies do not (as Plaintiffs suggest) ask the Court to decide now that Plaintiffs' losses were caused by the credit crisis rather than by the alleged fraud. Defendants only ask the Court to hold, as Supreme Court and Second Circuit authority require, that Plaintiffs must plead facts sufficient, if proved, to exclude the credit crisis as an obvious non-fraud explanation for some discernable portion of their losses. *See Dura Pharmaceuticals, Inc.* v. *Broudo*, 544 U.S. 336, 342-43 (2005); *Lentell* v. *Merrill Lynch & Co.*, 396 F.3d 161, 174 (2d Cir. 2005). Plaintiffs simply seek to avoid this case law, starting with a mischaracterization of the decision in *Lentell*.

Specifically, Plaintiffs selectively quote and emphasize one portion of *Lentell* in which the court stated: "'[I]f the loss was caused by an intervening event, like a general fall in the price of Internet stocks, the chain of causation . . . is a matter of proof ***at trial*** and not to be decided on a Rule 12(b)(6) motion to dismiss.'" Pl. Br. at 14 (quoting *Lentell*, 396 F.3d at 174) (Plaintiffs' emphasis). What Plaintiffs omit, however, is the very next sentence in *Lentell* in which the court stated: "*However*, 'when the plaintiff's loss coincides with a marketwide phenomenon causing comparable losses to other investors, the prospect that the plaintiff's loss was caused by the fraud decreases,' and a plaintiff's claim fails when 'it has not adequately ple[]d facts which, if proven, would show that its loss was caused by the alleged misstatements as opposed to intervening events.'" 396 F.3d at 174 (emphasis added) (citations omitted). Given that Plaintiffs' loss here unquestionably co-

---

Footnote continued from previous page.

seek to "exclude" information demonstrating the existence of the crisis. *See* March 8, 2010 letter of Jessica Shinnefield. For reasons set forth in our March 11, 2010 response to Plaintiffs' counsel's letter, this request should be denied. In any event, Plaintiffs' objection can hardly extend to the judicial authorities the Rating Agencies have cited. Nor have Plaintiffs sought to "exclude" the data reflected in the chart on page 10 of the Rating Agencies' opening brief, which further demonstrates the extraordinary climate in which Plaintiffs' alleged losses would have occurred.

incides with a marketwide phenomenon that caused substantial losses to other investors, the pleading

requirements discussed in *Lentell* and *Dura* apply.[2]

District courts in this Circuit following *Lentell* have repeatedly dismissed claims for

failure to plead loss causation where plaintiffs fail to plead facts sufficient to exclude marketwide

disruptions as the explanation for their losses.  *E.g.*, *In re Merrill Lynch & Co. Research Reports Se-*

*curities Litigation*, 568 F. Supp. 2d 349, 360 (S.D.N.Y. 2008) (finding that the plaintiff could not

"successfully plead that his losses resulted solely or even partially from the purported materialization

of the risk that the defendants allegedly concealed, rather than from intervening causes, such as the

collapse of the Internet sector"); *Leykin* v. *AT&T Corp.*, 423 F. Supp. 2d 229, 246 (S.D.N.Y. 2006)

(dismissing plaintiff's complaint because it did "not allege facts showing that it was the claimed con-

cealment which caused plaintiffs' losses, rather than the market-wide Internet stock collapse," and

because there was no "way to separate the effect of the misstatements (if there was any) from the

general collapse or other causes"), *aff'd*, 216 Fed. App'x 14 (2d Cir. 2007).  Although the Rating

---

[2]      The cases Plaintiffs cite are not to the contrary.  Pl. Br. at 12-13.  First, Plaintiffs rely on *In re Tycom Ltd. Securities Litigation*, No. 03-CV-1352-PB, 2005 WL 2127674, at *12 n.15 (D.N.H. Sept. 2, 2005), which involved an alleged breakdown of the telecommunications market, and thus did not involve losses attributable to the sort of marketwide disruption discussed in *Lentell*.  Second, the portion of *In re Ambac Financial Group, Inc*., No. 08 Civ. 411 (NRB), 2010 U.S. Dist. LEXIS 16701, *69-*70 (S.D.N.Y. Feb. 22, 2010), cited in Plaintiffs' brief relates to a *scienter* analysis, not loss cau-sation.  The court in that case had no reason to consider (and thus did not even cite) the Second Cir-cuit's decision in *Lentell*.  Finally, the decision in *In re Countrywide Financial Corp. Securities Liti-gation*, 588 F. Supp. 2d 1132, 1173-74 (C.D. Cal. 2008), arose in a 1933 Act context where loss cau-sation was not an element of the claim.  Indeed, the Court noted explicitly that "the absence of loss causation . . . is an *affirmative defense*" generally established on summary judgment rather than a motion to dismiss.  *Id.* at 1170-71 (emphasis added).  Moreover, *In re Countrywide* again did not seek to distinguish or even cite to *Lentell* and obviously does not detract from *Lentell*'s binding au-thority.

