UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------- X

KING COUNTY, WASHINGTON,
Individually and on Behalf of All Others
Similarly Situated,

              Plaintiff,

       - against -

IKB DEUTSCHE INDUSTRIEBANK
AG, *et al.*,

           Defendants.

_____

IOWA STUDENT LOAN LIQUIDITY
CORPORATION, Individually and on
Behalf of All Others Similarly Situated,

              Plaintiff,

       -against-

IKB DEUTSCHE INDUSTRIEBANK
AG, *et al.*,

           Defendants.

---------------------------------------------------- X

**OPINION AND ORDER**

09 Civ. 8387 (SAS)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/4/10

09 Civ. 8822 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.    INTRODUCTION

      Two institutional investors, King County, Washington ("King

County") and Iowa Student Loan Liquidity Corporation ("ISL," and together with

King County, "plaintiffs") bring these putative class actions for common law fraud

in connection with the collapse of Rhinebridge PLC and Rhinebridge LLC

(together, "Rhinebridge"), a structured investment vehicle.  Plaintiffs sue six

corporate entities and two individuals:  IKB Deutsche Industriebank AG ("IKB

Bank") and IKB Credit Asset Management, GmbH ("IKB CAM," and together

with IKB Bank, "IKB"); The McGraw Hill Companies, Inc. d/b/a Standard &

Poor's Rating Services ("S&P"); Moody's Investors Service, Inc. and Moody's

Investors Service Ltd. ("Moody's"); Fitch, Inc. ("Fitch," together with S&P and

Moody's, the "Rating Agencies"); Winfried Reinke,[1] and Stefan Ortseifen

(collectively, "defendants").

      In June 2007, IKB sponsored the creation of Rhinebridge, allegedly in

an effort to move investment losses off of its own balance sheet and to dump those

losses on unsuspecting investors.[2]  Characterizing Rhinebridge as  "the shortest-

lived 'Triple A' investment fund in the history of corporate finance," plaintiffs

---

[1]      Reinke has not yet been served in either action.

[2]    *See* Complaints ("Compl.") ¶ 12.  As acknowledged by plaintiffs and
defendants, the Complaints filed in both cases are substantially identical and
defendants have raised identical arguments with respect to both Complaints.
References and citations are intended to refer to both Complaints.

claim that between June 1, 2007[3] and October 18, 2007, defendants fraudulently misrepresented the value of Rhinebridge and its senior debt securities (the "Senior Notes" or "Notes"). These misrepresentations took the form of the high credit ratings assigned to the Notes even though defendants knew that Rhinebridge actually held toxic, subprime mortgage-backed assets and was likely to default.[4]

IKB now moves to dismiss pursuant to Rules 12(b)(1) and 12(b)(2) of the Federal Rules of Civil Procedure on the grounds that this Court lacks personal jurisdiction and that plaintiffs lack standing under section 200-b of the New York Banking Law ("NYBL"). Ortseifen also moves to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction.[5] For the reasons discussed herein, IKB's

---

[3]     Although plaintiffs propose a class period that begins on June 1, 2007, *see id.* ¶ 170, plaintiffs assert throughout the Complaints that Rhinebridge's Senior Notes and allegedly false and misleading ratings were issued on June 27, 2007. *See, e.g., id.* ¶¶ 4, 11, 76, 115, 117, 169. It is unclear whether plaintiffs actually propose June 1, 2007 as the beginning of the class period or whether the use of June 1, 2007 in this single paragraph is a typographical error. I need not rule at this time which date properly identifies the start of the class period.

[4]     *See id.* ¶ 6.

[5]     IKB and Ortseifen also moved to dismiss pursuant to Rule 12(b)(6). Because I conclude that more discovery is necessary before this Court can conclude that it has personal jurisdiction over Orteisfen, I do not address his Rule 12(b)(6) motion. The merits issues raised by IKB will be addressed in a separate ruling. The Rating Agencies separately moved to dismiss pursuant to Rule 12(b)(6) as well. S&P and Moody's motions were addressed in a prior ruling. *See King County, Wash. v. IKB Deutsche Industriebank AG*, Nos. 09 Civ. 8387, 09 Civ. 8822, 2010 WL 1702196 (S.D.N.Y. Apr. 26, 2010). Fitch's motion will also

3

motion to dismiss is denied and Ortseifen's motion is denied with leave to renew at the conclusion of jurisdictional discovery.

## II.    BACKGROUND

### A.    IKB

IKB Bank is a "German banking institution with its principal place of business in Düsseldorf, Germany."[6]  IKB CAM is a wholly owned and controlled subsidiary of IKB Bank and is a "German financial institution with its principal place of business in London, England and with a registered German office in Düsseldorf."[7]  IKB created Rhinebridge in June 2007 and served as its manager.[8] Although IKB conducted its activities from Germany, IKB intentionally sought the United States capital markets – headquartered in New York – to raise money and issue false statements in New York.[9]

As Rhinebridge's manager, IKB arranged for the issuance of

---

be addressed in a forthcoming ruling.

