UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

KING COUNTY, WASHINGTON,       :
IOWA STUDENT LOAN LIQUIDITY    :
CORPORATION, Together and on   :
Behalf of All Others Similarly Situated,   :
                               :
                               :
                   Plaintiffs, :     09 Civ. No 8387 (SAS)
                               :
                               :
        - against -            :     **ECF Case**
                               :
                               :
IKB DEUTSCHE INDUSTRIEBANK     :
AG, et al.                     :
                               :
                               :
                   Defendants. :
                               :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS MORGAN STANLEY &
CO. INCORPORATED AND MORGAN STANLEY & CO. INTERNATIONAL
LIMITED'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT
PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 8(a), 9(b) AND 12(b)(6)**

James P. Rouhandeh
Antonio J. Perez-Marques
Russell Capone
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York  10017
(212) 450-4000
*Counsel to Defendants Morgan Stanley &
    Co. Incorporated and Morgan Stanley &
    Co. International Limited*

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS .........................................................................................................2

    A.    The Parties and the Rhinebridge Notes...........................................................2

    B.    Plaintiffs' Claims ...........................................................................................7

ARGUMENT .........................................................................................................................8

I.    Morgan Stanley Cannot be Liable in Fraud for the Credit Ratings ....................................8

    A.    Plaintiffs Have Not Pled a Misstatement by Morgan Stanley ................................8

    B.    The Complaint Fails to Adequately Allege Reasonable Reliance ........................13

    C.    The Complaint Fails to Plead Scienter With Particularity....................................15

II.    Plaintiffs' Aiding and Abetting Claim Must Be Dismissed...........................................17

    A.    Plaintiffs Do Not Allege Actual Knowledge of the Alleged Fraud ......................17

    B.    Plaintiffs Fail To Allege Substantial Assistance....................................................19

    C.    The Aiding and Abetting Claim is Duplicative of the Fraud Claim .....................20

CONCLUSION......................................................................................................................21

# TABLE OF AUTHORITIES

PAGE

**Cases**

380544 Can., Inc. v. Aspen Tech., Inc., 544 F. Supp. 2d 199 (S.D.N.Y. 2008)............................ 15

380544 Canada Inc. v. Aspen Tech. Inc., 633 F. Supp. 2d 15 (S.D.N.Y. 2009) ......................... 20

Abu Dhabi Commer. Bank v. Morgan Stanley & Co., 651 F. Supp. 2d 155 (S.D.N.Y. 2009) ................................................................................................................ 8, 17

Abu Dhabi Commercial Bank et al. v. Morgan Stanley et al., 2010 U.S. Dist. LEXIS 59339 (S.D.N.Y. June 15, 2010) ........................................................................... 14

Acito v. Imcera Group, Inc., 47 F.3d 47 (2d Cir. 1995) ............................................................ 15

Adelphia Recovery Trust v. Bank of Am., N.A., 624 F. Supp. 2d 292 (S.D.N.Y. 2009).............18

Armstrong v. McAlpin, 699 F.2d 79 (2d Cir. 1983) ................................................................... 17

Barnum v. Millbrook Care Ltd. P'Ship., 850 F. Supp. 1227 (S.D.N.Y. 1994) ............................. 5

Bohmer v. New York, 684 F. Supp. 2d 357 (S.D.N.Y. 2010) ...................................................... 4

Buxton Mfg. Co. v. Valiant Moving & Storage, Inc., 657 N.Y.S.2d 450 (2d Dep't 1997)......... 12

Chill v. Gen. Elec. Co., 101 F.3d 263 (2d Cir. 1996) ................................................................. 15

Crigger v. Fahnestock & Co., Inc., 443 F.3d 230 (2d Cir. 2006) .................................................. 8

DDJ Mgmt., LLC v. Rhone Group LLC, 875 N.Y.S.2d 17 (1st Dep't 2009) .............................. 14

Design Strategy, Inc. v. Davis, 469 F.3d 284 (2d Cir. 2006) ..................................................... 17

Eastman Kodak Co. v. Camarata, No. 05-CV-6384L, 2006 WL 3538944 (W.D.N.Y. Dec. 6, 2006) ............................................................................................................. 8, 10

Elliott Assocs., L.P. v. Hayes, 141 F. Supp. 2d 344 (S.D.N.Y. 2000)......................................... 12

Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc., 343 F.3d 189 (2d Cir. 2003) .......................................................................................................................... 14

Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of New York, 375 F.3d 168 (2d Cir. 2004).......................................................................................................... 8

Eurycleia Partners, LP v. Seward & Kissel, LLP, 849 N.Y.S.2d 510 (1st Dep't 2007)................ 8

PAGE

**Cases**

Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., 479 F. Supp. 2d 349 (S.D.N.Y. 2007) .... 18, 19

Ganino v. Citizens Utils. Co., 228 F.3d 154 (2d Cir. 2000) ........................................................ 15

High View Fund, L.P. v. Hall, 27 F. Supp. 2d 420 (S.D.N.Y. 1998) ........................................... 4

In re Agape Litig., 681 F. Supp. 2d 352 (E.D.N.Y. 2010) ........................................................... 17

In re Indep. Energy Holdings PLC Sec. Litig., 154 F. Supp. 2d 741 (S.D.N.Y. 2001) ................. 4

In re Lehman Bros. Sec. & ERISA Litig., Nos. 08 Civ. 6762, 09 MD 2017, 2010 U.S.
    Dist. LEXIS 13856 (S.D.N.Y. Feb. 17, 2010) .................................................................. 17, 18

In re Merrill Lynch & Co. Research Reports Sec. Litig., 289 F.Supp.2d 416 (S.D.NY
    2003) ........................................................................................................................................ 15

In re Oxford Health Plans, Inc., 187 F.R.D. 133 (S.D.N.Y. 1999) ............................................. 12

In re Refco. Inc., 609 F. Supp. 2d 304 (S.D.N.Y. 2009) ............................................................. 13

In re Tarragon Corp. Sec. Litig., 2009 U.S. Dist. LEXIS 60160 (S.D.N.Y. Mar. 27, 2009) ........ 13

In re Tronox, Inc. Sec. Litig., 2010 U.S. Dist. LEXIS 67664 (S.D.N.Y. June 28, 2010) .............. 9

J&R Mktg., SEP, v. Gen. Motors Corp., 549 F.3d 384 (6th Cir. 2008) ....................................... 12

J.A.O. Acquisition Corp. v. Stavitsky, 863 N.E.2d 585 (N.Y. 2007) ........................................... 13

