UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
KING COUNTY, WASHINGTON,
IOWA STUDENT LOAN LIQUIDITY
CORPORATION, Together and on
Behalf of All Others Similarly Situated,

      Plaintiffs,

  - against -

IKB DEUTSCHE INDUSTRIEBANK
AG, et al.

      Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

09 Civ. No 8387 (SAS)

**ECF Case**

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
MORGAN STANLEY & CO. INCORPORATED AND MORGAN
STANLEY & CO. INTERNATIONAL LIMITED'S MOTION TO
DISMISS THE FIRST AMENDED COMPLAINT PURSUANT TO
FEDERAL RULES OF CIVIL PROCEDURE 8(a), 9(b) AND 12(b)(6)**

James P. Rouhandeh
Antonio J. Perez-Marques
Russell Capone
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4000
*Counsel to Defendants Morgan Stanley &
 Co. Incorporated and Morgan Stanley &
 Co. International Limited*

# TABLE OF CONTENTS

PAGE

Preliminary Statement ............................................................................................................. 1

Argument .................................................................................................................................. 3

I.          Plaintiffs' Common Law Fraud Claim Fails ................................................................ 3

        A.    Plaintiffs Do Not Identify a False Statement Made by Morgan Stanley ......................3

        B.    Plaintiffs Did Not Reasonably Rely on Morgan Stanley Because It Disclaimed Liability for the Ratings .............................................................................................5

        C.    Plaintiffs Have Failed to Plead Scienter ....................................................................8

II.         Plaintiffs' Aiding and Abetting Claim Fails ................................................................ 9

Conclusion .............................................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**                                                              PAGE

Abu Dhabi Commercial Bank v. Morgan Stanley., No. 08-cv-7508 (SAS), 2010 WL
    2593948 (S.D.N.Y. June 15, 2010) ................................................................................ 7

Abu Dhabi Commercial Bank v. Morgan Stanley., 651 F. Supp. 2d 155 (S.D.N.Y. 2009) ....... 4, 6

Adelphia Recovery Trust v. Bank of Am., N.A., 624 F. Supp. 2d 2923 (S.D.N.Y. 2009) ........... 10

CPC Int'l Inc. v. McKesson Corp., 519 N.Y.S.2d 804 (1987) ..................................................... 3, 4

Danaan Realty Corp. v. Harris, 5 N.Y.2d 317 (1959) ................................................................... 6

Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc., 343 F.3d 189
    (2d Cir. 2003) ................................................................................................................... 6

Eurycleia Partners, LP v. Seward & Kissel, LLP, 849 N.Y.S.2d 510 (1st Dep't 2007) ................. 3

Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC, 479 F. Supp. 2d 349 (S.D.N.Y.
    2007) .............................................................................................................................. 10

Grumman Allied Indus., Inc. v. Rohr Indus., Inc., 748 F.2d 729 (2d Cir. 1984) .......................... 7

In re BISYS Sec. Litig., 397 F. Supp. 2d 430 (S.D.N.Y. 2005) ..................................................... 5

In Re Carter-Wallace, Inc. Sec. Litig., 220 F.3d 36 (2d Cir. 2000) ............................................... 9

In re Lehman Bros. Sec. & ERISA Litig., 684 F. Supp. 2d 485 (S.D.N.Y. 2010) ......................... 9

In re Oxford Health Plans, Inc., 187 F.R.D. 133 (S.D.N.Y. 1999) ................................................ 5

Lenczycki v. Shearson Lehman Hutton, Inc., 656 N.Y.S.2d 609 (1st Dep't 1997) ..................... 10

M &T Bank Corp. v. Gemstone CDO VII, Ltd., No. 7064/08, 2009 WL 921381 (Sup. Ct.
    Erie Cty. Apr. 7, 2009), aff'd 891 N.Y.S.2d 578 (4th Dep't 2009) .......................................... 4

Mandarin Trading Ltd. v. Wildenstein, 884 N.Y.S.2d 47 (1st Dep't 2009) ................................... 9

Ouaknine v. MacFarlane, 897 F.2d 75 (2d Cir. 1990) ................................................................... 4

Oster v. Kirschner, 905 N.Y.S.2d 69 (1st Dep't 2010); .................................................................. 4

Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of America Sec., LLC,
    652 F. Supp. 2d 495 (S.D.N.Y. 2009) ............................................................................ 10

Pludeman v. N. Leasing Sys., Inc., 860 N.Y.S.2d 422 (2008) ....................................................... 4

Polonetsky v. Better Homes Depot, 97 N.Y.2d 46 (2001) ............................................................ 4

PPI Enter. (U.S.), Inc. v. Del Monte Foods Co., No. 99 Civ. 3794 (BSJ), 2003 WL
    22118977 (S.D.N.Y. Sept. 11, 2003) ....................................................................................... 7

Renner v. Chase Manhattan Bank, No. 98 Civ. 926 (CSH), 1999 WL 47239 (S.D.N.Y.
    Feb. 3, 1999) ........................................................................................................................ 10

Rizel v. Bodner, 640 N.Y.S.2d 19 (1st Dep't 1996) ...................................................................... 4

Rodas v. Manitaras, 159 A.D.2d 341 (1st Dep't 1990) ................................................................. 7

UST Private Equity Investors Fund, Inc. v. Salomon Smith Barney, 733 N.Y.S.2d 385
    (1st Dep't 2001) ..................................................................................................................... 6

Virginia Bankshares, Inc. v. Sandberg, 501 U.S. 1083 (1991) ...................................................... 9

Morgan Stanley & Co., Inc. and Morgan Stanley & Co. International Limited (now known as Morgan Stanley & Co. International plc) (together, "Morgan Stanley") respectfully submit this reply memorandum of law in support of their Motion to Dismiss the First Amended Complaint in the above-captioned matter.

## PRELIMINARY STATEMENT

King County, Washington ("King County") and Iowa Student Loan Liquidity Corporation ("Iowa Student Loan") allege that at some point in 2007, they purchased U.S. Commercial Paper ("USCP") issued by the Rhinebridge SIV. This is the extent of their allegations regarding the details of their investments. The complaint does not identify what documents, if any, King County or Iowa Student Loan received, reviewed or relied upon in making their investment decisions. Also conspicuously absent from the complaint is a single indication that either plaintiff interacted with, received information from, or made its investments through Morgan Stanley. Because plaintiffs have failed to allege reliance on a misstatement by Morgan Stanley, their claim for common law fraud fails.

In the face of clearly established law, plaintiffs attempt to argue that they fit within two potential exceptions to the foregoing pleading rules. First, plaintiffs assert that even if Morgan Stanley did not make a misstatement to them, it participated in a broader "scheme" that resulted in an alleged misstatement: the credit rating for the U.S. commercial paper. "Scheme liability," however, is not a basis for a claim of common law fraud. The cases plaintiffs cite establish that, absent a misstatement, participation in a fraudulent scheme can at best give rise to an aiding and abetting claim (provided all of the elements of that claim are alleged).

Second, plaintiffs assert that Morgan Stanley can be liable pursuant to the group pleading doctrine because it participated in the creation of the information memorandum for the

commercial paper purchased by plaintiffs.  Even if this assertion would suffice as a matter of law—which it does not—neither King County nor Iowa Student Loan has alleged that it ever received or reviewed the information memorandum, let alone that it received the information memorandum from Morgan Stanley.  The group pleading doctrine simply does not apply where there is no allegation that the group-published document was the basis for plaintiffs' investment.

Plaintiffs' common law fraud claim fails for the additional, independent reason that these plaintiffs have failed to allege reasonable reliance.  Morgan Stanley specifically disclaimed responsibility for the ratings issued by the rating agencies, and plaintiffs therefore—as a matter of law—could not have reasonably relied on those ratings as reflecting the views of Morgan Stanley.  The sole exception to enforcing such a disclaimer arises when the disclaiming party possesses relevant knowledge that plaintiffs could not have known existed.  Such a scenario has not and cannot be alleged here: although plaintiffs assert that the Rhinebridge SIV failed to provide them with the list of assets in which they invested, plaintiffs were well aware of the existence of such a list, failed to request it (despite agreeing to conduct their own diligence), and nonetheless agreed to the disclaimer.  In such circumstances, the disclaimer bars plaintiffs' claims.

