UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

KING COUNTY, WASHINGTON,
IOWA STUDENT LOAN LIQUIDITY
CORPORATION, etc.,

                Plaintiffs,

     v.

IKB DEUTSCHE INDUSTRIEBANK, AG,          Civil Action No. 1:09-cv-08387-SAS
IKB CREDIT ASSET MANAGEMENT,
GmbH, MOODY'S INVESTORS SERVICE,
INC., MOODY'S INVESTORS SERVICE
LIMITED, THE McGRAW HILL
COMPANIES, INC. (d/b/a STANDARD &
POOR'S RATINGS SERVICES), FITCH,
INC., MORGAN STANLEY & CO.
INCORPORATED, MORGAN STANLEY &
CO. INTERNATIONAL LIMITED,
WINFRIED REINKE and STEFAN
ORTSEIFEN,

                Defendants.
_____


## MEMORANDUM OF LAW
### IN SUPPORT OF DEFENDANT STEFAN ORTSEIFEN'S
### RENEWED MOTION TO DISMISS


PHILLIPS LYTLE LLP
*Attorneys for Defendant Stefan Ortseifen*
3400 HSBC Center
Buffalo, New York  14203
Telephone No.:  (716) 847-8400

Of Counsel:
Thomas S. Wiswall, Esq.
Wolfgang Nockelmann, Esq.
Craig R. Bucki, Esq.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................. iii

PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT ...................................... 1

ISSUES PRESENTED................................................................... 4

STATEMENT OF FACTS ............................................................... 5

    A.    Plaintiffs' Amended Complaint .................................................. 5

    B.    Mr. Ortseifen's Lack of Relevant Contacts with New York State ........................ 6

    C.    Mr. Ortseifen's Lack of Involvement in the Statements and Actions
        Allegedly Giving Rise to Plaintiffs' Claims .......................................... 8

        1.    Mr. Ortseifen's Membership on the IKB AG Executive Board
            Does Not Provide a Basis for Jurisdiction ................................. 10

        2.    Mr. Ortseifen's Membership on IKB CAM's Advisory Board
            Does Not Provide a Basis for Jurisdiction ................................. 11

        3.    Mr. Ortseifen's 3-Day Visit to New York in April 2006 Does
            Not Provide a Basis for Jurisdiction .......................................... 11

        4.    Plaintiffs' Claims Did Not Arise from any Purposeful Transaction
            of Business by Mr. Ortseifen in New York ............................... 12

POINT I    THERE IS NO BASIS FOR THE ASSERTION OF PERSONAL
        JURISDICTION OVER STEFAN ORTSEIFEN................................ 13

POINT II    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM
        AGAINST MR. ORTSEIFEN .............................................. 16

        1.    The Amended Complaint Fails to State a Claim Against
            Mr. Ortseifen for Common Law Fraud.................................... 16

            (a)    The amended complaint does not identify any
                representation by Mr. Ortseifen. ................................... 16

            (b)    The amended complaint does not allege that any
                representation by Mr. Ortseifen was false .................... 20

            (c)    The amended complaint does not allege that Mr. Ortseifen
                had the necessary scienter for common law fraud ....................... 20

(d)     The amended complaint does not allege that plaintiffs
relied on any representation by Mr. Ortseifen. ........................... 21

(e)     The amended complaint does not allege that any representation
by Mr. Ortseifen caused any damage to plaintiffs ...................... 22

2.     The Amended Complaint Fails to State a Claim Against
Mr. Ortseifen for Aiding and Abetting any Alleged Wrong
by the Other Defendants .......................................................................... 22

CONCLUSION.................................................................................................................... 25

# TABLE OF AUTHORITIES

Page

**CASES**

*380544 Can., Inc. v. Aspen Tech., Inc.*,
   544 F. Supp. 2d 199 (S.D.N.Y. 2008)........................................................17

*Am. Bldg. Maint. Co. v. ACME Prop. Servs.*,
   515 F. Supp. 2d 298 (N.D.N.Y. 2007).......................................................25

*Ashcroft v. Iqbal*,
   ___ U.S. ___ 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).........................23

*Bell Atlantic Corporation v. Twombly*,
   550 U.S. 544 (2007)..................................................................................22

*Best Van Lines, Inc. v. Walker*,
   490 F.3d 239 (2d Cir. 2007)......................................................................13

*Biosafe-One, Inc. v. Hawks*,
   639 F. Supp. 2d 358 (S.D.N.Y. 2009).......................................................19

*Callisto Pharm., Inc. v. Picker*,
   74 A.D.3d 545, 903 N.Y.S.2d 370 (1st Dep't 2010) ................................19

*Chemtex, LLC v. St. Anthony Enters.*,
   490 F. Supp. 2d 536 (S.D.N.Y. 2007)..................................................23, 24

*Diduck v. Kaszycki & Sons Contractors*,
   974 F.2d 270 (2d Cir. 1992)......................................................................24

*Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt.*,
   479 F. Supp. 2d 349 (S.D.N.Y. 2007).......................................................24

*In re Bayou Hedge Funds Inv. Litig.*,
   472 F. Supp. 2d 528 (S.D.N.Y. 2007)..................................................23, 25

*In re Terrorist Attacks on Sept. 11, 2001*,
   349 F. Supp. 2d 765 (S.D.N.Y. 2005).......................................................25

*Johnson v. Ward*,
   4 N.Y.3d 516 (2005) .................................................................................14

*Lancaster v. Colonial Motor Freight Line*,
   177 A.D.2d 152 (1st Dep't 1992) .............................................................14

*Lerman v. Tenney*,
   295 F. Supp. 780 (S.D.N.Y. 1969)............................................................19

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006)........................................................................23, 24

*Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*,
    15 N.Y.2d 443 (1965) ...........................................................................................14

*Marine Midland Bank v. Smith*,
    482 F. Supp. 1279 (S.D.N.Y. 1979), *aff'd*, 636 F.2d 1202 (2d Cir. 1980) ............25

*Mende v. Milestone Tech.*,
    269 F. Supp. 2d 246 (S.D.N.Y. 2003).....................................................................14

*NewMarkets Partners LLC v. Oppenheim*,
    638 F. Supp. 2d 394 (S.D.N.Y. 2009).....................................................................14

*O'Brien v. Miller*,
    60 A.D.3d 555 (1st Dep't 2009) ............................................................................14

*Pacific Investment Management Company LLC v. Mayer Brown LLP*,
    603 F.3d 144 (2d Cir. 2010)....................................................................3, 18, 19, 21

*Pittman by Pittman v. Grayson*,
    149 F.3d 111 (2d Cir. 1998)...................................................................................23

*Pope v. Saget*,
    29 A.D.3d 437, 817 N.Y.S.2d 1 (1st Dep't 2006) .................................................19

*SEC v. Capital Gains Research Bureau*,
    375 U.S. 180 (1963)...............................................................................................19

