UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

KING COUNTY, WASHINGTON, et al.,
Individually and on Behalf of All Others
Similarly Situated,

                   Plaintiffs,

      vs.

IKB DEUTSCHE INDUSTRIEBANK AG, et
al.,

                Defendants.

———————————————————— x

:   Master File No. 1:09-cv-08387-SAS
:   **(Consolidated)**
:
:   <u>CLASS ACTION</u>
:
:   PLAINTIFFS' MEMORANDUM OF LAW
:   IN OPPOSITION TO DEFENDANT
:   WINFRIED REINKE'S MOTION TO
:   DISMISS FOR LACK OF JURISDICTION
:   AND FAILURE TO STATE A CLAIM
:
:   **[REDACTED]**
:

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND FACTUAL BACKGROUND ....................................................1

II.   THE COURT HAS PERSONAL JURISDICTION OVER REINKE ..............................2

    A.    Legal Standard for Motion to Dismiss Under Rule 12(b)(2) ..................................2

    B.    Personal Jurisdiction Is Appropriate Under N.Y.C.P.L.R. §302(a)(1) ...................4

        1.    Through His Involvement in the Rhinebridge SIV, Reinke Purposely Transacted Business in New York ...............................................4

            a.    Reinke Was the Person "Responsible" for the Rhinebridge SIV ..................................................................................................4

            b.    Reinke Traveled to New York in Furtherance of the Rhinebridge Fraud ...........................................................................6

            c.    The Rhinebridge Fraud Was Perpetrated in New York .................8

        2.    Plaintiffs' Claims Arise Out of Reinke's Business Transactions in New York .........................................................................................13

    C.    Reinke's Assertion that Plaintiffs' Fraud Claim "Did Not Arise Out of New York" Is Also Meritless ........................................................................15

    D.    IKB Cam's Acts in New York Are Properly Attributable to Reinke ...................15

    E.    Due Process Is Satisfied .......................................................................................16

III.  THE COMPLAINT ADEQUATELY ALLEGES FRAUD AND AIDING AND ABETTING CLAIMS AGAINST REINKE ...............................................................18

    A.    Legal Standard on a Motion to Dismiss Under Rule 12(b)(6) .............................18

        1.    The False Ratings Are Attributable to Reinke Under the Group Pleading Doctrine .................................................................................18

        2.    The Complaint's Allegations Give Rise to a Strong Inference of Scienter ........................................................................................21

            a.    The Complaint Alleges Reinke's Conscious Misbehavior and Recklessness ...............................................................................21

            b.    Reinke Also Had Motive and Opportunity to Commit Fraud .......23

**Page**

    B.    The Complaint Also Sufficiently Pleads a Claim Against Reinke for
        Aiding and Abetting.........................................................................................24

IV.    CONCLUSION...................................................................................................25

582303_1

# TABLE OF AUTHORITIES

**Page**

## CASES

*380544 Can. Inc. v. Aspen Tech., Inc.*,
    544 F. Supp. 2d 199 (S.D.N.Y. 2008)..................................................................20

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*,
    651 F. Supp. 2d 155 (S.D.N.Y. 2009)........................................................ *passim*

*Ashcroft v. Iqbal*,
    __ U.S. __, 129 S. Ct. 1937 (2009)...................................................................18

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*,
    902 F.2d 194 (2d Cir. 1990)...............................................................................3

*Banco Ambrosiano, S.p.A. v. Artoc Bank & Trust, Ltd.*,
    476 N.Y.S.2d 64 (1984)....................................................................................16

*Beatie & Osborn LLP v. Patriot Sci. Corp.*,
    431 F. Supp. 2d 367 (S.D.N.Y. 2006)..................................................................3

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..........................................................................................18

*Best Van Lines, Inc. v. Walker*,
    490 F.3d 239 (2d Cir. 2007)...............................................................................4

*Chloe v. Queen Bee of Beverly Hills, LLC*,
    616 F.3d 158 (2d Cir. 2010)..............................................................................17

*Cromer Fin., Ltd. v. Berger*,
    137 F. Supp. 2d 452 (S.D.N.Y. 2001)...........................................................17, 18

*Ehrenfeld v. Mahfouz*,
    489 F.3d 542 (2d Cir. 2007)...............................................................................3

*Ganino v. Citizens Utils. Co.*,
    228 F.3d 154 (2d Cir. 2000)..............................................................................23

*Houbigant, Inc. v. Dev. Specialists, Inc.*,
    229 F. Supp. 2d 208 (S.D.N.Y. 2002)...........................................................15, 16

*Hypoxico, Inc. v. Colo. Altitude Training LLC*,
    No. 02 Civ. 6191(JGK), 2003 WL 21649437
    (S.D.N.Y. July 14, 2003) ..................................................................................15

- iii -

**Page**

*In re Adaptive Broadband Sec. Litig.*,
    No. C 01-1092 SC, 2002 WL 989478
    (N.D. Cal. Apr. 2, 2002) ...................................................................................22

*In re Cardiac Devices Qui Tam Litig.*,
    221 F.R.D. 318 (D. Conn. 2004), *rev'd in part on other grounds*,
    469 F.3d 263 (2d Cir. 2006) ............................................................................19

*In re Cross Media Mktg. Corp. Sec. Litig.*,
    314 F. Supp. 2d 256 (S.D.N.Y. 2004) .............................................................20

*In re eSpeed, Inc. Sec. Litig.*,
    457 F. Supp. 2d 266 (S.D.N.Y. 2006) .........................................................21, 22

*In re JPMorgan Chase Sec. Litig.*,
    363 F. Supp. 2d 595 (S.D.N.Y. 2005) .............................................................21

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*
    No. 1:00-1898, 2005 WL 106936
    (S.D.N.Y. Jan. 18, 2005) ............................................................................17, 18

*In re Nortel Networks Corp. Sec. Litig.*,
    238 F. Supp. 2d 613 (S.D.N.Y. 2003) .............................................................21

*In re Scholastic Corp. Sec. Litig.*,
    252 F.3d 63 (2d Cir. 2001) ..............................................................................21

*Institutional Investors Group v. Avaya, Inc.*,
    564 F.3d 242 (3d Cir. 2009) ............................................................................23

*Kernan v. Kurz-Hastings, Inc.*,
    175 F.3d 236 (2d Cir. 1999) ...........................................................................3, 7

*Kreutter v. McFadden Oil Corp.*,
    527 N.Y.S.2d 195 (1988) .........................................................................3, 4, 13

*Ley v. Visteon*,
    543 F.3d 801 (6th Cir. 2008) ...........................................................................22

*Marvel Worldwide, Inc. v. Kirby*,
    No. 10 Civ. 141(CM)(KNF), 2010 WL 1655253
    (S.D.N.Y. Apr. 14, 2010) .................................................................................17

