UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

KING COUNTY, WASHINGTON, et al.,
Individually and on Behalf of All Others
Similarly Situated,

                Plaintiffs,

    vs.

IKB DEUTSCHE INDUSTRIEBANK AG, et
al.,

                Defendants.

———————————————————— x

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Master File No. 1:09-cv-08387-SAS
**(Consolidated)**

<u>CLASS ACTION</u>

PLAINTIFFS' MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT
STEFAN ORTSEIFEN'S RENEWED
MOTION TO DISMISS

**[REDACTED]**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION AND FACTUAL BACKGROUND ....................................................1

II.    THE COURT HAS PERSONAL JURISDICTION OVER ORTSEIFEN ........................2

    A.    Legal Standard for Rule 12(b)(2) Motion to Dismiss ..............................................2

    B.    Personal Jurisdiction Is Appropriate Under N.Y.C.P.L.R. §302(a)(1) ..................4

        1.    Through His Involvement in the Rhinebridge SIV, Ortseifen Purposely Transacted Business in New York ...........................................4

            a.    Ortseifen Was Directly Involved in Rhinebridge ...........................4

            b.    The Rhinebridge Fraud Was Perpetrated in New York .................7

        2.    Plaintiffs' Claims Are Substantially Related to Ortseifen's Business Transactions in New York .......................................................11

    C.    Due Process Is Satisfied .......................................................................................12

III.   THE COMPLAINT ADEQUATELY ALLEGES FRAUD AND AIDING AND ABETTING CLAIMS AGAINST ORTSEIFEN .................................................13

    A.    Legal Standard on a Motion to Dismiss Pursuant to Rule 12(b)(6)......................13

    B.    The Complaint Sufficiently Alleges Fraud Against Ortseifen..............................13

        1.    The False Credit Ratings Are Attributable to Ortseifen Under the Group Pleading Doctrine .........................................................14

        2.    The Complaint Sufficiently Alleges Ortseifen's Scienter ........................17

            a.    Ortseifen's Scienter Is Adequately Pled .......................................17

                (1)    The Complaint Alleges Ortseifen's Conscious Misbehavior and Recklessness ...........................................17

                (2)    Ortseifen Also Had Motive and Opportunity to Commit Fraud ................................................................20

            b.    Ortseifen's Attempt to Create Competing Inferences Outside the Four Corners of the Complaint Should Be Rejected........................................................................................22

**Page**

        3.     The Complaint Sufficiently Pleads Reliance, Causation and Damages ........................................................................................... 23

   C.    The Complaint Sufficiently Pleads a Claim Against Ortseifen for Aiding and Abetting ......................................................................................... 24

IV.    CONCLUSION ....................................................................................................... 25

# TABLE OF AUTHORITIES

**Page**

## CASES

*380544 Canada, Inc. v. Aspen Tech, Inc.*,
  544 F. Supp. 2d 199 (S.D.N.Y. 2008)..........................................................................15, 16

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*,
  651 F. Supp. 2d 155 (S.D.N.Y. 2009).......................................................................*passim*

*Allianz Risk Transfer v. Paramount Pictures Corp.*,
  No. 08 Civ. 10420 (TPG), 2010 WL 1253957
  (S.D.N.Y. Mar. 31, 2010) ...............................................................................................17

*Ashcroft v. Iqbal*,
  __ U.S. __, 129 S. Ct. 1937 (2009)................................................................................13

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*,
  902 F.2d 194 (2d Cir. 1990)..............................................................................................2

*Banco Ambrosiano, S.P.A. v. Artoc Bank & Trust Ltd.*,
  476 N.Y.S.2d 64 (1984)...................................................................................................12

*Beatie and Osborn LLP v. Patriot Sci. Corp.*,
  431 F. Supp. 2d 367 (S.D.N.Y. 2006)...............................................................................3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..........................................................................................13, 17, 22

*Best Van Lines, Inc. v. Walker*,
  490 F.3d 239 (2d Cir. 2007)..............................................................................................3

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002)............................................................................................22

*Cortec Indus., Inc. v. Sum Holding L.P.*,
  949 F.2d 42 (2d Cir. 1991)..............................................................................................23

*CPC Int'l Inc. v. McKesson Corp.*,
  519 N.Y.S.2d 804 (1987).................................................................................................16

*Ehrenfeld v. Mahfouz*,
  489 F.3d 542 (2d Cir. 2007)..............................................................................................3

*Ganino v. Citizens Utils. Co.*,
  228 F.3d 154 (2d Cir. 2000)............................................................................................21

- iii -

Page

*Hall v. The Children's Place Retail Stores, Inc.*,
  580 F. Supp. 2d 212 (S.D.N.Y. 2008)...................................................................................19

*In re Adaptive Broadband Sec. Litig.*,
  No. C 01-1092 SC, 2002 WL 989478
  (N.D. Cal. Apr. 2, 2002) ......................................................................................................19

*In re Cardiac Devices Qui Tam Litig.*,
  221 F.R.D. 318 (D. Conn. 2004),
  *rev'd in part on other grounds*,
  469 F.3d 263 (2d Cir. 2006)..................................................................................................14

*In re eSpeed, Inc. Sec. Litig.*,
  457 F. Supp. 2d 266 (S.D.N.Y. 2006)...................................................................................18

*In re JPMorgan Chase Sec. Litig.*,
  363 F. Supp. 2d 595 (S.D.N.Y. 2005)...................................................................................18

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
  No. 1:00-1898, 2005 WL 106936
  (S.D.N.Y. Jan. 18, 2005)......................................................................................................13

*In re Nash Finch Co. Sec. Litig.*,
  502 F. Supp. 2d 861 (D. Minn. 2007)...................................................................................19

*In re Nortel Networks Corp. Sec. Litig.*,
  238 F. Supp. 2d 613 (S.D.N.Y. 2003)...................................................................................17

*In re Scholastic Corp. Sec. Litig.*,
  252 F.3d 63 (2d Cir. 2001)....................................................................................................17

*In re Syncor Int'l Corp. Sec. Litig.*,
  327 F. Supp. 2d 1149 (C.D. Cal. 2004),
  *aff'd in part and rev'd on other grounds*,
  239 Fed. Appx. 318 (9th Cir. 2007)......................................................................................19

*Institutional Investors Group v. Avaya*,
  564 F.3d 242 (3d Cir. 2009)..................................................................................................20

*Kernan v. Kurz-Hastings, Inc.*,
  175 F.3d 236 (2d Cir. 1999)...............................................................................................2, 6

*Kreutter v. McFadden Oil Corp.*,
  527 N.Y.S.2d 195 (1988).......................................................................................................3

- iv -

**Page**

*Ley v. Visteon*,
  543 F.3d 801 (6th Cir. 2008) ...........................................................................20

*Merrill Lynch & Co. v. Allegheny Energy, Inc.*,
  500 F.3d 171 (2d Cir. 2007).............................................................................23

*Min Jin v. Metro. Life Ins. Co.*,
  310 F.3d 84 (2d Cir. 2002)...............................................................................25

*Norton v. Sam's Club*,
  145 F.3d 114 (2d Cir. 1998).............................................................................24

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000).............................................................................18

*OR.EN. Orobia Eng'g S.R.L. v. Nacht*,
  No. 97 CIV 4912 SAS KNF, 1998 WL 730562
  (S.D.N.Y. Oct. 19, 1998) .................................................................................12

