UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- X

KING COUNTY, WASHINGTON,
IOWA STUDENT LOAN LIQUIDITY
CORPORATION, Together and on
Behalf of All Others Similarly Situated,

                Plaintiffs,

       - against -

IKB DEUTSCHE INDUSTRIEBANK
AG, IKB CREDIT ASSET
MANAGEMENT, GmbH, MOODY'S
INVESTORS SERVICE, INC.,
MOODY'S INVESTORS SERVICE
LIMITED, THE McGRAW HILL
COMPANIES, INC. (d/b/a STANDARD
& POOR'S RATINGS SERVICES),
FITCH, INC., MORGAN STANLEY &
CO. INCORPORATED, MORGAN
STANLEY & CO. INTERNATIONAL
LIMITED, WINFRIED REINKE and
STEFAN ORTSEIFEN,

                Defendants.

------------------------------------------------- X

**OPINION AND ORDER**

09 Civ. 8387 (SAS)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/29/10

SHIRA A. SCHEINDLIN, U.S.D.J.:

I.     INTRODUCTION

       Two institutional investors, King County, Washington and Iowa

Student Loan Liquidity Corporation bring this putative class action for common

1

law fraud in connection with the collapse of Rhinebridge, a structured investment

vehicle ("SIV"). On June 10, 2010, plaintiffs filed an amended consolidated

complaint ("First Amended Complaint" or "FAC") adding Morgan Stanley[1] as a

defendant to the action and alleging its role as a co-arranger and a placement agent

for the Rhinebridge SIV.[2] Morgan Stanley now moves to dismiss plaintiffs' claims

for (1) common law fraud and (2) aiding and abetting common law fraud pursuant

to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Because the motion

relies almost entirely on arguments this Court has already considered and rejected

– both in this case[3] and in *Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*[4]

– it is denied.

---

[1]      "Morgan Stanley" refers collectively to Morgan Stanley & Co. Incorporated and Morgan Stanley & Co. International Limited and their affiliates. Throughout this memorandum, I refer to Morgan Stanley in the singular as "defendant." *See* FAC ¶ 31.

[2]      *See id.* All facts are drawn from the FAC and are presumed to be true for the purpose of this motion.

[3]      *See* Transcript of Conference on IKB's & Fitch's Motions to Dismiss on May 18, 2010 ("5/18/10 Tr."), Ex. 1 to Declaration of Daniel S. Drosman in Support of Plaintiffs' Opposition to Defendant's Motion to Dismiss ("Drosman Decl.") (denying IKB's and Fitch's motions to dismiss plaintiffs' first complaint).

[4]      651 F. Supp. 2d 155, 188 (S.D.N.Y. 2009); *see also* Transcript of Conference on Aiding and Abetting Claims in *Abu Dhabi* on July 20, 2010 ("7/20/10 Tr."), Ex. 2 to Drosman Decl. (granting plaintiffs leave to replead aiding and abetting claims against Morgan Stanley and the Rating Agencies). This decision assumes familiarity with the facts stated in *Abu Dhabi.*

## II.   BACKGROUND AND APPLICABLE LAW

The facts of this case and applicable legal standards are well-established.  I outline here the allegations added against Morgan Stanley in plaintiffs' FAC that are relevant to my disposition of defendant's motion.  In brief, plaintiffs allege that Morgan Stanley used the Cheyne SIV at issue in *Abu Dhabi* as a roadmap for arranging Rhinebridge and for selling its senior debt securities ("Senior Notes" or "Notes").[5]  Together with IKB[6] and the Rating Agencies,[7] Morgan Stanley designed, structured, marketed, and maintained Rhinebridge.[8]  It engaged the Rating Agencies, along with IKB, to rate Rhinebridge, and worked directly with the Rating Agencies and IKB to structure the Senior Notes that, plaintiffs allege, received false and misleading "Top Ratings."[9]  Morgan Stanley also provided potential investors with the misleading ratings, accompanying definitions of the ratings, and statements regarding the Senior Notes' safety and

---

[5]      *See* FAC ¶ 172.

[6]      "IKB" refers collectively to IKB Deutsche Industriebank AG and IKB Credit Asset Management, GmbH.

[7]      "Rating Agencies" refers collectively to the McGraw Hill Companies, Inc. d/b/a Standard & Poor's Rating Services ("S&P"); Moody's Investors Service, Inc. and Moody's Investors Service Ltd. (together, "Moody's"); and Fitch, Inc. ("Fitch").

[8]      *See* FAC ¶ 170.

[9]      *Id.*

3

stability through a commonly used investment platform provided by *Bloomberg*, "Private Placement Memoranda," "Information Memoranda," and "Selling Documents."[10]

Plaintiffs also allege that Morgan Stanley "caused"[11] Rhinebridge to acquire "hundreds of millions of dollars of poor quality, toxic assets" that it knew IKB was trying to "unload[]."[12] It "coerced"[13] the Rating Agencies to allow risky Home Equity Loans ("HELs") to constitute up to seventy-five percent of Liquid Eligible Assets ("LEAs")[14] in the SIV, where most SIVs limit HELs to fifteen to twenty percent of such assets.[15] It caused Rhinebridge to acquire approximately two-hundred and fifty million dollars in Countrywide securities – a single obligor exposure approximately three times higher than the four percent limit stipulated in the SIV's operating instructions.[16] It knew Rhinebridge had breached its "Major

---

[10]    *Id.* ¶¶ 170, 196.

[11]    *Id.* at 49 (Heading B).

[12]    *Id.* ¶ 181.

[13]    *Id.* ¶ 182.

