UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
KING COUNTY, WASHINGTON, IOWA : 1:09-CV-08387 (SAS)
STUDENT LOAN LIQUIDITY CORPORATION, :
Together and on Behalf of All Others :
Similarly Situated, et ano., :
 :
      Plaintiffs, :
 :
 -against- :
 :
IKB DEUTSCHE INDUSTRIEBANK AG, et al., :
 :
      Defendants. :
-------------------------------------------------------------------x

REPLY MEMORANDUM IN SUPPORT OF DEFENDANT
WINFRIED REINKE'S MOTION TO DISMISS
<u>FOR LACK OF JURISDICTION AND FAILURE TO STATE A CLAIM</u>

DUANE MORRIS LLP
1540 Broadway
New York, New York 10036
(212) 692-1000
Attorneys for Defendant Winfried Reinke

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| Table of Authorities……………………………………………………………….. | | ii |
| Preliminary Statement…………………………………………………………….. | | 1 |
| I. | PLAINTIFFS HAVE NOT PRODUCED EVIDENCE SHOWING THAT REINKE IS SUBJECT TO PERSONAL JURISDICTION IN NEW YORK………………………………………………………….. | 1 |
| | A. The April 2006 Meeting with Morgan Stanley…………………… | 1 |
| | B. The April 2006 Meeting with C-Bass……………………………... | 3 |
| | C. The April 2007 Meeting with C-Bass……………………………... | 4 |
| | D. Reinke Had No Other New York Contacts Relating to Rhinebridge…………………………………………………….. | 5 |
| | E. IKB CAM's Conduct Cannot Properly Be Imputed to Reinke……. | 6 |
| | F. Exercising Jurisdiction Over Reinke Would Offend Due Process… | 8 |
| II. | PLAINTIFFS' PLEADING DOES NOT SATISFY FED. R. CIV. P. 9(b)…………………………………………………….. | 9 |
| CONCLUSION…………………………………………………………………… | | 10 |

TABLE OF AUTHORITIES

Cases                                                                                                Page(s)

Abbate v. Abbate,
    82 A.D. 2d 368, 441 N.Y.S. 2d 506 (2d Dep't 1981) ...................................................... 7

Ball v. Metallurgie Hoboken-Overpelt, S.A.,
    902 F.2d 194 (2d Cir. 1990) ............................................................................................ 3

C.B.C. Wood Prods., Inc. v. LMD Integrated Logistics Servs., Inc.,
    455 F.Supp.2d 218 (E.D.N.Y. 2006) ............................................................................... 4

Chamberlain v. Peak,
    155 A.D. 2d 768, 547 N.Y.S. 2d 706 (3d Dep't 1989) .................................................... 5

Cromer Fin., Ltd. v. Berger,
    137 F.Supp.2d 452 (S.D.N.Y. 2001) ............................................................................... 8

Duravest, Inc. v. Viscardi, A.G.,
    581 F.Supp.2d. 628 (S.D.N.Y. 2008) .............................................................................. 7

Family Internet, Inc. v. Cybernex, Inc.,
    1999 U.S. Dist. LEXIS 15549 (S.D.N.Y. Oct. 6, 1999) .................................................. 7

Katiroll Co., Inc. v Kati Roll & Platters, Inc.,
    2010 U.S. Dist. LEXIS 70977 (S.D.N.Y. Jul. 9, 2010) ................................................... 5

Marvel Worldwide, Inc. v. Kirby,
    2010 WL 1655253 (S.D.N.Y. Apr. 14, 2010) ................................................................. 9

Merck Eprova AG v. Gnosis S.p.A.,
    2008 WL 5336587 (S.D.N.Y. Dec. 12, 2008) ................................................................. 8

Middlesex Retirement Sys. v. Quest Software, Inc.,
    2008 WL 7084629 (C.D. Cal. Jul. 10, 2008) ................................................................ 10

Ontel Prods. Inc. v. Project Strategies Corp.,
    899 F.Supp. 1144 (S.D.N.Y. 1995) ............................................................................. 7-8

Pyramyd Stone Int'l Corp. v. Crosman Corp.,
    1997 WL 66778 (S.D.N.Y. Feb. 18, 1997) ..................................................................... 3

In re Ross Sys. Secs. Litig.,
    1994 U.S. Dist. LEXIS 21263 (N.D. Cal. Jul. 21, 1994) ................................................ 9