Agencies discussed both of these recent decisions in their opening brief, RA Br. at 16-17, Plaintiffs make no effort to distinguish them.

Faced with (i) a global phenomenon occurring at the precise time they allegedly incurred their alleged losses and (ii) well-settled law requiring pleadings that account for this fact, Plaintiffs assert their new theory of loss causation — *i.e.*, that the Rating Agencies caused the collapse of the global capital markets and, in the process, caused the collapse of the Rhinebridge SIV, which in turn contributed to their alleged losses.  Plaintiffs point to, but tellingly do not quote from, several paragraphs in the Complaint where allegations that the Rating Agencies caused the credit crisis are supposedly to be found.  Pl. Br. at 12 (citing Complaints ¶¶ 55-56, 65, 86, 101, 118, 138-61). Examination of those paragraphs, however, reveals that none of them comes close to making such allegations.  Many of the cited paragraphs merely discuss in vague terms the Rating Agencies' alleged "conflicts of interest," *e.g.*, Complaints ¶¶ 55, 65, 86, while others reference allegedly "outdated ratings models," *e.g.*, Complaints ¶¶ 150-57.  Nowhere in the Complaints do Plaintiffs make specific allegations that any misstatements by the Rating Agencies, let alone their allegedly inflated ratings on the Rhinebridge SIV, caused the seizure of the global credit markets.[3]

---

[3]     Indeed, loss causation is not coherently addressed anywhere in the Complaints.  Nor can its absence be an oversight.  Plaintiffs' counsel have extensive experience in pleading loss causation.  Our research indicates that more than a dozen complaints filed by Plaintiffs' counsel in the past year have contained a section headed "Loss Causation," a fact of which this Court may take judicial notice.  *See* Declaration of Brian T. Markley ("Markley Dec."), Ex. A; *Rothman* v. *Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of complaint in another lawsuit as a public record).  The Complaints here contain no such section nor express reference to "loss causation" or similar phrases designed to flag such allegations.  This only serves to highlight the point that Plaintiffs have meticulously avoided offering any serious allegations to plead any cognizable theory of loss causation.

The reason for Plaintiffs' avoidance is clear.  Both in their Complaints and in their opposition brief, Plaintiffs assert that the alleged fraud commenced in June 2007 when Defendants "created and marketed" the Rhinebridge SIV and culminated "in October 2007, [when] defendants' fraud was revealed" by the downgrade of the ratings of Rhinebridge.  Complaints ¶¶ 2, 144, 163; Pl. Br. at 4, 6.  Yet, Plaintiffs do not (and cannot) allege facts to attribute the global liquidity crisis to these allegedly fraudulent statements.  Moreover, by now seeking to muddy the distinction between the fraud and the intervening events, Plaintiffs only emphasize that their pleadings offer no way to disentangle the effect of the allegedly inflated ratings from the effect of the global collapse itself as they are required to do.  *See, e.g.*, *Lattanzio* v. *Deloitte & Touche LLP*, 476 F.3d 147, 158 (2d Cir. 2007) (holding that a fraud plaintiff must allege "facts that would allow a factfinder to ascribe some rough proportion of the whole loss to [the defendant's alleged] misstatements").  Put another way, as the court observed in *Leykin* v. *AT&T Corp*., 423 F. Supp. 2d 229, 246 (S.D.N.Y. 2006), Plaintiffs have failed to "separate the effect of the misstatements (if there was any) from the general collapse or other causes" of their alleged losses.  Because Plaintiffs have failed to allege any theory of loss causation that meets the burden imposed by *Dura* and *Lentell*, their claims must be dismissed.