[6]    Compl. ¶ 17.

[7]    *Id.*

[8]    *See id.* ¶ 124.

[9]    *See id.* ¶¶ 21, 23-27, 29, 33-34.

Rhinebridge Senior Notes in New York.[10]  IKB collaborated with New York based

Ratings Agencies to structure and produce Top Ratings for the Senior Notes.[11]

IKB did so with the intention of taking advantage of the Rating Agencies' special

status as "nationally recognized statistical rating organizations" or "NRSROs,"

conferred on them by the United States Securities and Exchange Commission

("SEC").[12]  IKB was also responsible for "manag[ing] [Rhinebridge's] Portfolio

within guidelines designed to preserve the Top Ratings of the Senior Notes . . . ."[13]

IKB also controlled the agreements into which Rhinebridge could

enter – including agreements with entities in New York.  Rhinebridge could enter

into agreements only "at the discretion of the Manager [IKB]."[14]  These agreements

include the contract between Rhinebridge and the Bank of New York, which held

the Master Note – representing the Senior Notes – that was governed by New York

---

[10]    See 6/07 Rhinebridge Private Placement Memorandum, Ex. A to Declaration of Luke Brooks, plaintiffs' counsel ("Brooks Decl.") ("PPM"), at 41 ("[t]he Manager has undertaken . . . to arrange for the issuer . . . to issue or enter into . . . Senior Funding and/or Capital Notes so as to enable [Rhinebridge] to achieve the funding objectives," which included issuing Senior Notes).

[11]    See Compl. ¶ 2.

[12]    Id. ¶¶ 2, 25-27.

[13]    PPM at 41.

[14]    Id.

law and physically held by the Bank of New York in New York.[15]   Furthermore,

Rhinebridge agreed to make payments to investors through a New York

corporation.[16]   IKB also arranged for Rhinebridge to enter into a placement agent

agreement with three major investment banks headquartered in New York to offer

and sell up to $20 billion in Senior Notes in New York.[17]

      IKB is also a one-hundred percent owner of IKB Capital Corporation

("IKB Capital").[18]   Although IKB Capital is a Delaware corporation, its sole office

is in New York.[19]   Beginning in September 2000, IKB "had been operating in the

---

[15]     *See id.* at 5 ("The USCP Notes will be available in book-entry form represented by a Master Note (the 'Master Note') held by the USCP Depositary [Bank of New York]").

[16]     *See id.*

[17]     *See* Rhinebridge Private Placement of US Commercial Paper Notes, Notice of Sale of Securities Pursuant to Regulation D (Form D), Ex. B to Brooks Decl., at 4.

[18]     *See* 2008/2009 Annual Financial Statements and Management Report of IKB Bank, Ex. J to Declaration of Jason C. Davis, plaintiffs' counsel, in Support of Plaintiffs' Memorandum of Law in Opposition to the IKB Defendants' Motion to Dismiss the Complaints for Lack of Personal and Subject Matter Jurisdiction ("Davis Decl.") ("2008/2009 IKB Annual Report"), at 123.

[19]     *See* Declaration of Dr. Frank Schaum, Executive Vice President of IKB AG and member of the Board of Directors of IKB Capital ("Schaum Decl.") ¶ 4.

US in the form of a newly founded company, [IKB Capital]."[20]  IKB formed IKB

Capital because IKB's United States presence centered on its "participat[tion]

primarily in acquisition and transaction financing projects syndicated by arranger

banks in New York."[21]  Due to its "need for immediate access to the market, since

September 2000 [IKB] ha[s] been operating in the US in the form of a newly

founded company, IKB Capital [ ]."[22]

       Although IKB Capital was a separately capitalized company, had its

own officers, employees, payroll, and financial accounts, three of the five members

of IKB Capital's Board of Directors were also IKB employees.[23]  In addition, at

least five members of IKB's Board of Managing Directors held executive positions

within IKB Capital, including Ortseifen.[24]  Each was paid by IKB and "[n]o

member of the Board of Managing Directors received payments from or benefits

---

[20]     2000/2001 IKB Bank Annual Report, Ex. L to Davis Decl.
("2000/2001 IKB Bank Annual Report"), at 46.

[21]     *Id.*

[22]     *Id.*

[23]     *See* Schaum Decl. ¶¶ 3, 8.

[24]     *See* 2006/2007 IKB Bank Financial Statements and Management
Report, Ex. M to Davis Decl. ("2006/2007 IKB Bank Report"), at 68 (indicating
that five members of IKB's Board of Managing Directors held positions within
IKB Capital, including Dr. Markus Guthoff and Frank Schönherr – who served as
Chairman of IKB Capital at different times – and Ortseifen, who served as vice
chairman).

committed upon by third parties . . . ."[25]  IKB Capital's credit risk management,

described as "an essential part of the firm's overall strategy . . . [is] determined by

IKB [Capital's] executive board in Dusseldorf, Germany."[26]  IKB Capital ceased

doing business as of December 31, 2008 and is currently in the process of winding

down its affairs.[27]

### B.  Ortseifen

Ortseifen is a citizen and resident of Germany.[28]  Ortseifen was the

Chief Executive Officer of IKB Bank and Chairman of IKB CAM during the

relevant period.[29]  He retired on July 29, 2007.[30]  Pursuant to his positions within

IKB, "there were occasions in 2006 and 2007 when [Ortseifen] received

---

[25]    *Id.* at 38.