Kalnit v. Eichler, 264 F.3d 131 (2d Cir. 2001) ........................................................................... 15

King County, Wash. v. IKB Deutsche Industriebank AG, Nos. 09 Civ. 8387(SAS), 09
    Civ. 8822 (SAS), 2010 WL 1702196 (S.D.N.Y. Apr. 26, 2010) .............................................. 9

Lenczycki v. Shearson Lehman Hutton, Inc., 656 N.Y.S.2d 609 (1st Dep't 1997) ................... 18

Lerner v. Fleet Bank, N.A., 459 F.3d 273 (2d Cir. 2006) ............................................................. 17

Lin v. Interactive Brokers Group, Inc., 574 F. Supp. 2d 408, 416 (S.D.N.Y. 2008) .................... 4

M & T Bank Corp. v. Gemstone CDO VII Corp., 2009 N.Y. Misc. LEXIS 710 (Sup. Ct.
    Apr. 9, 2009) ............................................................................................................................ 20

Mandarin Trading Ltd. v. Wildenstein, 884 N.Y.S.2d 47 (1st Dep't 2009) ................................ 18

Mazzaro de Abreu v. Bank of Am. Corp., 525 F. Supp. 2d 381 (S.D.N.Y. 2007) ...................... 19

PAGE

**Cases**

N.Y. Univ. v. Cont'l Ins. Co., 639 N.Y.S.2d 283 (1995) ................................................ 8

Nat'l Westminster Bank USA v. Weksel, 511 N.Y.S.2d 626 (1st Dep't 1987) ............................ 8

Pac. Inv. Mgmt. Co. LLC v. Mayer Brown LLP, 603 F.3d 144 (2d Cir. 2010) ................ 8, 10, 13

Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC, 446 F.
    Supp. 2d 163 (S.D.N.Y. 2006) ................................................................ 17

Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC, 652 F.
    Supp. 2d 495 (S.D.N.Y. 2009) ................................................................ 19

Powers v. British Vita, P.L.C., 57 F.3d 176 (2d Cir. 1995) ........................................... 16

Quinn v. McGraw-Hill Cos., 168 F.3d 331 (7th Cir. 1999) ............................................. 14

Renner v. Chase Manhattan Bank, No. 98 Civ. 926 (CSH), 1999 WL 47239 (S.D.N.Y.
    Feb. 3, 1999) ............................................................................ 18

Rombach v. Chang, 355 F.3d 164 (2d Cir. 2004) ..................................................... 15

Rosner v. Bank of China, 2008 U.S. Dist. LEXIS 105984 (S.D.N.Y. Dec. 18, 2008) ........... 19, 20

Rothman v. Gregor, 220 F.3d 81 (2d Cir. 2000) ....................................................... 4

Ruffing v. Union Carbide Corp., 764 N.Y.S.2d 462 (2d Dep't 2003) ................................... 12

Sachs v. Adeli, No. 603930/2003, 2006 N.Y. Misc. LEXIS 2615 (N.Y. Misc. 2006) ................ 20

Shapiro v. Cantor, 123 F.3d 717 (2d Cir. 1997) .................................................. 8, 10

Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124 (2d Cir. 1994) ................................ 15, 16

Steed Finance LDC v. Nomura Sec. Int'l Inc., 2004 U.S. Dist. LEXIS 18580 (S.D.N.Y.
    2004), aff'd, 148 F. App'x 66 (2d Cir. 2005) .............................................. 14

Tech. Support Servs. Inc. v. IBM Corp., 2007 NY Slip Op 52428U (N.Y. Sup. Ct. 2007) ......... 15

UniCredito Italiano SPA v. JPMorgan Chase Bank, 288 F. Supp. 2d 485 (S.D.N.Y. 2003) ....... 14

Virginia Bankshares Inc. v. Sandberg, 501 U.S. 1083 (1991) ........................................ 18

PAGE

**Statutes and Rules**

Fed. R. Civ. P. 9(b) ................................................................................................ 8, 17

Rule 144A of the Securities Act ................................................................................ 6

Section 2(a)(51)(A) of the Investment Company Act.................................................. 6

Defendants Morgan Stanley & Co., Inc. and Morgan Stanley & Co. International Limited (n/k/a Morgan Stanley & Co. International plc) (together, "Morgan Stanley") respectfully submit this memorandum of law in support of their motion to dismiss the First Amended Complaint in the above-captioned matter.

## PRELIMINARY STATEMENT

Despite the fact that neither of the plaintiffs alleges that it had any communication with Morgan Stanley concerning their investments in the Rhinebridge SIV, they nonetheless seek to hold Morgan Stanley responsible for their alleged losses, claiming that the credit ratings assigned by the rating agencies—not Morgan Stanley—were false and misleading.  Throughout the complaint, plaintiffs repeatedly assert that it was the *rating agencies* that rated the SIV, based on their own criteria, assumptions and models.  Under New York law, plaintiffs' claim of fraud requires an allegation that Morgan Stanley itself made a false statement.  Their failure to identify any misstatement by Morgan Stanley is fatal to their claim, and under New York law cannot be cured by allegations that the defendant assisted another in the making of a misstatement.

Plaintiffs' fraud claim fails for the additional reason that they have failed to plead reasonable reliance.  Plaintiffs do not plead that they relied on the ratings as representations by Morgan Stanley, and doing so would have been unreasonable because the ratings were identified as opinions of the rating agencies.  Indeed, the private placement memorandum specifically stated that Morgan Stanley was not making any representations at all and would not accept liability for any representations made by others.  It is well-established in this Circuit that such disclaimers defeat claims of reasonable reliance, particularly as to sophisticated investors who have been instructed to conduct their own due diligence and who have agreed to do so.

Plaintiffs' scienter allegations are equally flawed.  The complaint does not set forth any motive for Morgan Stanley to commit fraud other than a desire for profit, an oft-rejected basis for pleading scienter.  The complaint similarly does not plead any opportunity for Morgan Stanley to have committed the fraud.  Rather, the complaint makes clear that Morgan Stanley did not have the opportunity to carry out the fraud, and could not have done so.

Plaintiffs' claim for aiding and abetting against Morgan Stanley is also fatally flawed because plaintiffs do not allege that Morgan Stanley had actual knowledge of the rating agencies' alleged fraud.  Allegations that Morgan Stanley knew or should have known that the ratings were incorrect would not suffice.  To plead a claim for aiding and abetting fraud, plaintiffs must allege that Morgan Stanley had *actual* (not constructive) knowledge of the primary fraud—*i.e.*, that the rating agencies did not actually hold the opinions expressed in the ratings, but rather were engaged in fraud.  Plaintiffs make no such allegation.  Finally, the complaint does not properly plead aiding and abetting because it fails to allege facts indicating that Morgan Stanley substantially assisted the rating agencies in producing the allegedly misleading ratings and that such substantial assistance proximately caused plaintiffs' alleged harm.