As for plaintiffs' aiding and abetting claim, plaintiffs have not alleged—as they must—that Morgan Stanley had actual knowledge of any underlying fraud.  Rather, plaintiffs assert that Morgan Stanley possessed information that should have led it to doubt the veracity of the ratings.  But it is well-settled that ratings are opinions.  Accordingly, Morgan Stanley can be liable for aiding and abetting the rating agencies' alleged fraud only if it had actual knowledge that the rating agencies themselves held opinions that contradicted their ratings.  The complaint makes no such allegation.

# ARGUMENT

## I. Plaintiffs' Common Law Fraud Claim Fails

### A. Plaintiffs Do Not Identify a False Statement Made by Morgan Stanley

In its opening brief, Morgan Stanley argued that the allegedly false credit ratings assigned to the U.S. commercial paper were the statements of the rating agencies alone. Plaintiffs' opposition nowhere disputes this assertion. The opposition also fails to identify any other false statement allegedly made by Morgan Stanley to either of the two plaintiffs, King County or Iowa Student Loan. Plaintiffs have therefore failed to plead the most basic element of their common law fraud claim: the existence of a misrepresentation. Eurycleia Partners, LP v. Seward & Kissel, LLP, 849 N.Y.S.2d 510, 512 (1st Dep't 2007). Plaintiffs nonetheless assert that their failure to identify an actual misstatement made by Morgan Stanley may be excused under the doctrines of scheme liability and/or group pleading. Both arguments fail.

As to scheme liability, plaintiffs' assertion that New York law permits them to allege "a scheme—involving all the defendants—devised and executed for the specific purpose of defrauding the prospective purchaser" is unsupported by the cases they cite. (Pl.'s Opp. at 6 (quoting CPC Int'l Inc. v. McKesson Corp., 519 N.Y.S.2d 804, 813 (1987) (internal quotation marks omitted)). In CPC, the New York Court of Appeals found that plaintiffs had stated a claim against Morgan Stanley for aiding and abetting—not primary fraud—for allegedly participating in a scheme to defraud investors. Id. at 813; see also CPC Int'l Inc. v. McKesson Corp., 507 N.Y.S.2d 984, 989 (1st Dep't 1986) (confirming claim in CPC was for aiding and abetting); Oster v. Kirschner, 905 N.Y.S.2d 69 (1st Dep't 2010) (discussing scheme liability in the context of aiding and abetting claim); Rizel v. Bodner, 640 N.Y.S.2d 19 (1st Dep't 1996)

3

(same).¹ Thus, to the extent plaintiffs premise Morgan Stanley's liability on its participation in a scheme that ultimately resulted in a fraudulent statement made by someone else—in this case, the ratings published by the rating agencies—they have, at best, stated a claim for aiding and abetting liability (which claim, as discussed infra, fails for independent reasons).²

Plaintiffs' other argument—that Morgan Stanley's purported involvement in creating the allegedly false group-published information memorandum renders it liable for common law fraud—is equally invalid. It may be, as plaintiffs note and as this Court has held, that where "defendants are insiders or affiliates participating in the offer of securities . . . 'reference to an offering memorandum satisfies 9(b)'s requirement of identifying time, place, speaker and content of representation.'" Abu Dhabi Commercial Bank v. Morgan Stanley, et al., 651 F. Supp. 2d 155, 171 (S.D.N.Y. 2009) (quoting Ouaknine v. MacFarlane, 897 F.2d 75, 80 (2d Cir. 1990)). But this case differs from Abu Dhabi. In that case, the court found that plaintiffs had stated a claim based on allegations that Morgan Stanley itself conveyed the ratings to many of the investors through a group-published document. 651 F. Supp. 2d at 171, 177. By contrast, here,

---

¹ CPC also differs from this case in another important way: while disclaiming any warranties, the CPC offering memorandum stated that "'Morgan Stanley [believes] that the financial and other information contained herein is accurate.'" CPC Int'l Inc. v. McKesson Corp., 519 N.Y.S.2d 804, 813 (1987).