*SEC v. Collins & Aikman Corp.*,
    524 F. Supp. 2d 477 (S.D.N.Y. 2007).....................................................................17

*Sherwin v. Indianapolis Colts, Inc.*,
    752 F. Supp. 1172 (N.D.N.Y. 1990) ......................................................................14

*Snyder v. Ply Gem Indus.*,
    200 F. Supp. 2d 246 (S.D.N.Y. 2001).....................................................................14

*Spector v. Wendy*,
    63 A.D.3d 820, 881 N.Y.S.2d 465 (2d Dep't 2009) ..............................................19

*Spiegel v. Schulmann*,
    604 F.3d 72 (2d Cir. 2010).................................................................................3, 13

*Stoneridge Inv. Partners v. Scientific-Atlanta, Inc.*,
    552 U.S. 148 .........................................................................................................21

*Talbot v. Johnson Newspaper Corp.*,
   71 N.Y.2d 827 (1988) ...................................................................................14

*Tubbs v. United Cent. Bank, N.A.*,
   451 N.W.2d 177 (Iowa 1990) .....................................................................23

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982)..........................................................................19

### STATUTES

CPLR § 302(a) ...............................................................................8, 13, 14

### OTHER AUTHORITIES

Federal Rules of Civil Procedure, Rules 8(a), 9(b), 12(b)(2) and 12(b)(6) ..............1, 4, 16, 18, 25

RESTATEMENT (SECOND) OF TORTS § 876..................................................23

Rule 10b-5......................................................................................18, 19

## PRELIMINARY STATEMENT AND
## SUMMARY OF ARGUMENT

Defendant Stefan Ortseifen submits this memorandum in support of his renewed motion to dismiss under Rules 8(a), 9(b), 12(b)(2) and 12(b)(6) and in supplementation of his prior memoranda of law dated February 3, 2010 (court document no. 53), March 17, 2010 (court document no. 81), March 23, 2010 (court document no. 80, filed under Civil Action No. 1:09-cv-08822-SAS), and April 28, 2010 (court document no. 91, filed under Civil Action No. 1:09-cv-08822-SAS).  Like the prior motions, this renewed motion is made on the grounds that Mr. Ortseifen has not engaged in any conduct in New York State at any relevant time, and that plaintiffs have failed to allege any conduct by Mr. Ortseifen, either in New York State or anywhere else, giving rise to any claim against him.

Following the Opinion and Order of May 4, 2010 (court document 102), the parties engaged in various discovery proceedings concerning whether or not there is any basis for the assertion of personal jurisdiction over Mr. Ortseifen or Mr. Reinke, the other individual defendant in this action.  Those discovery proceedings included depositions of Messrs. Ortseifen and Reinke, and also a witness designated by IKB Deutsche Industriebank AG ("IKB AG").  There were also disclosures in response to document requests and interrogatories.  In addition to the document productions by Messrs. Ortseifen and Reinke, IKB AG has produced nearly a million pages of records.  Other parties have also produced voluminous records.

With regard to Mr. Ortseifen, these extensive discovery proceedings have confirmed the facts that were presented in support of his earlier motions to dismiss (court documents 51, 52, 53, 80, and 81 filed under 1:09-cv-08337-SAS; and court documents 78, 79, 80, and 91 filed under 1:09-cv-08822-SAS).  None of the evidence generated during these

discovery proceedings shows that there is any basis for asserting jurisdiction over him in this action.[1]

In particular, the evidence confirms that plaintiffs' claims do not arise out of any activities by Mr. Ortseifen in New York State.  Mr. Ortseifen did not transact any business in New York during the relevant time as defined in the amended complaint and, to the extent that he had any contact with New York at an earlier time, those very limited activities did not give rise to any of plaintiffs' claims.

Plaintiffs' claim in this action is that credit ratings assigned by the rating agencies to notes issued by Rhinebridge in June 2007 were false and misleading because the "true" market value was already "plunging" and the defendants allegedly knew it.  The time when the fraud allegedly occurred was "between June 1, 2007 and October 18, 2007" (Amended Complaint, ¶¶ 199 and 209; see also ¶¶ 2, 4, 11, 78, and 120).

The last time Mr. Ortseifen was in New York State was on April 5-7, 2006, well over a year before the beginning of the relevant period defined in the pleadings and many months before either of the Rhinebridge entities was formed (Ortseifen Affs. of 2/2/10, 3/15/10, 3/23/10, and 9/8/10.[2])  The issuance of the Rhinebridge notes, the ratings by the rating agencies, the representations to plaintiffs, the "plunge" in the "true" value of the Rhinebridge notes and assets, and the "knowledge" of any of these matters by anyone, all arose long after Mr. Ortseifen's last visit to New York (Wiswall Aff., Exs. E, F, G, J, K).

---

[1]   As discussed in Mr. Ortseifen's earlier memoranda, it is plaintiffs' burden to establish the existence of a jurisdictional basis.  Notwithstanding the discovery proceedings, they cannot meet that burden here.

[2]   Mr. Ortseifen's affirmations are referenced in this memorandum by their dates of execution.  Ortseifen Aff. of 2/2/10 is King County doc. 52; Ortseifen Aff. of 3/15/10 is King County doc. 80; and Ortseifen Aff. of 3/23/10 is Iowa doc. 79.

Jurisdiction over Mr. Ortseifen in New York also cannot be based on any of his activities in Germany.  Mr. Ortseifen had no involvement in preparing, reviewing, or approving the Private Placement Memorandum (PPM) containing the representations about the ratings criticized by plaintiffs (Ortseifen Aff. of 9/8/10, ¶ 13).  There is no evidence that any such representations are attributable to him, that he knew of their allegedly false or misleading character, or that he purposefully selected New York State as the site of the alleged fraud.

In addition, with regard to whether plaintiffs have stated any claim against Mr. Ortseifen, plaintiffs filed an amended complaint on June 10, 2010 (court document no. 115). Among other changes, the amended complaint added Morgan Stanley to the list of defendants. However, plaintiffs' previous failures to state any alleged fraud or other misconduct by Mr. Ortseifen were continued in their amended complaint.  Like plaintiffs' earlier complaints, the amended complaint does not give notice of any actions or statements by Mr. Ortseifen, wrongful or otherwise, either in New York State or anywhere else.  He is referred to by name only in paragraphs 20, 132, and 230-231.  He did not have day-to-day involvement (or indeed any involvement) in the particular note offering at issue, so the group pleading doctrine is not available as a substitute for any of the missing elements in plaintiffs' claims against him.

Decisions by the Second Circuit following Mr. Ortseifen's prior motions reconfirm the legal standards upon which his motions are based, both as to the lack of jurisdiction and plaintiffs' failure to state a claim.  *See Spiegel v. Schulmann*, 604 F.3d 72 (2d Cir. 2010), regarding jurisdiction, and *Pacific Investment Management Company LLC v. Mayer Brown LLP*, 603 F.3d 144 (2d Cir. 2010), regarding failure to state a claim.  This controlling court precedent, together with the new discovery material and the legal authorities discussed in the prior memoranda, warrant the dismissal of all claims against Mr. Ortseifen.