**Page**

*Merck Eprova AG v. Gnosis S.p.A.*,
No. 07 Civ. 5898 (RJS), 2008 WL 5336587
(S.D.N.Y. Dec. 12, 2008)................................................................17

*Middlesex Ret. Sys. v. Quest Software, Inc.*,
No. 06-6863 DOC (RNBx), 2008 WL 7084629
(C.D. Cal. July 10, 2008) ................................................................22

*Min Jin v. Metro. Life Ins. Co.*,
310 F.3d 84 (2d Cir. 2002)................................................................25

*Norton v. Sam's Club*,
145 F.3d 114 (2d Cir. 1998)................................................................24

*Novak v. Kasaks*,
216 F.3d 300 (2d Cir. 2000)................................................................21

*PDK Labs v. Friedlander*,
103 F.3d 1105 (2d Cir. 1997)................................................................12

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
No. 05 Civ. 9016(SAS), 2006 WL 559811
(S.D.N.Y. Mar. 7, 2006) ................................................................3

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of America Sec., LLC*,
652 F. Supp. 2d 495 (S.D.N.Y. 2009)................................................................24

*Rothman v. Gregor*,
220 F.3d 81 (2d Cir. 2000)................................................................23

*SEC v. Espuelas*,
579 F. Supp. 2d 461 (S.D.N.Y. 2008)................................................................20

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*,
450 F.3d 100 (2d Cir. 2006)................................................................3, 8

*Svezzese v. Duratek, Inc.*,
No. CIV.A. MJG-01-CV-1830, 2002 WL 1012967
(D. Md. Apr. 30, 2002) ................................................................23

*Taberna Capital Mgmt., LLC v. Dunmore*,
No. 08 Civ.1817(JSR), 2008 WL 2139135
(S.D.N.Y. May 20, 2008)................................................................11, 12

- v -

582303_1

**Page**

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007).............................................................................24

*United States ex rel. Johnson v. Shell Oil Co.*,
    183 F.R.D. 204 (E.D. Tex. 1998)..........................................................19

*Vera v. Cushman & Wakefield, Inc.*,
    320 F. Supp. 2d 114 (S.D.N.Y. 2004)...................................................14

*Wickers Sportswear, Inc. v. Gentry Mills, Inc.*,
    411 F. Supp. 2d 202 (E.D.N.Y. 2006) ....................................................3

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980).................................................................................4

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
    Rule 9(b) ..........................................................................................18, 19
    Rule 12(b)(2)...........................................................................................2
    Rule 12(b)(6).........................................................................................18
    Rule 15(a)(2)..........................................................................................25
    Rule 30(b)(6).....................................................................................5, 16

New York Civil Practice Law and Rules
    §302(a)(1) ......................................................................................*passim*

## I.      INTRODUCTION AND FACTUAL BACKGROUND

Prior to the start of the Class Period, defendant IKB Deutsche Industriebank AG ("IKB Bank") was on the brink of insolvency, as it had billions of dollars in toxic, mortgage-backed assets weighing down its balance sheet.[1] ¶126.[2] With its financial survival on the line, IKB Bank devised a scheme to create and market a financial vehicle, the Rhinebridge SIV, to which IKB Bank could sell its own toxic assets at prices it could never achieve by selling them on the open market. *Id.*



*See* Ex. 1 at 32:8-33:18, 34:5-35:1.[3]

Ex. 2 at 46:24-47:2.[4]

*See* Ex. 3 at IKB000122181; Ex. 2 at 51:18-21; Ex. 4 at 85:24-86:4.

---

[1]      The "Class Period" is from June 1, 2007 through October 18, 2007.  ¶170.

[2]      Unless otherwise noted, all "¶" or "¶¶" references are to the First Amended Consolidated Complaint for Violations of New York State Law ("Complaint"), filed June 10, 2010.

[3]      Unless otherwise noted, all "Ex." references are to the Declaration of Jessica T. Shinnefield in Support of Plaintiffs' Opposition to Defendant Winfried Reinke's Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim.

[4]      Unless otherwise noted, all emphasis is added and citations are omitted throughout.



*See* Ex. 4 at 50:11-16, 52:22-53:21; Ex. 1 at 51:5-52:13.

Ex. 5; Ex. 1 at

78:20-79:9.

Ex. 1 at 84:17-22.

Ex. 6.

Ex. 1 at 84:23-85:11.

Reinke's motion to dismiss should be

denied.

## II.   THE COURT HAS PERSONAL JURISDICTION OVER REINKE

### A.   Legal Standard for Motion to Dismiss Under Rule 12(b)(2)

On a Fed. R. Civ. P. 12(b)(2) motion to dismiss filed after the completion of jurisdictional

discovery, "the plaintiff's *prima facie* showing, necessary to defeat a jurisdiction testing motion,

must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction

---

[5]    The "Rating Agency defendants" or "Rating Agencies" refers to The McGraw Hill Companies, Inc., Moody's Investors Service, Inc., Moody's Investors Service Limited and Fitch, Inc.

over the defendant." *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990). At this procedural posture, the Court is to accept plaintiffs' averment of jurisdictional facts as true. *See Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 240 (2d Cir. 1999) ("Where, as here, no evidentiary hearing has been held but the parties have conducted extensive discovery into the . . . defendant's contacts with the forum state . . . we accept as true all of [plaintiff's] averments of jurisdictional facts.").

In New York, federal courts apply a two-part inquiry to determine whether a defendant is subject to personal jurisdiction: "(1) the plaintiff must demonstrate that the defendant is subject to jurisdiction under New York law; and (2) this exercise of jurisdiction must comport with constitutional due process requirements." *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, No. 05 Civ. 9016(SAS), 2006 WL 559811, at *3 (S.D.N.Y. Mar. 7, 2006).

To satisfy the first inquiry, which is governed by §302(a)(1) of the N.Y.C.P.L.R., (1) the defendant must have "transacted business" in New York, and (2) "the claim asserted must arise from that business activity." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006). A non-domiciliary transacts business under §302(a)(1) when he purposely avails himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws. *Beatie & Osborn LLP v. Patriot Sci. Corp.*, 431 F. Supp. 2d 367, 387 (S.D.N.Y. 2006). Importantly, it is the nature and quality, and not the amount, of New York contacts that determine purposeful activity. May 4, 2010 Opinion and Order (Dkt. 102) at 13; *see also Wickers Sportswear, Inc. v. Gentry Mills, Inc.*, 411 F. Supp. 2d 202, 208 (E.D.N.Y. 2006). Indeed, §302(a)(1) is a "'single act statute,'" meaning "proof of *one* transaction in New York is sufficient to invoke jurisdiction." *Kreutter v. McFadden Oil Corp.*, 527 N.Y.S.2d 195, 198-99 (1988); *see also Ehrenfeld v. Mahfouz*, 489 F.3d 542, 548 (2d Cir. 2007). Plaintiffs' claim "arise[s] out of" the

- 3 -

business activity where "there is a substantial relationship between the transaction and the claim asserted." *Kreutter*, 527 N.Y.S.2d at 198-99.