*Pac. Inv. Mgmt. LLC v. Mayer Brown LLP*,
  603 F.3d 144 (2d Cir. 2010).......................................................................16, 24

*PDK Labs v. Friedlander*,
  103 F.3d 1105 (2d Cir. 1997)...........................................................................11

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
  652 F. Supp. 2d 495 (S.D.N.Y. 2009)..............................................................24

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
  No. 05-Civ.-9016 (SAS), 2006 WL 559811
  (S.D.N.Y. Mar. 7, 2006) ....................................................................................3

*Rothman v. Gregor*,
  220 F.3d 81 (2d Cir. 2000)...............................................................................21

*SEC v. Black*,
  No. 04 C 7377, 2008 WL 4394891
  (N.D. Ill. Sept. 24, 2008) .................................................................................19

*SEC v. Espuelas*,
  579 F. Supp. 2d 461 (S.D.N.Y. 2008)..............................................................15

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*,
  450 F.3d 100 (2d Cir. 2006)...............................................................................3

Page

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
   552 U.S. 148 (2008)...................................................................................16

*Strassberg v. N.Y. Hotel & Motel Trades Council, Local 6*,
   31 Fed. Appx. 15 (2d Cir. 2002) ...............................................................13

*Svezzese v. Duratek, Inc.*,
   No. Civ. A. MJG-01-CV-1830, 2002 WL 1012967
   (D. Md. Apr. 30, 2002) .............................................................................21

*Taberna Capital Mgmt., LLC v. Dunmore*,
   No. 08 Civ.1817 (JSR), 2008 WL 2139135
   (S.D.N.Y. May 20, 2008)......................................................................10, 11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)........................................................................17, 20, 21

*United States ex rel. Johnson v. Shell Oil Co.*,
   183 F.R.D. 204 (E.D. Tex. 1998)...............................................................14

*Vera v. Cushman & Wakefield, Inc.*,
   320 F. Supp. 2d 114 (S.D.N.Y. 2004)..........................................................5

*Wickers Sportswear, Inc. v. Gentry Mills, Inc.*,
   411 F. Supp. 2d 202 (E.D.N.Y. 2006) .........................................................3

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980)......................................................................................3

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
   Rule 9(b) ...............................................................................................14, 17
   Rule 12(b)(2).................................................................................................2
   Rule 12(b)(6).........................................................................13, 17, 22, 23
   Rule 15(a)(2)...............................................................................................25
   Rule 30(b)(6)................................................................................................5

Federal Rules of Evidence
   Rule 201(b) .................................................................................................19

17 C.F.R.
   §240.10b-5 ...........................................................................16, 17, 23, 24

**Page**

New York Civil Practice Law and Rules

    Rule 302(a)(1) .................................................................................................3, 4, 12

## I.    INTRODUCTION AND FACTUAL BACKGROUND

In early 2006, defendant IKB Deutsche Industriebank AG ("IKB Bank") was on the brink of insolvency, as it had billions of dollars in toxic, mortgage-backed assets weighing down its balance sheet.  ¶126.[1]  With its financial survival on the line, IKB Bank devised a scheme to create and market a financial vehicle, the Rhinebridge SIV, to which IKB Bank could sell its own toxic assets at prices it could never achieve by selling them on the open market.  *Id.*

In furtherance of this fraudulent scheme, defendant Stefan Ortseifen, IKB Bank's Chief Executive Officer, ████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████ Ex. 1 at 37:25-38:7.[2] ████████████████████████████

███████████ Ex. 2 at 113:9-14.

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████ Ex. 3 at IKB000122185. ████████████████████████

████████████████████████████████████████████████████████████

██████████████████ *Id.*; *see also* Ex. 2 at 77:11-20.

████████████████████████████████████████████████████████████

---

[1]    Unless otherwise noted, all "¶" or "¶¶" references are to the First Amended Consolidated Complaint for Violations of New York State Law (the "Complaint"), filed on June 10, 2010.

[2]    Unless otherwise noted, all "Ex." references are to the Declaration of Jessica T. Shinnefield in Support of Plaintiffs' Opposition to Defendant Stefan Ortseifen's Renewed Motion to Dismiss.

███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████ *See, e.g.*, Ex. 2 at 117:14-118:25, 128:13-129:10. ██████

███████████████████████████████████████████████████

████████████████████████ *See id.* at 58:7-11, 78:3-10.

In short, Ortseifen was extensively involved in Rhinebridge, as the CEO of IKB Bank and Chairman of IKB Cam. ████████████████████████████████████████

████ Ortseifen's motion to dismiss should be denied.

## II.   THE COURT HAS PERSONAL JURISDICTION OVER ORTSEIFEN

### A.   Legal Standard for Rule 12(b)(2) Motion to Dismiss

On a Fed. R. Civ. P. 12(b)(2) motion to dismiss filed after the completion of jurisdictional discovery, "the plaintiff's *prima facie* showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant."[3] *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990). At this procedural posture, the Court is to accept plaintiffs' averment of jurisdictional facts as true. *See Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 240 (2d Cir. 1999) ("Where, as here, no evidentiary hearing has been held but the parties have conducted extensive discovery into the . . . defendant's contacts with the forum state . . . we accept as true all of [plaintiff's] averments of jurisdictional facts.").

In New York, federal courts apply a two-part inquiry to determine whether a defendant is subject to personal jurisdiction: "(1) the plaintiff must demonstrate that the defendant is subject to

---

[3]     Unless otherwise noted, citations are omitted and emphasis is added.

582202_1

jurisdiction under New York law; and (2) this exercise of jurisdiction must comport with constitutional due process requirements." *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, No. 05-Civ.-9016 (SAS), 2006 WL 559811, at *3 (S.D.N.Y. Mar. 7, 2006).

To satisfy the first inquiry, which is governed by §302(a)(1) of the N.Y.C.P.L.R.: (1) the defendant must have "transact[ed] business" in New York, and (2) "the claim asserted must arise out of that business activity." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006). A non-domiciliary transacts business under §302(a)(1) when it purposely avails itself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws. *Beatie and Osborn LLP v. Patriot Sci. Corp.*, 431 F. Supp. 2d 367, 387 (S.D.N.Y. 2006). Moreover, the law is clear that it is the nature and quality, and not the amount, of New York contacts that determine purposeful activity. *See* May 4, 2010 Opinion and Order (Dkt. 102) at 13; *see also Wickers Sportswear, Inc. v. Gentry Mills, Inc.*, 411 F. Supp. 2d 202, 208 (E.D.N.Y. 2006). Indeed, §302(a)(1) is a "'single act statute,'" meaning "proof of one transaction in New York is sufficient to invoke jurisdiction." *Kreutter v. McFadden Oil Corp.*, 527 N.Y.S.2d 195, 198-99 (1988); *see also Ehrenfeld v. Mahfouz*, 489 F.3d 542, 548 (2d Cir. 2007) (same). Plaintiffs' claim "arise[s] out of" the business activity where "there is a substantial relationship between the transaction and the claim asserted." *Kreutter*, 71 N.Y.2d at 467.

To fulfill the second inquiry, the exercise of jurisdiction over the defendant must comport with constitutional principles of due process. *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 243-44 (2d Cir. 2007). This means the defendant must have had such "minimum contacts" with New York that "maintenance of the suit 'does not offend "traditional notions of fair play and substantial justice,"'" and such that he "should reasonably anticipate being haled into court" in New York. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 297 (1980).