[14]    *See id.* ¶ 184. According to the complaint, the inclusion of appropriate LEAs "ensured that the portfolio had the required liquidity in the event of default." *Id.* ¶ 182.

[15]    *See id.* ¶ 184.

[16]    *See id.* ¶¶ 144, 186.

Capital Loss Test"[17] ("Capital Test") before Rhinebridge was launched on June 27, 2007, and that its Top Ratings were false.[18]

Finally, plaintiffs allege that Morgan Stanley, the Rating Agencies, and IKB "knowingly designed models to yield the false and misleading Top Ratings necessary to launch Rhinebridge."[19] They used outdated and incorrect models based on "irrelevant historical information preceding 2000"[20] that produced inflated ratings, a process known as "grandfathering."[21] Knowing that the Senior Notes were unsaleable without Top Ratings, Morgan Stanley stood to earn fifteen million dollars for Rhinebridge's successful launch (its "Base Fee") and a portion of Rhinebridge's net distributable profits (its "Performance Fee").[22]

On the basis of these allegations, plaintiffs claim that Morgan Stanley (1) committed common law fraud and (2) aided and abetted the Rating Agencies'

---

[17]    *Id.* ¶ 112.  According to the FAC, "Rhinebridge had operating instructions that governed the types of assets it could buy and ways in which it could fund, or borrow money to buy, those assets.  These instructions included various tests" such as the Capital Test.  *Id.*

[18]    *See id.* ¶ 187.

[19]    *Id.* ¶ 191.

[20]    *Id.* ¶ 194.

[21]    *Id.* ¶ 192.

[22]    *See id.* ¶ 195.

and IKB's underlying fraud.  Morgan Stanley moves to dismiss both claims, arguing plaintiffs have failed to adequately plead (1) a misstatement by Morgan Stanley, (2) reasonable reliance, or (3) scienter, and have failed to state a claim for aiding and abetting.  For the reasons stated below, Morgan Stanley's motion is denied in its entirety.

## III.  DISCUSSION

### A.    Actionable Misrepresentation

Plaintiffs allege that (1) false and misleading ratings were communicated to investors; (2) by Morgan Stanley; (3) through *Bloomberg*, "Private Placement Memoranda," "Information Memoranda," and "Selling Documents" on each day throughout the class period[23] and (4) that such ratings conveyed false information about Rhinebridge and the Senior Notes.  Moreover, plaintiffs allege that Morgan Stanley was intimately involved in creating both (1) the false and misleading ratings and (2) the core deal documents disseminated to private investors.  These allegations are sufficient to allege a material misrepresentation[24] under the group pleading doctrine[25] in compliance with Rule

---

[23]    I need not determine at this time precisely when plaintiffs allege the class period began.  *See King County v. IKB*, Nos. 09 Civ. 8387, 09 Civ. 8822, 2010 WL 2010943, at *2 (S.D.N.Y. May 18, 2010) ("*King County I*").

[24]    *See Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of New York*, 375 F.3d 168, 187 (2d Cir. 2004) ("Fraud must be pled with

9(b) of the Federal Rules of Civil Procedure.[26]

Morgan Stanley argues that because (1) the credit ratings are the only alleged misstatements in this case, (2) the ratings were statements of the Rating Agencies and not of Morgan Stanley, (3) Morgan Stanley neither issued the ratings nor rated the SIV and (4) the FAC pleads no direct communication between Morgan Stanley and plaintiffs,[27] plaintiffs have not pled a misstatement *on the part*

---

particularity, . . . which requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent.") (quotation marks and citations omitted).

[25]    *See Ouaknine v. MacFarlane*, 897 F.2d 75, 80 (2d Cir. 1990) ("reference to an offering memorandum satisfies [Rule] 9(b)'s requirement of identifying time, place, speaker, and content of representation where, as here, defendants are insiders or affiliates participating in the offer of securities"); *Luce v. Edelstein*, 802 F.2d 49, 55 (2d Cir. 1986) ("no specific connection between fraudulent representations in [an] Offering Memorandum and particular defendants is necessary where . . . defendants are insiders or affiliates participating in the offer of the securities in question").

[26]    Indeed, I found virtually identical allegations sufficient to defeat IKB's motion to dismiss plaintiffs' fraud claim in this case. *See* 5/18/10 Tr. at 11-12 (finding similar allegations against IKB sufficient to allege an actionable misrepresentation).

[27]    *See* Defendant's Memorandum of Law in Support of Motion to Dismiss ("Def. Mem.") at 9 ("[N]either plaintiff even alleges that it had any oral or written communications of any kind with Morgan Stanley concerning the [Private Placement Memorandum], or that it received the allegedly false credit ratings from Morgan Stanley. (Neither plaintiff, in fact, alleges how, when or by what means it received the challenged ratings.)"). *Id.* at 11-12.

7

*of Morgan Stanley.*[28]  Relying on a recent Second Circuit case, *Pacific Investment Management Co. LLC v. Mayer Brown LLP* ("*PIMCO*"),[29] as applied by this Court in *In re Tronox, Inc. Securities Litigation*,[30] Morgan Stanley argues that plaintiffs have pled, at most, that it was a secondary actor in the perpetuation of the Rating Agencies' and/or IKB's primary fraud.[31]  Defendant essentially argues that because secondary actors can be held liable for fraud "only for false statements attributed to the secondary actor defendant at the time of dissemination,"[32] and because plaintiffs have failed to plead that they attributed the false and misleading Top Ratings to Morgan Stanley, they have failed to state a claim for primary fraud against Morgan Stanley.[33]

Defendant's argument fails.[34]  The FAC's allegations as to Morgan

---

[28]  *See id.* at 8-13.