SEC v. Espuelas,
    699 F.Supp.2d 655 (S.D.N.Y. 2010) ............................................................................... 9

Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC,
    450 F.3d 100 (2d Cir. 2006).................................................................................4

Storch v. Vigneau,
    162 A.D. 2d 241, 556 N.Y.S. 2d 342 (1st Dep't 1990) .........................................4

Taberna Capital Mgmt., LLC v. Dunmore,
    2008 U.S. Dist. LEXIS 40533 (S.D.N.Y. May 20, 2008)..................................1, 6

Yellow Page Solutions, Inc. v. Bell Atlantic Yellow Pages Co.,
    2001 U.S. Dist. LEXIS 18831 (S.D.N.Y. Nov. 14, 2001)..................................3-4

Statutes / Rules

CPLR §302(a)(1) ................................................................................................ 1, 3-4

FED. R. CIV. P. 9(b)............................................................................................... 9-10

Preliminary Statement

Despite having received over a million pages of documents from IKB and thousands more from Morgan Stanley and the rating agency defendants, Plaintiffs have not come forward with any evidence showing that Reinke transacted business in New York which was directly related to an alleged scheme to misrepresent the value of Rhinebridge's senior notes.[1] Plaintiffs' argument that Reinke is subject to personal jurisdiction in New York is ultimately based on two visits, neither of which has a substantial connection to their fraud claim. For this reason and the other reasons set forth below, Reinke's motion to dismiss should be granted.

I. PLAINTIFFS HAVE NOT PRODUCED EVIDENCE SHOWING THAT REINKE IS SUBJECT TO PERSONAL JURISDICTION IN NEW YORK

Plaintiffs concede that Reinke cannot be subject to personal jurisdiction under CPLR §3021(a)(1) unless they present facts showing that (1) he transacted business in New York and (2) their claim arises from the business he transacted here.[2] (Pls. Opp. 3.) In an effort to meet this burden, Plaintiffs go beyond putting their own spin on the facts and actually make up "facts." There is no evidentiary basis for exercising jurisdiction over Reinke, and the Complaint against him should be dismissed. Taberna Capital Mgmt., LLC v. Dunmore, 2008 U.S. Dist. LEXIS 40533, *5 (S.D.N.Y. May 20, 2008) ("Where, as here, there has been jurisdictional discovery, the plaintiff must proffer actual evidence on the jurisdictional issue").

A. The April 2006 Meeting with Morgan Stanley. Plaintiffs assert that "an entry in Reinke's electronic calendar shows that on April 4, 2006 Reinke met with Morgan Stanley to

---

[1] Defined terms have the same meaning in this reply as in Reinke's opening memorandum. References to Plaintiffs' Memorandum in Opposition to Reinke's Motion to Dismiss are cited as "Pls. Opp. _" and references to Plaintiffs' exhibits are cited as "PX _."

[2] Prior to making this motion to dismiss, Reinke asked Plaintiffs to state whether they were basing jurisdiction on anything other than CPLR §302(a)(1). (Ex. 12.) Plaintiffs refused to answer the question – but address only §302(a)(1) in their response.

discuss the 'asset ramp up' for the Rhinebridge SIV." (Pls. Opp. 6.) This is, at best, a half-truth. Reinke's electronic calendar does not mention Rhinebridge (Ex. 4), and Reinke testified that "a decision on the subject of the asset ramp-up was not made until October 2006" – six months after the meeting occurred. (Reinke 83:23-24.)

Because no specific ramp up was planned in April 2006, Reinke explained that the discussion with Morgan Stanley could not have been about Rhinebridge and had to be general. While Plaintiffs assert that Reinke testified at his deposition that he had no recollection of what he discussed with Morgan Stanley, and they suggest that the declaration he submitted in support of his motion to dismiss is inconsistent with his deposition testimony (Pls. Opp. 6), the record shows that they are wrong. Reinke never testified that he could not recall the meeting with Morgan Stanley. On the contrary, he denied discussing the ramp up <u>for Rhinebridge</u> at his April 2006 meeting with Morgan Stanley (Reinke 79:21-80:12), but recalled discussing "general cooperation and not specific deals" (<u>Id.</u>, 79:7-18. 79:21-80:3).[3] And the following comparison of Reinke's deposition testimony (Reinke 83:25-84:7) and his declaration (Reinke Decl. ¶9) shows that they are entirely consistent:

> Q. Is it your testimony, sir, that you specifically recall that you did not have a conversation with Morgan Stanley about an asset ramp-up in April 2006 in New York?
>
> A. No. If this happened then it was in the way I stated, namely that we discussed general subjects of general areas of cooperation. One such area may have been asset ramp-up.
>
> \* \* \*
>
> Any discussion about an asset ramp up in April 2006 would necessarily have been conceptual in nature and would have been part of a more general discussion about ways Morgan Stanley and IKB could work together.