## II.     THE COMPLAINTS DO NOT ADEQUATELY ALLEGE SCIENTER

As with their loss causation arguments, Plaintiffs' scienter arguments cannot avoid the effect of controlling Second Circuit authority.  In a common law fraud case, adequate scienter allegations must give rise to a "strong inference" of the requisite intent to deceive.  *See, e.g.*, *Lerner* v. *Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (to allege common law fraud in New York, a complaint must plead facts giving rise to a "strong inference of fraudulent intent") (citation and internal quotation marks omitted).  Generalized suggestions of knowledge of different bits of information spread throughout a corporation are not enough to plead scienter as to a corporate defendant.  Rather,

to plead scienter adequately in such cases, a plaintiff must allege that "*someone* whose scienter is imputable to the corporate defendants *and who was responsible* for the statements made" acted with the requisite state of mind. *Teamsters Local 445 Freight Division Pension Fund* v. *Dynex Capital Inc.*, 531 F.3d 190, 197 (2d Cir. 2008) (citation and internal quotation marks omitted) (emphasis added). Particularly where, as here, the alleged false statements are statements of opinion, adequate state of mind allegations must focus on individuals responsible for the opinions at issue and whether those opinions were honestly held by them.  Plaintiffs can point to no allegations that meet this standard.

Rather, Plaintiffs' seek to avoid these principles, Pl. Br. at 21, based on a misreading of the Second Circuit opinion in *Dynex*.  The *Dynex* court acknowledged that the "someone" referred to in the passage quoted above need not be identified by name and, in the sentence seized on by Plaintiffs, added that "it is permissible to raise the requisite inference with regard to a corporate defendant without doing so with regard to a specific individual defendant."  Pl. Br. at 21 (citing *Dynex*, 531 F.3d at 195).  But the court made it clear that the omission of reference to individual knowledge was limited to unusual circumstances like those described by the Seventh Circuit in *Makor Issues & Rights, Ltd.* v. *Tellabs Inc*., 513 F.3d 702, 710 (7th Cir. 2008), where that court notes that individuals would not need to be referenced, for example, if "'General Motors announced that it had sold one million SUVs in 2006, and the actual number was zero.'"  531 F.3d at 195 (citation omitted).  This is hardly that case here.[4]

---

[4]    The Rating Agencies are *not* suggesting that the naming of individuals as defendants is required.  Plaintiffs' obligation is simply to plead facts giving rise to the strong inference that some individual(s) within the corporate defendant possessed the requisite scienter.

The pleading must make clear that "someone" had the requisite scienter.  The Complaints do not do so.  On the contrary, Plaintiffs point only to generalized criticisms of the Rating Agencies' business models and provide no specific allegations as to the states of mind of personnel responsible for ratings of the Rhinebridge SIV.   In fact, to read the Complaints, one would hardly even know that there were specific personnel responsible for ratings of the Rhinebridge SIV.  The only allegations Plaintiffs point to concern comments made by *other* analysts in *other* areas of the Rating Agencies regarding *other* ratings, with no alleged or even implied connection to the Rhinebridge SIV ratings.  Pl. Br. at 23 (citing, *e.g.*, Complaints ¶¶ 100, 101, 102, 106).

Plaintiffs cite a number of cases that supposedly support – but in fact contradict – their reading of *Dynex*.  For example, Plaintiffs cite *In re IMAX Securities Litigation*, 587 F. Supp. 2d 471, 479 n.31 (S.D.N.Y. 2008), for the proposition that the "failure to allege adequately the requisite state of mind of an officer or director named as an individual defendant does not necessarily compel the dismissal of like claims against the corporation."  Plaintiffs conveniently ignore the next sentence in the opinion:  "To sustain a . . . claim against a corporate defendant, plaintiffs may plead facts creating 'a strong inference that *someone*,' other than a named defendant, 'whose intent could be imputed to the corporation acted with the requisite scienter.'"[5]  *Id.* (citations omitted) (emphasis in original).  Moreover, in *IMAX*, plaintiffs specifically alleged that those who uttered the alleged false statements

---

[5]     Plaintiffs also cite to *In re NovaGold Resources Inc. Securities Litigation*, 629 F. Supp. 2d 272, 298-300 (S.D.N.Y. 2009) for the proposition that "allegations of scienter regarding a corporate defendant based on 'widespread knowledge at [the company]'" are sufficient without allegations of any particular employee's state of mind.  Pl. Br. at 21-22.  There, however, Plaintiffs relied on the specific allegations made by confidential sources "attest[ing] to the presence of . . . widespread knowledge" among the very people who were charged with uttering the false statements "that [a project] was over budget and that [a specific study's] figures were inaccurate."  629 F. Supp. 2d at 299-300.

knew and understood the relevant accounting rule that had been violated, specifically identified documents to which those individuals had access showing that those rules were being violated, alleged with particularity that those individuals pushed for aggressive accounting of revenue, and made other factually particularized allegations of specific individuals' knowledge.  *Id.* at 483.  The Complaints here, on the other hand, fail even to acknowledge the existence of individuals at each Rating Agency responsible for generating and communicating the relevant ratings on the Rhinebridge SIV, and the Complaints are absolutely silent as to those individuals' states of mind.