[26]    Standard & Poor's RatingsXpress Credit Research Report, IKB
Capital, Ex. N to Davis Decl. ("S&P IKB Capital Report"), at 2.

[27]    *See* Schaum Decl. ¶ 2.

[28]    *See* Compl. ¶ 19; *see also* Affirmation of Stefan Ortseifen in Support
of Motion to Dismiss the King County Action ("Ortseifen King Cty. Aff.") ¶ 12;
Affirmation of Stefan Ortseifen in Support of Motion to Dismiss the ISL Action
("Ortseifen ISL Aff.") ¶ 20.  Ortseifen was served in the ISL action after he was
served in the King County action.  As a result, Ortseifen submitted two motions to
dismiss and two affidavits.  Although they are substantially similar, minor
differences result in different pagination and paragraph numbering.  Accordingly,
both motions and affidavits are cited.

[29]    *See* Compl. ¶ 19.

[30]    *See id.*

8

information from IKB personnel and other persons and communicated with them concerning Rhinebridge."[31]   While Ortseifen was in Germany for those communications and he does not believe that the persons with whom he spoke were in New York, he states that "one often has no way of knowing the location of the person with whom one is communicating."[32]   Ortseifen neither conducts business in New York State, nor keeps offices, files or records here.[33]   Ortseifen also does not own any property within New York State.[34]   The last time Ortseifen was in New York State was in April 2006.[35]

## III.   APPLICABLE LAW

### A.   Personal Jurisdiction

On a motion under Rule 12(b)(2), when the issue of personal jurisdiction "is decided initially on the pleadings and without discovery, the plaintiff need show only a prima facie case."[36]   Plaintiffs "can make this showing

---

[31]     Ortseifen King Cty. Aff. ¶ 19.  *See also id.* ¶ 24; Ortseifen ISL Aff. ¶¶ 15, 28.

[32]     Ortseifen King Cty. Aff. ¶ 24; Ortseifen ISL Aff. ¶ 15.

[33]     *See* Ortseifen King Cty. Aff. ¶¶ 3, 4; Ortseifen ISL Aff. ¶¶ 3, 4.

[34]     *See* Ortseifen King Cty. Aff. ¶ 5; Ortseifen ISL Aff. ¶ 5.

[35]     *See* Ortseifen King Cty. Aff. ¶ 20; Ortseifen ISL Aff. ¶ 11.

[36]     *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir. 1984). *Accord Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720,

through [their] own affidavits and supporting materials containing an averment of facts that, if credited . . . would suffice to establish jurisdiction over the defendant."[37]  Thus, a court may consider materials outside the pleadings,[38] but must credit plaintiffs' averments of jurisdictional facts as true.[39]  "[A]ll allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party."[40]  Nonetheless, where a defendant "rebuts [plaintiffs'] unsupported allegations with direct, highly specific, testimonial evidence regarding a fact essential to jurisdiction – and plaintiffs do not counter that evidence – the allegation may be deemed refuted."[41]

---

724 (S.D.N.Y. 2010) ("As no discovery has yet taken place, to survive a motion to dismiss the plaintiff must plead factual allegations [that] constitute a prima facie showing of jurisdiction.") (quotation marks omitted).

[37]     *Whitaker v. American Telecasting Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (quotation marks and citations omitted).

[38]     *See Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449, 452 (S.D.N.Y. 2000).

[39]     *See Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996).

[40]     *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993). *Accord Whitaker*, 261 F.3d at 208.

[41]     *Schenker v. Assicurazioni Generali S.p.A., Consol.*, No. 98 Civ. 9186, 2002 WL 1560788, at *2 (S.D.N.Y. July 15, 2002).

### 1.    General Jurisdiction Under Section 301

Under section 301 of the New York Civil Practice Law and Rules

("CPLR"), New York subjects a foreign corporation to general jurisdiction if it is

"doing business" in the State.  Courts will find that a foreign parent corporation is

doing business in New York "when the subsidiary is acting as an agent for the

parent, or when the parent's control is so complete that the subsidiary is a 'mere

department' of the parent."[42]  Determining whether an entity is a "mere

department" requires "a fact-specific inquiry into the realities of the actual

relationship between the parent and subsidiary."[43]

To determine whether the subsidiary is a "mere department" of the

parent corporation, a court must consider the following factors set forth in

*Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*: (1) "common

ownership," (2) "financial dependency of the subsidiary on the parent

corporation," (3) "the degree to which the parent corporation interferes in the

selection and assignment of the subsidiary's executive personnel and fails to

observe corporate formalities," and (4) "the degree of control over the marketing

---

[42]    *ESI, Inc. v. Coastal Corp.*, 61 F. Supp. 2d 35, 51 (S.D.N.Y. 1999)
(citing *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996)).