For these reasons and others as set forth herein, Morgan Stanley respectfully submits that plaintiffs' claims must be dismissed for failure to state a claim.

## STATEMENT OF FACTS

### A.     The Parties and the Rhinebridge Notes

Plaintiffs King County, Washington and Iowa Student Loan Liquidity Corporation are sophisticated investors who purchased U.S. Commercial Paper ("USCP") issued by Rhinebridge PLC and its wholly owned U.S. subsidiary, Rhinebridge LLC (collectively, "Rhinebridge"). (First Amended Complaint ("FAC") ¶¶ 16-17; Order & Opinion, May 18, 2010  ("May 18

Order") at 5-6.)  In addition to the USCP purchased by plaintiffs, Rhinebridge issued European Commercial Paper ("ECP" and, together with the USCP, the "Senior Notes"), as well as Capital Notes, all of which were privately placed pursuant to several different information and private placement memoranda.  (FAC ¶¶ 2, 42, 79.)  Although plaintiffs purported to bring their claims on behalf of "all persons or entities who acquired the Senior Notes between June 1, 2007 and October 18, 2007," the Court has dismissed all claims based on purchases of ECP because neither of the named plaintiffs bought those notes.  (Id. ¶ 199; May 18 Order at 5-6.)

Plaintiffs made their investments in Rhinebridge at the earliest on June 27, 2007—when, as the complaint acknowledges, the collapse of the subprime sector had already begun.  (FAC ¶¶ 2, 120.)  Plaintiffs claim that they were unaware that Rhinebridge was backed in part by subprime assets and that the risky nature of those assets belied the high ratings that the rating agencies assigned to the USCP.  (Id. ¶ 121.)  The complaint avers that the allegedly false ratings damaged plaintiffs when the Rhinebridge vehicle collapsed in October 2007 and the value of plaintiffs' investments declined.  (FAC ¶¶ 13-14.)

Plaintiffs assert a claim of fraud against the three rating agency defendants, who they allege rated the SIV.  (Id. ¶¶ 26-29 (alleging Moody's, S&P and Fitch "rated . . . Rhinebridge").)  Plaintiffs allege that the SIV's ratings were based on "models used by the Rating Agencies" and "assumptions" by the rating agencies regarding asset correlation.  (Id. ¶¶ 48-49, 140-43.)  The complaint alleges that the amount of capital needed to support the ratings was determined "with the Rating Agencies' instructions and approval."  (Id. ¶ 49.)  According to plaintiffs, the rating agencies eased their ratings criteria and made changes to their criteria and models that enabled false ratings to be issued; indeed, plaintiffs allege, such changes to "the Rating Agencies' standards" made Rhinebridge's existence possible.  (Id. ¶ 140.)  Plaintiffs also allege that the

rating agencies also "did not update their models" to reflect market changes.  (Id. ¶ 152.)  Over time, the complaint alleges, the rating agencies continued to monitor Rhinebridge and run various capital tests to ensure the ratings remained viable.  (Id. ¶ 55.)  The rating agencies supposedly knew that the ratings they provided were false and misleading (id. ¶ 50), particularly because they had rated many of the securities underlying the Rhinebridge SIV (id. ¶ 147).  When, in late 2007, "the Rating Agencies were forced to drop their ratings," plaintiffs allege that Rhinebridge began to unravel.  (Id. ¶ 59.)

Plaintiffs have also named as defendants IKB Deutsche Industriebank AG ("IKB Bank") and its wholly-owned subsidiary IKB Credit Asset Management ("IKB CAM" and, together with IKB Bank, "IKB").  IKB managed the Rhinebridge portfolio and was responsible for, among other things, selecting and purchasing assets for Rhinebridge, testing the quality of prospective investments for compliance with the issuer's purchase guidelines, advising the issuer regarding capital and liquidity risks associated with the portfolio, testing the portfolio for compliance with liquidity and other operating limits, and acting as the agent of the issuer when dealing with rating agencies.  (Private Placement Memorandum, Rhinebridge PLC, Rhinebridge LLC $20,000,000,000 U.S. Commercial Paper Programme ("PPM"), at 34, 50, 61, 63, 70, attached as Ex. 1 to the Declaration of James P. Rouhandeh.[1])  Plaintiffs have also sued Winfried Reinke

---

[1] In ruling on this motion, the Court may consider documents incorporated by reference into the complaint, and any documents "plaintiffs either possessed or knew about and upon which they relied in bringing the suit."  In re Indep. Energy Holdings PLC Sec. Litig., 154 F. Supp. 2d 741, 748 (S.D.N.Y. 2001) (Scheindlin, J.) (citing Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000)); see also High View Fund, L.P. v. Hall, 27 F. Supp. 2d 420, 426 n.1 (S.D.N.Y. 1998) (Scheindlin, J.) (considering offering memorandum not attached to complaint but "integral to plaintiffs' . . . common law fraud claims").  Moreover, in reviewing such documents, the Court "may refuse to accept as true allegations in the Complaint that are contradicted by" them.  Bohmer v. New York, 684 F. Supp. 2d 357, 360 (S.D.N.Y. 2010) (citations omitted); see also Lin v. Interactive Brokers Group, Inc., 574 F. Supp. 2d 408, 416 (S.D.N.Y. 2008) (where

and Stefan Ortseifan, the CEOs of IKB CAM and IKB Bank, respectively, during the period leading up to the Rhinebridge launch.  (FAC ¶¶ 19-20.)

Plaintiffs did not initially name Morgan Stanley as a defendant, but have now amended the complaint to do so, asserting that discovery to date has yielded a basis for claims against Morgan Stanley.[2]  Neither plaintiff has alleged that they made their purchases from or through Morgan Stanley or had any communications or contact with Morgan Stanley in connection with Rhinebridge.  Rather, the complaint alleges that Morgan Stanley, as co-structurer and co-placement agent, worked with the other defendants "to design, structure, market and maintain" the SIV.  (FAC ¶ 31.)  It is not alleged that Morgan Stanley rated the SIV.  (See id. ¶¶ 170-71, 173 (enumerating Morgan Stanley's alleged responsibilities, but not alleging any role in rating the notes).)  None of the other placement agents have been named as defendants.