² The only other case that plaintiffs proffer for scheme liability, Pludeman v. N. Leasing Sys., Inc., 860 N.Y.S.2d 422 (2008), is likewise unavailing and stands only for the unremarkable proposition that "corporate officers and directors may be held individually liable if they participated in or had knowledge of the fraud, even if they did not stand to gain personally." Id. at 491 (quoting Polonetsky v. Better Homes Depot, 97 N.Y.2d 46, 55 (2001) (internal quotation marks omitted)); see also M &T Bank Corp. v. Gemstone CDO VII, Ltd., No. 7064/08, 2009 WL 921381, at *14 (Sup. Ct. Erie Cty. Apr. 7, 2009), aff'd 891 N.Y.S.2d 578 (4th Dep't 2009) (noting that Pludeman's "rationale is premised on the agency relationship between the high level officer and the corporate defendant").

4

plaintiffs do not allege that they ever received or reviewed the information memorandum.[3] Rather, the complaint states only that "investors" in the Rhinebridge SIV made their purchases pursuant to the information memorandum, private information services <u>or</u> other documents. (First Amended Complaint ("FAC") ¶ 196). The complaint does not allege that either of the named plaintiffs received or read the information memorandum or that Morgan Stanley disseminated <u>any</u> false statement to either plaintiff.[4] Accordingly, the group pleading doctrine does not apply because plaintiffs do not allege their reliance on a group-published document.

### B. Plaintiffs Did Not Reasonably Rely on Morgan Stanley Because It Disclaimed Liability for the Ratings

As Morgan Stanley argued in its opening brief, the offering materials made clear that Morgan Stanley did not accept responsibility for the disclosures regarding the USCP, and this Court should give effect to that disclaimer by finding that plaintiffs could not have reasonably relied on Morgan Stanley in light of it. Plaintiffs' argument that their claim should not be dismissed for lack of reliance because that they did not possess all necessary information to evaluate their investment should be rejected. Contrary to plaintiffs' assertion, New York law gives effect to disclaimers such as the one here, especially where plaintiffs were aware of the existence of information they claim they did not possess.

---

[3] Unlike in <u>Abu Dhabi</u>, where the named plaintiffs purported to represent a class of investors, plaintiffs hear have indicated that they intend to bring their claims individually. Tr. of August 4, 2010 Conference at 22.

[4] It would also be improper to hold that the rating itself—not as conveyed in a particular document—is susceptible to group pleading, because the group pleading doctrine is available only where the "speaker" of the alleged misstatement is unknown. <u>In re BISYS Sec. Litig.</u>, 397 F. Supp. 2d 430, 438-41 (S.D.N.Y. 2005). Here, the speaker of ratings is clearly the rating agencies. Moreover, the group-pleading doctrine is available for group-published *documents*, and ratings are not documents. It may be that ratings are published in documents, <u>In re Oxford Health Plans, Inc.</u>, 187 F.R.D. 133, 142 (S.D.N.Y. 1999), but those documents would be the rating agencies' own presale and new issue reports conveying the ratings to the public.

5

Under New York law, it is well settled that a disclaimer of liability prevents a plaintiff from claiming reasonable reliance on the disclaiming party. Danaan Realty Corp. v. Harris, 5 N.Y.2d 317 (1959); Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc., 343 F.3d 189, 195-96 (2d Cir. 2003). In UST Private Equity Investors Fund, Inc. v. Salomon Smith Barney, 733 N.Y.S.2d 385 (1st Dep't 2001), for example, plaintiffs alleged that defendant placement agents were liable for inaccurate statements included in an offering memorandum and other materials; the offering memorandum at issue in UST contained disclaimers nearly identical to those present here. Id. at 386. The court affirmed the dismissal of the fraud claim, holding that, in light of the disclaimers, plaintiffs could not have justifiably relied on the offering memorandum as a statement of the placement agents.[5]

The only case plaintiffs proffer to the contrary is this Court's opinion in Abu Dhabi. While the Court in Abu Dhabi did take note of the disclaimers, it does not appear that the Court addressed Morgan Stanley's legal argument that those disclaimers precluded plaintiffs from establishing reasonable reliance. Instead, the Court appears to have addressed only Morgan Stanley's argument that plaintiffs were sophisticated investors who agreed to perform their own diligence, ruling that sophistication did not defeat reliance because "the market at large, including sophisticated investors, have come to rely on the accuracy of credit ratings and the independence of rating agencies because of their NRSRO status and, at least in this case, the Rating Agencies' access to non-public information that even sophisticated investors cannot obtain." 651 F. Supp. 2d at 181. First, as is clear from the Court's later decision denying class

---

[5] As noted above, plaintiffs do not allege they ever received the offering materials from Morgan Stanley or any other placement agent. Therefore, their claim fails either because they did not receive the allegedly false group-published information or because, if they did, they received it along with a valid disclaimer.