## ISSUES PRESENTED

1.    Did Mr. Ortseifen transact any business in New York that gave rise to plaintiffs' claim that he used credit ratings to sell Rhinebridge notes, knowing that those ratings were false and misleading, by making false representations to the plaintiffs about the notes and the ratings?

        No.  There is no basis for the assertion of long-arm jurisdiction over Mr. Ortseifen.

2.    Does plaintiffs' amended complaint sufficiently allege, with the particularity required by Rule 9(b), specific facts showing that false representations concerning the credit ratings assigned to the Senior Notes issued by Rhinebridge were made to the plaintiffs by Mr. Ortseifen, and that plaintiffs reasonably relied to their detriment on misrepresentations by him?

        No.  The amended complaint fails to state a fraud claim against Mr. Ortseifen.

3.    Does the amended complaint sufficiently allege specific facts showing that Mr. Ortseifen knew of the allegedly fraudulent conduct of the other defendants and intentionally gave substantial assistance to them for that alleged fraud?

        No.  The amended complaint also fails to state an aiding and abetting claim against Mr. Ortseifen.

**STATEMENT OF FACTS**

A.      **Plaintiffs' Amended Complaint**

Like their earlier complaints, plaintiffs' amended complaint relies on a fraud theory, which they assert indiscriminately "against all defendants" (am. cplt., ¶¶ 205-220).  The so-called fraud consisted of credit ratings assigned by the rating agency defendants (Moody's, S&P, and Fitch) to "Senior Notes" issued by a structured investment vehicle known as Rhinebridge.  According to the amended complaint, "Defendants communicated these false and misleading ratings on or about June 27, 2007, when the Senior Notes were first sold to investors" (am. cplt., ¶ 4).  The amended complaint further alleges that the representations about the ratings were made "through private placement memoranda" (am. cplt., ¶ 209, *see also* ¶¶ 76, 79, 81, 170, and 196).  The time period when the fraud allegedly occurred was "between June 1, 2007 and October 18, 2007" (am. cplt., ¶¶ 199 and 209; *see also*, ¶¶ 2, 4, and 78).

Despite its length of 236 paragraphs, the amended complaint does not specifically identify any alleged conduct or statements by Mr. Ortseifen, wrongful or otherwise, either in New York or anywhere else.  He is referred to by name only in paragraphs 20, 132, and 230-231.  Those paragraphs do not even purport to recite any of the elements of a fraud claim.  Instead, they say only that Mr. Ortseifen held positions at IKB AG and IKB Credit Asset Management GmbH (IKB CAM) until he retired on July 29, 2007, and that he faces charges in Germany, where he is a citizen and a resident.  Paragraphs 230-231 were added to assert, in conclusory terms, a claim for "aiding and abetting other defendants' violations of laws," again without specifying anything done or said by Mr. Ortseifen to support that conclusion.

Like the earlier complaints, plaintiffs' amended complaint makes blanket allegations about "defendants" as a group, and about "IKB", another composite term defined by

plaintiffs to include three other named defendants along with Mr. Ortseifen.[3]  The amended

complaint does not identify what particular statements or actions by Mr. Ortseifen are claimed to

support the assertion of personal jurisdiction, or to satisfy any element of any claim against him.

### B.    Mr. Ortseifen's Lack of Relevant Contacts with New York State

It is undisputed that the last time that Mr. Ortseifen was in New York State for

any reason was on April 5-7, 2006, when he went to New York City to attend a meeting of the

board of directors of IKB Capital Corporation, a subsidiary of IKB AG (Ortseifen Aff. of 9/8/10,

¶ 3).  Neither that board meeting nor any of Mr. Ortseifen's other meetings during that three-day

trip gave rise to the claims in this action.  The events of which plaintiffs complain are the

communication to them of allegedly false ratings, their purchase of notes in alleged reliance on

those ratings, and the damage allegedly resulting from the subsequent decline in the value of the

notes.  All of those underlying events took place in June 2007 or later (Wiswall Aff., Exs. E, F,

G, J, and K).  Back in April 2006, fifteen months earlier, neither Mr. Ortseifen nor anyone else

knew what the future held in store for the residential real estate market, the credit market, or the

value of asset-backed commercial paper.  More specifically, neither he nor anyone else could

have predicted (or planned to defraud anyone about) the ability of an investment vehicle that was

to be formed in the future to repay notes to be issued in the future, secured by assets to be

acquired in the future, and given credit ratings pursuant to analyses to be performed in the future.

As of April 2006, neither IKB CAM, nor Rhinebridge PLC, nor Rhinebridge LLC

even existed (Ortseifen Aff. of 2/2/10, ¶11) .  Moreover, the economic environment was

markedly different in April 2006 than it was in the summer of 2007.  According to a report

---

[3]    Numerous court decisions have condemned the practice of lumping defendants
together in groups and then making general allegations about the resulting collection of distinct
persons and entities.  See, e.g., the cases cited at pp. 8-10 in Mr. Ortseifen's memorandum dated
March 23, 2010 in the *Iowa Student Loan* case (court document 80, filed in 1:09-cv-08822).

issued by Moody's in April 2006, referring to structured finance vehicles in particular, "the

credit performance of structured finance securities improved sharply in 2005" and further, "the

average credit loss rate across all structured finance has been very low" (Wiswall Aff. Ex. J).

Similarly, the September 2006 Quarterly Review by the Bank for International Settlements stated

with confidence, "Investor demand continues to be strong for structured financial products" (*Id.*).

*See also*, Order dated April 1, 2010, p. 3 (court doc. 95).

With regard to the changes in the relevant markets that occurred later, the

Rhinebridge PPM dated June 2007 confirms that they began to appear "recently" and "in recent

months."  According to the PPM,

> **Recently**, the residential mortgage market in the United States has
> experienced a variety of difficulties and changed economic
> conditions that could adversely affect the performance and market
> value of various investments.

(Wiswall Supp. Aff., Ex. K, p. 15, emphasis added)[4] *See also* amended complaint, ¶¶120 and

161.  The market changes that were taking place during late 2006 and in 2007 amply refute any

---

[4]   The PPM contains other similarly prophetic warnings at pp. 15-16, including:

> Delinquencies, defaults and losses with respect to residential
> mortgage loans generally have increased **in recent months**, and
> may continue to increase, particularly in the non-prime sector.
> . . .
>
> In addition, **in recent months** housing prices and appraisal values
> in many U.S. states have declined or stopped appreciating, after
> extended periods of significant appreciation.  A continued decline
> or an extended flattening of those values may result in additional
> increases in delinquencies and losses on residential mortgage loans
> generally.
> . . .
>
> Numerous residential mortgage loan originators that originate non-
> prime, and in particular sub-prime, mortgage loans have **recently**
> experienced serious financial difficulties, negative ratings actions
> and, in some cases, bankruptcy.

argument that plaintiffs' claims arose from anything done or said, or that hypothetically <u>could</u> have been done or said, by Mr. Ortseifen in April 2006, well before those superseding events.