To fulfill the second inquiry, the exercise of jurisdiction over the defendant must comport with constitutional principles of due process. *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 243-44 (2d Cir. 2007). This means the defendant must have had such "minimum contacts" with New York that "maintenance of the suit 'does not offend "traditional notions of fair play and substantial justice,"'" and such that he "should reasonably anticipate being haled into court" in New York. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 297 (1980).

### B. Personal Jurisdiction Is Appropriate Under N.Y.C.P.L.R. §302(a)(1)

#### 1. Through His Involvement in the Rhinebridge SIV, Reinke Purposely Transacted Business in New York



*See* Ex. 4 at 66:22-67:4.

Ex. 2 at 46:24-47:2; *see also id.* at 46:2-11

Ex. 1 at 33:8-33:18, 34:5-35:1.

582303_1

██████████████████████████████████████████████████████████ *Id.* at 23:7-9,

23:22-24:2. ██████████████████████████████████████████

██████████████████████████████████████████████████ *Id*. at

36:21-25; Ex. 2 at 78:6-9. ██████████████████████████████

████████████████████████████████████████████████████████████

██████ Ex. 2 at 78:1-12. ████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████ *Id*. at 46:24-47:2.

████████████████████████████████████████████

████████████████████████████████████ *Id.* ████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████ *Id*.

at 51:18-52:2. ██████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████ *See* Ex. 3; *see also* Ex. 2 at 51:18-21. ████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████ *See* Ex. 4 at

85:24-86:4; *see also* Ex. 3 at IKB000122181.  The Complaint alleges that the toxic assets held in

Rhinebridge contributed to the SIV's false credit ratings.  *See, e.g.*, ¶121.

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████



Ex. 2 at 50:11-16. ███████████████████████████████

████████████████████████ *Id.* at 52:22-53:21. █████████████████

█████████████████████████████████████████████████████████████

██████ *See* Ex. 1 at 51:5-52:13. ████████████████████████████

█████████████████████████████████████████████████████████████

      **b.**    **Reinke Traveled to New York in Furtherance of the Rhinebridge Fraud**

████████████████████████████████████████████████████████████ *Id.* at 3. █████

████████████████████████████████████████████████████████████

*See* Ex. 2 at 66:16-67:3. █████████████████████████████████

███████████████████████████████████████████████ Ex. 5.

██████████████████████████████████████████████ Ex. 1 at 78:25-

79:5; *see also* Ex. 7.

████████████████████████████████████████████████████████████ Reinke MTD at 4. ███████████████████

█████████████████████████████████████████████████████████████

████████████████████ Ex. 1 at 84:8-10. ██████████████████████

█████████████████████████████████████████████████████████████

- 6 -



█████████████████████████████████████████ Ex. 5.  This evidence remains unrebutted. ██████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████ *See* Ex. 1 at 49:1-18. █████████████████████████████████████

████████████████████████████████████ *See* Ex. 4 at 99:23-100:3.

████████████████████████████████████████████████████

Ex. 1 at 84:17-22; *see also* Ex. 8. █████████████████████████

████████████████████ *See, e.g.*, Ex. 9 at S&P-IKB 0003702 ██████

████████████████████████████████████████████████████ Ex. 6. ████████████████

████████████████████████████████████████████████████

███████████████████ Ex. 1 at 84:23-85:11; *see also* Ex. 10. ███████████

██████████████████████████████████████ Ex. 1 at 88:3-8;

Ex. 10. ██████████████████████████ through which Reinke purposely

availed himself of the privilege of conducting activities within New York – subject Reinke to personal jurisdiction in New York. *Sole Resort*, 450 F.3d at 103.

### c.    The Rhinebridge Fraud Was Perpetrated in New York

The fraud at the heart of this case was perpetrated in New York. This Court held as much in asserting personal jurisdiction over the IKB entities. *See* May 4, 2010 Opinion and Order (Dkt. 102) at 20 (exercising personal jurisdiction over IKB because of "IKB's personal and direct contacts with New York").

*First*, the IKB defendants, including Reinke, used New York's sophisticated capital markets infrastructure to create and distribute the Senior Notes that plaintiffs purchased. The issuance, payment and ownership transfer machinery – enabling the creation and distribution of the Senior Notes – was located in New York.

For example, the IKB defendants arranged for Rhinebridge to enter into an agreement with a New York entity to issue the Senior Notes from New York, pursuant to a master note physically located in New York and governed by New York law. The Private Placement Memorandum ("PPM") provides that the Senior Notes "will be issued under a depositary agreement" between Rhinebridge and The Bank of New York's branch located at 101 Barclay Street, New York, New York 10286 ("BNY New York").[6] BNY New York holds the "Master Note" that represents the Senior Notes in New York.[7] Rhinebridge agreed that the "Master Note is a valid and binding

---

[6]    Ex. 11 at 88 ("The USCP Notes will be issued under a depositary agreement . . . ."); *see also id.* at 96 (securities "issued pursuant to, and [are] subject to the terms of" the Depositary Agreement). It should be noted the "Issuers" are both Rhinebridge PLC and Rhinebridge LLC. *See id.* at 2. Further, "The Bank of New York, as USCP Depositary" (*id.* at 88) refers to "The Bank of New York, a New York banking corporation at 101 Barclay Street, New York, New York 10286." *Id.* at 104. The PPM repeats this information on its final page (following page 160).

[7]    *See id.* at 5 ("The USCP Notes will be available in book-entry form represented by a Master Note (the 'Master Note') held by the USCP Depositary [the USCP Depositary being BNY New

- 8 -

obligation of the Issuers [both Rhinebridge PLC and Rhinebridge LLC]."  Ex. 11 at 94 (Form of

Master Note).  Rhinebridge further agreed to make all payments to investors through "Cede & Co.,

as nominee of The Depository Trust Company," a New York corporation.[8]  *Id*.  The Master Note is

"governed by, and construed in accordance with, the laws of the State of New York."  *Id.* at 96.

Both Rhinebridge entities signed the Master Note, with the "The Bank of New York, New York

Branch," as custodian of the Master Note signing as counterparty.  *Id.* at 94.  In short, the IKB

defendants created a note program located in New York.