582202_1

**B.      Personal Jurisdiction Is Appropriate Under N.Y.C.P.L.R. §302(a)(1)**

      **1.      Through His Involvement in the Rhinebridge SIV, Ortseifen Purposely Transacted Business in New York**

            **a.      Ortseifen Was Directly Involved in Rhinebridge**

*See* Ex. 2 at 66:22-67:4.  As the CEO[4] of IKB Bank and the Chairman of IKB Cam, Ortseifen was directly involved in the Rhinebridge SIV, a fraudulent structured investment vehicle purposely directed at New York.

*See* Ex. 1 at 38:2-39:20.

*Id.* at 37:25-38:7.

Ex. 2 at 113:9-14.

*Id.* at 37:25-38:7, 51:18-52:2.

*See* Ex. 3 at IKB000122185.



Ex. 2 at 66:12-14.

*See* Ex. 3 at IKB000122185; Ex. 2 at 77:11-20.

Ex. 2 at 55:20-57:2.

*Id.* at 58:7-11, 78:3-10.

Ex. 3 at IKB000122181.

Ex. 1 at 46:20-47:2.

Ex. 2 at 117:14-118:25.

(Ex. 2 at 119:24-25),

Memorandum of Law in Support of Defendant Stefan Ortseifen's Renewed Motion to Dismiss ("Renewed MTD") at 12.  *See, e.g.*, *Vera v. Cushman & Wakefield, Inc.*, 320 F. Supp. 2d 114, 118 (S.D.N.Y. 2004) (refusing to consider plaintiff's affidavit containing new facts because plaintiff had previously testified during her deposition that she had no recollection of those facts).

- 5 -

██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
████████████████████████████████████████████ (*see* Ex. 2 at 99:23-100:3); and (3)
██████████████████████████████████████████████████████████████████
█████████████████████████████████████ *See* Ex. 7 at 49:1-18.

██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
███████████ *See* Ex. 2 at 128:13-129:10, 134:1-2. ███████████████████████
████████████████████████████████████ Ex. 7 at 84:17-22. ██████████████
██████████████████████████████████████████████████████ (*see* Ex. 2 at
129:13-16), ██████████████████████████████████████████
████████████████ *See, e.g.*, Ex. 8 at S&P-IKB 0003702 █████████████████
███████████████████████████████████ Ex. 9 at IKB000029907 █████████
██████████████████████████████████████████████████████████████

Construing these facts in the light most favorable to plaintiffs (*Kernan*, 175 F.3d at 240), ███████
██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████

Even after the initial asset ramp up phase for Rhinebridge ended, Ortseifen continued to
supervise the Rhinebridge transaction.  For example, ████████████████████████
█████████████████████████████████████ Ex. 1 at 47:11-15. █████████████
██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
███████████████████████████ Ex. 3 at IKB000122181. █████████████████

███████████████████████████████████████████

███████████ Ex. 2 at 34:3-8, 51:10-24. █████████████████

█████████████████████████████████████████████

████ *See* Ex. 10.  Thus, the jurisdictional discovery conducted to date establishes that Ortseifen's

involvement in the Rhinebridge fraud was extensive, and that he traveled to New York on at least

one occasion in furtherance of the fraud.

### b. The Rhinebridge Fraud Was Perpetrated in New York

The Rhinebridge fraud was perpetrated in New York.  This Court held as much in asserting

personal jurisdiction over IKB.  *See* May 4, 2010 Opinion and Order (Dkt. 102) at 20 (the Court has

personal jurisdiction over IKB because of "IKB's personal and direct contacts with New York").

*First*, the IKB defendants, including Ortseifen, used New York's sophisticated capital

markets infrastructure to create and distribute the Senor Notes that plaintiffs purchased.  The

issuance, payment and ownership transfer machinery – enabling the creation and distribution of the

Senior Notes – was located in New York.  For example, the IKB defendants arranged for

Rhinebridge to enter into an agreement with a New York entity to issue the Senior Notes from New

York, pursuant to a master note physically located in New York and governed by New York law.

The PPM states that the Senior Notes "will be issued under a depositary agreement" between

Rhinebridge and The Bank of New York's branch located at 101 Barclay Street, New York, New

York 10286 ("BNY New York").[6]  BNY New York holds the "Master Note" that represents the

---

[6]    Ex. 11 at 88 ("The USCP Notes will be issued under a depositary agreement . . . ."); *see also id.* at 96 (securities "issued pursuant to, and [are] subject to the terms of" the Depositary Agreement).  It should be noted the "Issuers" are both Rhinebridge PLC and Rhinebridge LLC.  *See id.* at 2.  Further, "The Bank of New York, as USCP Depositary" (*id.* at 88) refers to "The Bank of New York, a New York banking corporation at 101 Barclay Street, New York, New York 10286." *Id.* at 104.  The PPM repeats this information on its final page (following page 160).

Senior Notes in New York.[7]  Rhinebridge agreed that the "Master Note is a valid and binding obligation of the Issuers [both Rhinebridge PLC and Rhinebridge LLC]."  Ex. 11 at 94 (Form of Master Note).  Rhinebridge further agreed to make all payments to investors through "Cede & Co., as nominee of The Depository Trust Company," a New York corporation.[8]  *Id*.  The Master Note is "governed by, and construed in accordance with, the laws of the State of New York."  *Id*. at 96. Both Rhinebridge entities signed the Master Note, with the "The Bank of New York, New York Branch," as custodian of the Master Note signing as counterparty.  *Id*. at 94.  In short, Ortseifen and his IKB co-defendants created a note program located in New York.

*Second*, the IKB defendants further arranged for Rhinebridge to enter into agreements with New York-based broker dealers in order to issue and sell the Senior Notes.  *See id*. at 41; *see also* Ex. 1 at 127:5-21.  Rhinebridge entered into a placement agreement with "Morgan Stanley & Co. Incorporated, Citigroup Global Markets, Inc. and Goldman, Sachs & Co" (referenced herein as "Morgan Stanley," "Citigroup" and "Goldman Sachs," respectively, and collectively as the "New York Broker Dealers").  Ex. 11 at 1.  Each of these entities is located in New York.  *Id*. at last page, following 160.

The IKB defendants used Rhinebridge to file documents with the SEC confirming the New York Broker Dealers in fact offered and sold Senior Notes.  On or about the day Rhinebridge closed, the IKB defendants notified the SEC that they would pay the New York Broker Dealers to make a joint offering in New York.[9]  This notice to the SEC shows that IKB used Rhinebridge to solicit

---

[7]     *See id.* at 5 ("The USCP Notes will be available in book-entry form represented by a Master Note (the 'Master Note') held by the USCP Depositary [the USCP Depositary being BNY New York, *see id.* at 94] as custodian and agent for The Depository Trust Company ('DTC') and recorded in DTC's book entry system.").

[8]     *See id.* at 5; *see also id.* at iii (identifying DTC as a New York Corporation).

[9]     The offering was made by both "Rhinebridge PLC and Rhinebridge LLC."  Ex. 12 at 1; *id.* at

582202_1

investors in every state of the United States, including New York.  Ex. 12.  The New York Broker

Dealers offered to sell up to $20 billion in Senior Notes, and actually sold $2.216 billion in Senior

Notes on or about June 27, 2007, the day Rhinebridge was launched.  *See id.* at last page, Note 1.