[29]  603 F.3d 144 (2d Cir. 2010).

[30]  No. 09 Civ. 6220, 2010 WL 2835545 (S.D.N.Y. June 28, 2010).

[31]  *See* Def. Mem. at 8-12.

[32]  *PIMCO*, 603 F.3d at 148.  *Accord Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 180 (1994); *Shapiro v. Cantor*, 123 F.3d 717, 720-21 (2d Cir. 1997).

[33]  *See* Def. Mem. at 8-12.

[34]  I have already rejected IKB's nearly identical argument that the allegedly false ratings were statements by the Rating Agencies and not by IKB. *See* 5/18/10 Tr. at 12-13.

Stanley's involvement in the fraud are sufficient to render it an "insider"[35] for the

purposes of the group pleading doctrine.  Plaintiffs allege that Morgan Stanley

worked directly with IKB and the Rating Agencies to design, structure, market and

maintain the SIV;[36] caused the Rating Agencies to issue false and misleading

ratings;[37] was "the point-of-contact for the Rating Agencies and IKB in . . . drafting

and circulating documents required to launch and maintain Rhinebridge;"[38] and

"distributed [integral deal documents] to investors"[39] through "private information

services, Information Memoranda, and the Selling Documents."[40]  Through these

allegations, plaintiffs have sufficiently pled that both (1) the ratings and (2) the

core deal documents *containing* the ratings were "the collective work of those

individuals with direct involvement in the everyday business of the [SIV]"[41] –

---

[35]     *Ouaknine*, 897 F.2d at 80.

[36]     *See* FAC ¶ 170.

[37]     *See id.* ¶ 196.

[38]     *Id.* ¶ 173.  Morgan Stanley "circulated and received drafts of virtually all of the documents concerning Rhinebridge." *Id.* ¶ 174

[39]     *Id.*

[40]     *Id.*

[41]     *In re Oxford Health Plans, Inc.,* 187 F.R.D. 133, 142 (S.D.N.Y. 1999) (quotation marks and citation omitted).

namely, IKB, the Rating Agencies, and Morgan Stanley.[42]  Morgan Stanley's

alleged role far exceeded merely "providing or distributing the ratings" as

defendant suggests.[43]  As in *In re Health Management, Inc. Securities Litigation*,

> [t]his case does not present a situation where the sole allegations
> against [Morgan Stanley] are based on [its] affiliation[] with the
> other defendants . . . or on [its] tenuous connection with the
> fraudulent scheme. . . . [T]hese allegations . . . are sufficient to
> plead that [defendant is an] "insider[]" and thus included within
> the group pleading presumption.[44]

Having sufficiently alleged that Morgan Stanley was an "insider[] or

affiliate[] participating in the offer of [the SIV]," plaintiffs' reference to (1) the

ratings and (2) the core deal documents "satisfies [Rule] 9(b)'s requirement of

---

[42]     Indeed, plaintiffs' allegations virtually mirror those this Court
considered and deemed sufficient to sustain an actionable misstatement by Morgan
Stanley in *Abu Dhabi* under the group pleading doctrine. *See* 651 F. Supp. 2d at
176-77; *see also Adelphia Recovery Trust v. Bank of Am., N.A.*, 624 F. Supp.
292, 315-316 (S.D.N.Y. 2009); *Polar Intern. Brokerage Corp. v. Reeve.*, 108 F.
Supp. 2d 225, 238 (S.D.N.Y. 2000) (holding the group pleading doctrine was
appropriate for grouping defendants – including a private equities firm initiating a
tender offer, an indirectly owned subsidiary of the firm, individual officers and
directors of the target corporation, *and investment banks working on the offer* –
where they drafted and/or approved offering documents); *In re Health
Management, Inc. Sec. Litig.*, 970 F. Supp. 192, 209-210 (E.D.N.Y. 1997)
("Although [defendants] may not have been top level officers of [the issuing firm],
the Court finds that the plaintiffs have alleged that they were 'insiders,' falling
within the group pleading presumption.").

[43]     Def. Mem. at 11 (quotation marks omitted).

[44]     970 F. Supp. at 209-210.  *Accord DiVittorio v. Equidyne Extractive
Indus., Inc.*, 822 F.2d 1242, 1248 (2d Cir. 1987).

identifying time, place, speaker, and content of representation."[45]  In such

instances, "no specific connection between fraudulent representations in [an]

Offering Memorandum and particular defendants is necessary. . . ."[46]  Therefore,

plaintiffs' failure to allege "that [they] had any oral or written communications of

any kind with Morgan Stanley concerning the [Private Placement Memorandum],

or that [they] received the allegedly false credit ratings from Morgan Stanley"[47] is

not fatal to their claim.

   To the extent Morgan Stanley suggests that *Central Bank*'s rule

precluding secondary liability for aiding and abetting federal securities fraud

somehow undermines the group pleading doctrine, it is mistaken.  While I

acknowledge that there is some tension between the group pleading doctrine and

the "attribution requirement" of *Central Bank* and *PIMCO*, courts have

consistently held, in the federal securities litigation context, that "neither the

[Private Securities Litigation Reform Act] nor *Central Bank* preclude group

pleading or require[] that each individual defendant actually make the

---

[45]  *Ouaknine*, 897 F.2d at 80.

[46]  *Luce*, 802 F.2d at 55.

[47]  Def. Mem. at 9.  *Accord id.* at 11-12 ("[]Neither plaintiff, in fact, alleges how, when or by what means it received the challenged ratings.[]").