In addition to failing to offer evidence establishing that the April 2006 meeting with Morgan Stanley concerned Rhinebridge, Plaintiffs have failed to present evidence showing that

---

[3] Plaintiffs could have deposed Morgan Stanley to confirm Reinke's recollection.

- 2 -

anything that happened at that meeting was in furtherance of a fraudulent scheme. The absence of such evidence makes the meeting irrelevant for jurisdictional purposes – even if a ramp up was discussed. Pyramyd Stone Int'l Corp. v. Crosman Corp., 1997 WL 66778, *10 (S.D.N.Y. Feb. 18, 1997) (German corporation's motion to dismiss granted even though its general manager attended meetings in New York, because "[p]laintiffs do not state facts to show how any communications by [the general manager] to Crosman-U.S. were in furtherance or even related to the alleged tortious activity. These conclusory and speculative allegations are not enough for §302(a)(1) jurisdiction"); Yellow Page Solutions, Inc. v. Bell Atlantic Yellow Pages Co., 2001 U.S. Dist. LEXIS 18831, *22 (S.D.N.Y. Nov. 14, 2001) (although plaintiffs showed defendants attended meetings in New York, they "offer no more than speculation as to what was discussed at these meetings, and therefore have failed to support §302(a)(1) jurisdiction").

Since Plaintiffs have presented no evidence showing that Reinke and Morgan Stanley discussed Rhinebridge when they met in April 2006 – let alone that their discussion was in furtherance of a scheme to collaborate with the rating agencies to perpetrate a fraud – the meeting cannot be used to subject Reinke to jurisdiction in New York.

B.   The April 2006 Meeting with C-Bass. In alleging that, "during that same business trip to New York in April 2006, Reinke also met with [C-Bass]. . . regarding Rhinebridge's asset ramp up" (Pls. Opp. 2), Plaintiffs have let their imaginations run rampant. Since they neglected to question Reinke at his deposition about his April 2006 meeting with C-Bass (and did not even depose C-Bass), there is no factual support for this allegation.[4] Plaintiffs simply speculate that, because a few C-Bass bonds were later included in Rhinebridge, it somehow follows that Reinke

---

   4   Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 100 (2d Cir. 1990) ("this is not a case in which plaintiffs' efforts to marshal evidence on this point were frustrated by [defendant's] inability or unwillingness to supply sales information. Even though discovery revealed that Afrimet often shipped products directly from Belgium to customers, plaintiffs failed to inquire what portion of these sales resulted in products delivered in New York").

- 3 -

must have discussed Rhinebridge's ramp up with C-Bass in April 2006.

The record shows that Plaintiffs' speculation about what Reinke discussed with C-Bass in April 2006 is not just baseless, it is wrong. As Reinke explained in his declaration, C-Bass was one of the asset managers with which he met two or three times a year to discuss offerings in which IKB has an interest – and the April 2006 meeting with C-Bass was one of these routine periodic meetings. (Reinke Decl. ¶¶7-8; Ex. 8 p. 427806.) In any case, because Plaintiffs "offer no more than speculation as to what was discussed," Yellow Page Solutions, supra, *22, and because they have not shown that the April 2006 meeting with C-Bass was in furtherance of a fraudulent scheme, the meeting does not support jurisdiction against Reinke.

C.   The April 2007 Meeting with C-Bass. To satisfy CPLR §302(a)(1), the defendant's conduct in New York "must directly relate to the cause of action at issue." C.B.C. Wood Prods., Inc. v. LMD Integrated Logistics Servs., Inc., 455 F.Supp.2d 218, 226 (E.D.N.Y. 2006); Storch v. Vigneau, 162 A.D. 2d 241, 242, 556 N.Y.S. 2d 342, 343 (1st Dep't 1990) (no jurisdiction where "record is devoid of any evidence that defendant's alleged activities in New York gave rise to the causes of action for which long-arm jurisdiction is sought").