Plaintiffs dismissively cast off a "string of analyst opinion cases" based on the erroneous premise that this case is about statements of fact not statements of opinion, and that cases involving "opinions of particular analysts" thus do not apply here.  Pl. Br. at 22.  As authority for their position that the credit ratings on the Rhinebridge SIV Notes "were not mere opinions" but were rather "statements of fact," Pl. Br. at 22, Plaintiffs refer to this Court's decision in *Abu Dhabi Commercial Bank* v. *Morgan Stanley & Co.*, 651 F. Supp. 2d 155, 176 (S.D.N.Y. 2009).  In *Abu Dhabi*, this Court considered whether credit ratings on another SIV were actionable or non-actionable opinions, and determined that an opinion may still be actionable if the speaker "did not genuinely or reasonably believe [it was] accurate and had a basis in fact."  *Id.* (citing *In re IBM Corp. Securities Litigation*, 163 F.3d 102, 109 (2d Cir. 1998)).  This Court accepted, as courts across the country have repeatedly held, that credit ratings are statements of opinion and observed that the relevant scienter inquiry is whether the credit rating opinions were honestly held by the speakers who uttered them.  It is precisely to give effect to that requirement that, in the words of *Dynex*, facts must be pleaded suffi-

cient to give rise to the strong inference that "someone" responsible for the rating possessed the requisite scienter.[6]

Plaintiffs' effort to distinguish the "analyst opinion cases" is unavailing.  Those cases are entirely consistent with *Dynex*'s requirement of pleading that "someone" possessed the requisite scienter and point to dismissal here.

### III.   PLAINTIFF ISL FAILS TO ALLEGE FACTS ESSENTIAL TO STANDING

Plaintiff ISL's efforts to salvage its Complaint are plainly inadequate.  Its Complaint simply does not allege that ISL purchased the Senior Notes and therefore does not allege an injury in fact.  Because of the other substantive flaws described in Points I and II, common to both the King County and ISL Complaints, the Court need not reach this flaw which is unique to ISL.  If the Court does reach it, however, the ISL complaint should be dismissed.

### CONCLUSION

For the foregoing reasons, the Complaints fail to state a claim against Moody's Investors Service, Inc., Moody's Investors Service, Ltd., and The McGraw-Hill Companies, Inc. and should be dismissed.

---

[6]      In opposing IKB's motion to dismiss based on the "bespeaks caution" doctrine rooted in the IKB Information Memorandum ("IM"), Plaintiffs have argued that rating opinions are statements of present fact.  Opp. to IKB at 22.  But the ratings are not statements of fact at all as noted in the text of the IM.  Nor can the forward-looking nature of ratings be seriously disputed given that they relate solely to the likelihood of future events.  Whatever the resolution of the "bespeaks caution" argument, there should be no doubt that the opinion character of the ratings provides a basis for dismissal here given the failure to plead requisite scienter.

Dated:  New York, New York
March 17, 2010

CAHILL GORDON & REINDEL LLP

__/s/ Floyd Abrams_____

Floyd Abrams
(fabrams@cahill.com)
Dean Ringel
(dringel@cahill.com)
Brian T. Markley
(bmarkley@cahill.com)
Jason M. Hall
(jhall@cahill.com)
80 Pine Street
New York, New York  10005
(212) 701-3000
*Attorneys for The McGraw-Hill*
*Companies, Inc.*

SATTERLEE STEPHENS
BURKE & BURKE LLP

__/s/ Joshua M. Rubins_____

Joshua M. Rubins
(jrubins@ssbb.com)
James J. Coster
(jcoster@ssbb.com)
230 Park Avenue
New York, New York  10169
(212) 818-9200

*Attorneys for Moody's Investors Service, Inc.*
*and Moody's Investors Service Ltd.*

- 11 -