[43]    *Koehler*, 101 F.3d at 865.

11

and operational policies exercised by the parent."[44]  While the first factor –

common ownership – is "essential" for an assertion of jurisdiction, "[t]he other

three are important, but not essential."[45]  As such, "[t]he overall weighing of the

various factors thus necessitates a balancing process, and not every factor need

weigh entirely in the plaintiffs' favor."[46]  When applying the *Beech* test,

"[e]stablishing the exercise of personal jurisdiction over an alleged alter ego

requires application of a less stringent standard than that necessary to pierce the

corporate veil for purposes of liability."[47]

### 2.      Specific Jurisdiction Under CPLR 302(a)(1)

Under section 302(a)(1) a court may exercise specific jurisdiction

over a non-domiciliary, provided that two conditions are met:  the non-domiciliary

defendant transacts business within New York and the claim against the

non-domiciliary defendant arises directly out of this activity.[48]  Section 302(a)(1)

---

[44]      751 F.2d 117, 120-22 (2d Cir. 1984).  *Accord Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184-85 (2d Cir. 1998) (applying *Beech* factors).

[45]      *Tese Milner v. De Beers Centenary A.G.*, 613 F. Supp. 2d 404, 416 (S.D.N.Y. 2009).  *Accord ESI*, 61 F. Supp. 2d at 52.

[46]      *Reers v. Deutsche Bahn AG*, 320 F. Supp. 2d 140, 156 (S.D.N.Y. 2004) (quotation marks omitted).

[47]      *GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*, 667 F. Supp. 2d 308, 319 (S.D.N.Y. 2009) (quotation marks omitted).

[48]      *See Cutco Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986).

"is a single-act statute requiring but one transaction – albeit a purposeful

transaction – to confer jurisdiction in New York."[49]

  "New York courts define 'transact[ing] business' as purposeful

activity – 'some act by which the defendant purposefully avails itself of the

privilege of conducting activities within the forum State, thus invoking the benefits

and protections of its laws.'"[50]  There is no definitive test to determine if a

defendant has purposefully availed itself of the privilege of conducting activities in

New York.  Rather, the totality of the defendant's contacts must be reviewed to

determine whether jurisdiction is proper.[51]

### B. Due Process

  As set forth by the Supreme Court in *International Shoe v.*

*Washington*, due process requires that a defendant "not present within the territory

of the forum" have "certain minimum contacts with it such that the maintenance of

---

[49] *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 166 (2d Cir. 2005).  *Accord Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*, 7 N.Y.3d 65, 71 (2006) (This is a "single act statute [and] . . . proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted.") (quotation marks omitted).

[50] *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (quoting *McKee Elec. Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377, 382 (1967)).

[51] *See Cutco Indus.*, 806 F.2d at 368.

the suit does not offend 'traditional notions of fair play and substantial justice.'"[52]
This involves an analysis consisting of two components: the minimum contacts test
and the reasonableness' inquiry.

To establish the minimum contacts necessary to satisfy jurisdiction,
the plaintiff "must show that his claim arises out of or relates to defendant's
contacts with the forum state, . . . that the defendant purposefully availed himself
of the privilege of doing business in the forum state and that the defendant could
foresee being haled into court there."[53]  If defendant's contacts with the forum state
rise to this minimum level, a defendant may defeat jurisdiction only by presenting
"a compelling case that the presence of some other considerations would render
jurisdiction unreasonable."[54]

## C.   Standing and Subject Matter Jurisdiction

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party
may assert by motion the defense that the court lacks subject matter jurisdiction to
hear a claim.  "[A] district court [] may refer to evidence outside the pleadings"
such as sworn affidavits, correspondence between the parties, contracts, or other

---

[52]      326 U.S. 310, 316 (1945).

[53]      *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d
120, 127 (2d Cir. 2002)(quotation marks omitted).

[54]      *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

14

relevant documents.[55]   A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the court lacks the statutory or constitutional power to adjudicate the case.[56]

Section 200-b of the NYBL involves actions "maintained against foreign banking corporations[,]  residents[,] foreign corporations, [and] foreign banking corporations as non-residents."  Section 200-b provides, in relevant part, that:

> an action or special proceeding against a foreign banking corporation may be maintained by another foreign corporation or foreign banking corporation or by a non-resident [only]: . . . (b) where the subject matter of the litigation is situated within this state; (c) where the cause of action arose within this state . . . ;  (d) where the action or special proceeding is based on a liability for acts done within this state by a foreign banking corporation; [or] (e) where the defendant is a foreign banking corporation doing business in this state.

## IV.   DISCUSSION

### A.   Personal Jurisdiction Over IKB

#### 1.   General Jurisdiction

Plaintiffs contend that this Court has general jurisdiction over IKB

---

[55]   *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted).