The USCP was privately placed with sophisticated investors pursuant to a private placement memorandum.  (FAC ¶¶ 42, 79; PPM at i-ii.)  That memorandum expressly stated that the commercial paper was the obligation solely of the issuer, which "accept[ed] responsibility for the information contained in th[e] USCP Private Placement Memorandum."  (PPM at viii.)  The private placement memorandum further stated that *Morgan Stanley* was not responsible for:

- "[I]ndependently verify[ing] the information contained" in it;
- Ensuring the "accuracy or completeness at any time of the information contained in [the] Private Placement Memorandum or any other information provided by the Issuers";

complaint "directly contradicts the Offering Documents, the court need not accept the allegations as true"); Barnum v. Millbrook Care Ltd. P'Ship., 850 F. Supp. 1227, 1232-33 (S.D.N.Y. 1994) ("[I]f the allegations of a complaint are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the complaint.").

[2] Tr. of April 26, 2010 Court Conference at 6:3-7.

- "[U]pdating" the  memorandum;

- "[R]eview[ing] the financial condition or affairs of the Issuers" during the life of the program; or

- "[A]dvis[ing] any investor . . . of any information coming to [the placement agent's] attention."  (PPM at ix-x.)

Finally, the private placement memorandum made clear that the ratings assigned to the USCP and other notes were the opinions of the rating agencies alone.  (PPM at x.) ("A rating reflects only the views of S&P, Moody's and Fitch . . . .  An explanation of the significance of each such rating may be obtained from the related Rating Agency.")

In purchasing USCP pursuant to the private placement memorandum, investors agreed that they had the "expertise" to evaluate the investment, and that any decision to invest in the USCP "shall be deemed to be an acknowledgement by the purchaser that it has made such investigation and evaluation of the creditworthiness of the Issuers as it deems appropriate."  (Id. at ix, 9.)  Indeed, the USCP issued by Rhinebridge were "complex financial instruments" that could only be sold within the United States to a specific class of sophisticated investors—entities that were both "Qualified Institutional Buyers" under Rule 144A of the Securities Act and "Qualified Purchasers" under section 2(a)(51)(A) of the Investment Company Act.  (Id. at i-ii, 9.)

The nature of the SIV's expected investments was also disclosed to investors.  The private placement memorandum stated that Rhinebridge would invest in residential mortgage and home equity loan securities; that "[d]elinquencies, defaults and losses with respect to residential mortgage loans generally have increased in recent months, . . . particularly in the nonprime sector . . . [which] consists of . . . loans . . .  made to (i) 'subprime' borrowers that have poor or 'impaired' credit histories"; and that "numerous residential mortgage loan originators that originate nonprime, and in particular subprime, mortgage loans have recently experienced

serious financial difficulties, negative ratings actions and, in some cases, bankruptcy." (Id. at 13, 15, 16.)

### B.     Plaintiffs' Claims

Plaintiffs allege that the ratings assigned to the Senior Notes by the rating agencies were false and misleading and thus caused plaintiffs' losses when the ratings were downgraded. (FAC ¶¶ 14-15; 199.) Plaintiffs claim that "[t]he false ratings were communicated starting on or about June 27, 2007, when the Senior Notes were first sold to investors and were repeated each time a Senior Note was offered or sold to an investor. . . ." (Id. ¶ 78.) They do not allege, however, when, how or by whom the ratings were communicated to them. According to plaintiffs, the ratings were false because the assets underlying the Rhinebridge portfolio consisted of low-quality, risky subprime-based securities, whereas plaintiffs had been told that Rhinebridge was a safe and secure investment. (Id. ¶ 121.)

Plaintiffs assert that by virtue of its role in connection with Rhinebridge, Morgan Stanley is liable for common-law fraud and for aiding and abetting its co-defendants' fraud. (Id. ¶¶ 205-236.) The complaint does not, however, specify any misstatements made by Morgan Stanley. Instead, plaintiffs attempt to hold Morgan Stanley liable for the ratings issued by the rating agencies on the basis that it "exerted influence over the Rating Agencies and caused *them* to issue false and misleading ratings." (Id. ¶ 196 (emphasis added).) As to Morgan Stanley's alleged involvement with those ratings, plaintiffs allege only that Morgan Stanley "distribut[ed] . . . the false credit ratings via private information services, Information Memoranda, and [certain] Selling Documents." (Id.) Plaintiffs do not allege that they received any such documents from Morgan Stanley.

## ARGUMENT

### I.      Morgan Stanley Cannot be Liable in Fraud for the Credit Ratings

To state a claim for fraud under New York law, a plaintiff must allege (1) a material misrepresentation or omission of fact; (2) made by defendant with knowledge of its falsity; (3) scienter; (4) reasonable reliance by plaintiff; and (5) resulting injury to plaintiff.  See Crigger v. Fahnestock & Co., Inc., 443 F.3d 230, 234 (2d Cir. 2006); N.Y. Univ. v. Cont'l Ins. Co., 639 N.Y.S.2d 283, 289 (1995).  Pursuant to Fed. R. Civ. P. 9(b), "a fraud claim alleging material misstatements or omissions must '(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent.'" Abu Dhabi Commercial Bank, et al. v. Morgan Stanley & Co., Inc., et al., 651 F. Supp. 2d 155, 170-71 (S.D.N.Y. 2009) (citing Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of New York, 375 F.3d 168, 187 (2d Cir. 2004)).

### A.      Plaintiffs Have Not Pled a Misstatement by Morgan Stanley

Under New York law, a claim of common law fraud requires an allegation that the defendant made a false statement.  Eurycleia Partners, LP v. Seward & Kissel, LLP, 849 N.Y.S.2d 510, 512 (1st Dep't 2007); Nat'l Westminster Bank USA v. Weksel, 511 N.Y.S.2d 626, 628 (1st Dep't 1987).  Assistance to another in the making of a misstatement does not suffice.  Eastman Kodak Co. v. Camarata, No. 05-CV-6384L, 2006 WL 3538944, at *12-13 (W.D.N.Y. Dec. 6, 2006) (assistance in the making of a misstatement does not establish liability for direct fraud).  Similarly, as to federal securities fraud, the Second Circuit requires that the statement be attributed to the particular defendant.  See Pac. Inv. Mgmt. Co. LLC v. Mayer Brown LLP, 603 F.3d 144, 157-58 (2d Cir. 2010); Shapiro v. Cantor, 123 F.3d 717, 720-21 (2d

Cir. 1997) (allegations of assistance, participation or complicity do not support an allegation that a defendant has made a false statement).  This Court recently applied the Mayer Brown decision in dismissing a fraud claim against a defendant who was alleged to have assisted the maker of a misstatement where the misstatement was not made by the defendant.  In re Tronox, Inc. Sec. Litig., No. 09 Civ. 6220, 2010 U.S. Dist. LEXIS 67664 (S.D.N.Y. June 28, 2010) (Scheindlin, J.).