6

certification, it cannot be presumed that each and every individual investor relies on ratings. Abu Dhabi Commercial Bank et al. v. Morgan Stanley et al., No. 08-cv-7508 (SAS), 2010 WL 2593948, at *6-*9 (S.D.N.Y. June 15, 2010). Second, the NRSRO status of the rating agencies should not prevent other parties, such as Morgan Stanley, from disclaiming liability for ratings they did not issue. Indeed, even if the independence of the rating agencies justifies reliance on their ratings, it does not follow that placement agents should have to accept responsibility for those ratings. Plaintiffs' argument to the contrary would lead to the absurd conclusion that placement agents could never disclaim liability for ratings because of the independence of the rating agencies.

Third, the other basis for the Court's decision in Abu Dhabi—lack of access to information—does not apply here. It is true that if the "information required to confirm or disprove the validity of the [ratings] was peculiarly within [Morgan Stanley's] knowledge," the disclaimer may not be valid. Grumman Allied Indus., Inc. v. Rohr Indus., Inc., 748 F.2d 729, 738 (2d Cir. 1984). But as explained below, plaintiffs' argument that they were not informed that the Rhinebridge SIV would be backed by nonprime assets and that they did not possess the list of assets itself fails.

As an initial matter, the so-called peculiar knowledge exception is available where "a party has no knowledge of a latent condition and no way of discovering the existence of that condition." Rodas v. Manitaras, 159 A.D.2d 341, 343 (1st Dep't 1990). It does not apply where a plaintiff knows that material facts exist which it does not possess. Id.; see also PPI Enter. (U.S.), Inc. v. Del Monte Foods Co., No. 99 Civ. 3794, 2003 WL 22118977, at *24-*25 (S.D.N.Y. Sept. 11, 2003). Here, the information memorandum (which has been incorporated by reference in the Complaint) disclosed that the Rhinebridge SIV would be backed by asset-backed

7

securities, including nonprime securities, and plaintiffs proceeded to invest in light of Morgan Stanley's disclaimer and despite not having a readily available list of those securities.[6] (Rouhandeh Decl. Ex. 1 at 14-16.) Plaintiffs thus knowingly assumed the risk of not possessing the precise list of assets in the SIV and are now foreclosed from arguing that their failure to possess such information voids the disclaimer. Moreover, plaintiffs cannot argue that while they knew a portfolio of assets existed, they did not know that "Rhinebridge held substantial amounts of sub-prime Home Equity Loans ('HELs'), CDOs, RMBS and CMBS assets." (Pl.'s Opp. at 15.) As Morgan Stanley noted in its opening brief, the information memorandum was rife with disclosures regarding the subprime assets in which the SIV would invest and the risks attendant to those investments. (Rouhandeh Decl. Ex. 1 at 14-16.)

Moreover, plaintiffs do not allege that they were denied information on the Rhinebridge assets. As set forth in Morgan Stanley's motion to dismiss, investors in the Rhinebridge SIV agreed to conduct their own diligence and investigation into the creditworthiness of the SIV. (Rouhandeh Decl. Ex. 1 at ix.) Though they assert that the Rhinebridge SIV did not provide them with a list of assets (FAC ¶ 11), neither King County nor Iowa Student Loan allege that they ever even asked to see such a list, let alone that such a request was denied.

### C.  Plaintiffs Have Failed to Plead Scienter

As Morgan Stanley argued in its motion to dismiss, plaintiffs have failed to plead scienter because an alleged desire to earn profit cannot establish motive for pleading purposes. Plaintiffs' opposition brief cites no cases to the contrary. While plaintiffs also argue that the complaint

---

[6] Plaintiffs also allege that they did not have access to the market value of those assets. This is the same as arguing that they did not have access to the assets themselves, because if they did, they could have asked the manager of the SIV or a bank for a mark on those assets. Moreover, this is yet another example of the type of information plaintiffs were aware existed and were aware they did not possess.