    The mountains of documents and other discovery disclosures do not evidence any transactions of business by Mr. Ortseifen in New York State during any relevant time, let alone any transactions that could be said to give rise to the claims in this action.  As part of the jurisdictional discovery, Mr. Ortseifen requested that plaintiffs produce "all documents, if any, evidencing any transaction of business by Stefan Ortseifen in the state of New York from which any of plaintiffs' causes of action is claimed to arise."  Plaintiffs did not produce any documents at all in response to this and similar requests, and they subsequently confirmed that they also were not withholding any nonpublic responsive documents, either on privilege or any other grounds (Wiswall Aff., Ex. A).  Since they have not withheld any responsive documents on any ground, plaintiffs' failure to produce any documents indicates that, like Mr. Ortseifen, plaintiffs also have no documents evidencing any basis to assert jurisdiction over him.

  **C.** **Mr. Ortseifen's Lack of Involvement in the Statements and Actions Allegedly Giving Rise to Plaintiffs' Claims**

    As discussed in detail below and in Mr. Ortseifen's earlier memoranda of law, plaintiffs cannot assert personal jurisdiction over Mr. Ortseifen in the absence of proof that their claims arose from a transaction of business by Mr. Ortseifen within New York State (CPLR § 302(a)).  Notwithstanding the voluminous disclosures made by the various parties in this action concerning jurisdiction and other issues, plaintiffs are unable to present any evidence showing that their claims arose from any act, statement, or transaction of business by Mr. Ortseifen, either in New York State or anywhere else.  There is simply no evidence to support personal jurisdiction (or liability) as to Mr. Ortseifen.

The evidence confirms that Mr. Ortseifen's connection to anything having to do with Rhinebridge was not related to plaintiffs' claims. Moreover, his limited activities relating to Rhinebridge occurred outside of New York State and also did not involve any misrepresentations to plaintiffs about the ratings assigned to the Senior Notes.

The documents that have been produced in the discovery proceedings show that the various transactions relating in some way to Rhinebridge were very extensive. The Rhinebridge transactions addressed a great many issues other than the accuracy of the credit ratings and the representations made to plaintiffs about those ratings. The number and complexity of these transactions are indicated by the nine-page index of parties and closing documents prepared by the Mayer Brown law firm (Wiswall Aff., Ex. E).

The PPM is just one of the 94 documents listed in the Mayer Brown closing index. Involvement with other issues related to Rhinebridge (whether occurring in New York or Germany), such as the impact of Irish tax law, the applicability of ERISA, or the marketing of the European commercial paper issued by Rhinebridge, would not establish a basis for either jurisdiction or liability on the claims alleged by plaintiffs here. Because the claims in this case are based on allegations that defendants used credit ratings to sell Rhinebridge notes in the U.S. with knowledge that the assigned ratings were false and misleading, jurisdiction requires more than a showing that a defendant had some involvement in some transaction referring in some way to "Rhinebridge"; it requires a showing that the defendant purposefully transacted business in New York that was substantially related to the knowing use of false and misleading credit ratings for the sale to plaintiffs of the senior notes issued by Rhinebridge. No such showing as to Mr. Ortseifen can be made here.

1.      **Mr. Ortseifen's Membership on the IKB AG Executive Board Does Not Provide a Basis for Jurisdiction**

From 2004 until July 29, 2007, Mr. Ortseifen was the spokesman of IKB AG's Executive Board,  which was one of two separate boards having functions in the operation and supervision of IKB AG.  The other board, called the Supervisory Board, consisted of 21 members and had the function, among others, of determining the membership of the Executive Board.  Mr. Ortseifen was not a member of the Supervisory Board (Ortseifen Aff. of 9/8/10, ¶ 6).

IKB AG's Executive Board consisted of several members, each of whom had an equal vote on the matters that came before it (Ortseifen Aff. of 9/8/10, ¶¶ 6-12).  When matters involving Rhinebridge required action by the Executive Board of IKB AG, presentations were submitted to the board, and the members voted on them.  Matters relating to Rhinebridge included a decision to enter into a Forward Sale Agreement with Rhinebridge PLC, by which IKB AG would "warehouse" assets for Rhinebridge PLC, in accordance with instructions from Rhinebridge PLC's Directors, and then transfer those warehoused assets to Rhinebridge PLC at the closing, and a decision that IKB AG would purchase some of the capital notes issued by Rhinebridge PLC (Wiswall Aff., ¶ 16 and Exs. B and H).  There is no evidence that IKB AG's Executive Board, or Mr. Ortseifen individually, had any involvement in the preparation or approval of the PPM or any other sales materials containing the representations that are alleged in the amended complaint to be false and misleading.  There is also no evidence that the board, or Mr. Ortseifen, had knowledge of the alleged falsity of any such representations.  To the contrary, Mr. Ortseifen has specifically and emphatically denied having such involvement and such knowledge (Ortseifen Aff. of 9/8/10, ¶¶ 13-17).  Finally, none of the actions and decisions by the Executive Board took place in New York (*Id.*, ¶5).

### 2. Mr. Ortseifen's Membership on IKB CAM's Advisory Board Does Not Provide a Basis for Jurisdiction

Mr. Ortseifen was also a member of the Advisory Board of IKB CAM, serving as chairman of that Advisory Board from September or October 2006 through July 29, 2007 (Ortseifen Aff. of 9/8/10, ¶ 11). The Advisory Board consisted of six members. Mr. Ortseifen was a non-executive member who had no employment or management position with IKB CAM. (*Id.*) The function of the Advisory Board was, as its name implies, to give advice from time to time to the Managing Directors, who were the persons in charge of running the day-to-day business of the corporation (*Id.*).

As a result of the corporate structures described above, any action or decision by Mr. Ortseifen as a member of the IKB CAM Advisory Board, like his role as a member of IKB AG's Executive Board, was taken as one member of those larger bodies.[5] To the extent that Mr. Ortseifen participated in any actions as a member of the IKB CAM Advisory Board, those actions did not involve preparation of either the PPM or any sales materials containing the allegedly fraudulent representations referenced in the amended complaint (*Id.*, ¶¶ 13-16). The Advisory Board meetings also did not take place in New York (*Id.*, ¶ 5).