     ***Second***, the IKB defendants further arranged for Rhinebridge to enter into agreements with

New York-based broker dealers in order to issue and sell the Senior Notes.  *See id.* at 41; Ex. 2 at

127:5-21.  ████████████████████████  *See* Ex. 2 at 52:22-53:21.  Rhinebridge

entered into a placement agreement with "Morgan Stanley & Co. Incorporated, Citigroup Global

Markets, Inc. and Goldman, Sachs & Co" (referenced herein as "Morgan Stanley," "Citigroup" and

"Goldman Sachs," respectively, and collectively as the "New York Broker Dealers").  Ex. 11 at 1.

Each of these entities is located in New York.  *Id.* at last page, following 160.  Indeed, as previously

discussed,  ████████████████████████████████████████

████████████████

     The IKB defendants used Rhinebridge to file documents with the SEC confirming the New

York Broker Dealers in fact offered and sold Senior Notes.  On or about the day Rhinebridge closed,

the IKB defendants notified the SEC that they would pay the New York Broker Dealers to make a

---

York, *see id.* at 94] as custodian and agent for The Depository Trust Company ('DTC') and recorded
in DTC's book entry system.").

[8]     *See id.* at 5; *see also id.* at iii (identifying DTC as a New York Corporation).

joint offering in New York.[9]  This notice to the SEC shows that IKB used Rhinebridge to solicit

investors in every state of the United States, including New York.  Ex. 12.  The New York Broker

Dealers offered to sell up to $20 billion in Senior Notes, and actually sold $2.216 billion in Senior

Notes on or about June 27, 2007, the day Rhinebridge was launched.  *Id*. at last page, Note 1.

Comparing this $2.216 billion amount of notes sold from New York to the "[l]aunch size [of]

USD2.4bn" set forth in the Fitch New Issue Report, over *92%* of the money IKB took in from

investors came directly from an offering and issuance conducted entirely in New York.  Ex. 13 at 1.

 *Third*, the IKB defendants further arranged for Rhinebridge to deliver both a draft and a final

PPM – containing the false Top Ratings – to the New York Broker Dealers to execute the Senior

Notes' offering and issuance.  ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████  These documents contain

the false "Top Ratings" the IKB defendants obtained and disseminated in collusion with the New

York based Rating Agencies.  ¶62.

 The IKB defendants communicated directly with the New York Broker Dealers on an

ongoing basis.  ███████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████  "Rhinebridge" could

communicate nothing and make no decisions on its own.  IKB "ha[d] undertaken" to manage all of

---

[9] The offering was made by both "Rhinebridge PLC and Rhinebridge LLC."  Ex. 12 at 1; *id.* at last page, Note 1 ("The offering was made together with Rhinebridge PLC . . . .") & Note 6 (same).

its operations.  Ex. 11 at 41.

**_Fourth_**, ███████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████ Again, "Rhinebridge" was a shell: IKB **_was_** the

"Rhinebridge team" that actually created and ran the SIV. ██████████████████████

██████████████████████████████████ The "instructions" that authorized the New York

Broker Dealers to close the Rhinebridge deal came from IKB, ██████████████████

 **_Lastly_**, the IKB defendants collaborated with the major U.S. Rating Agencies – defendants

Moody's, S&P and Fitch – to structure and produce Top Ratings for the Senior Notes.  All three

Rating Agencies are headquartered in New York.

 Because ████████████████████████████████ and because Rhinebridge was

purposely directed at New York, the Court should exercise personal jurisdiction over Reinke here.

Reinke is similarly situated to the individual defendants in _Taberna Capital Mgmt., LLC v._

_Dunmore_, No. 08 Civ.1817(JSR), 2008 WL 2139135 (S.D.N.Y. May 20, 2008).  There, as here, it

was alleged that the individual defendants had collaborated with others to create a New York

corporation for the purpose of defrauding others.  _Id_. at *2 ("the two individual defendants, working

together, concocted a fraud, and that the primary means of carrying out that fraud was the creation of

a New York corporation that would act as a type of front for the fraud").  There, the individual

defendants communicated outside New York with others to concoct a plan to place good assets

outside the reach of creditors in advance of filing for bankruptcy.  _Id_. at *1.  Here, Reinke facilitated

the transfer of over a billion dollars in bad assets to investors through the $2.216 billion New York

bond offering.

 In _Taberna Capital_, the plaintiff obtained a **_single e-mail_** between two California residents

- 11 -

after conducting jurisdictional discovery. *Id.* at *2. The e-mail contained bland language that the individual defendants' California legal advisors "'seem[ed] to like that [New York] venue better.'" *Id.* It was this decision to use New York as a situs for fraud that counted: "defendants and their agents purposely chose New York as the forum in which to incorporate the corporation that would serve as the foundation for their alleged fraud, and did so in order to receive the benefit of New York's laws as they carried out the scheme." *Id.* That same decision here dooms Reinke's motion to dismiss.

It is clear that Reinke participated in the creation and launch of Rhinebridge. *See supra*, §II.B.1.a. Plaintiffs allege that Rhinebridge was a fraud from the day it was launched. That fraud emanated from New York. Reinke and the other IKB defendants collaborated with the New York-headquartered Rating Agencies to structure and produce fraudulent Top Ratings for the Senior Notes. ¶2. Additionally, the IKB defendants caused Rhinebridge to enter into an agreement with a New York citizen, The Bank of New York, to issue the Senior Notes from New York. They designed the note program around the Master Note held in New York and governed by New York law. Importantly, the IKB defendants caused Rhinebridge – their shell company – to agree that the Master Note was a valid and binding obligation on Rhinebridge. The IKB defendants further caused Rhinebridge to enter into the Placement Agreement with New York citizens Morgan Stanley, Citigroup and Goldman Sachs to sell the Senior Notes, which they did. The IKB defendants and these New York Broker Dealers communicated directly with each other regarding solicitations and sales of the Senior Notes. Given these facts, Reinke is subject to personal jurisdiction in New York. *See Taberna Capital*, 2008 WL 2139135, at *2; *PDK Labs v. Friedlander*, 103 F.3d 1105, 1109 (2d Cir. 1997).

### 2.    Plaintiffs' Claims Arise Out of Reinke's Business Transactions in New York

Reinke's assertion that this Court lacks personal jurisdiction over him because plaintiffs' claims "do not arise from any business Reinke transacted in New York" is incorrect.  Reinke MTD at 13.  To the contrary, Reinke's business transactions in New York are substantially related to plaintiffs' claims, and therefore satisfy N.Y.C.P.L.R. §302(a)(1).  *Kreutter*, 527 N.Y.S.2d at 198-99.

Reinke attempts to downplay his contacts with New York by claiming that his meetings in New York in April 2006 and 2007 are only tenuously related to Rhinebridge.  *See* Reinke MTD at 14.  The facts clearly show, however, that these meetings were neither tenuous nor peripheral.  Nor were these meetings merely a "link in the chain of events leading up to the cause of action."  *Id.* at 15-16.