Comparing this $2.216 billion amount of notes sold from New York to the "[l]aunch size [of]

USD2.4bn" set forth in the Fitch New Issue Report, over ***92%*** of the money IKB took in from

investors came directly from an offering and issuance conducted entirely in New York.  Ex. 13 at 1.

***Third***, the IKB defendants further arranged for Rhinebridge to deliver both a draft and a final

PPM – containing the false Top Ratings – to the New York Broker Dealers to execute the Senior

Notes' offering and issuance.  According to excerpts of the placement agreement ("Placement

Agreement") filed by IKB, Rhinebridge "prepared and submitted to the [New York Broker Dealers]

a preliminary" PPM and "will prepare and submit to the [New York Broker Dealers] a final" PPM.

*See* Dkt. 60 ("Rosenbaum Decl."), Ex. E at 1 (second and third recitals).  These documents contain

the false "Top Ratings" the IKB defendants obtained and disseminated in collusion with the New

York based rating agencies.  ¶62.

The IKB defendants communicated directly with the New York Broker Dealers on an

ongoing basis.  The Placement Agreement provides that each New York Broker Dealer "***will***

***communicate*** to [Rhinebridge], orally or in writing, each offer received" to purchase any notes.  *See*

Rosenbaum Decl., Ex. E at 3 (clause (c)).  Rhinebridge, in turn, "may instruct a [New York Broker

Dealer] to suspend solicitation of purchases" at any time.  *Id*. at 4 (clause (d)).  "Rhinebridge" could

communicate nothing and make no decisions on its own.  IKB "ha[d] undertaken" to manage all of

its operations.  Ex. 11 at 41.

***Fourth***, Rhinebridge permitted the New York Broker Dealers to "solicit purchases of such

---

last page, Note 1 ("The offering was made together with Rhinebridge PLC . . . .") & Note 6 (same).

principal amount" only "*[u]pon receipt of instructions*" from Rhinebridge.  Rosenbaum Decl., Ex. E at 3 (clause (c)); *see also id*. at 4 (clause (e)).  Again, "Rhinebridge" was a shell: IKB was the "Rhinebridge team" that actually created and ran the SIV.  The "instructions" that authorized the New York Broker Dealers to close the Rhinebridge deal came from IKB.

*Lastly*, the IKB defendants collaborated with the major U.S. rating agencies – defendants Moody's, S&P and Fitch ("Rating Agencies") – to structure and produce Top Ratings for the Senior Notes.  All three Rating Agencies are headquartered in New York.

Because Ortseifen was directly involved in Rhinebridge, and because Rhinebridge was purposely directed at New York, the Court should exercise personal jurisdiction over Ortseifen here.  Ortseifen is similarly situated to the individual defendant in *Taberna Capital*.  There, as here, it was alleged that the individual defendant had collaborated with others to create a New York corporation for the purpose of defrauding others.  *Taberna Capital Mgmt., LLC v. Dunmore*, No. 08 Civ.1817 (JSR), 2008 WL 2139135, at *2 (S.D.N.Y. May 20, 2008) ("the two individual defendants, working together, concocted a fraud, and that the primary means of carrying out that fraud was the creation of a New York corporation that would act as a type of front for the fraud").  There, the individual defendant communicated outside New York with others to concoct a plan to place good assets outside the reach of creditors in advance of filing for bankruptcy.  *Id*. at *1.  Here, Ortseifen and others at IKB facilitated the transfer of over a billion dollars in bad assets to investors through a $2.216 billion New York bond offering in order to avoid bankruptcy.

In *Taberna Capital*, the plaintiff obtained a *single e-mail* between two California residents after conducting jurisdictional discovery.  *Id*. at *2.  The e-mail contained bland language that the individual defendants' California legal advisors "seem[ed] to like that [New York] venue better."  *Id*.  It was this decision to use New York as a situs for fraud that counted: "defendants and their agents

purposely chose New York as the forum in which to incorporate the corporation that would serve as the foundation for their alleged fraud, and did so in order to receive the benefit of New York's laws as they carried out the scheme." *Id*.  That same decision here dooms Ortseifen's motion to dismiss.

It is clear that Ortseifen participated in the creation and launch of Rhinebridge.  *See supra*, §II.B.a.  Plaintiffs allege that Rhinebridge was a fraud from the day it was launched.  That fraud emanated from New York.  Ortseifen and the other IKB defendants collaborated with the New York-headquartered credit rating agencies to structure and produce fraudulent Top Ratings for the Senior Notes.  ¶2.  Additionally, the IKB defendants caused Rhinebridge to enter into an agreement with a New York citizen, The Bank of New York, to issue the Senior Notes from New York.  They designed the note program around the Master Note held in New York and governed by New York law.  Importantly, the IKB defendants caused Rhinebridge – their shell company – to agree that the Master Note was a valid and binding obligation on Rhinebridge.  The IKB defendants further caused Rhinebridge to enter into the Placement Agreement with New York citizens Morgan Stanley, Citigroup and Goldman Sachs to sell the Senior Notes, which they did.  The IKB defendants and these New York Broker Dealers communicated directly with each other regarding solicitations and sales of the Senior Notes.  Given these facts, Ortseifen is subject to personal jurisdiction in New York.  *See Taberna Capital*, 2008 WL 2139135, at *2; *PDK Labs v. Friedlander*, 103 F.3d 1105, 1109 (2d Cir. 1997).

## 2. Plaintiffs' Claims Are Substantially Related to Ortseifen's Business Transactions in New York

Contrary to Ortseifen's incorrect assertion, plaintiffs' claims are substantially related to Ortseifen's business transactions in New York.  Because Rhinebridge would not have existed but for its launch in New York with the false Top Ratings provided by the Rating Agencies, this contention is meritless.  *See, e.g.*, *Taberna Capital*, 2008 WL 2139135, at *2 (New York corporation

- 11 -

"foundational" to fraud); *accord OR.EN. Orobia Eng'g S.R.L. v. Nacht*, No. 97 CIV 4912 SAS KNF, 1998 WL 730562, at *5 (S.D.N.Y. Oct. 19, 1998). The business Ortseifen transacted purposefully used New York to launch a fraudulent SIV and remove bad assets from his company's balance sheet. The link between that conduct and plaintiffs' claim is self-evident.

Ortseifen's contention that plaintiffs' claims cannot arise out of his trip to New York in April 2006 because all "the events of which plaintiffs complain" occurred "in June 2007 or later" is meritless. Renewed MTD at 6. To the contrary, the facts clearly show that ███████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████ substantially relate to plaintiffs' claims, as one of the Complaint's central allegations is that "the inclusion of low-quality toxic mortgage-backed assets rendered the ratings false and misleading" (¶121), and that when Rhinebridge's "constituent assets became known, Rhinebridge was forced into receivership and the Senior Notes immediately collapsed in value." ¶14. Given these facts, it is clear that plaintiffs' claims substantially relate to the business Ortseifen transacted in New York.

### C.    Due Process Is Satisfied

Because Ortseifen transacted business in New York under Rule 302(a)(1), as discussed *supra* at §II.B.1.a.-b., he has sufficient "minimum contacts" with New York to satisfy constitutional due process. *See* May 4, 2010 Opinion and Order (Dkt. 102) at 20 ("Where personal jurisdiction is appropriate under 302(a), the requirements of due process are met."); *see also Banco Ambrosiano, S.P.A. v. Artoc Bank & Trust Ltd.*, 476 N.Y.S.2d 64, 67 (1984) (by demonstrating a defendant is

582202_1

subject to personal jurisdiction as a matter of New York law, it follows that due process is satisfied).