11

representation."[48]  Moreover, courts in this district have continued to apply the

group pleading doctrine since *PIMCO* was decided in April of 2010.[49]

  Finally, for the same reasons I found little support in *J&R Marketing,*

*SEP v. General Motors Corp.*[50] for defendant IKB's motion to dismiss,[51] Morgan

Stanley's reliance on the same case is misplaced.  In *J&R Marketing*, the Sixth

Circuit granted defendant's motion to dismiss a fraud claim alleging that GMAC

---

[48] *Oxford Health*, 187 F.R.D. at 142 (quotation marks and citation omitted) (finding plaintiffs' allegations that defendants – who did not directly make the fraudulent statements at issue but who "had knowledge of the fraud and assisted in its perpetration by, *inter alia*, drafting, reviewing and/or disseminating the statements, and keeping silent about the truth while trading on the negative inside information" -- had sufficiently pled primary securities fraud violations). *Accord S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1471 (2d Cir. 1996); *In re Livent, Inc. Sec. Litig.*, 78 F. Supp. 2d 194, 219 (S.D.N.Y. 1999); *In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430, 438 (S.D.N.Y. 2005) ("[T]he majority of courts in this and other jurisdictions have found that the [group pleading] doctrine is alive and well.") (collecting cases).

[49] *See, e.g., In re Celestica Inc. Sec. Litig.*, No. 07 Civ. 312, 2010 WL 4159587, at *3 (S.D.N.Y. Oct. 14, 2010) ("The Second Circuit Court of Appeals has not foreclosed the possibility that the group pleading doctrine is still viable."); *Footbridge Ltd. v. Countrywide Home Loans, Inc.*, No. 09 Civ. 4050, 2010 WL 3790810, at *23 n. 2 (S.D.N.Y. Sept. 28, 2010) ("The majority of judges in this district who have addressed the issue have concluded that the group pleading doctrine has survived the PSLRA."); *Anwar v. Fairfield Greenwich Ltd.*, ___ F. Supp. 2d ____, No. 09 Civ. 0118, 2010 WL 3341636, at *19 (S.D.N.Y. Aug. 18, 2010) ("The [complaint] alleges a tight weave of connections between the Fraud Defendants such that group pleading is appropriate.").

[50] 549 F.3d 384 (6th Cir. 2008).

[51] *See* 5/18/10 Tr. at 12-13.

was liable for its corporate ratings, but noted that the claim may have been

sustained if it had been alleged that GMAC deceived the rating agencies to obtain

those ratings.[52]  The fact that the Rating Agencies in this case were allegedly

working in conjunction with Morgan Stanley to deceive investors – rather than

being duped by them – falls squarely within the bounds of the Sixth Circuit's

hypothetical.

### B.    Reasonable Reliance

Plaintiffs allege (1) that they relied on the Rhinebridge SIV's Top

Ratings in purchasing Senior Notes and (2) that Morgan Stanley had access to non-

public information showing that the credit ratings were false.[53]  Accordingly, as in

*Abu Dhabi*, the FAC sufficiently alleges that plaintiffs' reliance on the Top Ratings

was neither unreasonable nor foolish,[54] and therefore adequately pleads reasonable

reliance.[55]

---

[52]    *J&R Marketing*, 549 F.3d at 393 n.5.

[53]    *See id.* ¶¶ 16, 171, 181.

[54]    *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 182 (2d Cir. 2007) (plaintiff must allege "that its reliance on the alleged misrepresentation[] was not so utterly unreasonable, foolish or knowingly blind as to compel the conclusion that whatever injury it suffered was its own responsibility").

[55]    *See Abu Dhabi*, 651 F. Supp. 2d at 181 (plaintiffs' reliance on credit ratings obtained by Morgan Stanley from Moody's and S&P was neither "unreasonable" nor "foolish" because (1) "the market at large, including

Morgan Stanley challenges the FAC's reliance allegations on grounds virtually identical to those it asserted – and I rejected – in *Abu Dhabi*. It argues that plaintiffs acted unreasonably in relying on the allegedly false and misleading ratings because (1) plaintiffs do not allege they understood the ratings to be the statements of *Morgan Stanley*; (2) any reliance on the ratings was unreasonable in light of express disclaimers of liability contained in the Information Memoranda; and (3) plaintiffs failed to conduct their own due diligence in the face of "red flags" contained in the Information Memoranda.[56] In particular, defendant argues that, because plaintiffs could have requested a list of the SIV's constituent assets, and because the Information Memoranda disclosed that the Senior Notes would be backed by some non-prime assets, plaintiffs "are foreclosed from arguing that their failure to possess such information voids the disclaimer."[57]

The first argument simply repackages Morgan Stanley's argument that *it* made no material misstatement, an argument I have already rejected.[58] The

---

sophisticated investors, has come to rely on the accuracy of credit ratings"; and (2) defendants had "access to non-public information that even sophisticated investors [could not] obtain").

[56]     *See* Def. Mem. at 13-14.

[57]     *Id.* at 8.

[58]     The case on which Morgan Stanley relies for this proposition, *In re Refco, Inc. Securities Litigation*, also concerned the liability of so-called

14

second and third arguments are unavailing for the same reasons I ruled in *Abu Dhabi*, under analogous circumstances, that plaintiffs' reliance on credit ratings was reasonable despite liability disclaimers and due diligence requirements contained in the Information Memorandum.[59]  As Morgan Stanley acknowledges, such disclaimers and due diligence "requirements" are invalid if "'the information required to confirm or disprove the validity of the [ratings] was peculiarly within [Morgan Stanley's] knowledge.'"[60]  Here, plaintiffs have alleged a great deal of such peculiarly-held knowledge on Morgan Stanley's part.  The FAC alleges not only that Morgan Stanley knew (1) that the Rated Notes were neither safe nor stable, but also (2) that the ratings process was flawed and (3) that the Rating Agencies could not issue objective ratings – none of which was disclosed to

---

"secondary actors" in a private damages action under federal securities laws.  609 F. Supp. 2d 304, 313 (S.D.N.Y. 2009).  *See* Def. Mem. at 13.  As I explained above, however, plaintiffs have adequately pled that Morgan Stanley was an insider of the Rhinebridge SIV, not a "secondary actor" as that term is understood in the federal securities law context.  Therefore, plaintiffs need not plead that they "reasonably understood [Morgan Stanley] to be speaking" when they relied on the false and misleading ratings.  *In re Refco*, 609 F. Supp. 2d at 313-14.  *See also* Def. Mem. at 13.