Reinke's participation in an unsuccessful attempt to sell junior capital and mezzanine notes to C-Bass in April 2007 does not relate directly to Plaintiffs' claim that defendants committed fraud in connection with the sale of senior notes. If there is any connection between Reinke's April 2007 meeting with C-Bass and Plaintiffs' claim, it is attenuated and tangential, and therefore insufficient for jurisdictional purposes. As the Second Circuit noted in Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 104 (2d Cir. 2006), "where claims have been dismissed on jurisdictional grounds for lack of a sufficient nexus between the parties' New York contacts and the claim asserted, the event giving rise to the plaintiff's injury had, at best, a tangential relationship to any contacts the defendant had with New York." For

example, in Chamberlain v. Peak, 155 A.D. 2d 768, 547 N.Y.S. 2d 706, 707 (3d Dep't 1989), where plaintiff was injured in a Massachusetts ski accident during a trip defendant's representative organized in New York, the court rejected plaintiff's argument that there was a substantial nexus between his claim and defendant's New York marketing efforts. Even though plaintiff would not have been in Massachusetts had the ski slope not been promoted in New York, the court found plaintiff's claim "is too remote from defendant's New York sales and promotional activities." Id., 155 A.D. 2d at 769, 547 N.Y.S. 2d at 707.

Here, too, Reinke's April 2007 meeting with C-Bass lacks a direct and substantial nexus to Plaintiffs' fraud claim. While the 2007 meeting (unlike the 2006 meetings) may have had something to do with Rhinebridge, it has nothing to do with Plaintiffs' fraud claim: since C-Bass declined to buy any notes, and the notes it was offered were either unrated or low-rated, the meeting was not directly connected to Plaintiffs' claim that they were misled into buying Rhinebridge's senior notes based on their AAA ratings. See Katiroll Co., Inc. v Kati Roll & Platters, Inc., 2010 U.S. Dist. LEXIS 70977, *10 (S.D.N.Y. Jul. 9, 2010) (jurisdiction cannot be based on a New York meeting unless the meeting is "essential to the formation or continuance of a business relationship. Meetings in the forum state that are exploratory, unproductive, or insubstantial are insufficient to establish the requisite contacts with the State").

D.   Reinke Had No Other New York Contacts Relating to Rhinebridge. Plaintiffs try to give the Court the false impression that Reinke's contact with New York was less limited than an examination of his travel records indicates.[5] To this end, they write that Reinke collaborated "with the New York headquartered Rating Agencies" (Pls. Opp. 12) and "communicated" with

---

[5] Plaintiffs provide no evidentiary support for other assertions, such as their assertion that Reinke gave instructions to the New York broker dealers. (Pls. Opp. 11.) Unsubstantiated assertions of this sort cannot support jurisdiction.

- 5 -

Morgan Stanley and the Rating Agencies about Rhinebridge (Id. 5). But the evidence establishes that any contact Reinke had with Morgan Stanley or the rating agencies about Rhinebridge (other than as set forth in Point C above) was with personnel in London – not New York. (Lightfoot 54:18-56:19; Reinke 51:5-23.) Thus, the fact that Morgan Stanley and the rating agencies are headquartered in New York is irrelevant to whether Reinke is subject to jurisdiction here.

The heavy reliance Plaintiffs place on Taberna, supra, is also misplaced. As Plaintiffs themselves recognize, the court in Taberna held that "[c]reating a New York corporation is sufficient transaction of business in New York." Id., *6. Rhinebridge was not, however, a New York corporation; it was a Delaware limited liability company with its executive offices in Delaware. (PX 12, p. 1.) Since the jurisdictional decision in Taberna turned on defendants' selection of New York "as the forum in which to incorporate the corporation that would serve as the foundation for their alleged fraud," Id., *6 – and New York was not selected as Rhinebridge's place of incorporation in this case – Taberna does not help Plaintiffs.

Taberna is inapposite for two other reasons. First, plaintiff in Taberna produced an e-mail which showed that defendants had made a conscious decision to use a New York corporation instead of a Delaware corporation, apparently because they thought it would better enable them to make a fraudulent conveyance. No comparable evidence exists here. Second, Taberna involved a closely-held corporation in which the individual defendants personally formed a sham New York corporation and personally arranged for a fraudulent conveyance to it. Again, there is no comparable evidence linking Reinke to Rhinebridge.