[56]   *See id.*

based on its wholly-owned New York subsidiary – IKB Capital.[57]   Because each

of the *Beech* factors is met, I conclude that IKB Capital is a mere department for

purposes of exercising general jurisdiction over IKB.   *First*, IKB Capital and IKB

have common ownership.   IKB Capital is IKB's one-hundred percent owned

subsidiary and IKB uses IKB Capital to gain "immediate access" to the New York

markets.[58]   *Second*, IKB receives and reports IKB Capital's results on its financial

statements.[59]   Although this evidence suggests that IKB Capital is financially

dependent on IKB, it is not conclusive.[60]   *Third*, IKB interferes with the selection

---

[57]      *See* Plaintiffs' Memorandum of Law in Opposition to the IKB
Defendants' Motion to Dismiss the Complaints for Lack of Personal and Subject
Matter Jurisdiction ("Pl. IKB Opp.") at 10.  Plaintiffs also assert that this Court has
general jurisdiction over IKB by virtue of its relationship to two additional
companies – Lone Star Fund VI and Rhineland Funding Capital Corporation.  *See
id.* at 8-9, 11-12. Because I conclude that IKB Capital is a mere department of IKB
for purposes of exercising general jurisdiction over IKB, I need not address
whether this Court also has general jurisdiction over IKB based on the two
additional companies.

[58]      2000/2001 IKB Bank Annual Report, at 46.

[59]      *See* 2008/2009 IKB Annual Report at 123.

[60]      *Compare ESI*, 61 F. Supp. 2d at 53 ("[When reviewing the financial
dependency factor,] [c]ourts also inquire whether the subsidiary retains its own
profits or whether they are received by and reported on the financial statements of
the parent.") *with Gallelli v. Crown Imports, LLC*, --- F. Supp. 2d ---, No. 08 Civ.
3372, 2010 WL 1177449, at *8 (E.D.N.Y. Mar. 20, 2010) ("Courts considering
[the second *Beech* factor] have held that a finding of financial dependency requires
a showing that the subsidiary would be unable to function without the financial
support of the parent.") (citing *Reers*, 320 F. Supp. 2d at 157).

of IKB Capital's personnel.  Three out of five of IKB Capital's Board of Directors are IKB employees.[61]   Moreover, several members of IKB's Board of Managing Directors also held executive positions within IKB Capital.[62]  These overlapping IKB and IKB Capital employees were all paid by IKB.[63]  *Fourth*, IKB controlled IKB Capital's marketing and operational policies as shown by the fact that IKB Capital could not make lending decisions without IKB's approval.[64]

Defendants refute that IKB Capital is a mere department of IKB through the submission of the declaration of Dr. Frank Schaum, Executive Vice President of IKB Capital.  Schaum declares that IKB Capital has its own officers, employees, payroll, financial accounts, and maintained its own corporate formalities.[65]  Such evidence speaks only to the third *Beech* factor and fails to account for the fact that those managing IKB Capital are IKB employees and are paid by IKB.  Such evidence meets the third *Beech* factor even when considered in

---

[61]     *See* Schaum Decl. ¶¶ 3, 8.

[62]     *See* 2006/2007 IKB Bank Report at 68.

[63]     *See id. See Volkswagenwerk*, 751 F.3d at 121-22 (finding interference where some directors and officers of the parent and subsidiary overlapped, the parent paid those directors and officers' salaries, and executives were transferred between the parent and subsidiary as needed).

[64]     S&P IKB Capital Report at 2.

[65]     *See* Schaum Decl. ¶ 3.

light of Schaum's declaration.[66]  Thus, plaintiffs have sufficiently averred that IKB

Capital is a "mere department" of IKB and IKB is doing business in New York in a

manner sufficient to confer general jurisdiction.[67]

### 2.    Specific Jurisdiction

Plaintiffs have also presented adequate allegations and sufficient

jurisdictional evidence to demonstrate specific jurisdiction under section 302(a)(1).

Plaintiffs allege that IKB engaged in a fraudulent scheme intended to defraud

investors and to save IKB from impending bankruptcy.[68]  Plaintiffs contend that

the primary means to carry out that fraud involved forming Rhinebridge and

launching it in New York.[69]  Because IKB controlled the agreements into which

Rhinebridge could enter, IKB necessarily directed Rhinebridge's various

---

[66]    *See ESI*, 61 F. Supp. 2d at 54 ("In examining the third factor, interference with executive personnel and failure to observe corporate formalities, courts look to, *inter alia*, whether the parent . . . shifts executives along its subsidiaries [and] whether the parent pays the executives' salaries . . . .").

[67]    *See, e.g.*, *Cassese v. Washington Mut., Inc.*, 262 F.R.D. 179, 185 (E.D.N.Y. 2009) (finding a subsidiary a "mere department" where the parent exercised control over the subsidiary with respect to lending and loan servicing activities, the two companies shared common management who controlled the day to day operations of the subsidiary, and the parent's financial statements include earnings derived from the lending and servicing activities of the subsidiary).

[68]    *See* Compl. ¶ 12.