The only alleged misstatements in this case are the credit ratings assigned by the rating agencies to the Rhinebridge SIV notes.  See FAC ¶¶ 207, 209 ("Defendants made materially false and misleading representations and omissions concerning the credit quality of the Senior Notes.  Specifically, the Top Ratings were false and misleading."); see also King County, Wash. v. IKB Deutsche Industriebank AG, Nos. 09 Civ. 8387 (SAS), 09 Civ. 8822 (SAS), 2010 WL 1702196, at *1 (S.D.N.Y. Apr. 26, 2010) ("[P]laintiffs claim that between June 1, 2007 and October 18, 2007, defendants fraudulently misrepresented the value of Rhinebridge and its senior debt securities . . . .  These misrepresentations took the form of the high credit ratings assigned to the Notes by the Rating Agencies . . . .").  Plaintiffs do not allege any misstatement by Morgan Stanley.  Indeed, neither plaintiff even alleges that it had any oral or written communications of any kind with Morgan Stanley concerning the USCP, or that it received the allegedly false credit ratings from Morgan Stanley.  (Neither plaintiff, in fact, alleges how, when or by what means it received the challenged ratings.)

The complaint, moreover, makes clear that the credit ratings were statements of the defendant rating agencies, not Morgan Stanley.  Plaintiffs allege that it was *because* the ratings were issued by the rating agencies that they relied on them.  (FAC ¶ 85 ("Investors placed their trust in the credit ratings largely because they were supposed to independent and unbiased

agencies.").)  The complaint alleges that each of the defendant rating agencies "rated" the USCP, but makes no such allegation concerning Morgan Stanley.  <u>Compare</u> <u>id.</u> ¶¶ 26-28 (alleging Moody's, S&P and Fitch "rated . . . Rhinebridge") <u>with</u> <u>id.</u> ¶¶ 170-171 (describing Morgan Stanley's alleged role, but not alleging that Morgan Stanley rated the SIV).  Likewise, plaintiffs assert that it was the rating agencies, not Morgan Stanley, who "provided" the ratings.  (FAC ¶ 62 ("The Rating Agencies had powerful economic incentives to *provide* false ratings.") (emphasis added).)  Plaintiffs' theory is that "Morgan Stanley . . . exerted influence over the Rating Agencies and caused *them* to issue false and misleading ratings."  (<u>Id.</u> ¶ 196 (emphasis added).)  Such allegations do not suffice to state a claim for fraud.  <u>Camarata</u>, 2006 WL 3538944, at *12-13; <u>Shapiro</u>, 123 F.3d at 720-21; <u>Mayer Brown</u>, 603 F.3d at 151-61.

The complaint does not allege that Morgan Stanley played any role in rating the SIV, let alone that Morgan Stanley itself issued the ratings.  <u>See</u> FAC ¶ 31 (alleging that Morgan Stanley "worked directly with IKB and the Rating Agencies to design, structure, market and maintain" the SIV); <u>id.</u> ¶¶ 69-83 (setting forth allegations concerning the allegedly false ratings, but not alleging any participation by Morgan Stanley in that rating process); <u>id.</u> ¶¶ 170-171, 173 (enumerating Morgan Stanley's alleged responsibilities, but not alleging any role in rating the notes).[3]

On the contrary, the complaint makes clear that the ratings were produced and issued by the rating agency defendants, based on the rating agencies' criteria, assumptions and models. Plaintiffs allege that:

---

[3] Moreover, these allegations should not be accepted as true at the motion to dismiss stage, because, as discussed <u>supra</u> n.1, they are contradicted by statements in the private placement memorandum, which are incorporated by reference into the complaint.  <u>Compare</u> FAC ¶ 171 <u>with</u> PPM at ix-x.

- "[I]n late 2007, *the Rating Agencies* were forced to drop *their ratings* and Rhinebridge's structure started to unravel."  (Id. ¶ 59.)

- A portion of obligations junior to the Senior Notes "were rated 'Triple A' *by the Rating Agencies.*"  (Id. ¶ 73.)

- "*[T]he Rating Agencies* knew *their ratings* on investment pools such as Rhinebridge were false . . . ."  (Id. ¶ 96.)

- "*[T]he Rating Agencies* repeatedly eased *their ratings standards.*"  (Id. ¶ 101.)

- Changes to "*Moody's* . . . credit-rating model," "*S&P['s]* . . . credit-rating methods" and "*the Rating Agencies'* standards" made possible the existence of Rhinebridge.  (Id. ¶ 140.)

- "[T]o provide ratings . . . *the Rating Agencies* had to make assumptions about how frequently [portfolio] assets would default together . . . ."  (Id. ¶ 142.)

- "*The Rating Agencies* did not update *their* models" to reflect market changes.  (Id. ¶ 152.)

- "*The Rating Agencies* continued to stamp 'Top Ratings' on mortgage-backed securities like Rhinebridge" in 2007 after asset prices had declined.  (Id. ¶ 160.) (Emphasis added.)

The complaint does not say a word about Morgan Stanley's alleged role in making, assigning, or approving those ratings, or in preparing any reports containing those ratings. Indeed, plaintiffs do not even identify those documents, but only allege generically that "false and misleading statements by way of the ratings" were made "through various private information services, including *Bloomberg*, and confirmed through private placement memoranda."  (Id. ¶ 209.)  To the extent the complaint mentions Morgan Stanley at all in connection with the ratings, its alleged role is limited to "provid[ing]" or "distribut[ing]" the ratings.  (Id. ¶¶ 170, 196.)  These allegations only underscore the fact that the ratings belonged to the rating agencies and were not statements that Morgan Stanley made or had the power to make. And neither plaintiff alleges Morgan Stanley provided or distributed the ratings to them or, if so,

when.  Moreover, the private placement memorandum for the USCP, which is incorporated by

reference and accepted as true for purposes of this motion, likewise makes clear that each rating

is an opinion of the rating agency that made it.  (PPM at x) ("A rating reflects only the views of

S&P, Moody's and Fitch . . . .  An explanation of the significance of each such rating may be

obtained from the related Rating Agency.")[4]

Finally, and significantly, plaintiffs do not allege that Morgan Stanley "caused" the rating

agencies to issue the ratings through fraud or deception.  In J&R Mktg., SEP, v. Gen. Motors

Corp., 549 F.3d 384, 393 n.5 (6th Cir. 2008), as discussed by this Court (Tr. of May 18, 2010

Hearing at 12-13), the Sixth Circuit granted defendant's motion to dismiss a fraud claim alleging

that GMAC was liable for its corporate ratings, but noted that the claim may have been sustained

if it had been alleged that GMAC deceived the rating agencies to obtain those ratings.  Id.  In this

case, there is no allegation that Morgan Stanley misled the rating agencies.  Although a claim of

fraud generally requires that a false statement be made to the injured party, "[f]raud . . . may also

exist where a false representation is made to a third party, resulting in injury to the plaintiff."