pleads strong circumstantial evidence of Morgan Stanley's conscious misbehavior or recklessness, none of the alleged circumstantial evidence demonstrates "an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." In re Carter-Wallace, Inc. Sec. Litig., 220 F.3d 36, 39 (2d Cir. 2000). For example, plaintiffs allege that Morgan Stanley chose the assets that were included in Rhinebridge's portfolio, but not that Morgan Stanley knew or should have known that the assets were riskier than represented (and, as noted above, plaintiffs were well aware that the SIV would invest in the subprime-based assets that form the basis of this allegation). Similarly, while plaintiffs allege that Morgan Stanley knew that the rating agencies grandfathered their methodologies for certain assets, they do not claim that these changes meaningfully affected the ratings of the Rhinebridge SIV. Finally, plaintiffs claim that Morgan Stanley knew that the rating agencies' model was based on historical information preceding 2000, but reliance on a historical model plainly does not constitute an extreme departure from the standards of ordinary care, especially because, as the complaint itself acknowledges, the rating agencies had been doing as much for years. (FAC ¶¶ 149-163.)

## II.     Plaintiffs' Aiding and Abetting Claim Fails

Plaintiffs continue to miss the mark with regard to their aiding and abetting allegations. While correct that "[t]he knowledge requirement of an aiding and abetting fraud claim is satisfied by alleging actual knowledge of the underlying fraud" (Pl.'s Opp. at 22), a rating is not fraudulent unless the entity issuing it did not actually hold or reasonably believe it. See, e.g., Virginia Bankshares, Inc. v. Sandberg, 501 U.S. 1083, 1095 (1991); In re Lehman Bros. Sec. & ERISA Litig., 684 F. Supp. 2d 485, 494-95 (S.D.N.Y. 2010); Mandarin Trading Ltd. v.

9

Wildenstein, 884 N.Y.S.2d 47, 50 (1st Dep't 2009). Here, plaintiffs do not allege that Morgan Stanley knew the rating agencies themselves did not believe the ratings.

The very case plaintiffs cite is instructive in this regard. See Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of America Sec., LLC, 652 F. Supp. 2d 495, 502-03 (S.D.N.Y. 2009) (Scheindlin, J.). This Court in Pension Comm. upheld aiding and abetting claims on the basis that the plaintiffs alleged that certain hedge funds literally instructed the defendant, their broker, to inflate the values of their holdings. Id. at 503-11. Thus, the broker allegedly possessed actual knowledge that the funds' stated valuation of their holdings did not reflect the funds' belief regarding their worth. See also Lenczycki v. Shearson Lehman Hutton, Inc., 656 N.Y.S.2d 609, 610 (1st Dep't 1997) ("[P]laintiff's claim . . . was properly dismissed in the absence of evidence that they knew of Alexander's intention to convert the funds."); Adelphia Recovery Trust v. Bank of Am., N.A., 624 F. Supp. 2d 292, 313 (S.D.N.Y. 2009); Renner v. Chase Manhattan Bank, No. 98 Civ. 926 (CSH), 1999 WL 47239, at *12 (S.D.N.Y. Feb. 3, 1999) ("[T]he complaint fails adequately to allege knowledge . . . of the fraudulent scheme that [the primary tortfeasor] and others intended to perpetrate."). Plaintiffs make no such allegations here.

Moreover, plaintiffs have also failed to allege substantial assistance, which requires that Morgan Stanley's conduct be the proximate cause of "the harm on which the primary liability is predicated." See Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC, 479 F. Supp. 2d 349, 370-71 (S.D.N.Y. 2007). Plaintiffs do not allege facts supporting proximate cause because they do not claim that they had any interaction with, or received the ratings from, Morgan Stanley.

## CONCLUSION

For the reasons set forth above, Morgan Stanley respectfully requests that the Court dismiss the complaint with prejudice.

Dated: August 26, 2010
New York, New York

          DAVIS POLK & WARDWELL LLP

By: /s/ James P. Rouhandeh
    James P. Rouhandeh
    james.rouhandeh@dpw.com
    Antonio J. Perez-Marques
    antonio.perez@dpw.com
    Russell Capone
    russell.capone@dpw.com

450 Lexington Avenue
New York, New York 10017
(212) 450-4000

*Counsel to Defendants Morgan Stanley & Co. Incorporated and Morgan Stanley & Co. International Limited*