### 3. Mr. Ortseifen's 3-Day Visit to New York in April 2006 Does Not Provide a Basis for Jurisdiction

As noted above, in April 2006 Mr. Ortseifen traveled to New York City to attend a meeting of another IKB affiliate, IKB Capital Corporation ("IKB Capital"). Mr. Ortseifen's role in IKB Capital Corporation was as a member of its board of directors (Ortseifen Aff. of 9/8/10, ¶ 3). As in IKB CAM, Mr. Ortseifen was a non-executive board member. He did not

---

[5] Plaintiffs' amended complaint loosely refers to Mr. Ortseifen as the "CEO" of IKB AG and as the "Chairman" of IKB CAM (am. cplt., ¶ 20). However, his authority was not the same as that of a CEO or Chairman of the Board in an American corporation, but was more limited, as described above and in Mr. Ortseifen's affirmation of September 8, 2010.

have any officer or employment position with IKB Capital (*Id.*). None of Mr. Ortseifen's activities on behalf of IKB Capital related to Rhinebridge in any respect, let alone to the representations in the PPM that allegedly give rise to plaintiffs' claim in this action (*Id.*). Thus, although some of Mr. Ortseifen's activities on behalf of IKB Capital took place in New York, none of the claims set forth in the amended complaint arose from any of those activities.

During Mr. Ortseifen's deposition, plaintiffs' counsel questioned him about a dinner he had on April 5, 2006 with a Mr. Stefano Corsi, who worked for Morgan Stanley (Wiswall Aff., Ex B). Plaintiffs added Morgan Stanley as a defendant in June 2010, after Mr. Ortseifen filed his prior motions. There is no evidence connecting that dinner with Rhinebridge. Both Mr. Ortseifen and Mr. Reinke have stated that the dinner conversation did not relate to any particular transactions, but was arranged for the purpose of maintaining general business relationships and discussing the general market situation (Ortseifen Aff. of 9/8/10, ¶ 3; Wiswall Aff., Exs. B and C). Finally, as discussed above, the early date of that dinner demonstrates that it could not have given rise to plaintiffs' claims in this action, which instead arose from the ratings that were issued, the representations made about them, and the defendants' alleged knowledge about the "true" value of the notes, in June 2007, fifteen months later. Mr. Ortseifen's April 2006 trip to New York occurred not only well before any of the multiple transactions involving Rhinebridge, but also well before the market changes on which plaintiffs base their argument that the "defendants" must have known that the ratings were false and misleading (Wiswall Aff., Ex. J).

### 4. Plaintiffs' Claims Did Not Arise from any Purposeful Transaction of Business by Mr. Ortseifen in New York

In view of his positions at IKB AG and IKB CAM, Mr. Ortseifen necessarily had occasional contact with a few of the many transactions that related in some fashion to

Rhinebridge.  However, none of those contacts occurred in New York, none of them gave rise to

plaintiffs' claims, and none of them were fraudulent or otherwise actionable.  In addition, none

of them constituted transactions of Mr. Ortseifen individually; they were done by Mr. Ortseifen

only as a member of a larger corporate body and on behalf of either IKB AG or IKB CAM as the

case may be.  None of Mr. Ortseifen's activities can support any assertion of personal

jurisdiction over him in this litigation.

**POINT I**

**THERE IS NO BASIS FOR THE ASSERTION
OF PERSONAL JURISDICTION OVER
STEFAN ORTSEIFEN**

The legal requirements for the assertion of personal jurisdiction over a non-

domiciliary were discussed in detail in the prior motions to dismiss.  Those discussions are

incorporated by reference and not repeated here.  In response to those motions, plaintiffs limited

their arguments in alleged support of jurisdiction to CPLR § 302(a)(1).  As shown below, as well

as in the earlier motion papers, plaintiffs' arguments fail.

By a decision dated May 6, 2010, after the prior motions were filed, the Second

Circuit affirmed the dismissal of a defendant for lack of personal jurisdiction in *Spiegel v.

Schulmann,* 604 F.3d 72 (2d Cir. 2010).  In its decision, the Second Circuit reconfirmed that §

302(a)(1) "provides for personal jurisdiction only with respect to causes of action arising out of

the transaction of business conducted in New York."  (*Id.* at 77, emphasis added).

Notwithstanding the existence of a number of contacts between the defendant and New York in

that case, the Court found that "[t]he Plaintiffs have failed to offer any evidence that their causes

of action against UAK arise from UAK's transaction of business in New York State."  *Id.*  The

Second Circuit cited, among other cases, its earlier decision in *Best Van Lines, Inc. v. Walker,*

- 13 -

490 F.3d 239, 246 (2d Cir. 2007), which summarized the requirements for long-arm jurisdiction

as follows:

> To determine the existence of jurisdiction under Section 302(a)(1),
> a court must decide (1) whether the defendant 'transacts any
> business' in New York and, if so, (2) whether this cause of action
> 'aris[es] from' such a business transaction.
>
> . . .
>
> As for the second part of the test, '[a] suit will be deemed to have
> arisen out of a party's activities in New York if there is an
> articulable nexus, or a substantial relationship, between the claim
> asserted and the actions that occurred in New York.'

In the course of its discussion of the requirement that the plaintiff's claim "arise from" the

defendant's New York transactions, the Second Circuit relied on, among other precedents,

*Talbot v. Johnson Newspaper Corp.*, 71 N.Y.2d 827 (1988), in which an action against two

California individuals was dismissed for lack of jurisdiction despite the facts that one of the

individuals was a student at St. Lawrence University in New York and the claim asserted against

her and her father concerned statements made by them about an athletic coach at the school.  The

Court of Appeals held that even if her attendance at St. Lawrence satisfied the requirement of

purposeful activity in New York, there was no showing of "the required nexus" between those

activities and the cause of action asserted by the plaintiff athletic coach.  *Id.* at 829.  *See also*,

*Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443 (1965); *Johnson v.*

*Ward*, 4 N.Y.3d 516 (2005); *O'Brien v. Miller*, 60 A.D.3d 555 (1st Dep't 2009); *Lancaster v.*

*Colonial Motor Freight Line*, 177 A.D.2d 152 (1st Dep't 1992); *Sherwin v. Indianapolis Colts,*

*Inc.*, 752 F. Supp. 1172 (N.D.N.Y. 1990); *NewMarkets Partners LLC v. Oppenheim*, 638 F.

Supp. 2d 394 (S.D.N.Y. 2009); *Mende v. Milestone Tech.*, 269 F. Supp. 2d 246 (S.D.N.Y. 2003);

*Snyder v. Ply Gem Indus.*, 200 F. Supp. 2d 246 (S.D.N.Y. 2001); and the additional decisions

cited Mr. Ortseifen's prior memoranda.