For example, as discussed *supra* at §II.B.1.c., █████████████████████████████ ██████████████████████████████████████████████████████████████████████ █████████████████████████████ Ex. 1 at 84:23-85:8. ████████████████ █████████████████████████████████████████████████ *See id*. at 88:3-8. ██████████████████████████████

████████████ Defendants' scheme to defraud investors by selling them Rhinebridge notes is precisely what this case is all about.  *See, e.g.*, ¶1 ("This case involves the sale and subsequent collapse of an investment fund known as 'Rhinebridge.'").  Moreover, the placement of the mezzanine and junior capital notes was a predicate to the SIV's launch.  Without the sale of the mezzanine and junior capital notes, the commercial paper could not have been issued.  Also, the SIV

- 13 -

was a single entity – and the Complaint alleges this entire Rhinebridge vehicle was a fraud.



As discussed *supra* at §II.B.1.b.

as one of the Complaint's central allegations is that "the inclusion of low-quality toxic mortgage-backed assets rendered the ratings false and misleading" (¶121), and that when Rhinebridge's "constituent assets became known, Rhinebridge was forced into receivership and the Senior Notes immediately collapsed in value." ¶14.[10]

Unable to refute this clear connection between plaintiffs' claims and

But this assertion is not factually supported

*See* Ex. 1 at 84:8-10.

Reinke MTD at 5; *see, e.g.*, *Vera v. Cushman & Wakefield, Inc.*, 320 F. Supp. 2d 114, 118 (S.D.N.Y. 2004) (refusing to consider plaintiff's affidavit containing new facts because plaintiff had

---

[10]

directly relate to the claims at the heart of plaintiffs' case, the cases Reinke cites where the defendants' business transactions in New York were merely "link[s] in the chain" of the fraud (*see* Reinke MTD at 15) are inapposite.

- 14 -

previously testified during her deposition that she had no recollection of those facts).  Because there is no factual support for Reinke's belated assertion that ███████████████████████████

████████████████████████████████████████████████████████████

███████████ Reinke MTD at 15-16.

### C. Reinke's Assertion that Plaintiffs' Fraud Claim "Did Not Arise Out of New York" Is Also Meritless

Reinke's assertion that basing personal jurisdiction over Reinke on §302(a)(1) is improper because plaintiffs' "claims did not arise in New York" is meritless.  Reinke MTD at 17-18.  As discussed *supra* at §II.B.1.c., the Rhinebridge fraud was perpetrated in and purposely directed at New York.  Moreover, in holding that defendants IKB Bank and IKB Cam are subject to personal jurisdiction in New York under §302(a)(1), the Court has already found that plaintiffs' claims arose in New York.  *See* May 4, 2010 Opinion and Order (Dkt. 102) at 18-19.  Accordingly, the Court should exercise personal jurisdiction over Reinke under §302(a)(1).

### D. IKB Cam's Acts in New York Are Properly Attributable to Reinke

IKB Cam's acts in New York are attributable to Reinke for personal jurisdictional purposes under §302(a)(1).  "Such jurisdiction can be asserted where the acts of the corporation are attributable to the representative on an agency theory." *Houbigant, Inc. v. Dev. Specialists, Inc.*, 229 F. Supp. 2d 208, 224 (S.D.N.Y. 2002).  As Reinke acknowledges, agency is properly found where (i) the corporation engaged in purposeful activity in New York, (ii) with the defendant's knowledge and consent and for his benefit, and (iii) the defendant exercised "'some control'" over the corporation. *Id.*; *see also Hypoxico, Inc. v. Colo. Altitude Training LLC*, No. 02 Civ. 6191(JGK), 2003 WL 21649437, at *3 (S.D.N.Y. July 14, 2003) (corporate officer subject to §302(a)(1) based on corporation's conduct).  This test is easily satisfied here.

*First*, in denying defendant IKB Cam's motion to dismiss for lack of personal jurisdiction,

- 15 -

the Court has already held that IKB Cam engaged in purposeful activity in the New York.  *See*

May 4, 2010 Opinion and Order (Dkt. 102) at 18-20.  ***Second***, as detailed *supra* at §II.B.1.a.-b.,



*See* Ex. 2 at 115:17-24, 117:15-18.

*Houbigant*, 229 F. Supp. 2d

at 224.

Ex. 2 at 46:2-6.[11]   Given these facts, IKB Cam's extensive actions in New York relating to

Rhinebridge are attributable to Reinke and provide an additional basis for exercising personal

jurisdiction over him under §302(a)(1).

> **E.   Due Process Is Satisfied**

Because, as discussed *supra* at §II.B.1.b., Reinke transacted business in New York under

§302(a)(1), he has sufficient "minimum contacts" with New York to satisfy constitutional due

process.  *See* May 4, 2010 Opinion and Order (Dkt. 102) at 20 ("Where personal jurisdiction is

appropriate under 302(a), the requirements of due process are met."); *see also Banco Ambrosiano,*

*S.p.A. v. Artoc Bank & Trust, Ltd.*, 476 N.Y.S.2d 64, 67 (1984) (by demonstrating a defendant is

subject to personal jurisdiction as a matter of New York law, it follows that due process is satisfied).

"Once minimum contacts are established," as they are here, "it is ***defendant's burden*** to

---

[11]    Because plaintiffs do not simply point to Reinke's title as CEO of IKB Cam to establish his knowledge of and control over Rhinebridge (Reinke MTD at 18), but specifically describe Reinke's involvement in and control over Rhinebridge, *see supra* at §II.B.1.a., the cases Reinke cites regarding agency theory are inapposite.  *See* Reinke MTD at 18-20.

'present a ***compelling case*** that the presence of some other considerations would render jurisdiction unreasonable.'" *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.* ("*MTBE*"), No. 1:00-1898, 2005 WL 106936, at *8 (S.D.N.Y. Jan. 18, 2005). As the Second Circuit explained in *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164-65 (2d Cir. 2010):

> [C]ourts must evaluate the following factors as part of this "reasonableness" analysis: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Id.* at 164. Reinke fails to present any case, much less a "compelling case," that exercising personal jurisdiction over Reinke is unreasonable here. *MTBE*, 2005 WL 106936, at *8.