"Once minimum contacts are established," as they are here, "it is *defendant's burden* to 'present a *compelling case* that the presence of some other considerations would render jurisdiction unreasonable.'" *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, No. 1:00-1898, 2005 WL 106936, at *8 (S.D.N.Y. Jan. 18, 2005). Having made *no* case, much less a "compelling case," that exercising personal jurisdiction over Ortseifen is unreasonable, Ortseifen has failed to carry his burden.[10]

## III. THE COMPLAINT ADEQUATELY ALLEGES FRAUD AND AIDING AND ABETTING CLAIMS AGAINST ORTSEIFEN

### A. Legal Standard on a Motion to Dismiss Pursuant to Rule 12(b)(6)

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) must be denied where, as here, the complaint "contain[s] sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009). "Plausibility 'is not akin to a probability requirement'" and is satisfied "'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, 651 F. Supp. 2d 155, 170 (S.D.N.Y. 2009) (quoting *Ashcroft*, 129 S. Ct. at 1949). Importantly, in making this determination, "the court must 'accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in the plaintiff's favor.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007)). Here, the Complaint easily passes the plausibility test.

### B. The Complaint Sufficiently Alleges Fraud Against Ortseifen

---

[10]    Moreover, having failed to address constitutional due process in his opening brief, Ortseifen has waived the right to make such argument on reply. *See Strassberg v. N.Y. Hotel & Motel Trades Council, Local 6*, 31 Fed. Appx. 15, 17 (2d Cir. 2002).

### 1.    The False Credit Ratings Are Attributable to Ortseifen Under the Group Pleading Doctrine

To adequately plead the first element of common law fraud, "a misrepresentation or omission of material fact," in compliance with Fed. R. Civ. P. 9(b), a complaint must:

> (1) specify the statements that the plaintiff contends were fraudulent; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent.

*In re Cardiac Devices Qui Tam Litig.*, 221 F.R.D. 318, 332 (D. Conn. 2004), *rev'd in part on other grounds*, 469 F.3d 263 (2d Cir. 2006).  The Complaint exceeds Rule 9(b)'s requirements by alleging: (1) that "Top Ratings" for the Senior Notes were communicated to investors; (2) by Ortseifen and his co-defendants; (3) through a "commonly used investment platform provided by *Bloomberg*" and the Private Placement Memoranda on each day throughout the Class Period;[11] and (4) that such ratings conveyed false information about the SIV and the Senior Notes.  ¶¶2-4, 69, 74, 77-79, 81. Given the nature and complexity of defendants' fraudulent scheme, these allegations satisfy Rule 9(b) – they provide notice to Ortseifen of the time, place and content of his misrepresentations and the reasons those statements were false.  *United States ex rel. Johnson v. Shell Oil Co.*, 183 F.R.D. 204, 207 (E.D. Tex. 1998).

Notwithstanding the Complaint's detailed allegations, Ortseifen urges dismissal, contending the Complaint fails to state a claim because it does not "give notice of any actions or statements by Mr. Ortseifen at all."  Renewed MTD at 16.  But, as the Court explained in *Abu Dhabi*, where, as here, "defendants are insiders or affiliates participating in the offer of securities . . . 'reference to an offering memorandum satisfies 9(b)'s requirement of identifying time, place, speaker, and content of

---

[11]    The "Class Period" is from June 1, 2007 through October 18, 2007.  ¶170.

582202_1

representation.'" *Abu Dhabi*, 651 F. Supp. 2d at 171.[12]

The Complaint puts Ortseifen on notice of this claim, and plainly alleges that he was an insider who participated in the Senior Notes offering. Due to his position as CEO of IKB Bank and Chairman of IKB Cam, Ortseifen "easily qualif[ies]" as a corporate insider for purposes of the group pleading doctrine. *SEC v. Espuelas*, 579 F. Supp. 2d 461, 473 (S.D.N.Y. 2008) (applying group pleading doctrine to company's CEO, Chairman, and Executive Vice President); *see also 380544 Canada, Inc. v. Aspen Tech, Inc.*, 544 F. Supp. 2d 199, 218-19 (S.D.N.Y. 2008) (same). Accordingly, by virtue of his high ranking positions at IKB Cam and IKB Bank, "the Court is bound to infer at this stage that [Ortseifen] had direct involvement in [these entities'] daily affairs.'" *Id.* at 219.

Given Ortseifen's insider status, and the allegations detailing defendants' collaboration to create the false "Top Ratings," plaintiffs have adequately alleged Ortseifen's false statement. *See Abu Dhabi*, 651 F. Supp. 2d at 177 (complaint's allegations adequate under group pleading doctrine where complaint alleged that defendants, *inter alia*, designed, structured, marketed and maintained SIV, obtained the ratings assigned to the SIV's notes, and communicated such ratings to investors). Plaintiffs are entitled to the inference that the false "Top Ratings" may be attributed to each insider defendant, including Ortseifen. *Id.*

---

[12]    As this Court recently held in a case strikingly similar to this one:

> [T]he group pleading doctrine provides an exception "'to the requirement that the fraudulent acts of each defendant be identified separately in the complaint.'" "[N]o specific connection between fraudulent representations in [an] [o]ffering [m]emorandum and particular defendants is necessary where, as here, defendants are insiders or affiliates participating in the offer of the securities in question." The group pleading doctrine applies where group-published information, such as an offering memorandum, "are the collective work of those individuals with direct involvement in the everyday business of the company."

> *Abu Dhabi*, 651 F. Supp. 2d at 177.

The cases Ortseifen cites are inapposite.  *See* Renewed MTD at 17-18.  For example, Ortseifen misstates the holding in *Aspen*, incorrectly asserting that "the group pleading doctrine, when it applies at all, applies only to parties that had 'active daily roles' and 'direct involvement' in the ***alleged fraud***."  Renewed MTD at 17 (quoting *Aspen*, 544 F. Supp. 2d at 218).  In actuality, the court in *Aspen* held that the group pleading doctrine applies to "'those individuals with direct involvement in the everyday business ***of the company***.'"  *Aspen*, 544 F. Supp. 2d at 218.  Moreover, in *Aspen*, the court attributed "group" statements to the CEO, CFO, Executive Vice President and COO of the defendant company because individuals holding these positions were "clearly 'corporate insiders with active daily roles' ***in Aspen***" during the relevant period.  *Id*.  Thus, the court's holding in *Aspen* actually supports the application of the group pleading doctrine here, where Ortseifen, as the CEO of IKB Bank and Chairman of IKB Cam, is clearly a "corporate insider" who played an "active daily role" in IKB Bank and IKB Cam.

So too is Ortseifen's reliance on *Pac. Inv. Mgmt. LLC v. Mayer Brown LLP*, 603 F.3d 144 (2d Cir. 2010) misplaced.  In *Pacific Investment*, the court dismissed claims against a law firm that did not make a statement because, in the §10(b) and Rule 10b-5 context, there is no scheme liability or liability for aiding and abetting a primary violator.  *See Pac. Inv.*, 603 F.3d at 148; *see also Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148 (2008).  The holding in *Pacific Investment* is not instructive here, however, because in the common law fraud context, scheme liability and aiding and abetting liability are permitted.  *See, e.g.*, *CPC Int'l Inc. v. McKesson Corp.*, 519 N.Y.S.2d 804 (1987).