[59]      *See Abu Dhabi*, 651 F. Supp. 2d at 180-81.

[60]      Defendant's Reply to Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss ("Reply Mem.") at 7 (quoting *Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*, 748 F.2d 729, 738 (2d Cir. 1984)).

investors or discoverable through reasonable diligence.[61]

      *First*, plaintiffs allege that Morgan Stanley knew the Senior Notes were not the safe, secure, and reliable investment the Top Ratings conveyed.  Like IKB, Morgan Stanley knew that Rhinebridge had violated at least two operating instructions prior to issuing the Senior Notes because it held approximately three times more than its single obligor limit in Countrywide[62] and had violated its Capital Test.[63]  Morgan Stanley also knew that the Rating Agencies had bent to its pressure to accept large concentrations of risky HELs as LEAs as late as August 2007 (when the subprime market was severely depressed and illiquid)[64] so that Rhinebridge would pass important liquidity tests.[65]  In short, "[w]hatever the exact true values of Rhinebridge's constituent assets were on or about June 27, 2007,

---

    [61]    I note that this analysis is directly applicable to plaintiffs' scienter allegations, which I discuss below. *See Abu Dhabi*, 651 F. Supp. 2d at 179 ("[W]here both the Rating Agencies and Morgan Stanley [1] knew that the ratings process was flawed, [2] knew that the portfolio was not a safe, stable investment, and [3] knew that the Rating Agencies could not issue an objective rating because of the effect it would have on their compensation, it may be plausibly inferred that Morgan Stanley and the Rating Agencies knew they were disseminating false and misleading ratings.").

    [62]    *See* FAC ¶ 186.

    [63]    *See id.* ¶ 187.

    [64]    *See id.* ¶ 183.

    [65]    *See id.* ¶ 182.

they were well below the value necessary to generate Top Ratings or satisfy the 'Capital Test,'"[66] and Morgan Stanley knew it.

Second, plaintiffs allege that Morgan Stanley knew the ratings process was flawed. Morgan Stanley knowingly designed and manipulated ratings models to yield the false and misleading Top Ratings,[67] including using old models based on inaccurate and stale data, false assumptions, and irrelevant historical data preceding 2000 ("grandfathering").[68] Accessing a list of the SIV's constituent assets and asking a bank to value them would not have revealed to plaintiffs that the *Rating Agencies'* valuation methodologies were deeply flawed – information

---

[66]    *Id.* ¶ 119.

[67]    *See id.* ¶ 191 ("After calibrating its model to match the models used by the Rating Agencies, Morgan Stanley was able to determine which manipulations to the model's inputs, limits and parameters were necessary to achieve the desired ratings.  Through this process, Morgan Stanley suggested revisions and adjustments to the model, such as modified stress level inputs, in order to achieve the desired ratings.").

[68]    *See id.* ¶ 194.  Plaintiffs allege that the credit market changed dramatically from 2001-2005.  *See id.* ¶ 150 (alleging that from 2001-2005, the percentage of "subprime" mortgage loans tripled; the combined loan-to-value ("LTV") ratio of loans in excess of ninety percent tripled; "limited documentation" loans (or "liar loans") nearly quadrupled; "interest only" and "option" adjustable rate mortgages quintupled; "piggy back" or second-lien mortgages doubled; the amount of equity U.S. homeowners stripped out of their homes tripled; the volume of loans originated for "second homes" more than tripled; the percentage of loans including "silent seconds" – a nearly non-existent phenomenon a few years prior to the issuance of the Senior Notes – experienced over a sixteen thousand percent increase; and the volume of nontraditional mortgages more than quintupled).

17

peculiarly within Morgan Stanley's knowledge.

*Third*, plaintiffs have plausibly alleged that Morgan Stanley knew the ratings were issued based on inherent conflicts of interest arising from a situation IKB and Morgan Stanley had created.[69]  Morgan Stanley was "the point-of-contact for the Rating Agencies and IKB in . . . negotiating the parties' fees for their involvement in Rhinebridge"[70] – fees that amounted to three times the Rating Agencies' compensation for rating traditional municipal or corporate bonds.[71] Again, no diligence by investors would have revealed the extent to which these conflicts of interest warped the Rating Agencies' objectivity -- objectivity Morgan Stanley knew had been compromised and on which investors relied.

Finally, defendant suggests that this Court's denial of class certification in *Abu Dhabi*[72] somehow undermined its determination that reliance was properly *pled* in that case.[73]  Of course, the reliance inquiry at the motion to

---

[69]     *See* FAC at 22 (Heading A) ("Due to conflicts of interest in the structuring, rating and monitoring of Rhinebridge and its constituent assets, the ratings were misleading, as defendants knew."); *id.* ¶¶ 99, 188-189.

[70]     *Id.* ¶ 173.

[71]     *See id.* ¶ 60.

[72]     *See Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, No. 08 Civ. 7508, 2010 WL 2593948, at *6-*9 (S.D.N.Y. June 15, 2010).