E.  **IKB CAM's Conduct Cannot Properly Be Imputed to Reinke.** As their fall-back position, Plaintiffs argue that, even if Reinke did nothing in New York in furtherance of a fraudulent scheme, IKB CAM's New York conduct can be imputed to him. There are two flaws in this argument: (1) Plaintiffs have not shown that Reinke personally directed IKB CAM to

- 6 -

perform any acts in New York and (2) the alleged fraud was not undertaken for Reinke's benefit.

In our opening memorandum, we explained that a corporation can only be treated as the agent of a corporate officer where "the defendant principal requested the agent to perform purposeful acts in New York for the principal's benefit." Abbate v. Abbate, 82 A.D. 2d 368, 384, 441 N.Y.S. 2d 506, 515-516 (2d Dep't 1981). The "agency" theory of jurisdiction allows a corporate officer to be subject to jurisdiction based on a corporation's in-state acts "where the plaintiff can show that the corporation was acting as the agent of the officer (rather than vice versa, as would usually be the case)." Duravest, Inc. v. Viscardi, A.G., 581 F.Supp.2d. 628, 634 (S.D.N.Y. 2008). To fit within this theory, Plaintiffs would have to present evidence establishing that IKB CAM was effectively conducting Reinke's business in New York. Ontel Prods. Inc. v. Project Strategies Corp., 899 F.Supp. 1144, 1148 (S.D.N.Y. 1995) (plaintiff could not exercise "agency" jurisdiction over Ziskind, corporation's CEO, founder, and sole shareholder, because it "has not shown that P.S.C. acted in pursuit of Ziskind's business; rather, there is every indication that whatever activities Ziskind may have personally taken were to further P.S.C.'s business"); Family Internet, Inc. v. Cybernex, Inc., 1999 U.S. Dist. LEXIS 15549, *24 (S.D.N.Y. Oct. 6, 1999) (individual defendant must be "primary actor" in matter in question, and must exercise control over entity "such that the latter can properly be called the agent of the former").

While Plaintiffs deny that their agency argument is based solely on Reinke's title (Pls. Opp. 16 n. 11), that is what their argument boils down to. As "evidence" of Reinke's control, they repeatedly cite the testimony of IKB's 30(b)(6) witness that, "'[a]s Managing Director of IKB CAM, [Reinke] was responsible for all the activities within the Company's area of responsibilities.'" (Pls. Opp. 16.) This testimony merely describes the general responsibilities of a managing director; it does not establish that Reinke actually directed IKB CAM personnel to engage in any tortious conduct in New York. As such, it cannot be used to impute IKB CAM's

New York conduct to Reinke. Ontel, supra, 899 F.Supp. at 1149 (corporate officer not subject to jurisdiction due to wrongdoing of those working under him where plaintiff did not show that officer "directed that [wrongful actions] be undertaken").

Personal jurisdiction over an out-of-state corporate officer cannot be based simply on the officer's power to control the corporation's acts, and requires a showing that the officer actually used his power to direct the alleged misconduct. Otherwise, virtually every officer of a corporation that does business in New York would be subject to personal jurisdiction here, which would make companies reluctant to do business in this State. Ontel, supra, 899 F.Supp. at 1149 ("It is not enough that Ziskind, as President of P.S.C., likely *possessed authority* to direct all the activities that gave rise to this suit. If that were the case, the President of every company would be subject to jurisdiction in New York . . .").

Plaintiffs have produced no evidence that Reinke was the "primary actor" behind the alleged collaboration with the rating agencies. Moreover, under Plaintiffs' own theory, the fraud was intended to benefit IKB and is not alleged to have been undertaken for Reinke's personal pecuniary gain. There is thus no basis for finding that IKB CAM functioned as his agent.

F.   Exercising Jurisdiction Over Reinke Would Offend Due Process. Citing cases involving due process challenges by corporations or residents of other states, Plaintiffs contend that the exercise of jurisdiction over Reinke would not offend due process. But whether the exercise of personal jurisdiction comports with due process depends on how the five relevant factors balance based on the facts of each case. For example, in Merck Eprova AG v. Gnosis S.p.A., 2008 WL 5336587, *7 (S.D.N.Y. Dec. 12, 2008), the court concluded that it would not be unreasonable to exercise jurisdiction over Italian and Swiss corporations because they were "part of an international business engaged in commercial activity on a global scale." Cromer Fin., Ltd. v. Berger, 137 F.Supp.2d 452, 457 (S.D.N.Y. 2001) (no undue burden on defendants because all

are "part of a global enterprise managed from New York City"). The burden of litigating in New York is obviously very different for defendants who are part of a global enterprise than it is for an individual like Reinke, who has made no trips to the United States since retiring in 2007.