[69]    *See id.* ¶ 21.

agreements with New York entities.[70]  These actions required the involvement of,

and did involve, numerous entities based in New York.[71]  Plaintiffs also assert that

IKB purposely and deliberately selected New York as the situs to launch

Rhinebridge because "'New York is widely regarded as the capital of U.S. capital

markets.'"[72]  These facts are sufficient to show that IKB transacted business in

New York.[73]

       IKB disputes that such facts are sufficient to demonstrate specific

jurisdiction.  *First*, IKB asserts that it has no physical presence in New York and,

thus, personal jurisdiction cannot be established.[74]  Yet, the New York Court of

Appeals and the Second Circuit have rejected the argument that a court does not

have personal jurisdiction over a corporation because it lacks physical presence

---

[70]    *See* PPM at 41.

[71]    *See id.*

[72]    Pl. IKB Opp. at 3 (quoting *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 96 (2d Cir. 2000)).

[73]    *See Taberna Capital Mgmt., LLC v. Dunmore*, No. 08 Civ. 1817, 2008 WL 2139135, at *2-*3 (S.D.N.Y. May 20, 2008) (holding that creating a New York corporation "that would act as a type of front" for a fraud satisfies section 302(a)(1)).

[74]    *See* Memorandum of Law of IKB in Support of Their Motion to Dismiss the Complaints for Lack of Jurisdiction and Standing at 5.

here.[75]  *Second*, IKB argues that plaintiffs have failed to demonstrate specific

jurisdiction because they do not show *Rhinebridge* to be a "mere department" of

IKB such that IKB can be held accountable for *Rhinebridge's* New York

contacts.[76]  Specific jurisdiction over IKB stems from *IKB's* personal and direct

contacts with New York.  It is irrelevant whether Rhinebridge is a mere department

of IKB in order to exercise personal jurisdiction.  As such, this Court has personal

jurisdiction over IKB pursuant to 302(a)(1).

### B.    Due Process as to IKB

IKB has not raised a due process challenge to personal jurisdiction.

Nevertheless, exercising personal jurisdiction over IKB comports with due process

considerations.  Where personal jurisdiction is appropriate under section 302(a),

the requirements of due process are met.[77]  Even if IKB was subject to personal

---

[75]     *See Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988)
("proof of one transaction in New York is sufficient to invoke jurisdiction [under
302(a)(1)], even though the defendant never enter[ed] New York, so long as the
defendant's activities here were purposeful and there is a substantial relationship
between the transaction and the claim asserted"); *PDK Labs v. Friedlander*, 103
F.3d 1105, 1109 (2d Cir. 1997) (same).

[76]     *See* Reply Memorandum of Law of IKB in Further Support of Their
Motion to Dismiss the Complaints Under Rules 12(b)(2) and 12(b)(1) of the
Federal Rules of Civil Procedure at 1-3 (citing *Volkswagenwerk*, 751 F.2d 117).

[77]     *See D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 105 (2d Cir.
2006) ("[T]he constitutional requirements of personal jurisdiction are satisfied
because application of N.Y. C.P.L.R. § 302(a) meets due process requirements.")

jurisdiction only under section 301, due process is satisfied.  IKB's interactions

with New York through IKB Capital and the creation and sale of Rhinebridge

Senior Notes in New York establish the minimum contacts requirement under

*International Shoe*.  With regard to the reasonableness inquiry, it is IKB's burden

to make a "compelling case" that exercising jurisdiction over IKB in New York is

unreasonable.[78]   IKB does not so argue, much less put forth a compelling case.

Accordingly, exercising jurisdiction over IKB does not offend traditional notions

of fair play and substantial justice.

### C.      Standing and Subject Matter Jurisdiction

Plaintiffs argue that section 200-b does not apply to IKB CAM

because it is a "financial institution" rather than a "foreign

banking corporation."[79]  These labels are irrelevant.  Under Title 12 of the United

States Code, section 632,[80] this Court has original jurisdiction.[81]  *First*, this is a suit

---

(citing *United States v. Montreal Trust Co.*, 358 F.2d 239, 242 (2d Cir. 1966)).

[78]      *Burger King Corp.*, 471 U.S. at 477.

[79]      Pl. IKB Opp. at 13.

[80]      *See* 12 U.S.C. § 632 (providing that "[n]otwithstanding any other
provision of law, all suits of a civil nature at common law or in equity to which any
corporation organized under the laws of the United States shall be a party, arising
out of transactions involving international or foreign banking . . . or out of other
international or foreign financial operations, either directly or through the agency,
ownership, or control of branches or local institutions . . . in foreign countries, shall

arising out of common law fraud. *Second*, plaintiffs are corporations organized

under the laws of the United States.[82] *Third*, the action involves international or

foreign banking because some portion of the relevant conduct and sales of the

Rhinebridge Senior Notes occurred outside of the United States.

       Even if section 200-b applied, this Court still has jurisdiction.

Assuming that IKB – as IKB Bank, IKB CAM, or the two together – could be

considered a foreign banking corporation,[83] plaintiffs have made a prima facie

---

be deemed to arise under the laws of the United States, and the *district courts of the United States shall have original jurisdiction of all such suits . . .*") (emphasis added).