Buxton Mfg. Co. v. Valiant Moving & Storage, Inc., 657 N.Y.S.2d 450, 454 (2d Dep't 1997)

(citing cases); see also Ruffing v. Union Carbide Corp., 764 N.Y.S.2d 362, 465 (2d Dep't 2003).

Thus, to plead fraud, as the Sixth Circuit noted, a false statement must be made, but it suffices if

the statement is made to an innocent nonparty and thereby induces the nonparty to take some

---

[4] The group pleading doctrine is inapplicable here because, inter alia, it requires plaintiffs
to identify a group-published document that is the collective work of a corporation and its
insiders.  In re Oxford Health Plans, Inc., 187 F.R.D. 133, 142 (S.D.N.Y. 1999); Elliott Assocs.,
L.P. v. Hayes, 141 F. Supp. 2d 344, 354 (S.D.N.Y. 2000).  Plaintiffs do not identify an allegedly
false group-published document pursuant to which they were defrauded, let alone Morgan
Stanley's role in publishing that document.

action that causes the plaintiff harm.  While the Sixth Circuit's hypothetical fits within this case law, the allegations of this case do not.

### B.     The Complaint Fails to Adequately Allege Reasonable Reliance

The complaint also fails to plead reasonable reliance.  See J.A.O. Acquisition Corp. v. Stavitsky, 863 N.E.2d 585, 587 (N.Y. 2007).  As noted above, the ratings were unambiguously the statements of the rating agencies, and plaintiffs do not allege that they understood the ratings to be the statements of Morgan Stanley.  They thus cannot be said to have relied on statements made by Morgan Stanley.  See, e.g., In re Refco. Inc., 609 F. Supp. 2d 304, 313 (S.D.N.Y. 2009) (rejecting plaintiffs' argument of reasonable reliance on defendant where plaintiff did not attribute statement to defendant), aff'd sub nom., Mayer Brown, 603 F.3d at 151-61; see also In re Tarragon Corp. Sec. Litig., No. 07 Civ. 7972, 2009 U.S. Dist. LEXIS 60160, at *69-70 (S.D.N.Y. Mar. 27, 2009) (dismissing plaintiffs' fraud claims on reliance grounds because statements could not be attributed to the defendant at the time of dissemination).  In Refco, the court held that "[e]ven if the . . . Defendants played a substantial role in drafting the statements at issue . . . the relevant inquiry is not simply the extent of their involvement viewed in hindsight, but whether, at the time, plaintiffs reasonably understood [Defendant] to be speaking."  609 F. Supp. 2d at 313-14.  Here, as in Refco, plaintiffs do not and cannot allege that they understood that Morgan Stanley was the speaker of the allegedly false ratings.

Moreover, any reliance on the ratings as statements of Morgan Stanley would have been unreasonable in light of the express statements in the private placement memorandum that the ratings were the views of the rating agencies alone and that Morgan Stanley did not warrant or represent any information in the private placement memorandum.  New York courts have repeatedly held that where transaction documents contain such disclaimers, a plaintiff cannot be

13

deemed to have justifiably relied on the disclaiming party.  See, e.g., Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc., 343 F.3d 189, 195-96 (2d Cir. 2003); UniCredito Italiano SPA v. JPMorgan Chase Bank, 288 F. Supp. 2d 485, 498-99 (S.D.N.Y. 2003); see also Quinn v. McGraw-Hill Cos., 168 F.3d 331, 336 (7th Cir. 1999).  Further, where a sophisticated investor has agreed to make its investment decisions based on its own diligence, and not in reliance on the defendants, courts have had no difficulty rejecting the plaintiffs' allegation of reliance because they are unreasonable as a matter of law.  See, e.g., Emergent Capital, 343 F.3d at 196.  This is so particularly where both sophisticated investors and disclaimers are present.  Id.[5]

Finally, even in the absence of disclaimers, plaintiffs' fraud claim must be dismissed. Where a plaintiff has ample opportunity to pursue "red flags" and chooses not to investigate the information given to it prior to purchase, the plaintiff cannot claim reasonable reliance on the documents provided by defendants.  See, e.g., Steed Finance LDC v. Nomura Sec. Int'l Inc., No. 00 Civ. 8058, 2004 WL 2072536, at *7 (S.D.N.Y. Sept. 14, 2004), aff'd 148 F. App'x 66 (2d Cir. 2005); DDJ Mgmt., LLC v. Rhone Group LLC, 875 N.Y.S.2d 17, 20 (1st Dep't 2009). Dismissal is appropriate here where, as discussed supra, the private placement memorandum disclosed the risks of the subprime investments backing the USCP and plaintiffs fail to allege they undertook any due diligence despite that disclosure and despite their agreement to do so.

---

[5] In Abu Dhabi, the Court found that plaintiffs adequately alleged reliance in spite of the disclaimers because investors "have come to rely on the accuracy of credit ratings and the independence of rating agencies because of their NRSRO status."  651 F. Supp. 2d at 181.  The Court in Abu Dhabi ultimately found, however, in denying class certification, that many investors in the structured investment vehicle at issue there—which plaintiffs allege was identical in many respects to the Rhinebridge vehicle at issue here (FAC ¶¶ 172-180)—could not be said to have relied on the ratings.  Abu Dhabi Commercial Bank et al. v. Morgan Stanley et al., No. 08-cv-7508 (SAS), 2010 U.S. Dist. LEXIS 59339, at *29-38 (S.D.N.Y. June 15, 2010). Accordingly, plaintiffs' bare-bones allegations of reliance in this complaint cannot overcome the well-recognized case law that such disclaimers defeat a claim of reasonable reliance.

### C.      The Complaint Fails to Plead Scienter With Particularity

Under Rule 9(b), plaintiffs must allege sufficient facts "giv[ing] rise to a strong inference of fraudulent intent." Acito v. Imcera Group, Inc., 47 F.3d 47, 52 (2d Cir. 1995).  Plaintiffs here attempt to satisfy this burden with allegations that Morgan Stanley had both a motive and an opportunity to commit fraud.  These allegations do not suffice.