Jurisdiction is lacking here because plaintiffs' claims concerning the allegedly fraudulent ratings of the Rhinebridge Senior Notes did not arise from, and could not have arisen from, anything done or said by Mr. Ortseifen during his three-day visit to New York in April 2006.  The ratings themselves were not issued until June 27, 2007, fifteen months later, and any representations to plaintiffs about the issuance of those ratings would have occurred at that time or thereafter.  In addition, the adverse developments in the residential real estate market, which plaintiffs rely on to argue that the defendants knew the June 27, 2007 ratings were inaccurate, also occurred well after April 2006.  There is simply no connection at all, let alone an articulable nexus or substantial relationship, between Mr. Ortseifen's early and very limited activity in New York and the claims in this case.

Mr. Ortseifen's activities in Germany also give no support to plaintiffs' attempt to assert jurisdiction over him here.  Not only did those activities have no relation to plaintiffs' conclusory allegation that he (as one of the "defendants") knew that the Rhinebridge credit ratings were false and misleading and used them to defraud the plaintiffs, but in addition, those activities were not New York transactions and did not constitute a purposeful availment by Mr. Ortseifen of the privilege of conducting business in New York.

Despite the extensive discovery proceedings that have been conducted in this action, including all of the jurisdictional discovery, there is no evidence to support the assertion of personal jurisdiction over Mr. Ortseifen.  Accordingly, this action and all claims asserted in it against him should be dismissed.

# POINT II

## THE AMENDED COMPLAINT FAILS TO
## STATE A CLAIM AGAINST MR. ORTSEIFEN

As an additional and independently sufficient ground for dismissing this action, the amended complaint fails to state a claim against Mr. Ortseifen.  This ground was raised in the prior motions but, due to the deferral of the jurisdictional issues, was not addressed in the Opinion and Order of May 4, 2010 (*see* court doc. 102, footnote 5).

Since plaintiffs' amended complaint does not attempt to cure any of the pleading deficiencies in their earlier complaints as to Mr. Ortseifen, the prior discussions of this ground for dismissal are incorporated by reference and only updated in the discussion below.

### 1.      The Amended Complaint Fails to State a Claim Against Mr. Ortseifen for Common Law Fraud

Like the original complaints, the amended complaint fails to give notice of any actions or statements by Mr. Ortseifen at all, let alone with the particularity required by Rule 9(b).  The few paragraphs in the amended complaint that refer to him individually do not even purport to allege any of the elements of a fraud cause of action.[6]  There is no allegation that Mr. Ortseifen made any representation to either of the plaintiffs; that any such representation was false; that he knew of the falsity of such representation or had the requisite <u>scienter</u>; that either of the plaintiffs relied on such representation; or that such reliance caused any damage.

#### (a)      The amended complaint does not identify any representation by Mr. Ortseifen.

None of the few paragraphs in the amended complaint that specifically refer to Mr. Ortseifen contains any allegation about any representations made by him.  In attempting to

_____

[6]   The required elements of a claim for common law fraud are discussed in Mr. Ortseifen's prior memoranda (*see* King County court document 53, p. 19, and Iowa court document 80, pp. 20-22).

justify the lack of any allegations concerning Mr. Ortseifen specifically, plaintiffs have argued in response to his prior motions that allegations concerning "defendants" and "IKB" are sufficient to snag him in their net under the "group pleading doctrine."  However, for the reasons discussed at length in those prior motions (*see, e.g.*, court document 80 in 1:09-cv-08822, pp. 22-24), the group pleading doctrine does not apply to Mr. Ortseifen, and would not in any event be a substitute for all of the elements of a fraud claim that plaintiffs have failed to allege against him.

The group pleading doctrine, when it applies at all, applies only to parties that had "active daily roles" and "direct involvement" in the alleged fraud (*380544 Can., Inc. v. Aspen Tech., Inc.*, 544 F. Supp. 2d 199, 218 (S.D.N.Y. 2008); *SEC v. Collins & Aikman Corp.*, 524 F. Supp. 2d 477, 489 (S.D.N.Y. 2007)).  Here, the evidence demonstrates that Mr. Ortseifen did not have such involvement.  In particular, the PPM containing the representations on which plaintiffs rely was not written by, reviewed by, submitted to, or approved by, Mr. Ortseifen.  The PPM does not refer to Mr. Ortseifen at all and does not attribute any statements to him.

As clearly stated in the PPM, "This USCP private placement memorandum has been prepared <u>by the Issuers</u>" (Wiswall Supp. Aff., Ex. K, PPM, p. 25, emphasis added, see also p. viii).  The "Issuers" are defined in the document as Rhinebridge PLC and Rhinebridge LLC (*see eg.*, PPM, p. i).[7]

---

[7]  The PPM does not attribute any statements to IKB AG either.  Even with regard to IKB CAM, referred to in the PPM as the "Manager," the document states that IKB CAM "accepts responsibility for the information contained in the section 'Description of the Manager'" (PPM, p. viii), but that IKB CAM expressly disclaims responsibility for any other statements:

> No representation, warranty or undertaking, express or implied, is made and no responsibility or liability is accepted by the Manager as to the accuracy or completeness of any information contained in this USCP Private Placement Memorandum (other than the Manager Information) or any other information supplied in connection with the USCP notes or their distribution.

On April 27, 2010, after the filing of Mr. Ortseifen's previous motions to dismiss, the Second Circuit issued its decision in *Pacific Investment Company LLC v. Mayer Brown LLP*, 603 F.3d 144 (2d Cir. 2010).  In the *Pacific Investment* case, plaintiff sought to hold the Mayer Brown law firm liable for alleged misrepresentations in documents prepared by Mayer Brown and Joseph Collins, one of its individual attorneys, on behalf of its client, Refco, Inc.  Mayer Brown attorneys allegedly reviewed and revised portions of the offering memorandum and attended drafting sessions.  Despite that participation, however, the Court noted that "[n]one of the documents specifically attribute any of the information contained therein to Mayer Brown or Collins" *Id.* at 150.  The Second Circuit discussed at length the need for explicit attribution in securities fraud actions and dismissed the claims against Mayer Brown and Collins:

> To be cognizable, a plaintiff's claim against a secondary actor must be based on that actor's own 'articulated statement,' or on statements made by another that have been *explicitly* adopted by the secondary actor.

*Id.* at 155, emphasis in original.  The Second Circuit rejected alternative standards that would impose liability based on who "created' or "substantially participated in" the documents. According to the Court, "those who sign or otherwise allow a statement to be attributed to them expose themselves to liability.  Those who do not are beyond the reach of Rule 10b-5's private right of action."  *Id.* at 157.

The differences between the *Pacific Investment* case and the instant case show that plaintiffs' position here is even weaker than that of the plaintiffs there.  Here, plaintiffs rely on common law fraud rather than Rule 10b-5.  As a matter of pleading, under Fed. R. Civ. P., Rule 9(b), common law fraud is singled out as a claim for which particularity in pleading is

---

(PPM, p. viii).  The "Manager Information" contains no representation as to the ratings of which plaintiffs complain (PPM, pp. 32-36).  Thus, the representations at issue are not attributable even to IKB AG or IKB CAM, let alone Mr. Ortseifen.

required.  Moreover, with regard to proof, common law fraud requires "clear and convincing" evidence, as to each defendant, that (among other elements) the defendant specifically made the misrepresentation complained of and the plaintiff reasonably relied on it.  *See Callisto Pharm., Inc. v. Picker*, 74 A.D.3d 545, 903 N.Y.S.2d 370 (1st Dep't 2010); *Biosafe-One, Inc. v. Hawks*, 639 F. Supp. 2d 358 (S.D.N.Y. 2009).