**First**, while Reinke asserts that exercising personal jurisdiction over him is constitutionally unreasonable because the Court is located "almost 4,000 miles from his home" (*see* Reinke MTD at 21-22), this fact does not give rise to a "compelling case" of unreasonableness, as "[i]nconvenience relating almost exclusively to communication and travel does not implicate constitutional concerns." *See Merck Eprova AG v. Gnosis S.p.A.*, No. 07 Civ. 5898 (RJS), 2008 WL 5336587, at *7 (S.D.N.Y. Dec. 12, 2008). Moreover, as Reinke acknowledges, any claimed inconvenience to him as a result of litigating in New York can be mitigated through the use of modern technology, such as "telephonic and electronic communication." *See Marvel Worldwide, Inc. v. Kirby*, No. 10 Civ. 141(CM)(KNF), 2010 WL 1655253, at *9 (S.D.N.Y. Apr. 14, 2010). Nor can traveling to New York be too inconvenient for Reinke, as he ███████████████████████████████ ███████████

**Second**, New York has a "substantial interest" in protecting investors from frauds perpetrated through the use of its financial markets. *See Cromer Fin., Ltd. v. Berger*, 137 F. Supp. 2d 452, 479 (S.D.N.Y. 2001). And the fact that Reinke used New York agents to effectuate the fraud also

- 17 -

strengthens New York's interest in the case.  ***Third***, plaintiffs have an interest in adjudicating their claims against all of the defendants – who together are alleged to have perpetrated a common, fraudulent scheme – at the same time in the same forum.  ***Finally***, jurisdiction would be efficient here because the parties reside in various states and countries and the Southern District of New York provides a convenient forum and one with expertise in sophisticated financial frauds.  *Id.*  Therefore, asserting personal jurisdiction over Reinke is more than reasonable, and Reinke has failed to present a "compelling" case otherwise.  *MTBE*, 2005 WL 106936, at *8.

## III.   THE COMPLAINT ADEQUATELY ALLEGES FRAUD AND AIDING AND ABETTING CLAIMS AGAINST REINKE

### A.   Legal Standard on a Motion to Dismiss Under Rule 12(b)(6)

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) must be denied where, as here, the complaint "contain[s] sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009).  "Plausibility 'is not akin to a probability requirement'" and is satisfied "'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, 651 F. Supp. 2d 155, 170 (S.D.N.Y. 2009) (quoting *Ashcroft*, 129 S. Ct. at 1949).  Importantly, in making this determination, "the court must 'accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in the plaintiff's favor.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007)).  Here, the Complaint easily passes the plausibility test.

### 1.   The False Ratings Are Attributable to Reinke Under the Group Pleading Doctrine

To adequately plead the first element of common law fraud, a misrepresentation or omission of material fact, in compliance with Fed. R. Civ. P. 9(b), a complaint must:

- 18 -

> (1) specify the statements that the plaintiff contends were fraudulent; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent.

*In re Cardiac Devices Qui Tam Litig.*, 221 F.R.D. 318, 332 (D. Conn. 2004), *rev'd in part on other grounds*, 469 F.3d 263 (2d Cir. 2006). The Complaint exceeds Rule 9(b)'s requirements by alleging (1) that the "Top Ratings" for the Senior Notes were communicated to investors, (2) by Reinke and his co-defendants, (3) through a "commonly used investment platform provided by *Bloomberg*" and the PPM on each day throughout the Class Period, and (4) that such ratings conveyed false information about the SIV and the Senior Notes. ¶¶2-4, 69, 74, 77-79, 81. Given the nature and complexity of defendants' fraudulent scheme, these allegations satisfy Rule 9(b) – they provide notice to Reinke of the time, place, and content of his misrepresentations and the reasons those statements were false. *United States ex rel. Johnson v. Shell Oil Co.*, 183 F.R.D. 204, 207 (E.D. Tex. 1998).

Notwithstanding the Complaint's detailed allegations, Reinke urges dismissal, contending the Complaint fails to state a claim because it "contains no allegations specifying what Reinke is supposed to have done to defraud Plaintiffs," and instead attempts to satisfy plaintiffs' pleading burden by invoking the group pleading doctrine. Reinke MTD at 22. But, as the Court explained in *Abu Dhabi*, where, as here, "defendants are insiders or affiliates participating in the offer of securities . . . 'that reference to an offering memorandum satisfies 9(b)'s requirement of identifying time, place, speaker, and content of representation.'" *Abu Dhabi*, 651 F. Supp. 2d at 171.[12]

---

[12] As this Court recently held in a case strikingly similar to this one:

> [T]he group pleading doctrine provides an exception "'to the requirement that the fraudulent acts of each defendant be identified separately in the complaint.'" "[N]o specific connection between fraudulent representations in [an] [o]ffering [m]emorandum and particular defendants is necessary where, as here, defendants are insiders or affiliates participating in the offer of the securities in question." The

The Complaint puts Reinke on notice of this claim, and plainly alleges that he was an insider who put together a fraudulent investment vehicle and participated in the offering of its Senior Notes. As Reinke acknowledges, the group pleading doctrine applies to "'"corporate insiders with active daily roles in the relevant companies or transactions.'""" *See* Reinke MTD at 23 (quoting *In re Cross Media Mktg. Corp. Sec. Litig.*, 314 F. Supp. 2d 256, 263 (S.D.N.Y. 2004)). Here, Reinke played an active role in IKB Cam **and** the Rhinebridge transaction. As the CEO of IKB Cam, there is no doubt Reinke played an active role in the company. *See SEC v. Espuelas*, 579 F. Supp. 2d 461, 473 (S.D.N.Y. 2008) (applying group pleading doctrine to company's CEO); *see also 380544 Can. Inc. v. Aspen Tech., Inc.*, 544 F. Supp. 2d 199, 218-19 (S.D.N.Y. 2008) (same). Nor is there any doubt that Reinke was actively involved in the Rhinebridge transaction, as discussed *supra* at §II.B.1.a.

Reinke also argues that "Plaintiffs cannot rely on the group pleading doctrine" because the Complaint fails to "allege that Reinke personally dealt with the rating agencies concerning the ratings, provided information for inclusion in the Private Placement Memorandum, or had day-to-day involvement in the operation of IKB CAM's London branch." Reinke MTD at 23. This is simply incorrect. The Complaint specifically alleges that Reinke and the other IKB defendants "collaborated with the Rating Agencies and Morgan Stanley to structure Rhinebridge and create the Top Ratings" (¶24) and worked with the Rating Agencies "to determine how changes in the values of assets held by Rhinebridge would affect the manner in which Rhinebridge operated" (¶54). *See also* ¶¶208, 170. Additionally, ██████████████████████████

███████████████████████████████████████████████████████████

---

group pleading doctrine applies where group-published information, such as an offering memorandum, "are the collective work of those individuals with direct involvement in the everyday business of the company."
*Abu Dhabi*, 651 F. Supp. 2d at 177.

████████  *See* Ex. 1 at 51:5-52:13.  Because Reinke collaborated with the Rating Agencies to create and disseminate the false and misleading credit ratings, these statements are attributable to him through the group pleading doctrine.  *See Abu Dhabi*, 651 F. Supp. 2d at 175-78.