Moreover, Ortseifen's assertion that "plaintiffs' position here is even weaker than that of the plaintiffs [in *Pacific Investments*]" because "[a] plaintiff's burden in a common law fraud action is greater than in a Rule 10b-5 action" has no legal basis whatsoever.  Renewed MTD at 18-19.  The

*evidentiary* burden is irrelevant at this stage – plaintiffs' allegations must be accepted as true.  *See Twombly*, 550 U.S. at 572.  Indeed, none of the cases Ortseifen cites even remotely support his contention that the **pleading** requirements on a Rule 12(b)(6) motion to dismiss are more strenuous for a common law fraud claim than they are for a claim brought under Rule 10b-5.  Moreover, the law is well-established that "although a common law fraud claim is subject to Fed. R. Civ. P. 9(b) rather than the PSLRA, there is no significant distinction between the two as practiced in the Second Circuit."  *Allianz Risk Transfer v. Paramount Pictures Corp.*, No. 08 Civ. 10420 (TPG), 2010 WL 1253957, at *9 (S.D.N.Y. Mar. 31, 2010).  "In fact, the PSLRA pleading requirements were based on the 9(b) pleading standard practiced in this Circuit."  *Id*.

### 2.    The Complaint Sufficiently Alleges Ortseifen's Scienter

#### a.    Ortseifen's Scienter Is Adequately Pled

The Complaint's allegations give rise to a strong inference of scienter because they demonstrate Ortseifen's: (1) "conscious misbehavior or recklessness"; and (ii) "motive and opportunity" to commit fraud.  *See In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 74 (2d Cir. 2001).  Importantly, "[t]he inquiry . . . is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation scrutinized in isolation, meets that standard."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007) (emphasis in original).

##### (1)    The Complaint Alleges Ortseifen's Conscious Misbehavior and Recklessness

Conscious misbehavior constitutes conduct "'which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.'"  *In re Nortel Networks Corp. Sec. Litig.*, 238 F. Supp. 2d 613, 631 (S.D.N.Y. 2003).  A claim based upon recklessness is sufficient if it

- 17 -

alleges a defendant's knowledge of facts or access to information that contradicts his public statements. *See Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000). As this Court has recognized, "if the subject-matter of the alleged misstatements is sufficiently 'significant' to a defendant company, it may be possible for knowledge of contradictory information (and thus, scienter) to be imputed to individual defendants [who were key officers of the defendant company]." *In re eSpeed, Inc. Sec. Litig.*, 457 F. Supp. 2d 266, 293 (S.D.N.Y. 2006) (Scheindlin, J.); *see also In re JPMorgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 628 (S.D.N.Y. 2005) ("When information is at the core of a company's business, it may be properly ascribable to senior officers.").

The Complaint alleges that Ortseifen was a high-level executive of both IKB entities during the Class Period. ¶20 ("Ortseifen was the CEO of IKB Bank and Chairman of IKB CAM during the relevant time."). Thus, Ortseifen is imputed with knowledge of matters that were sufficiently significant to the IKB entities. *See, e.g.*, *eSpeed*, 457 F. Supp. 2d at 293. The Complaint also alleges facts that, when read in the light most favorable to plaintiffs as required, establish the importance of Rhinebridge (and the assignment of the "Top Ratings" to the Rhinebridge Senior Notes) to the IKB entities. For instance, the Complaint details how IKB's launch of Rhinebridge (and IKB's concomitant transfer of more than a billion dollars of toxic assets from its books to Rhinebridge's investors) was critical to IKB's continued existence. *See, e.g.*, ¶126 ("IKB faced its own insolvency if it revealed the true quality of the assets included in Rhinebridge"); ¶¶128, 130, 132. The Complaint also alleges that the "Top Ratings" were a precondition to Rhinebridge's existence (and thus to IKB's continued existence). *See, e.g.*, ¶59 ("Without the 'Top Ratings,' Rhinebridge would not have existed and could not have operated."); ¶84. By virtue of his position with the IKB entities and the critical importance of the "Top Ratings" to the IKB entities' continued survival, knowledge of the falsity of these "Top Ratings" is attributed to Ortseifen. *See, e.g.*, *eSpeed*, 457 F. Supp. 2d

266.

Additional factual allegations further support a strong inference of Ortseifen's conscious misbehavior or recklessness.

*First*, the Complaint's allegation that Ortseifen "now faces charges of 'market manipulation,' among others, brought by German authorities" (¶20), supports a strong inference that Ortseifen was aware of the toxic nature of the assets IKB transferred to Rhinebridge and that Rhinebridge did not deserve its "Top Ratings." *See Hall v. The Children's Place Retail Stores, Inc.*, 580 F. Supp. 2d 212, 233 (S.D.N.Y. 2008) (holding that an SEC investigation was "probative of scienter"); *In re Syncor Int'l Corp. Sec. Litig.*, 327 F. Supp. 2d 1149, 1162 (C.D. Cal. 2004) (considering SEC investigation in evaluating scienter), *aff'd in part and rev'd on other grounds*, 239 Fed. Appx. 318 (9th Cir. 2007); *In re Nash Finch Co. Sec. Litig.*, 502 F. Supp. 2d 861, 882 (D. Minn. 2007) (same). As does the fact that Ortseifen was ultimately convicted by a court in Germany "for misstating IKB's risks regarding asset-backed securities tied to the U.S. mortgage market" in July 2010.[13] Ex. 14; *see SEC v. Black*, No. 04 C 7377, 2008 WL 4394891 (N.D. Ill. Sept. 24, 2008) (holding that a prior, related criminal conviction supported a finding of scienter in subsequent securities fraud litigation).

*Second*, Ortseifen's "retirement" shortly after the launch of Rhinebridge further supports a strong inference of scienter. ¶20; *see In re Adaptive Broadband Sec. Litig.*, No. C 01-1092 SC, 2002 WL 989478, at *14 (N.D. Cal. Apr. 2, 2002) (personnel changes that occurred while company was restating its financials and conducting an internal investigation are "highly suspicious" and "add one more piece to the scienter puzzle"); *Nash*, 502 F. Supp. 2d at 882 ("unexpected resignations and [governmental] investigation[s] . . . cumulatively create a strong inference of scienter").

---

[13]    The Court may take judicial notice of Ortseifen's conviction, as this fact is not subject to reasonable dispute. *See* Fed. R. Evid. 201(b).

**Third**, PricewaterhouseCoopers' ("PwC") October 2007 audit report, concluding that "the management board of IKB was in fact hiding problems from other members of the company regarding IKB's exposure to the subprime market" also supports a strong inference of Ortseifen's scienter. ¶124.