[73]     *See* Def. Mem. at 14 n. 5.

dismiss stage pursuant to Rule 12(b)(6) is completely different from the reliance inquiry at the class certification stage, when the court must inquire whether individualized issues pertaining to reliance predominate over other issues common to the class. Therefore, this argument also fails.

### C.    Scienter

The FAC sufficiently pleads both (1) that Morgan Stanley had the motive and opportunity to commit fraud[74] and (2) strong circumstantial evidence of Morgan Stanley's conscious misbehavior or recklessness.[75] Therefore, plaintiffs have adequately pled scienter.

*First*, Morgan Stanley had the same alleged motive and opportunity to commit fraud in this case that it had in *Abu Dhabi*. It received fifteen million dollars for launching Rhinebridge – five million dollars more than it received for its work on the Cheyne SIV at issue in *Abu Dhabi* – and was entitled to a Performance Fee equal to a portion of Rhinebridge's net distributable profits.[76]

---

[74]    *See Abu Dhabi*, 651 F. Supp. 2d at 171 ("Adequately pleading [m]otive would entail concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged, while adequately pleading opportunity would entail the means and likely prospect of achieving concrete benefits by the means alleged.") (quotations omitted).

[75]    *See Kalnit v. Eichler*, 264 F.3d 131, 138-39 (2d Cir. 2001).

[76]    *See* FAC ¶ 195; *see also Abu Dhabi*, 651 F. Supp. 2d at 180 (finding on similar facts that Morgan Stanley had the "motive to maintain the appearance

Moreover, it knew that the Rated Notes would not sell without the Rating Agencies' highest ratings.[77]  Morgan Stanley also had the opportunity to commit fraud by virtue of its alleged influence over the Rating Agencies and their issuance of the false and misleading ratings, as well as its distribution of the Selling Documents.[78]

       *Second*, plaintiffs have sufficiently alleged conscious misbehavior or recklessness by Morgan Stanley.[79]  As I explained above, plaintiffs sufficiently alleged that Morgan Stanley knew (1) the portfolio was not a safe, stable investment; (2) the ratings process was flawed; and (3) the Rating Agencies could not issue an objective rating.  Just as those allegations rendered moot the Information Memoranda's disclaimers and diligence requirements, they render plausible plaintiffs' claim that Morgan Stanley engaged in conscious misbehavior

---

that the SIV assets were safe and highly rated.").

[77]    *See* FAC ¶ 195; *see also Abu Dhabi*, 651 F. Supp. 2d at 180 (finding on similar facts that Morgan Stanley was "motivated to ensure that the Rated Notes received high ratings, whether or not those ratings were justified").

[78]    *See* FAC ¶ 196; *see also Abu Dhabi*, 651 F. Supp. 2d at 180 (finding on similar facts that "Morgan Stanley was well positioned to cause the false and misleading ratings to be disseminated to investors, thereby establishing Morgan Stanley's opportunity to commit the alleged fraud").

[79]    Morgan Stanley does not appear to contest this allegation as both of its memoranda focus exclusively on refuting the argument that it had the motive and opportunity to commit fraud.  *See* Def. Mem. at 15-18; Reply Mem. at 8-9.

or recklessness.[80]   Accordingly, plaintiffs have alleged an inference of scienter that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent."[81]

D.   **Aiding and Abetting Common Law Fraud**

Plaintiffs have pled (1) facts showing the existence of fraud on the part of both the Rating Agencies and IKB; (2) Morgan Stanley's knowledge of that underlying fraud; (3) that Morgan Stanley provided substantial assistance to advance the fraud's commission; and (4) damages.[82]   Accordingly, they have stated a claim for aiding and abetting common law fraud against Morgan Stanley under

---

[80]   *See Abu Dhabi*, 651 F. Supp. 2d at 179 ("where both the Rating Agencies and Morgan Stanley [1] knew that the ratings process was flawed, [2] knew that the portfolio was not a safe, stable investment, and [3] knew that the Rating Agencies could not issue an objective rating because of the effect it would have on their compensation, it may be plausibly inferred that Morgan Stanley and the Rating Agencies knew they were disseminating false and misleading ratings.").

[81]   *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).   *Accord In re MBIA, Inc., Sec. Litig.*, No. 08 Civ. 264, 2010 WL 1253925, at *19-*20 (S.D.N.Y. Mar. 31, 2010).

[82]   *See Wight v. BankAmerica Corp.*, 219 F.3d 79, 91 (2d Cir. 2000) (to state a claim for aiding and abetting fraud under New York law, a plaintiff must plead (1) facts showing the existence of a fraud; (2) defendant's knowledge of the underlying fraud; (3) that the defendant provided substantial assistance to advance the fraud's commission; and (4) damages).

Rule 9(b).[83]  Again, the factual allegations supporting plaintiffs' aiding and

abetting claim are virtually identical to those pled against Morgan Stanley in *Abu*

*Dhabi*, where I found plaintiffs had adequately stated such a claim.[84]

       *First*, as I ruled earlier in this case, plaintiffs have adequately stated

primary causes of action for common law fraud against both the Rating Agencies

and IKB.[85]  *Second*, the FAC sufficiently alleges that Morgan Stanley had *actual*

*knowledge* of IKB's and the Rating Agencies' underlying fraud.[86]  In reinstating

plaintiffs' aiding and abetting claims in *Abu Dhabi*, I found sufficient allegations

of Morgan Stanley's actual knowledge of the underlying fraud where plaintiffs

pled that Morgan Stanley:  knew the credit ratings were false; possessed actual

information that contradicted the high ratings that the SIV had received; knew the

ratings process was flawed; knew the portfolio was not a safe, stable investment;

---

    [83]    Federal Rule of Civil Procedure 9(b)'s heightened pleading standard for fraud applies to claims of aiding and abetting fraud as well. *See id.* at 91-92.