The situation facing Reinke is also very different from the situation in Marvel Worldwide, Inc. v. Kirby, 2010 WL 1655253, *9 (S.D.N.Y. Apr. 14, 2010), where plaintiff was headquartered in New York, as were two of the defendants, and "all of the underlying events . . . as well as most of the documentary evidence and several of the witnesses, are located here." In this case, by contrast, it is not clear whether any relevant acts occurred in New York; Plaintiffs do not reside in New York; they were warned it might not be possible to sue Rhinebridge (Ortseifen Ex. K p. 22); and most of the witnesses and documents are located abroad. Under the circumstances, requiring Reinke to litigate in New York offends due process.

## II. PLAINTIFFS' PLEADING DOES NOT SATISFY FED. R. CIV. P. 9(b)

Even though the Complaint says nothing about Reinke except that he was the CEO of IKB CAM, was fired on August 1, 2007, and is a German citizen (Complt. ¶¶19, 132), Plaintiffs claim that, because Reinke was "an insider," the Complaint satisfies Rule 9(b) under the group pleading doctrine. (Pls. Opp. 20.) This mechanical response glosses over the crucial fact that Reinke was not "an insider" with respect to the only representations in the private placement memorandum that Plaintiffs claim were false – the ratings. The group pleading doctrine is therefore inapplicable. "The rationale for group pleading is that facts about fraud flowing from the internal operation of a corporation are peculiarly, and often exclusively, within the control of the corporate insiders who manage the parts of the corporation involved in the fraud." SEC v. Espuelas, 699 F.Supp.2d 655, 660 (S.D.N.Y. 2010). In re Ross Sys. Secs. Litig., 1994 U.S. Dist. LEXIS 21263, *15-16 (N.D. Cal. Jul. 21, 1994) ("where the allegedly false or misleading information is conveyed in prospectuses, registration statements, annual reports, press releases,

10-Q filings, or other 'group-published information,' plaintiffs may plead fraud by officers and executives involved in the day-to-day management of those parts of the corporation involved in the fraud through general averment"). Since the fraud alleged here does not concern internal IKB CAM matters, but instead relates to a separate entity (Rhinebridge) and the ratings assigned to it by third parties, the group pleading doctrine is inapplicable to Reinke and does not relieve Plaintiffs of the requirement that they plead the particular acts Reinke took in the alleged fraud.

Plaintiffs are also mistaken that they adequately pled scienter by alleging that Reinke was fired. The cases they cite – none decided under New York law – hold that leaving a company "is not sufficient alone to raise a strong inference of scienter." Middlesex Retirement Sys. v. Quest Software, Inc., 2008 WL 7084629, *9 (C.D. Cal. Jul. 10, 2008). Here, since Reinke had planned to retire from IKB CAM in April 2007, no inference of scienter arises from his departure from IKB CAM four months later.

Nor were Plaintiffs free to disregard the issue of reliance because Reinke only devoted a sentence to the issue. (Pls. Opp. 24 n. 13.) The sentence made a complete argument: the Complaint fails to allege reliance on a representation by Reinke. Plaintiffs have made no effort to show otherwise, and the Complaint therefore fails to plead an essential element of fraud.

Finally, Plaintiffs pronounce their aiding and abetting claim "sufficient," but do not point to anything in the Complaint which indicates that Reinke knew the ratings were false or that he undertook substantial steps to assist the other defendants in committing fraud. The aiding and abetting claim consists of a single conclusory allegation and therefore does not satisfy Rule 9(b).

## CONCLUSION

For the reasons set forth above and in Reinke's opening memorandum, it is respectfully submitted that the Complaint should be dismissed against Reinke.

Dated: New York, NY
      November 4, 2010

DUANE MORRIS LLP

By: s/s Fran M. Jacobs
 Fran M. Jacobs
1540 Broadway
New York, NY 10036-4086
(212) 692-1000
Attorneys for Defendant Winfried Reinke

- 11 -