[81]    *See First Palm Beach Int'l Bank v. Banco de Descuento, S.A.*, No. 85 Civ. 3656, 1989 WL 38122, at *2 (S.D.N.Y. Apr. 7, 1989) (finding section 200-b inapplicable where case involved an American entity and a foreign bank engaged in financial transactions).

[82]    *See* Compl. ¶ 16.

[83]    Neither IKB nor plaintiffs provide any definition of "foreign banking corporation" or "financial institution" and Article V of the NYBL, under which section 200-b falls, also provides no guidance as to the definition. Though other articles of the NYBL provide definitions of "foreign banking corporation" specific to the article under which the given provision falls, Article V does not include a definitions section and does not in its text provide any definition of the phrase. *See, e.g.*, NYBL § 12-a(e); § 221-b(2). This Circuit has not specifically addressed the definition of a foreign banking corporation under section 200-b. Though several state court opinions discuss section 200-b (primarily regarding the contract exception), none approaches the question of whether the entity in question was a foreign banking corporation. *See, e.g.*, *Indosuez Int'l Fin. B.V. v. National Reserve Bank*, 98 N.Y.2d 238 (2002).

22

showing that the jurisdictional facts as provided satisfy several of the five

exceptions available to permit suit under section 200-b.

      *First,* under exception (b), plaintiffs claim that the subject matter of

the litigation is in New York in the form of the closing, the Master Note, the

issuance of the false ratings, and the funds wrongfully aggregated and disbursed.[84]

*Second*, under exception (c), plaintiffs assert that the cause of action arose within

the state when IKB launched Rhinebridge in New York.[85]   *Third*, under exception

(d), plaintiffs assert that the fraud claim is based on liability for acts done within

the New York.[86]  *Finally*, under exception (e), as established for purposes of

personal jurisdiction, IKB is "doing business" in New York.  Therefore, plaintiffs

have standing and this Court has subject matter jurisdiction.

### D.   Personal Jurisdiction Over Ortseifen

      Plaintiffs assert personal jurisdiction over Ortseifen under section

302(a)(1).[87]  Plaintiffs cite to Ortseifen's executive positions in IKB Bank and IKB

---

[84]    *See* Pl. IKB Opp. at 14.

[85]    *See id.*

[86]    *See id.*

[87]    *See* Memorandum of Law of King County in Opposition to
Ortseifen's Motion to Dismiss the Complaint ("Pl. King Cty. Opp.") at 1;
Memorandum of Law of ISL in Opposition to Ortseifen's Motion to Dismiss the
Complaint ("Pl. ISL Opp.") at 1.

CAM during the time of the alleged fraud.[88]  Ortseifen admits that he was involved

in decisions regarding Rhinebridge and received or communicated information to

persons in unknown locations during Rhinebridge's formation and initial issuance

of the Senior Notes.[89]

Ortseifen, however, presents evidence to undermine plaintiffs'

allegations of jurisdiction.  Ortseifen maintains – and plaintiffs do not contest –

that he has no real property, bank accounts, files, employees, or offices in New

York and has not been physically present in New York since before the launch of

Rhinebridge.[90]  Ortseifen's communications with New York have been similarly

limited.[91]  Plaintiffs refute that they need to demonstrate that Ortseifen has any

personal contacts with New York by citing cases in which defendants were subject

---

[88]     *See* Pl. King Cty. Opp. at 13-18; Pl. ISL Opp. at 14-19.

[89]     *See* Ortseifen King Cty. Aff. ¶¶ 5, 20, 24; Ortseifen ISL Aff. ¶¶ 5, 11, 15.

[90]     *See* Ortseifen King Cty. Aff. ¶¶ 4-5, 20; Ortseifen ISL Aff. ¶¶ 3-5, 20.

[91]     *See* Ortseifen King Cty. Aff. ¶¶ 3, 4; Ortseifen ISL Aff. ¶¶ 3, 4. *Cf. Palace Exploration Co. v. Petroleum Dev. Co.*, 41 F. Supp. 2d 427, 434 (S.D.N.Y. 1998) (holding that sporadic, long-distance communications do not "project" the sender into New York and are insufficient to demonstrate the transaction of business in New York); *Semi Conductor Materials v. Citibank Int'l PLC*, 969 F. Supp. 243, 247 (S.D.N.Y. 1997) ("Merely pleading, as plaintiff does, that defendant sent faxes to plaintiff in New York is insufficient to establish purposeful activity in this forum.").

to jurisdiction in New York without having been physically present in the State.[92] However, the facts, allegations, and issues in each of those cases – while instructive for purposes of establishing jurisdiction over IKB[93] – are materially different from those presented against Ortseifen.[94]

Construing the allegations in the light most favorable to plaintiffs and resolving all doubt in plaintiffs' favor, I conclude that plaintiffs have provided sufficient evidence to demonstrate a prima facie case of personal jurisdiction over Ortseifen based on Ortseifen's involvement in launching Rhinebridge in New York. But Ortseifen's counter-evidence undermines plaintiffs' allegations such that it would be premature to determine conclusively that, in fact, personal jurisdiction exists. Therefore, I conclude that limited discovery into the issue of

---

[92]     See Pl. King Cty. Opp. at 12; Pl. ISL Opp. at 13.