To plead motive, plaintiffs must identify "concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged." Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1130 (2d Cir. 1994).  "General allegations that the defendants acted in their economic self-interest are not enough," Ganino v. Citizens Utils. Co., 228 F.3d 154, 170 (2d Cir. 2000), nor can plaintiffs allege a "'generalized motive'" that is attributable "'to any publicly-owned, for-profit endeavor,'" Kalnit v. Eichler, 264 F.3d 131, 140 (2d Cir. 2001) (quoting Chill v. Gen. Elec. Co., 101 F.3d 263, 267 (2d Cir. 1996)); see also Rombach v. Chang, 355 F.3d 164, 177 (2d Cir. 2004) (profit does not suffice to allege motive and opportunity).  In this case, plaintiffs allege that Morgan Stanley was motivated to commit the alleged fraud for apparently one reason: profit.  (FAC ¶¶ 181, 195.)  Indeed, finding motive based on the desire to maximize profit—which, like the desire to enhance personal compensation, is found in virtually all commercial transactions—would effectively eliminate the requirement of scienter in the corporate context.  See In re Merrill Lynch & Co. Research Reports Sec. Litig., 289 F.Supp. 2d 416, 428 (S.D.NY 2003); see also 380544 Can., Inc. v. Aspen Tech., Inc., 544 F. Supp. 2d 199, 220-21 (S.D.N.Y. 2008); Tech. Support Servs. v. IBM, 2007 NY Slip Op 52428U, *30 (N.Y. Sup. Ct. 2007) (motive found in "virtually all commercial transactions" is "ill-suited" to establish

intent to defraud").  Therefore, profit motive alone cannot serve as a basis for finding motive in this case.[6]

Plaintiffs' attempt to plead opportunity fails as well.  To plead opportunity, plaintiffs must allege facts to show that Morgan Stanley had "the means and likely prospect of achieving concrete benefits by the means alleged."  Shields, 25 F.3d at 1130.  Alleging an "elaborate plot" that requires the cooperation of multiple otherwise unaffiliated parties will not suffice.  Powers v. British Vita, P.L.C., 57 F.3d 176, 185 (2d Cir. 1995).  Plaintiffs must instead allege that Morgan Stanley was "already well positioned to carry out the fraudulent transaction" before working with other defendants.  Id.  Plaintiffs have failed to carry this burden.  Indeed, the complaint alleges that all defendants worked together, not that one defendant—particularly Morgan Stanley, which neither issued the USCP, nor managed Rhinebridge, nor rated the USCP—had the ability to carry out the fraud or was well-positioned to do so before it was engaged by IKB or began interacting with the rating agencies.  Accordingly, plaintiffs have failed to plead opportunity.

---

[6] Moreover, plaintiffs' allegations regarding Morgan Stanley's compensation ultimately do not support a motive to commit fraud; they support a motive to structure an investment vehicle that would perform successfully.  According to plaintiffs, Morgan Stanley received "substantial remuneration" for its involvement in Rhinebridge in the form of two classes of fees: a fixed "Base Fee of $15 million," and "a Performance Fee . . . equal to a portion of Rhinebridge's net distributable profits."  (FAC ¶ 195.)  If Morgan Stanley's compensation were in fact tied to the net distributable profits of the SIV through the Performance Fee, its profits would be diminished, not enhanced, if, as plaintiffs allege, the SIV was overloaded with risky assets that ensured its failure.  See Shields, 25 F.3d at 1130 ("In looking for a sufficient allegation of motive," courts must "assume that the defendant is acting in his or her informed economic self-interest," and reject explanations that defy economic reason.).  Thus—even if fees alone sufficed to allege motive, which they do not—plaintiffs have not alleged a coherent theory of fee-based motive.

## II.     Plaintiffs' Aiding and Abetting Claim Must Be Dismissed

To adequately state a claim for aiding and abetting under New York law, "a plaintiff must show '(1) the existence of a . . . violation by the primary (as opposed to the aiding and abetting) party; (2) knowledge of this violation on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in the achievement of the primary violation.'" Abu Dhabi, 651 F. Supp. 2d at 173-74 (quoting Design Strategy, Inc. v. Davis, 469 F.3d 284, 303 (2d Cir. 2006)). Under Fed. R. Civ. P. 9(b), the elements of a claim for aiding and abetting fraud must be pled with particularity.  See Lerner v. Fleet Bank, N.A., 459 F.3d 273, 292-93 (2d Cir. 2006) (citing Armstrong v. McAlpin, 699 F.2d 79, 92-93 (2d Cir. 1983)).  Although Rule 9(b) allows predicate mental states to be alleged generally, a plaintiff asserting aiding and abetting common law fraud must allege sufficient facts to give rise to a "strong inference . . . of actual knowledge of" the underlying fraud.  Id. at 293.

### A.     Plaintiffs Do Not Allege Actual Knowledge of the Alleged Fraud

To adequately plead aiding and abetting liability, plaintiffs must allege facts that give rise to a "strong inference" that Morgan Stanley had "actual knowledge" of the alleged fraud.  See Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC, 446 F. Supp. 2d 163, 202 (S.D.N.Y. 2006) (citing cases) (Scheindlin, J.); In re Agape Litig., 681 F. Supp. 2d 352, 362 (E.D.N.Y. 2010).

The complaint does not plead facts supporting the notion that Morgan Stanley had actual knowledge that the rating agencies were perpetrating a fraud.  Because ratings are opinions, the rating agencies could have been perpetrating a fraud only if they did not actually hold or reasonably believe in those ratings.  In re Lehman Bros. Sec. & ERISA Litig., 684 F. Supp. 2d

485, 494-95 (S.D.N.Y. 2010).[7]  Plaintiffs have not even alleged adequately that Morgan Stanley did not believe the ratings, or had reason to doubt them.  But, even if they had done so, such allegations would not suffice for aiding and abetting liability.  Rather, plaintiffs would have to allege that Morgan Stanley had actual knowledge that the rating agencies did not hold the opinions expressed by the ratings and were issuing those ratings fraudulently.  Lenczycki v. Shearson Lehman Hutton, Inc., 656 N.Y.S.2d 609, 610 (1st Dep't 1997) ("[P]laintiff's claim against Shearson and Lee for aiding and abetting that conversion was properly dismissed in the absence of evidence that they knew of Alexander's intention to convert the funds."); Adelphia Recovery Trust v. Bank of Am., N.A., 624 F. Supp. 2d 292, 313 (S.D.N.Y. 2009) ("[Defendants] knew . . . that the [primary tortfeasor] intended to engage in conduct that violated those restrictions and engage in fraud.") (internal punctuation omitted); Renner v. Chase Manhattan Bank, No. 98 Civ. 926 (CSH), 1999 WL 47239 at *12 (S.D.N.Y. Feb. 3, 1999) ("[T]he complaint fails adequately to allege knowledge on the part of Chase of the fraudulent scheme that [the primary tortfeasor] and others intended to perpetrate, and did perpetrate.").  The complaint does not allege *anything* in this respect, and thus fails the actual knowledge requirement.