A plaintiff's burden in a common law fraud action is greater than in a Rule 10b-5 action.  "[P]roof of the type of 'fraud' required to establish violation" of Rule 10b-5 "is less than the rigid standards established by common law."  *Lerman v. Tenney*, 295 F. Supp. 780, 783 (S.D.N.Y. 1969) (*citing SEC v. Capital Gains Research Bureau*, 375 U.S. 180, 191-92 (1963)).  *Accord*, *Weinberger v. Kendrick*, 698 F.2d 61, 78 (2d Cir. 1982) ("[R]ule 10b-5 is procedurally more advantageous and substantively broader than the common law [of fraud].")  *See also, Spector v. Wendy*, 63 A.D.3d 820, 822, 881 N.Y.S.2d 465, 467 (2d Dep't 2009) and *Pope v. Saget*, 29 A.D.3d 437, 817 N.Y.S.2d 1 (1st Dep't 2006).

In addition, while Mayer Brown was alleged to have co-authored the misrepresentations at issue in the *Pacific Investment* case, Mr. Ortseifen had no involvement in making the representations complained of in the instant case.  He was not among the dozens of individuals who had a role in the preparation, review, and approval of the PPM and, unlike Mayer Brown, he was not named in that document in any capacity.  Mr. Ortseifen was neither a primary nor a secondary actor in the sale of the Rhinebridge notes to plaintiffs.  Indeed, he was not an actor in those sales transactions to any degree.  Thus, all of the statements in the *Pacific Investment* case apply with greater force to plaintiffs' claims here than they did to the claims against Mayer Brown.

>    **(b)** **The amended complaint does not allege that any representation by Mr. Ortseifen was false**

As discussed above, the amended complaint does not identify any representations by Mr. Ortseifen specifically.  None of the representations allegedly made by other parties can be vicariously attributed to him, due to the inapplicability of the group pleading doctrine, the wording of the PPM, and Mr. Ortseifen's lack of day-to-day involvement in the marketing of the Rhinebridge notes.  Because he himself made no representations and there is no allegation or evidence to the contrary, the amended complaint also does not and cannot allege that any such non-existent representation by Mr. Ortseifen was false.

>    **(c)** **The amended complaint does not allege that Mr. Ortseifen had the necessary <u>scienter</u> for common law fraud**

The amended complaint also fails to allege that Mr. Ortseifen possessed the <u>scienter</u> required for a fraud claim.  No specific facts are alleged in support of that necessary element.  Moreover, despite the large quantity of discovery materials that have been generated, no evidence can be presented to support <u>scienter</u> on the part of Mr. Ortseifen.  Finally, that element of <u>scienter</u> is emphatically contradicted by Mr. Ortseifen's affirmations (Ortseifen Aff. of 9/8/10, ¶ 16; Ortseifen Aff. of 3/15/10, ¶¶ 6-7; Ortseifen Aff. of 3/23/10, ¶¶ 31-32).

Plaintiffs' allegations that other defendants had knowledge that the Rhinebridge credit ratings were "false and misleading" are based on the premise that those defendants collaborated with the rating agencies to produce the ratings in question.  With regard to Mr. Ortseifen however, there is not only no specific <u>allegation</u> of any collaboration by him with the rating agencies; the extensive discovery proceedings have not revealed any <u>evidence</u> of such collaboration; and Mr. Ortseifen has expressly denied having any material and relevant contact with the rating agencies, let alone "collaboration" about their ratings (Ortseifen Aff. of 9/8/10, ¶ 16).  Mr. Ortseifen had neither the motivation nor the opportunity to commit the fraud alleged

by plaintiffs.  In particular, Mr. Ortseifen's positions on the Executive Board of IKB AG and the

Advisory Board of IKB CAM are not sufficient to support <u>scienter</u>.  See pp. 23-24 of Mr.

Ortseifen's memorandum of March 23, 2010 (court document 80 in 1:09-cv-08822).

**(d)     The amended complaint does not allege that plaintiffs relied on any representation by Mr. Ortseifen.**

Whether or not the plaintiffs read and relied on the statements in the PPM that

they now criticize, those statements were not made by Mr. Ortseifen and are not vicariously

attributable to him.  Plaintiffs have failed to allege, and can produce no evidence, that they relied

on anything done or said by him, fraudulent or otherwise.  Since he is not mentioned in the PPM

in any capacity, plaintiffs' claimed reliance on the PPM does not satisfy the requirement that

they allege reasonable reliance on misrepresentations made <u>by Mr. Ortseifen</u>.  In *Pacific*

*Investment, supra.*, the Second Circuit concluded that attribution of an alleged written

misrepresentation to a defendant author "is necessary to show reliance."  "Without explicit

attribution" to the defendant, the Court reasoned, "reliance on [his] participation can only be

shown through 'an indirect chain . . . too remote for liability.'"  *Pacific Investment*, 603 F.3d at

156 (*quoting Stoneridge Inv. Partners v. Scientific-Atlanta, Inc.*, 552 U.S. 148 at 159).  Because

the representations at issue in that case did not attribute authorship to Mayer Brown or Collins,

the plaintiffs could not "show reliance" upon them.  *Pacific Investment*, 603 F.3d at 158.

Similarly here, none of the alleged misrepresentations are attributed (or attributable) to Mr.

Ortseifen.  The lack of any allegation or evidence to support reliance is fatal to plaintiffs' claims

against him.

- 21 -

> (e) **The amended complaint does not allege that any representation by Mr. Ortseifen caused any damage to plaintiffs**

Plaintiffs' conclusory allegations as to causation and damage are perhaps their vaguest allegations of all (amended complaint ¶ 220, 224, 228, 232, 236).  With particular regard to Mr. Ortseifen, given that the amended complaint fails to sufficiently allege any representation, falsity, *scienter*, or reliance, plaintiffs' fleeting references to causation and damage lack any foundation and are necessarily also insufficient.

Nowhere in any of plaintiffs' voluminous pleadings is any claim for fraud stated against Mr. Ortseifen.  Accordingly, this action and all claims asserted in it against him should be dismissed.

> 2. **The Amended Complaint Fails to State a Claim Against Mr. Ortseifen for Aiding and Abetting any Alleged Wrong by the Other Defendants**

Like their fraud claim, plaintiffs' new "Count IV," referring to an aiding and abetting theory, fails to state a claim against Mr. Ortseifen.  Although the amended complaint pays lip service to the elements of an aiding and abetting theory, it continues plaintiffs' prior failures to give notice of any acts or statements by Mr. Ortseifen specifically.