### 2. The Complaint's Allegations Give Rise to a Strong Inference of Scienter

The Complaint's allegations give rise to a strong inference of scienter, as they demonstrate Reinke's: (1) "conscious misbehavior or recklessness"; and (ii) "motive and opportunity" to commit fraud.  *See In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 74 (2d Cir. 2001).

### a. The Complaint Alleges Reinke's Conscious Misbehavior and Recklessness

Conscious misbehavior constitutes conduct "'which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it'" (*In re Nortel Networks Corp. Sec. Litig.*, 238 F. Supp. 2d 613, 631 (S.D.N.Y. 2003)), while a claim based upon recklessness is sufficient if it alleges a defendant's knowledge of facts or access to information that contradicts his public statements.  *See Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000).  Moreover, as this Court has recognized, "if the subject-matter of the alleged misstatements is sufficiently 'significant' to a defendant company, it may be possible for knowledge of contradictory information (and thus, scienter) to be imputed to individual defendants [who were key officers of the defendant company]." *In re eSpeed, Inc. Sec. Litig.*, 457 F. Supp. 2d 266, 293 (S.D.N.Y. 2006) (Scheindlin, J.); *see also In re JPMorgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 628 (S.D.N.Y. 2005) (same).

The Complaint alleges that Reinke was a high-level executive at IKB Cam during the relevant period.  ¶19 ("Reinke was the CEO of IKB CAM during the relevant time").  Thus, Reinke is imputed with knowledge of matters that are sufficiently significant to the IKB entities.  *See, e.g.*,

*eSpeed*, 457 F. Supp. 2d at 293.  The Complaint further alleges facts that, when read in the light most favorable to plaintiffs as required, establish the importance of Rhinebridge (and the assignment of the "Top Ratings" to the Rhinebridge Senior Notes) to the IKB entities.  For instance, the Complaint details how IKB's launch of Rhinebridge (and IKB's concomitant transfer of more than a billion dollars of toxic assets from its books to Rhinebridge's investors) was critical to IKB's continued existence.  *See, e.g.*, ¶126 ("IKB faced its own insolvency if it revealed the true quality of the assets included in Rhinebridge").  The Complaint also alleges that the "Top Ratings" were a precondition to Rhinebridge's existence (and thus to IKB's continued existence).  *See, e.g.*, ¶59 ("Without the 'Top Ratings,' Rhinebridge would not have existed and could not have operated.").  By virtue of his position within IKB Cam and the critical importance of the "Top Ratings" to the IKB entities' continued survival, knowledge of the falsity of these "Top Ratings" is attributed to Reinke.  *See, e.g.*, *eSpeed*, 457 F. Supp. 2d at 293.

Additional factual allegations further support a strong inference of Reinke's conscious misbehavior or recklessness.  For example, the Complaint alleges that Reinke "was fired on August 1, 2007 following IKB's near collapse due to exposure to mortgage-backed investments." ¶19.  Courts have held that terminations or resignations occurring close in time to the alleged wrongdoing are "highly probative of scienter."  *Middlesex Ret. Sys. v. Quest Software, Inc.*, No. 06-6863 DOC (RNBx), 2008 WL 7084629, at *9 (C.D. Cal. July 10, 2008); *see also In re Adaptive Broadband Sec. Litig.*, No. C 01-1092 SC, 2002 WL 989478, at *14 (N.D. Cal. Apr. 2, 2002).  The short amount of time between the initial dissemination of the Senior Notes' "Top Ratings" on June 27, 2007 and the revelation that the Senior Notes were "junk" less than four months later (¶4) also supports a strong inference of scienter.  *See, e.g.*, *Ley v. Visteon*, 543 F.3d 801, 810 (6th Cir. 2008) ("closeness in time of an allegedly fraudulent statement or omission and the later disclosure of

- 22 -

inconsistent information" is "probative of scienter in securities fraud cases"); *see also Institutional Investors Group v. Avaya, Inc.*, 564 F.3d 242, 271 (3d Cir. 2009) (same).  These facts, when viewed collectively, demonstrate Reinke's conscious misbehavior or recklessness, and therefore, support a strong inference of scienter.

> **b.    Reinke Also Had Motive and Opportunity to Commit Fraud**

Since plaintiffs have established a strong inference of Reinke's scienter by alleging his conscious misbehavior or recklessness, it is not necessary to allege motive and opportunity.  *See Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 170 (2d Cir. 2000).  Nonetheless, allegations of motive and opportunity can serve to further strengthen an inference of scienter.  *See Rothman v. Gregor*, 220 F.3d 81, 93-94 (2d Cir. 2000).  "Adequately pleading '[m]otive would entail concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged,' while adequately pleading 'opportunity would entail the means and likely prospect of achieving concrete benefits by the means alleged.'" *Abu Dhabi*, 651 F. Supp. 2d at 171.

Reinke had the opportunity to create the false credit ratings.  As the Complaint alleges, Reinke and the other IKB defendants "collaborated with the Rating Agencies and Morgan Stanley to structure Rhinebridge and create the Top Ratings" (¶24) and worked with the Rating Agencies "to determine how changes in the values of assets held by Rhinebridge would affect the manner in which Rhinebridge operated" (¶54).  Further, by virtue of his position as the CEO of IKB Cam, the entity responsible for Rhinebridge's launch, there can be no doubt that Reinke had the opportunity to commit the fraudulent acts alleged in the Complaint.  *See, e.g.*, *Svezzese v. Duratek, Inc.*, No. CIV.A. MJG-01-CV-1830, 2002 WL 1012967, at *7 (D. Md. Apr. 30, 2002) ("Without doubt, Defendants, holding positions of authority with [the company], had the opportunity to commit fraudulent acts.").  Reinke was also motivated to create Rhinebridge and to ensure it received Top Ratings because,

- 23 -

without the Top Ratings, Rhinebridge could not exist and, without the creation of Rhinebridge, IKB faced bankruptcy.  ¶¶59, 84, 126.

Because the Complaint pleads a cogent inference of Reinke's scienter, and because Reinke fails to offer a single opposing inference (much less, a more compelling opposing inference), the Complaint's scienter allegations are sufficient.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).[13]

### B.   The Complaint Also Sufficiently Pleads a Claim Against Reinke for Aiding and Abetting

The Complaint sufficiently pleads an aiding and abetting claim against Reinke.

*First*, there can be no dispute that plaintiffs have pled "'the existence of a . . . violation by the primary (as opposed to the aiding and abetting) party'" (*Abu Dhabi*, 651 F. Supp. 2d at 173), as the Court has already held that plaintiffs sufficiently pled common law fraud claims against IKB and the Rating Agency defendants.  *See* April 26, 2010 Opinion and Order (Dkt. 100); Ex. 14.