**Fourth**, the Complaint alleges that a short amount of time passed between the initial dissemination of the Senior Notes' "Top Ratings" on June 27, 2007, and the revelation that the Senior Notes were "junk" less than four months later. ¶4. Indeed, the Complaint alleges that Rhinebridge was "perhaps the shortest-lived 'Triple A' fund in the history of corporate finance" and explains that the "Senior Notes went from having a probability of default of approximately zero to approximately 100% in less than four months." ¶6. This short window of time between the initial dissemination of the false "Top Ratings" and the revelation of the true facts surrounding Rhinebridge also supports an inference of scienter. *See Ley v. Visteon*, 543 F.3d 801, 810 (6th Cir. 2008) ("closeness in time of an allegedly fraudulent statement or omission and the later disclosure of inconsistent information" is "probative of scienter in securities fraud cases"); *see also Institutional Investors Group v. Avaya*, 564 F.3d 242, 271 (3d Cir. 2009) (temporal proximity between misstatement and revelation of truth "strengthens the inference of scienter").

In sum, the prosecution of Ortseifen, his sudden retirement from IKB, the PwC investigation's findings and the short proximity between the first dissemination of the false "Top Ratings" and the downgrade of Rhinebridge are additional circumstances that, considered collectively with the other facts alleged as required, further support the already "cogent" inference of scienter. *See Tellabs*, 551 U.S. at 323.

### (2) Ortseifen Also Had Motive and Opportunity to Commit Fraud

Since plaintiffs have established a strong inference of Ortseifen's scienter by alleging his

conscious misbehavior or recklessness, it is not necessary to also allege motive and opportunity.  *See Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 170 (2d Cir. 2000).  Nonetheless, allegations of motive and opportunity can serve to further strengthen an inference of scienter.  *See Rothman v. Gregor*, 220 F.3d 81, 93-94 (2d Cir. 2000).  "Adequately pleading '[m]otive would entail concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged,' while adequately pleading 'opportunity would entail the means and likely prospect of achieving concrete benefits by the means alleged.'" *Abu Dhabi*, 651 F. Supp. 2d at 171.

Ortseifen had the opportunity to create the false credit ratings.  As the Complaint alleges, Ortseifen and the other IKB defendants "collaborated with the Rating Agencies and Morgan Stanley to structure Rhinebridge and create the Top Ratings" (¶24) and worked with the Rating Agencies "to determine how changes in the values of assets held by Rhinebridge would affect the manner in which Rhinebridge operated" (¶54).  Further, by virtue of his position within the IKB entities, there can be no doubt that Ortseifen had the opportunity to commit the fraudulent acts alleged in the Complaint.  *See, e.g.*, *Svezzese v. Duratek, Inc.*, No. Civ. A. MJG-01-CV-1830, 2002 WL 1012967, at *7 (D. Md. Apr. 30, 2002) ("Without doubt, Defendants, holding positions of authority with [the company], had the opportunity to commit fraudulent acts.").  Ortseifen was also motivated to create Rhinebridge and to ensure it received Top Ratings because, without the Top Ratings, Rhinebridge could not exist and, without the creation of Rhinebridge, IKB faced bankruptcy.  ¶¶59, 84, 126.

Because the Complaint pleads a cogent inference of Ortseifen's scienter, and because Ortseifen fails to offer a single opposing inference (much less, a more compelling opposing inference), the Complaint's scienter allegations are sufficient.  *See Tellabs*, 551 U.S. at 308.

> **b.** **Ortseifen's Attempt to Create Competing Inferences Outside the Four Corners of the Complaint Should Be Rejected**

In challenging plaintiffs' scienter allegations, Ortseifen misconstrues plaintiffs' burden at this stage of the litigation. Ortseifen faults plaintiffs for not coming forth with "evidence" gleaned from discovery demonstrating Ortseifen's scienter. *See* Renewed MTD at 20. This critique, however, is flawed for two reasons: (1) plaintiffs need not provide "evidence" of Ortseifen's scienter on a motion to dismiss pursuant to Rule 12(b)(6); they must simply plead particularized facts that, if true, would support a strong inference of Ortseifen's scienter (*see Twombly*, 550 U.S. at 572); and (2) the depositions taken to date were not aimed at discovering Ortseifen's knowledge of the fraud, but were instead limited to the issues pertaining to personal jurisdiction. *See* May 4, 2010 Opinion and Order (Dkt. 102) at 25-26 (ordering "limited discovery into the issue of personal jurisdiction over Ortseifen").

Nor is it permissible for Ortseifen to attempt to rebut the Complaint's scienter allegations through his self-serving deposition testimony and affirmations. *See* Renewed MTD at 20. First, the Complaint's scienter allegations must be accepted as true at this stage of the litigation. *Twombly*, 550 U.S. at 572. Second, as the Second Circuit explained in *Chambers v. Time Warner, Inc*., 282 F.3d 147, 153 (2d Cir. 2002), in deciding a Rule 12(b)(6) motion, while the court may consider competing inferences posed by defendants, it may do so only to the extent the competing inferences are drawn from: (1) the pleadings themselves, (2) documents plaintiffs relied on in drafting the complaint, (3) documents incorporated into the complaint by reference, or (4) matters of which a court may take judicial notice. *Id*. Because Ortseifen's deposition testimony and affirmations do not

fit within any of these exceptions, the Court should reject them.[14]  *Id*.

### 3. The Complaint Sufficiently Pleads Reliance, Causation and Damages

Contrary to Ortseifen's incorrect assertions (*see* Renewed MTD at 21-22), the Complaint sufficiently alleges reliance, causation and damages.  With respect to pleading reliance, the bar is low, as the plaintiff need only allege "that its reliance on the alleged misrepresentation[] was not so utterly unreasonable, foolish or knowingly blind as to compel the conclusion that whatever injury it suffered was its own responsibility."  *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 182 (2d Cir. 2007).  Here, the Complaint's allegations easily clear that low hurdle by alleging that investors actually and justifiably relied on the materially false and misleading "Top Ratings" in deciding to acquire the Senior Notes.  *See, e.g.*, ¶¶5, 80, 213.  The Complaint further alleges that each of the Rating Agencies which issued the "Top Ratings" enjoyed the special status of "nationally recognized statistical rating organization" ("NRSRO") and had access to material non-public information regarding Rhinebridge.  ¶¶44, 121-124.  As this Court has held, "the market at large, including sophisticated investors, have come to rely on the accuracy of credit ratings and the independence of rating agencies because of their NRSRO status and, at least in this case, the Rating Agencies' access to non-public information that even sophisticated investors cannot obtain."  *Abu Dhabi*, 651 F. Supp. 2d at 181.  Accordingly, plaintiffs have "adequately pled [its] reasonable reliance on the ratings."  *Id*.[15]

---

[14]     If the Court considers the extraneous materials Ortseifen submits in connection with his Rule 12(b)(6) motion to dismiss, Ortseifen's motion must be converted to a motion for summary judgment, and resolution of those motions should be stayed until discovery is completed. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).

[15]     Nor does the holding in *Pacific Investment* undermine plaintiffs' reliance allegations.  *See* Renewed MTD at 21.  As discussed *supra* at §III.B.1., the court's ruling in *Pacific Investment* is inapplicable here because it was explicitly limited to the §10(b)/Rule 10b-5 context: "[W]e conclude

Ortseifen's challenge to the Complaint's causation and damages allegations is equally meritless. In a single sentence, Ortseifen perfunctorily attacks the Complaint's causation and damages allegations. *See* Renewed MTD at 22. Given Ortseifen's failure to challenge the Complaint's causation and damages allegations in any meaningful way, Ortseifen's arguments with respect to these issues are waived. *See Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in briefs are considered waived . . . ."). In any event, the Complaint sufficiently pleads causation and damages. *See, e.g.*, ¶¶15-17, 59, 220.