    [84]    *See* 7/20/10 Tr. at 8.

    [85]    *See King County I*, 2010 WL 2010943, at *6 (denying IKB's and Fitch's motions to dismiss plaintiffs' common law claims); 5/18/10 Tr. at 11, 16.

    [86]    *See JP Morgan Chase Bank v. Winnick*, 406 F. Supp. 2d 247, 252 (S.D.N.Y. 2005) ("The knowledge requirement of an aiding and abetting fraud claim is satisfied by alleging *actual knowledge* of the underlying fraud.") (emphasis added) (citation omitted); *see also Kolbeck v. LIT Am., Inc.*, 939 F. Supp. 240, 246-47 (S.D.N.Y. 1996).

and knew the Rating Agencies could not issue an objective rating because of the effect it would have on their compensation.[87]

Plaintiffs make the same allegations in this case.[88]  Their reliance and scienter allegations, discussed above, not only "'constitute strong circumstantial evidence of [Morgan Stanley's] recklessness'" (as required to plead common law fraud); but also create "a reasonable inference of [Morgan Stanley's] actual knowledge"[89] of IKB's and the Rating Agencies' underlying fraud – the higher threshold required to state a claim for aiding and abetting.

Defendant argues that plaintiffs must plead that Morgan Stanley had actual knowledge "that the [R]ating [A]gencies did not hold the opinions expressed by the ratings and were issuing those ratings fraudulently."[90]  I find defendant's semantic argument unpersuasive.  I have already ruled that plaintiffs stated a claim for fraud against Fitch,[91] which means plaintiffs have adequately pled that (1) Fitch did not "'genuinely and reasonably believe'" the ratings it issued or that (2) those

---

[87]    *See* 7/20/10 Tr. at 8-9.

[88]    *See supra* Parts III.B-III.C.

[89]    *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of America Sec., LLC*, 652 F. Supp. 2d 495, 502-03 (S.D.N.Y. 2009) (quotation marks omitted).

[90]    Def. Mem. at 18.  *Accord* Reply Mem. at 9-10.

[91]    *See* 5/18/10 Tr. at 11.

23

ratings were "'without basis in fact'"[92] – *i.e.*, that they did not "hold the opinions

expressed by the ratings."[93]  The FAC also alleges that Morgan Stanley worked *in*

*tandem* with IKB and the Rating Agencies to construct an investment vehicle

whose junk assets (supported by junk equity)[94] belied its high ratings – ratings that

were achieved in part by Morgan Stanley's actively assisting the Rating Agencies

by (1) manipulating its models and (2) convincing them to "grandfather" the

Rhinebridge SIV.[95]  A defendant's active participation in fraud creates more than a

reasonable inference that it had knowledge of it.

   *Third*, plaintiffs have adequately alleged "substantial assistance by

[Morgan Stanley] in the achievement of the primary violation."[96]  "A defendant

provides substantial assistance only if it 'affirmatively assists, helps conceal, or by

---

[92]    *Abu Dhabi*, 651 F. Supp. 2d at 176 (quoting *In re IBM Corp. Sec. Litig.*, 163 F.3d 102, 109 (2d Cir. 1998)).

[93]    Def. Mem. at 18.

[94]    *See* FAC ¶ 41 ("[Investors in Rhinebridge were supposedly protected by subordinated series or 'tranches' of junior liabilities.  The sole 'equity' of SIVs in general, and Rhinebridge in particular, consists of a thin slice of unrated notes and nominal equity.").

[95]    *See id.* ¶ 194.

[96]    *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 303 (2d Cir. 2006) (quotation marks omitted).  *Accord Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 294 (2d Cir. 2006).

virtue of failing to act when required to do so enables the fraud to proceed'"[97] and proximately causes the harm on which the primary liability is predicated.[98]

      In reinstating plaintiffs' aiding and abetting claims in *Abu Dhabi*, I found sufficient allegations of Morgan Stanley's substantial assistance where plaintiffs pled that:  Morgan Stanley and the Rating Agencies together designed, structured, marketed and maintained the Cheyne SIV; Morgan Stanley disseminated the false and misleading ratings with the knowledge, participation, and approval of the Rating Agencies; and the Rating Agencies issued the false and misleading ratings with the assistance of Morgan Stanley.[99]

      Again, plaintiffs have made the same allegations in this case, all of which are noted above.[100]  Thus, their allegations are sufficient to support the claim

---

[97]    *Nigerian Nat'l Petroleum Corp. v. Citibank, N.A.*, No. 98 Civ. 4960, 1999 WL 558141, at *8 (S.D.N.Y. July 30, 1999) (quoting *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 284 (2d Cir. 1992), *abrogated on other grounds by Mertens v. Hewitt Assocs.*, 508 U.S. 248 (1993)).

[98]    *See Diduck*, 974 F.2d at 284; *McDaniel v. Bear, Stearns & Co.*, 196 F. Supp. 2d 343, 359 (S.D.N.Y. 2002) (with respect to aiding and abetting fraud claim, "[p]roximate cause exists where defendant's actions were a substantial factor in the sequence of responsible causation, and plaintiff's injury was reasonably foreseeable or anticipated as a natural consequence") (quotation marks and citation omitted).

[99]    *See* 7/20/10 Tr. at 9.