[93]     See supra n.77 and accompanying text.

[94]     See Fischbarg v. Doucet, 9 N.Y.3d 375, 382-83 (2007) (asserting long-arm jurisdiction because "defendants established a substantial ongoing professional commitment between themselves and plaintiff [defendants' New York attorney], governed by the laws of our state"); Deutsche Bank Sec. Inc., 7 N.Y.3d at 71-72 (exercising personal jurisdiction over an institutional investor that had purchased hundreds of millions of dollars worth of securities from New York firms (including plaintiff) and exchanged emails with plaintiff regarding the sale at issue); Kreutter, 71 N.Y.2d at 470 (finding personal jurisdiction where the individual defendant was "a primary actor in the transaction with [plaintiff] in New York, not some corporate employee in Texas who played no part in it" where he personally directed the transactions that were undertaken by his corporation in New York and was in frequent communication with persons in New York).

personal jurisdiction over Ortseifen is appropriate.[95]

## V.     CONCLUSION

For the foregoing reasons, IKB's motion to dismiss is denied.

Ortseifen's motion to dismiss for lack of personal jurisdiction is denied with leave

to renew after the completion of limited discovery.  This discovery shall be

completed within ninety days of the date of this Order.

The Clerk of the Court is directed to close these motions (in 09 Civ.

8387, Docket Nos. 51, 56; in 09 Civ. 8822, Docket Nos. 46, 78).


SO ORDERED:


-Shira A. Scheindlin
U.S.D.J.


Dated:        New York, New York
              May 4, 2010

---

[95]     *See Frontera Resources Azerbaijan Corp. v. State Oil Co. of
Azerbaijan*, 582 F.3d 393, 402 (2d Cir. 2009) (stating that "[a] district court has
wide latitude to determine the scope of discovery," but noting that where a plaintiff
has not made a prima facie case for jurisdiction, courts typically deny jurisdictional
discovery) (quotation marks omitted).

## - Appearances -

**For Plaintiffs King County, Washington and Iowa Student Loan Liquidity Corporation:**

Anne L. Box, Esq.
Daniel S. Drosman, Esq.
David C. Walton, Esq.
Jessica T. Shinnefield, Esq.
Luke O. Brooks, Esq.
Nathan R. Lindell, Esq.
Patrick J. Coughlin, Esq.
Christina A. Royce, Esq.
Darryl J. Alvarado, Esq.
Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, California 92101-3301
(619) 231-1058

Samuel H. Rudman, Esq.
Jarrett S. Charo, Esq.
David A. Rosenfeld, Esq.
Robert M. Rothman, Esq.
Robbins Geller Rudman & Dowd LLP
58 South Service Road, Suite 200
Melville, New York 11747
(631) 367-7100

Jason C. Davis, Esq.
Robbins Geller Rudman & Dowd LLP
100 Pine Street, Suite 2600
San Francisco, California 94111
(415) 288-4545

**For Defendants IKB Deutsche
Industriebank AG and IKB Credit
Asset Management, GmbH:**

John D. McFerrin-Clancy, Esq.
Lowenstein Sandler PC
1251 Avenue of The Americas
New York, New York 11020
(212) 262-6700

Thomas E. Redburn, Jr., Esq.
Lowenstein, Sandler PC
65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2456

**For Defendant The McGraw Hill
Companies, Inc. d/b/a Standard &
Poor's Rating Services**

Adam N. Zurofsky, Esq.
Andrea R. Butler, Esq.
Brian T Markley, Esq.
Dean I. Ringel, Esq.
Floyd Abrams, Esq.
Jason M. Hall, Esq.
Cahill Gordon & Reindel LLP
80 Pine Street
New York, New York 10005
(212)701-3000

**For Defendants Moody's Investors
Service Limited and Moody's
Investors Service, Inc.**

James J. Coster, Esq.
Aaron M. Zeisler, Esq.
James J. Regan, Esq.
Joshua M. Rubins, Esq.
Justin E. Klein, Esq.
Satterlee Stephens Burke & Burke LLP
230 Park Avenue
New York, New York 10169
(212) 818-9200

**For Defendant Fitch, Inc.**

Andrew J. Ehrlich, Esq.
Martin Flumenbaum, Esq.
Roberta A. Kaplan, Esq.
Tobias J. Stern, Esq.
Paul, Weiss, Rifkind, Wharton &
Garrison LLP
1285 Avenue of the Americas
New York, New York 10019
(212) 373-3166

**For Defendant Stefan Ortseifen:**          **For Defendant Winfried Reinke:**

Thomas S. Wiswall, Esq.                       None
Phillips Lytle LLP
1400 First Federal Plaza
Rochester, New York 14203
(716) 847-7031