Nor would constructive knowledge of the rating agencies' fraud suffice to plead aiding and abetting under New York law.  See Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC, 479 F. Supp. 2d 349, 367 (S.D.N.Y. 2007).  Indeed, courts have found actual knowledge lacking

---

[7] Statements of opinion, such as the ratings, are actionable only when the speaker did not believe them at the time they were issued.  See, e.g., Virginia Bankshares Inc. v. Sandberg, 501 U.S. 1083, 1095 (1991); In re Lehman Bros., 684 F. Supp. 2d at 494-95; Mandarin Trading Ltd. v. Wildenstein, 884 N.Y.S.2d 47, 50 (1st Dep't 2009).  Here, the complaint fails to allege that the ratings agencies did not actually hold the opinions reflected by the ratings, and plaintiffs thus have not alleged that the ratings were false.

in cases such as this where plaintiffs allege that the defendant must have or should have known of the fraud because the defendant knew the facts of the underlying transaction.  See, e.g., Mazzaro de Abreu v. Bank of Am. Corp., 525 F. Supp. 2d 381, 388-89 (S.D.N.Y. 2007) (allegations that defendant knew the frequency of transfers into the offshore bank and also that the offshore bank account rarely had more than a certain balance merely constituted constructive knowledge); Rosner v. Bank of China, No. 06 CV 13562, 2008 WL 5416380, at *3 (S.D.N.Y. Dec. 18, 2008) (allegations that defendant processed transfers and almost daily withdrawals of large amounts of cash "of such an atypical and non-routine nature that it is simply implausible that" defendants did not have actual knowledge of the underlying scheme were found insufficient to give rise to a strong inference of actual knowledge), aff'd, 349 F. App'x 637 (2d Cir. 2009). Allegations that Morgan Stanley should have had doubts about the underlying ratings or even about the rating agencies' opinions or intentions does not amount to actual knowledge that the rating agencies were allegedly perpetrating a fraud.

### B.        Plaintiffs Fail To Allege Substantial Assistance

Plaintiffs' aiding and abetting claim also fails because, even if Morgan Stanley had actual knowledge of the alleged fraud, plaintiffs do not allege that Morgan Stanley substantially assisted in actually producing the ratings.  "The substantial assistance requirement is satisfied where a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach or fraud to occur."  Pension Comm. of the Univ. of Montreal v. Banc of Am. Sec., LLC, 652 F. Supp. 2d 495, 503 (S.D.N.Y. 2009) (Scheindlin, J.) (internal citations and quotations omitted).  Additionally, plaintiffs must allege that the substantial assistance was the proximate cause of "the harm on which the primary liability is predicated."  Fraternity Fund, 479 F. Supp. 2d at 370-71 (S.D.N.Y. 2007).  "Allegations of 'but for' causation are insufficient;

an alleged aider and abettor will be liable only where the plaintiff's injury is a direct or reasonably foreseeable result of the defendant's conduct." <u>Rosner</u>, 2008 WL 5416380, at *5.

The complaint does not allege that Morgan Stanley assisted in creating the allegedly false ratings. Generic allegations that "Morgan Stanley worked directly with the Rating Agencies and IKB to structure the Senior Notes, which received false and misleading Top Ratings" (FAC ¶ 170) are not the same as affirmatively helping the rating agencies engage in the alleged fraud. <u>See, e.g.</u>, <u>M & T Bank Corp. v. Gemstone CDO VII Corp.</u>, 881 N.Y.S. 2d 364, 364 (Sup. Ct. 2009) (Allegations of "a close ongoing business relationship with the alleged perpetrators of the fraud . . . . could be made in a myriad of business transactions involving multiple commercial entities and should not expose such entities to routine accusations of aiding and abetting."). Indeed, as noted above, the complaint makes clear that the ratings were the result of the *rating agencies*' own internal models, employment of inputs into those models, allegedly improper correlation assumptions, and general easing of their own ratings criteria. (FAC ¶¶ 48-49, 140-43.) Plaintiffs do not identify how Morgan Stanley assisted the ratings process. <u>See</u> <u>supra</u> § I.A.

### C.    The Aiding and Abetting Claim is Duplicative of the Fraud Claim

Finally, plaintiffs cannot assert that Morgan Stanley is liable for both primary fraud and aiding and abetting fraud. "Since the purpose of aiding and abetting liability is to draw in defendants who are not liable as principals of the fraud, [defendants] cannot be held liable" as both an abettor and a primary violator. <u>380544 Canada Inc. v. Aspen Tech. Inc.</u>, 633 F. Supp. 2d 15, 36 (S.D.N.Y. 2009); <u>accord</u> <u>Sachs v. Adeli</u>, No. 603930/2003, 2006 N.Y. Misc. LEXIS 2615, at *28 (N.Y. Misc. 2006) (denying leave to add aiding and abetting claim because defendant was alleged to be liable as principal, and thus aiding and abetting claim was "duplicative, and

unnecessary"). Thus, to the extent the Court sustains plaintiffs' claim for direct fraud, it must

dismiss the claim for aiding and abetting fraud.

## CONCLUSION

For the reasons set forth above, Morgan Stanley respectfully requests that the Court

dismiss the complaint as to it with prejudice pursuant to Rules 8(a), 9(b) and 12(b)(6).

Dated: July 15, 2010
      New York, New York

           DAVIS POLK & WARDWELL LLP

           By:   /s/ James P. Rouhandeh           
                James P. Rouhandeh
                james.rouhandeh@dpw.com
                Antonio J. Perez-Marques
                antonio.perez@dpw.com
                Russell Capone
                russell.capone@dpw.com

           450 Lexington Avenue
           New York, New York 10017
           (212) 450-4000

           *Counsel to Defendants Morgan Stanley &*
           *Co. Incorporated and Morgan Stanley &*
           *Co. International Limited*