The amended complaint asserts only that "Stefan Ortseifen knew of each of the defendants' violations of laws and substantially assisted in such violations" (amended complaint ¶ 231).  However, neither the aiding and abetting count, nor any other part of the amended complaint, alleges any facts that plausibly show that Mr. Ortseifen had knowledge that the ratings themselves, or any representations about them, were fraudulent, or how, where, when, why, or by what means he gave substantial assistance to the alleged fraud.

As recently stated by the U.S. Supreme Court in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555, (2007), "a plaintiff's obligation to provide the 'grounds' of his

'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level" (citations omitted).  Even more recently, in *Ashcroft v. Iqbal*, ___ U.S. ___, ____ 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868, 884 (2009), the Supreme Court reiterated:

> The tenet that a court must accept as true all of the allegations
> contained in a complaint is inapplicable to legal conclusions.
> Threadbare recitals of the elements of a cause of action, supported
> by mere conclusory statements, do not suffice . . . . While legal
> conclusions can provide the framework of a complaint, they must
> be supported by factual allegations.

To state a claim pursuant to New York law for aiding and abetting the supposed tortious conduct of others, plaintiffs "must establish:  (1) the existence of a violation by the primary wrongdoer; (2) knowledge of the violation by the aider and abettor; and (3) proof that the aider and abettor substantially assisted the primary wrongdoer."  *Chemtex, LLC v. St. Anthony Enters.*, 490 F. Supp. 2d 536, 546 (S.D.N.Y. 2007) (*citing Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006)).  *Accord, Pittman by Pittman v. Grayson*, 149 F.3d 111, 122-23 (2d Cir. 1998) (*citing* RESTATEMENT (SECOND) OF TORTS § 876); and *In re Bayou Hedge Funds Inv. Litig.*, 472 F. Supp. 2d 528, 532 (S.D.N.Y. 2007).[8]  Even assuming that the amended complaint alleges fraud on the part of defendants other than Mr. Ortseifen, it fails to state a claim against him for aiding and abetting that alleged fraud, for at least two reasons.

First, the amended complaint does not allege any facts that would make it plausible to conclude that Mr. Ortseifen had actual knowledge of the alleged fraud.  "New York law requires that [an] aider and abettor have 'actual,' as opposed to merely constructive,

---

[8] The law of Iowa is in accord.  *See Tubbs v. United Cent. Bank, N.A.*, 451 N.W.2d 177, 182 (Iowa 1990).  The courts of the State of Washington do not appear to have addressed whether a civil claim for "aiding and abetting" is available under the common law of that state.

knowledge of the primary wrong." *Chemtex, LLC v. St. Anthony Enters., Inc.*, 490 F. Supp. 2d at 546. As such, "pleading knowledge for purposes of an aiding and abetting claim requires allegations of facts that give rise to a 'strong inference' of actual knowledge." *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt.*, 479 F. Supp. 2d 349, 367 (S.D.N.Y. 2007) (*quoting Lerner v. Fleet Bank, N.A.*, 459 F.3d at 293).

The amended complaint fails to specify whether or how Mr. Ortseifen had knowledge of what representations were being made by other parties, let alone knowledge of any fraudulent purpose. Absent any assertion as to Mr. Ortseifen's knowledge of "the wrongful nature of [the co-defendants'] conduct," the amended complaint fails to state how Mr. Ortseifen could have intentionally aided or abetted that unknown wrongful conduct.

Second, the amended complaint does not specify how Mr. Ortseifen supplied "substantial assistance" to the co-defendants in their alleged efforts to defraud the plaintiffs. "A defendant provides substantial assistance only if [he] 'affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables the fraud to proceed.' . . . Mere inaction is insufficient . . . unless the defendant has an independent duty to the plaintiff." *Chemtex, LLC v. St. Anthony Enters., Inc.*, 490 F. Supp. 2d at 547 (*quoting, in part, Diduck v. Kaszycki & Sons Contractors*, 974 F.2d 270, 284 (2d Cir. 1992)) (internal brackets omitted). "In the aiding and abetting context," the plaintiff survives a motion to dismiss only if the complaint has alleged "that the defendant's substantial assistance in the primary violation proximately caused the harm on which the primary liability is predicated." *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d at 370-71.

Once again, the amended complaint fails to satisfy the required standard. It does not "identify a single affirmative act by" Mr. Ortseifen "that assisted, let alone substantially

assisted," the fraud that the plaintiffs allege. *In re Bayou Hedge Funds Inv. Litig.*, 472 F. Supp. 2d at 533. The amended complaint merely asserts that Mr. Ortseifen "knew of each of the defendants' violations of laws and substantially assisted in such violations." (am. cplt., ¶ 231). This empty conclusion, lacking the support of specific factual allegations, is insufficient.[9] *See, e.g.*, *In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 801 (S.D.N.Y. 2005) ("There must be some facts [in the complaint] to support an inference that the defendant knowingly provided assistance or encouragement to the wrongdoer."); *Marine Midland Bank v. Smith*, 482 F. Supp. 1279, 1290 (S.D.N.Y. 1979) (same), *aff'd*, 636 F.2d 1202 (2d Cir. 1980).

Because the amended complaint nowhere states how Mr. Ortseifen either knew about, or substantially assisted in, any fraud against the plaintiffs, Count IV, like Count I, fails to state a claim against him and should be dismissed.

## CONCLUSION

Based on the reasons, legal authorities, and evidence discussed above and in Mr. Ortseifen's previous motions to dismiss, this action should be dismissed as against him pursuant to Federal Rules of Civil Procedure, Rules 8(a), 9(b), 12(b)(2) and 12(b)(6).

Dated: Buffalo, New York
        September 13, 2010

---

[9] Plaintiffs' strategy of lumping Mr. Ortseifen together with co-defendants Winfried Reinke, IKB AG and IKB CAM (*see* am. cplt., ¶ 21) does not fulfill plaintiffs' burden to set forth Mr. Ortseifen's particular role. When a complaint fails to allege the elements of a claim for aiding and abetting "with respect to specific defendants and specific independent claims" against each defendant, it is subject to dismissal. *Am. Bldg. Maint. Co. v. ACME Prop. Servs.*, 515 F. Supp. 2d 298, 321 (N.D.N.Y. 2007). *See also* footnote 3, *supra*.

Respectfully submitted,


PHILLIPS LYTLE LLP


By _____/s/  Thomas S. Wiswall_____
          Thomas S. Wiswall
*Attorneys for Defendant Stefan Ortseifen*
3400 HSBC Center
Buffalo, New York  14203-2887
Telephone No.:  (716) 847-8400

Of Counsel:   Wolfgang Nockelmann
                      Craig R. Bucki


Doc # 01-2390948.4