*Second*, as explained *supra* at §III.A.2., Reinke had knowledge of the underlying fraud.  *See Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of America Sec., LLC*, 652 F. Supp. 2d 495, 502-03 (S.D.N.Y. 2009) (Scheindlin, J.).

*Third*, the Complaint also sufficiently alleges that Reinke "substantially assisted" his co-defendants in defrauding plaintiffs.  In *Abu Dhabi*, the Court found "substantial assistance" where: (1) the defendant and the credit rating agencies "'together designed, structured, marketed and maintained the Cheyne SIV'" (651 F. Supp. 2d at 173, 177); (2) the rating agencies issued the false and misleading ratings with the assistance the defendant; and (3) investors who purchased the

---

[13]   The Court need not consider Reinke's perfunctory, single-sentence challenge to the sufficiency of the Complaint's reliance allegations, as "[i]ssues not sufficiently argued in the briefs are considered waived."  *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998).

Cheyne SIV in reliance on the false and misleading ratings were harmed by the defendants' aiding and abetting of the primary fraud. Ex. 15 at 9-10. The Complaint's allegations regarding Reinke's assistance in the fraud are virtually identical here. *See* ¶170 (defendants "designed, structured, marketed and maintained Rhinebridge"); ¶4 ("Defendants communicated these false and misleading ratings on or about June 27, 2007 . . . ."); ¶236 (investors were damaged by Reinke's aiding and abetting of the fraud). Accordingly, the Complaint sufficiently alleges an aiding and abetting claim against Reinke.

## IV.    CONCLUSION

For the foregoing reasons, Reinke's motion to dismiss should be denied. Alternatively, if the Court finds the Complaint's allegations insufficient in any respect, plaintiffs respectfully request leave to amend. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."); *Min Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002) ("[l]eave to amend should be freely granted").

DATED:  October 14, 2010                    Respectfully submitted,

                                            ROBBINS GELLER RUDMAN
                                              & DOWD LLP
                                            PATRICK J. COUGHLIN
                                            DANIEL S. DROSMAN
                                            X. JAY ALVAREZ
                                            JESSICA T. SHINNEFIELD
                                            NATHAN R. LINDELL
                                            DARRYL J. ALVARADO
                                            CHRISTINA A. ROYCE


                                            _____
                                                 s/ JESSICA T. SHINNEFIELD
                                                 JESSICA T. SHINNEFIELD

- 25 -

655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)
patc@rgrdlaw.com
ddrosman@rgrdlaw.com
jaya@rgrdlaw.com
jshinnefield@rgrdlaw.com
nlindell@rgrdlaw.com
dalvarado@rgrdlaw.com
croyce@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
SAMUEL H. RUDMAN
JARRETT S. CHARO
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
jcharo@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
LUKE O. BROOKS
JASON C. DAVIS
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415-288-4545
415/288-4534 (fax)
lukeb@rgrdlaw.com
jdavis@rgrdlaw.com

Attorneys for Plaintiffs

- 26 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 14, 2010, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on October 14, 2010.

s/ JESSICA T. SHINNEFIELD
JESSICA T. SHINNEFIELD

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  jshinnefield@rgrdlaw.com

# Mailing Information for a Case 1:09-cv-08387-SAS

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Floyd Abrams**
  fabrams@cahill.com

- **Darryl J. Alvarado**
  dalvarado@rgrdlaw.com

- **X Jay Alvarez**
  jaya@rgrdlaw.com

- **Anne L. Box**
  anneb@rgrdlaw.com,jillk@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Luke Orion Brooks**
  lukeb@rgrdlaw.com

- **Andrea Rose Butler**
  abutler@cahill.com

- **Jarrett Scott Charo**
  jcharo@rgrdlaw.com

- **James J. Coster**
  jcoster@ssbb.com,managingclerk@ssbb.com,jrubins@ssbb.com

- **Patrick Joseph Coughlin**
  patc@rgrdlaw.com

- **Jason Cassidy Davis**
  jdavis@rgrdlaw.com,khuang@rgrdlaw.com,ptiffith@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Daniel S. Drosman**
  ddrosman@rgrdlaw.com,E_File_SD@rgrdlaw.com,tholindrake@rgrdlaw.com

- **Andrew James Ehrlich**
  aehrlich@paulweiss.com

- **Martin Flumenbaum**
  mflumenbaum@paulweiss.com

- **Jason Michael Hall**
  jhall@cahill.com

- **Fran Marcia Jacobs**
  fmjacobs@duanemorris.com

- **Roberta Ann Kaplan**
  rkaplan@paulweiss.com

- **Justin Evan Klein**
  jklein@ssbb.com,managingclerk@ssbb.com

- **Nathan R. Lindell**
  nlindell@rgrdlaw.com

- **Brian T Markley**
  bmarkley@cahill.com

- **John D. McFerrin-Clancy**
  jmcferrin-clancy@lowenstein.com

- **Jennifer Jane McGruther**
  jmcgruther@lowenstein.com

- **Antonio Jorge Perez-Marques**
  antonio.perez@dpw.com,ecf.ct.papers@dpw.com

- **Thomas E. Redburn , Jr**
  tredburn@lowenstein.com

- **James J. Regan**
  jregan@ssbb.com

- **Dean I. Ringel**
  DRingel@Cahill.com

- **Zachary David Rosenbaum**
  zrosenbaum@lowenstein.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com

- **Robert M. Rothman**
  rrothman@rgrdlaw.com,e_file_ny@rgrdlaw.com

- **James P. Rouhandeh**
  james.rouhandeh@dpw.com

- **Tammy Lynn Roy**
  troy@cahill.com,ndelutri@cahill.com,mmcloughlin@cahill.com,nmarcantonio@cahill.com

- **Christina A. Royce**
  croyce@rgrdlaw.com

- **Joshua M. Rubins**
  jrubins@ssbb.com,managingclerk@ssbb.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com

- **Jessica T. Shinnefield**
  jshinnefield@rgrdlaw.com

- **Mark Steven Silver**
  mssilver@paulweiss.com

- **Tobias James Stern**
  tstern@paulweiss.com

- **Thomas S. Wiswall**

twiswall@phillipslytle.com,jgroat@phillipslytle.com,ecfphillips@phillipslytle.com

- **Aaron Mark Zeisler**
  azeisler@ssbb.com,managingclerk@ssbb.com

- **Adam N. Zurofsky**
  azurofsky@cahill.com,MMcLoughlin@cahill.com,NMarcantonio@cahill.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**David C. Walton**
Lerach, Coughlin, Stoia, Geller, Rudman & Robbins, L.L.P.
655 W. Broadway
Suite 1900
San Diego, CA 92101-3301