### C.   The Complaint Sufficiently Pleads a Claim Against Ortseifen for Aiding and Abetting

The Complaint also sufficiently pleads an aiding and abetting claim against Ortseifen.

*First*, there can be no dispute that plaintiffs have pled "'the existence of a . . . violation by the primary (as opposed to the aiding and abetting) party'" (*Abu Dhabi*, 651 F. Supp. 2d at 173), as the Court held that plaintiffs sufficiently pled common law fraud claims against IKB and the Rating Agency defendants. *See* May 18, 2010 Opinion and Order (Dkt. 108) (denying IKB's and Fitch's motions to dismiss); April 26, 2010 Opinion and Order (Dkt. 100) (denying Moody's and S&P's motion to dismiss).

*Second*, as explained *supra* at §III.B.2., Ortseifen had knowledge of and participated in the underlying fraud. *See Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 652 F. Supp. 2d 495, 502-03 (S.D.N.Y. 2009) (Scheindlin, J.).

*Third*, the Complaint also sufficiently alleges that Ortseifen "substantially assisted" his co-defendants in defrauding plaintiffs. In *Abu Dhabi*, the Court found "substantial assistance" where: (1) the defendant and the credit rating agencies "'together designed, structured, marketed, and

---

that attribution is required for secondary actors to be liable in a private damages action for securities fraud under Rule 10b-5." *See Pac. Inv.*, 603 F.3d at 152.

- 24 -

maintained the Cheyne SIV'" (651 F. Supp. 2d at 177); (2) the rating agencies issued the false and misleading rating with the assistance of the defendant; and (3) investors who purchased the Cheyne SIV in reliance on the false and misleading ratings were harmed by the defendants' aiding and abetting of the primary fraud. Ex. 15 at 9-10. The Complaint's allegations regarding Ortseifen's assistance in the fraud are virtually identical here. *See* ¶170 (defendants "designed, structured, marketed and maintained Rhinebridge"); ¶4 (defendants "communicated these false and misleading ratings on or about June 27, 2007"); ¶232 (investors were damaged by Ortseifen's aiding and abetting of the fraud). Accordingly, the Complaint sufficiently alleges an aiding and abetting claim against Ortseifen.

## IV.    CONCLUSION

For the foregoing reasons, Ortseifen's motion to dismiss should be denied. Alternatively, if the Court finds the Complaint's allegations insufficient in any respect, plaintiffs respectfully request leave to amend. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."); *Min Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002) ("[l]eave to amend should be freely granted").

DATED: October 14, 2010              Respectfully submitted,

                                     ROBBINS GELLER RUDMAN
                                       & DOWD LLP
                                     PATRICK J. COUGHLIN
                                     DANIEL S. DROSMAN
                                     X. JAY ALVAREZ
                                     JESSICA T. SHINNEFIELD
                                     NATHAN R. LINDELL
                                     DARRYL J. ALVARADO
                                     CHRISTINA A. ROYCE


                                     s/ JESSICA T. SHINNEFIELD
                                     JESSICA T. SHINNEFIELD

655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)
patc@rgrdlaw.com
ddrosman@rgrdlaw.com
jaya@rgrdlaw.com
jshinnefield@rgrdlaw.com
nlindell@rgrdlaw.com
dalvarado@rgrdlaw.com
croyce@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
JARRETT S. CHARO
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
jcharo@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
LUKE O. BROOKS
JASON C. DAVIS
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415-288-4545
415/288-4534 (fax)
lukeb@rgrdlaw.com
jdavis@rgrdlaw.com

Attorneys for Plaintiffs

- 26 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 14, 2010, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on October 14, 2010.

s/ JESSICA T. SHINNEFIELD
JESSICA T. SHINNEFIELD

ROBBINS GELLER RUDMAN
  & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  jshinnefield@rgrdlaw.com

582202_1

# Mailing Information for a Case 1:09-cv-08387-SAS

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Floyd Abrams**
  fabrams@cahill.com

- **Darryl J. Alvarado**
  dalvarado@rgrdlaw.com

- **X Jay Alvarez**
  jaya@rgrdlaw.com

- **Anne L. Box**
  anneb@rgrdlaw.com,jillk@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Luke Orion Brooks**
  lukeb@rgrdlaw.com

- **Andrea Rose Butler**
  abutler@cahill.com

- **Jarrett Scott Charo**
  jcharo@rgrdlaw.com

- **James J. Coster**
  jcoster@ssbb.com,managingclerk@ssbb.com,jrubins@ssbb.com

- **Patrick Joseph Coughlin**
  patc@rgrdlaw.com

- **Jason Cassidy Davis**
  jdavis@rgrdlaw.com,khuang@rgrdlaw.com,ptiffith@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Daniel S. Drosman**
  ddrosman@rgrdlaw.com,E_File_SD@rgrdlaw.com,tholindrake@rgrdlaw.com

- **Andrew James Ehrlich**
  aehrlich@paulweiss.com

- **Martin Flumenbaum**
  mflumenbaum@paulweiss.com

- **Jason Michael Hall**
  jhall@cahill.com

- **Fran Marcia Jacobs**
  fmjacobs@duanemorris.com

- **Roberta Ann Kaplan**
  rkaplan@paulweiss.com

- **Justin Evan Klein**
  jklein@ssbb.com,managingclerk@ssbb.com

- **Nathan R. Lindell**
  nlindell@rgrdlaw.com

- **Brian T Markley**
  bmarkley@cahill.com

- **John D. McFerrin-Clancy**
  jmcferrin-clancy@lowenstein.com

- **Jennifer Jane McGruther**
  jmcgruther@lowenstein.com

- **Antonio Jorge Perez-Marques**
  antonio.perez@dpw.com,ecf.ct.papers@dpw.com

- **Thomas E. Redburn , Jr**
  tredburn@lowenstein.com

- **James J. Regan**
  jregan@ssbb.com

- **Dean I. Ringel**
  DRingel@Cahill.com

- **Zachary David Rosenbaum**
  zrosenbaum@lowenstein.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com

- **Robert M. Rothman**
  rrothman@rgrdlaw.com,e_file_ny@rgrdlaw.com

- **James P. Rouhandeh**
  james.rouhandeh@dpw.com

- **Tammy Lynn Roy**
  troy@cahill.com,ndelutri@cahill.com,mmcloughlin@cahill.com,nmarcantonio@cahill.com

- **Christina A. Royce**
  croyce@rgrdlaw.com

- **Joshua M. Rubins**
  jrubins@ssbb.com,managingclerk@ssbb.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com

- **Jessica T. Shinnefield**
  jshinnefield@rgrdlaw.com

- **Mark Steven Silver**
  mssilver@paulweiss.com

- **Tobias James Stern**
  tstern@paulweiss.com

- **Thomas S. Wiswall**

twiswall@phillipslytle.com,jgroat@phillipslytle.com,ecfphillips@phillipslytle.com

- **Aaron Mark Zeisler**
  azeisler@ssbb.com,managingclerk@ssbb.com

- **Adam N. Zurofsky**
  azurofsky@cahill.com,MMcLoughlin@cahill.com,NMarcantonio@cahill.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**David C. Walton**
Lerach, Coughlin, Stoia, Geller, Rudman & Robbins, L.L.P.
655 W. Broadway
Suite 1900
San Diego, CA 92101-3301