[100]    As I noted earlier, plaintiffs allege (1) that "Morgan Stanley, together with IKB and the Rating Agencies, designed, structured, marketed and maintained

that Morgan Stanley substantially assisted its co-defendants in defrauding

plaintiffs.  These allegations also sufficiently plead proximate causation.[101]

   *Fourth*, plaintiffs adequately allege that, as investors who purchased

interests in the Rhinebridge SIV in reliance on the false and misleading ratings,

they were harmed by Morgan Stanley's aiding and abetting of the primary fraud.[102]

   Accordingly, plaintiffs state a claim for aiding and abetting common

law fraud against Morgan Stanley.  Moreover, plaintiffs may plead both primary

fraud *and* aiding and abetting; such a pleading strategy is legally permissible, as

plaintiffs need not, at the motion to dismiss stage, choose amongst alternative

theories of relief.[103]

---

Rhinebridge," FAC ¶ 170; (2) that "Morgan Stanley and IKB chose the assets that
were included in the Rhinebridge's portfolio," *id.* ¶ 171; (3) that "Morgan Stanley,
IKB and the Rating Agencies monitored Rhinebridge's portfolio of assets," *id.*; and
(4) that "[i]t was through Morgan Stanley's and IKB's distribution of the false
credit ratings via private information services, Information Memoranda, and the
Selling Documents that the false and misleading ratings reached investors," *id.* ¶
196.

[101]  *See ABF Capital Mgmt. v. Askin Capital Mgmt., L.P.*, 957 F. Supp.
1308, 1328 (S.D.N.Y. 1997) (where plaintiffs "allege[d] a highly interdependent
scheme in which both parties benefitted from . . . fraudulent activity . . . [,]
allegations that a defendant actively assisted and facilitated the fraudulent scheme
itself . . .[were] sufficient").

[102]  *See* FAC ¶¶ 15-17, 228; *see also* 7/20/10 Tr. at 9-10.

[103]  *See* 7/20/10 Tr. at 8.

## IV.   CONCLUSION

For the reasons discussed above, defendant's motion to dismiss plaintiffs' claims for common law fraud and for aiding and abetting common law fraud is denied.  The Clerk of the Court is directed to close this motion (Docket no. 132).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            October 29, 2010

## - Appearances -

**For Plaintiffs King County, Washington and Iowa Student Loan Liquidity Corporation:**

Anne L. Box, Esq.
Patrick J. Coughlin, Esq.
Daniel S. Drosman, Esq.
Nathan R. Lindell, Esq.
Jessica T. Shinnefield, Esq.
David C. Walton, Esq.
Darryl J. Alvarado, Esq.
X Jay Alvarez, Esq.
Christina A. Royce, Esq.
Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, California 92101
(619) 231-1058

Samuel H. Rudman, Esq.
David A. Rosenfeld, Esq.
Robert M. Rothman, Esq.
Jarrett S. Charo, Esq.
Robbins Geller Rudman & Dowd LLP
58 South Service Road, Suite 200
Melville, New York 11747
(631) 367-7100

Luke O. Brooks, Esq.
Jason C. Davis, Esq.
Robbins Geller Rudman & Dowd LLP
Post Montgomery Center
1 Montgomery Street, Suite 1800
San Francisco, California 94104
(415) 288-4545

**For Defendants Morgan Stanley & Co., Inc. and Morgan Stanley & Co. International Limited:**

Antonio Jorge Perez-Marques, Esq.
Davis Polk & Wardwell L.L.P.
450 Lexington Avenue
New York, NY 10017
(212) 450-4559

James P. Rouhandeh, Esq.
Davis Polk & Wardwell L.L.P.
450 Lexington Avenue
New York, NY 10017
(212) 450-4835

28

**For Defendants IKB Deutsche
Industriebank AG and IKB Credit
Asset Management, GmbH:**

John D. McFerrin-Clancy, Esq.
Zachary D. Rosenbaum
Lowenstein Sandler PC
1251 Avenue of The Americas
New York, New York 11020
(212) 262-6700

Thomas E. Redburn, Jr., Esq.
Jennifer Jane McGruther, Esq.
Lowenstein Sandler PC
65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2456

**For Defendants Moody's Investors
Service Limited and Moody's
Investors Service, Inc.**

James J. Coster, Esq.
Justin E. Klein, Esq.
James J. Regan, Esq.
Joshua M. Rubins, Esq.
Aaron M. Zeisler, Esq.
Satterlee Stephens Burke & Burke LLP
230 Park Avenue
New York, New York 10169
(212) 818-9200

**For Defendant The McGraw Hill
Companies, Inc. d/b/a Standard &
Poor's Rating Services**

Floyd Abrams, Esq.
Andrea R. Butler, Esq.
Jason M. Hall, Esq.
Brian T Markley, Esq.
Dean I. Ringel, Esq.
Tammy L. Roy, Esq.
Adam N. Zurofsky, Esq.
Cahill Gordon & Reindel LLP
80 Pine Street
New York, New York 10005
(212) 701-3000

**For Defendant Fitch, Inc.**

Andrew J. Ehrlich, Esq.
Martin Flumenbaum, Esq.
Roberta A. Kaplan, Esq.
Mark S. Silver, Esq.
Tobias J. Stern, Esq.
Paul, Weiss, Rifkind, Wharton &
Garrison LLP
1285 Avenue of the Americas
New York, New York 10019
(212) 373-3166

29

**For Defendant Stefan Ortseifen:**          **For Defendant Winfried Reinke:**

Thomas S. Wiswall, Esq.                      Fran M. Jacobs, Esq.
Phillips Lytle LLP                           Duane Morris LLP
1400 First Federal Plaza                     1540 Broadway
Rochester, New York 14203                    New York, NY 10036
(716) 847-7031                               (212) 692-1000

30