UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------ X

KING COUNTY, WASHINGTON,
IOWA STUDENT LOAN LIQUIDITY
CORPORATION, Together and on
Behalf of All Others Similarly Situated,

           Plaintiffs,

        - against -

IKB DEUTSCHE INDUSTRIEBANK
AG, IKB CREDIT ASSET
MANAGEMENT, GmbH, MOODY'S
INVESTORS SERVICE, INC.,
MOODY'S INVESTORS SERVICE
LIMITED, THE McGRAW HILL
COMPANIES, INC. (d/b/a STANDARD
& POOR'S RATINGS SERVICES),
FITCH, INC., MORGAN STANLEY &
CO. INCORPORATED, MORGAN
STANLEY & CO. INTERNATIONAL
LIMITED, WINFRIED REINKE and
STEFAN ORTSEIFEN,

           Defendants.

------------------------------------------------------ X

**OPINION AND ORDER**

**09 Civ. 8387 (SAS)**



SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.    INTRODUCTION

       Two institutional investors, King County, Washington and Iowa

Student Loan Liquidity Corporation bring this putative class action for common

1

law fraud in connection with the collapse of Rhinebridge, a structured investment vehicle ("SIV").  Plaintiffs allege that IKB Deutsche Industriebank AG ("IKB Bank") and IKB Credit Asset Management, GmbH ("IKB CAM," and, together with IKB Bank, "IKB") sponsored the creation of Rhinebridge in June 2007 as a means to sell toxic assets and move investment losses from its own balance sheet.[1] Plaintiffs claim that the value of Rhinebridge's senior debt securities (the "Senior Notes" or "Notes") were falsely assigned top credit ratings that misrepresented them as safe and highly secure investments to unsuspecting investors between June 27, 2007 and October 18, 2007.[2]

In addition to various corporate entities, plaintiffs also sue two individuals, Winfried Reinke and Stefan Ortseifen (together, "defendants"), for their purported role in the creation and marketing of Rhinebridge.[3]  Reinke was the Chief Executive Officer ("CEO") of IKB CAM during the relevant period, and was fired on August 1, 2007.[4]  Ortseifen was the CEO of IKB Bank and Chairman of

---

[1]   *See* First Amended Complaint ("FAC") ¶ 12.  This amended consolidated complaint was filed on June 10, 2010.

[2]   *See id.* ¶¶ 1-6.

[3]   *See id.* ¶ 4.

[4]   *See  id.* ¶ 19.

IKB CAM during the relevant period, and retired on July 29, 2007.[5]  Reinke and

Ortseifen now each move to dismiss the claims against them pursuant to Rules

12(b)(6) and 12(b)(2) of the Federal Rules of Civil Procedure for failure to state a

claim and lack of personal jurisdiction, respectively.[6]  For the reasons discussed

herein, both defendants' motions to dismiss are granted.

## II.    APPLICABLE LAW

### A.    Personal Jurisdiction

A plaintiff bears the burden of demonstrating that the court may

exercise jurisdiction over each defendant.[7]  On a motion under Rule 12(b)(2), when

the issue of personal jurisdiction "is decided initially on the pleadings and without

---

[5]      *See id.* ¶ 20.

[6]      Both Reinke and Ortseifen are residents and citizens of Germany.  *See*
FAC ¶¶ 19-20.  Ortseifen previously filed a motion to dismiss pursuant to Rules
12(b)(1) and 12(b)(2).  At the time, Reinke had not yet been served.  Because I
concluded that jurisdictional discovery was necessary to determine whether this
Court could adjudicate claims against Ortseifen, I did not address his Rule 12(b)(1)
motion at that time and denied his Rule 12(b)(2) motion with leave to refile.  As
Reinke and Ortseifen are in substantially similar circumstances, once served,
Reinke agreed to participate in jurisdictional discovery and postpone his motion to
dismiss until discovery was completed.  Neither defendant now moves to dismiss
under Rule 12(b)(1).

[7]      *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d
Cir. 1994).

discovery, the plaintiff need show only a prima facie case."[8]  However, once

discovery has occurred, "the plaintiff's prima facie showing . . . must include an

averment of facts that, if credited by [the trier-of-fact], would suffice to establish

jurisdiction over the defendant."[9]  Conclusory allegations are insufficient — "[a]t

that point, the prima facie showing must be factually supported."[10]

      To determine whether it has personal jurisdiction over a party, a court

engages in a two-part analysis.  *First*, the court must determine whether there is

jurisdiction over the defendant under the relevant forum state's laws.[11]  *Second*, the

court must determine whether an exercise of jurisdiction under these laws is

---

[8]     *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir. 1984).  *Accord Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 724 (S.D.N.Y. 2010) ("As no discovery has yet taken place, to survive a motion to dismiss the plaintiff must plead factual allegations [that] constitute a prima facie showing of jurisdiction.") (quotation marks omitted).

[9]     *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999).  *Accord Taberna Capital Mgmt., LLC v. Dunmore* ("*Taberna*"), No. 08 Civ. 1817, 2008 WL 2139135, at *2 (S.D.N.Y. May 20, 2008) ("Where . . . there has been jurisdictional discovery, the plaintiff must proffer actual evidence on the jurisdictional issue.  However, [where] no discovery on the merits of the case has taken place, the plaintiff . . . need only make a prima facie showing as to the alleged fraud.").

[10]     *Ball v. Metallurgie Hoboken-Overpelt, S.A.,* 902 F.2d 194, 197 (2d Cir. 1990).  *Accord Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998) ("[A] conclusory statement . . . [that] states no facts supporting [the] conclusion . . . does not constitute a prima facie showing . . . .").

[11]     *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007).

consistent with federal due process requirements.[12]

### 1.    Specific Jurisdiction Under CPLR 302(a)(1)

Under section 302(a)(1) of New York's Civil Practice Law Rules, a court may exercise specific jurisdiction over a non-domiciliary, provided that two conditions are met: the non-domiciliary defendant transacts business within New York and the claim against the non-domiciliary defendant arises directly out of this activity.[13] Section 302(a)(1) "is a single-act statute requiring but one transaction – albeit a purposeful transaction – to confer jurisdiction in New York."[14]

"New York courts define 'transact[ing] business' as purposeful activity – 'some act by which the defendant purposefully avails itself of the

---

[12]    *See id.* (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[13]    *See Cutco Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986). *See also Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319, 324 (S.D.N.Y. 1998) ("[A]n out-of-state corporate officer who has not personally transacted business in New York, can still be subject to personal jurisdiction under § 302(a)(1) of New York's long-arm statute, if it can be shown that the corporation transacted business in New York as the officer's agent.").

[14]    *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 166 (2d Cir. 2005). *Accord Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*, 7 N.Y.3d 65, 71 (2006) (This is a "single act statute [and] . . . proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted.") (quotation marks omitted).

privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"[15]   There must be a "substantial relationship between the transaction and the claim asserted."[16]   There is no definitive test to determine if a defendant has purposefully availed itself of the privilege of conducting activities in New York.  Rather, the totality of the defendant's contacts must be reviewed to determine whether jurisdiction is proper.[17]

### B.   Due Process

As set forth by the Supreme Court, due process requires that a defendant "not present within the territory of the forum" have "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"[18]   This involves an analysis consisting of two components: the minimum contacts test and the reasonableness inquiry.

To establish the minimum contacts necessary to satisfy jurisdiction, the plaintiff "must show that his claim arises out of or relates to defendant's

---

[15]    *Best Van Lines*, 490 F.3d at 246 (quoting *McKee Elec. Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377, 382 (1967)).

[16]    *Taberna*, 2008 WL 2139135, at *1 (quotation marks and citation omitted).

[17]    *See Cutco Indus.*, 806 F.2d at 365.

[18]    *International Shoe*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

6

contacts with the forum state, . . . that the defendant purposefully availed himself of the privilege of doing business in the forum state and that the defendant could foresee being haled into court there."[19]  If defendant's contacts with the forum state rise to this minimum level, a defendant may defeat jurisdiction only by presenting "a compelling case that the presence of some other considerations would render jurisdiction unreasonable."[20]  Courts must weigh the following five factors in evaluating the "reasonableness" requirement of due process:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.[21]

## III.   DISCUSSION

For the reasons set forth below, I conclude that plaintiffs have not met their burden of establishing personal jurisdiction over Reinke or Ortseifen by a

---

[19]    *Bank Brussels Lambert*, 305 F.3d at 127 (quotation marks omitted).

[20]    *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

[21]    *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113-14 (1987).

7

preponderance of the evidence.[22]

### A.    Specific Jurisdiction

Plaintiffs assert that personal jurisdiction over both defendants is appropriate under Section 302(a)(1) of New York's long-arm statute. Accordingly, the relevant question is whether their activities here were purposeful and substantially related to the claim asserted.[23]

### 1.    Jurisdiction Over Individual Defendants

Plaintiffs claim that because the Rhinebridge fraud was perpetrated in and purposely directed at New York, both Reinke and Ortseifen purposely transacted business in New York by virtue of their employment responsibilities at IKB Bank and/or IKB Cam.[24] However, that corporate entities may be sued in

---

[22]    Accordingly, I do not address either defendant's motion to dismiss for failure to state a claim.

[23]    *See Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 170 (2d Cir. 2010).

[24]    *See, e.g.*, Plaintiffs' Memorandum of Law in Opposition to Defendant Winfried Reinke's Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim ("Pl. Reinke Mem.") at 4 ("As the CEO of IKB Cam, Reinke was responsible for the creation and launch of the Rhinebridge SIV . . . [and] was the ultimate individual responsible for what the company was doing with Rhinebridge."); Plaintiffs' Memorandum of Law in Opposition to Defendant Stefan Ortseifen's Renewed Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim ("Pl. Ortseifen Mem.") at 4  ("As the CEO of IKB Bank and the Chairman of IKB Cam, Ortseifen was directly involved in the Rhinebridge SIV, a fraudulent structured investment vehicle purposely directed at New York.").

New York on the basis of the Rhinebridge fraud does not automatically establish that individual officers can be subject to suit here.  While the Court presumes that plaintiffs' allegations about each defendant's role in the fraudulent creation or management of Rhinebridge are true, each individual defendant must be shown to have personally engaged in relevant and intentional transactions in New York to warrant the exercise of personal jurisdiction.

Here, plaintiffs do not demonstrate that Reinke or Ortseifen's individual "contact with New York was not random or fortuitous . . . but was deliberate and purposeful" in relation to the underlying fraud.[25]  To the extent that plaintiffs cite either defendant's "extensive" involvement with Rhinebridge, they proffer as examples transactions or activities that occurred, or were directed

---

[25]     *Taberna*, 2008 WL 2139135, at *2 (finding sufficient jurisdictional evidence to satisfy New York's long-arm statute on the basis of an email that "makes explicit that the defendants and their agents purposely chose New York as the forum in which to incorporate the corporation that would serve as the foundation for their alleged fraud, and did so in order to receive the benefit of New York's law as they carried out the scheme").  Contrary to plaintiffs' assertion that Reinke and Ortseifen are similarly situated to the individual defendants in *Taberna*, the circumstances in this case are not analogous.  *First*, Rhinebridge is a Delaware limited liability company with executive offices in Delaware and not a closely-held New York corporation created by the individual defendants as "the primary means of carrying out the fraud." *Id*. at *6.  *Second*, no evidence has been presented to indicate that any Rhinebridge-related activities were conducted in New York by either Reinke or Ortseifen because the forum was consciously selected as the preferred venue for the planned fraud.

outside, of the forum.[26] Nor do plaintiffs demonstrate "a direct relation between

the cause of action and [Reinke's or Ortseifen's] *in-state* conduct."[27] Plaintiffs

allege that Reinke and Ortseifen traveled to New York to transact business directly

related to Rhinebridge, and argue that personal jurisdiction is justified on the basis

of the meetings they attended during these visits.  However, despite the benefit of

---

[26]     Pl. Reinke Mem. at 4; Pl. Ortseifen Mem. at 4. *See also Sills v. Ronald Reagan Presidential Found., Inc.*, No. 09 Civ. 1188, 2009 WL 1490852, at *6 (S.D.N.Y. May 27, 2009) ("Not all purposeful activity . . . constitutes a transaction of business within the meaning of C.P.L.R. 302(a)(1), and jurisdiction will not extend to cover defendants with nothing more than petty contacts to the state.") (quotation marks and citation omitted). *Compare, e.g., LeCroy Corp. v. Hallberg*, No. 09 Civ. 8767, 2010 WL 3958761, at *3 (S.D.N.Y. Oct. 4, 2010) (finding that out-of-state defendant's contact with forum was purposeful and warranted the exercise of personal jurisdiction where he "made his living by working for a New York-based company," regularly interacted and worked with New York employees on company projects, received instructions from New York, and entered into a contract with his New York employer).

[27]     *Beacon Enterps., Inc. v. Menzies*, 715 F.2d 757, 764 (2d Cir. 1983) (citation omitted) (emphasis added) ("New York courts have consistently refused to sustain section 302(a)(1) jurisdiction solely on the basis of defendant's communication from another locale."). *Accord Bank Brussels*, 171 F.3d at 787 ("In order to sustain jurisdiction, there must be some transaction attributable to the one sought to be held which occurs in New York.") (quotation marks and citation omitted). For example, while Reinke or Ortseifen may have communicated with ratings agencies that were headquartered in New York, the record indicates that communications regarding Rhinebridge took place with personnel in London. *See, e.g.*, July 28, 2010 Deposition of Edward Lightfoot ("Lightfoot Dep."), 30(b)(6) Designee of IKB, Ex. D to Affirmation of Thomas S. Wiswall in Support of Stefan Ortseifen's Renewed Motion to Dismiss ("Wiswall Aff.") at 55:11-56:16. *See Spiegel v. Schulmann,* 604 F.3d 72, 77 (2d Cir. 2010) (finding no personal jurisdiction where there was no evidence that the activity relevant to plaintiff's claim originated from defendant's alleged headquarters in New York).

10

ninety days of jurisdictional discovery — in which plaintiffs examined thousands of pages of documents and deposed three witnesses — plaintiffs do not offer particularized facts to demonstrate that either Reinke or Ortseifen's activities in New York had "an articulable nexus, much less a substantial relationship" to the underlying cause of action.[28]

> *First*, plaintiffs note that Ortseifen and Reinke traveled to New York in April 2006 and met with Morgan Stanley — a named defendant in this action — to discuss the "asset ramp up" for the Rhinebridge SIV.[29]  As evidence, plaintiffs proffer an "entry in Reinke's electronic calendar [that] shows that on April 4, 2006, Reinke met with Morgan Stanley to discuss the 'asset ramp up' for the Rhinebridge SIV."[30]  Contrary to plaintiffs' depiction, however, the calendar entry does not mention Rhinebridge.  In its entirety, the entry provides:

> Subject: morgan stanley asset ramp up
> Location: New York
> Time Start: 4:30 PM

---

[28]     *Menzies*, 715 F.2d at 764.  *Accord Tamam*, 677 F. Supp. 2d at 729 (noting that while "the Court assumes the truth of the plaintiff's factual allegations for purposes of the motion . . . the court need not draw argumentative inferences in the plaintiff's favor, and conclusory non-fact-specific jurisdictional allegations or a legal conclusion couched as a factual allegation" will not establish personal jurisdiction) (quotation marks and citations omitted).

[29]     Pl. Ortseifen Mem. at 5.

[30]     Pl. Reinke Mem. at 6.

Time End: 6:00 PM
Show Time As: Busy
Recurrence: None[31]

Nonetheless, plaintiffs argue that both Ortseifen's inability to identify any other ramp-up that IKB may have been involved in during the year and "Reinke's testimony that he was not working on *any* deals with Morgan Stanley in 2006 *other* than Rhinebridge provides conclusive evidence that [the] April 4, 2006 meeting with Morgan Stanley concerned the ramp up of assets for Rhinebridge."[32] Yet, once again, plaintiffs' characterization of Reinke's and Ortseifen's testimony is not corroborated by the record.

On the one hand, that neither defendant participated in other deals with Morgan Stanley in 2006 is irrelevant to the question of whether the *April* 2006 meeting in New York concerned Rhinebridge. For example, Reinke has testified that "a decision on the subject of the asset ramp-up was not taken until October 2006" — six months after the meeting occurred — and that "[a]ny discussion of an asset ramp in April 2006 would necessarily have been conceptual in nature and would have been part of a more general discussion about ways

---

[31]     Winfried Reinke's Electronic Calendar Entry ("Calendar Entry"), Ex. 5 to Declaration of Jessica T. Shinnefield in Support of Plaintiffs' Opposition to Defendant Winfried Reinke's Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim ("Shinnefield Reinke Decl.").

[32]     Pl. Reinke Mem. at 7.

12

Morgan Stanley and IKB could work together."[33]  On the other hand, plaintiffs

overlook Ortseifen and Reinke's repeated testimony that, while neither defendant

can recall the specific topics of conversation, the purpose of the April 2006

meeting was general in nature and intended to maintain the relationship between

the companies, not to discuss particular deals.[34]  Indeed, Reinke and Ortseifen met

with at least five other businesses during the same four day visit to New York in

April, including one other investment bank and four asset management companies,

for "routine get-togethers to discuss the status of [IKB] investments and the

---

[33]    July 26, 2010 Deposition of Winfried Reinke ("Reinke Dep."), Ex. 1 to Shinnefield Reinke Decl. at 84:01-07.

[34]    *See, e.g.*, *id.* at 83:20-84:07 (explaining that, while he does not remember whether asset ramp-ups were brought up in the meeting, if they were, "then it was in the way [of a general discussion of] general subjects of general areas of cooperation [, whereby] [o]ne such area may have been asset ramp-up."); *id.* at 79:11-15 ("On the basis of Mr. Ortseifen's deposition, there was a dinner with Morgan Stanley . . . at which we discussed the markets in general and cooperation between Morgan Stanley and IKB, as is usual at this level in the hierarchy, as one says."). *See also* July 24, 2010 Deposition of Stefan Ortseifen ("Ortseifen Dep."), Ex. B to Wiswall Aff. at 117:19-118:25 ("Last night I looked at the expense claim for this trip so I could remind myself of it . . . This was not a business meeting in the usual sense of the word.  It was an evening dinner.  It was a dinner within the scope of normal business relationships between good business partners.); *id.* at 120:06-120:08 ("No specific transactions, but the general type of cooperation and general market developments are discussed at this type of dinner.").

13

markets in general."[35]  Reinke explained that he was not involved in day-to-day business with Morgan Stanley, and that, in any event, activities involving "cooperation with Morgan Stanley did not take place through New York but took place through Morgan Stanley in London."[36]  Ortseifen echoed these assertions.[37] To the extent that the defendants were involved in Rhinebridge, the record indicates that any relevant activities were directed at London, not New York.[38]

Plaintiffs have not deposed Morgan Stanley to contradict Reinke's or Ortseifen's assertions, or offered any other specific evidence to support their portrayal of the April 2006 meeting.  Moreover, even crediting plaintiffs' claim that the defendants discussed a ramp-up related to Rhinebridge at the April 2006 meeting, plaintiffs have not demonstrated that the meeting concerned activities in furtherance of a fraudulent scheme.  The class period indicated in the Complaint begins on June 27, 2007, when plaintiffs claim that they were defrauded about the

---

[35]     Winfried Reinke's Memorandum of Law in Support of His Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim ("Reinke Mem.") at 4.

[36]     Reinke Dep. at 80:19-80:22.

[37]     *See, e.g.*, Ortseifen Dep. at 120:08-09; Lightfoot Dep. at 108:11-108:25 (testifying that Ortseifen never communicated with any of the non-IKB defendants, such as the ratings agencies).

[38]     *See generally* Lightfoot Dep. (discussing defendants' involvement with Rhinebridge and their limited contact with New York).

14

quality of the assets in Rhinebridge's portfolio based on ratings issued at that time. Rhinebridge did not even begin to take shape until October 2006. Plaintiffs do not demonstrate how activities undertaken in New York in April 2006 share anything more than a tenuous connection with the fraud at the heart of the litigation.[39] As such, they have not established the requisite "factual predicate" for personal jurisdiction based on the April 2006 meeting with Morgan Stanley.[40]

*Second*, plaintiffs posit that, during the same April 2006 visit to New York, Reinke and Ortseifen twice met with Credit-Based Asset Servicing and Securitization, LLC ("C-Bass") regarding Rhinebridge's asset ramp-up. Plaintiffs

---

[39]     *See Berk v. Nemetz*, 646 F. Supp. 1080, 1085 (S.D.N.Y. 1986) (finding that defendant's trip to New York for a "preliminary meeting . . . fails to satisfy the requirements under § 302").

[40]     *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 94 (2d Cir. 2000). *Accord Yellow Page Solutions, Inc. v. Bell Atlantic Yellow Pages Co.*, No. 00 Civ. 5663, 2001 WL 1468168, at *7 (S.D.N.Y. Nov. 19, 2001) (declining to find personal jurisdiction where "plaintiffs adduce no facts to show that [defendant's meetings in New York] had anything to do with the subject matter of this lawsuit [and] . . . offer no more than speculation as to what was discussed at these meetings," and noting that "the discovery record built by plaintiffs often directly refutes the sinister purpose plaintiffs would attach to these meetings"); *Pyramyd Stone Int'l Corp. v. Crosman Corp.*, No. 95 Civ. 6665, 1997 WL 66778, at *10 (S.D.N.Y. Feb. 18, 1997) (finding that "conclusory and speculative allegations" could not support personal jurisdiction over a German corporation where the general manager attended bi-annual meetings in New York but "Plaintiffs offer no more than speculation that [the general manager] discussed the Plaintiff's business with [defendant and] Plaintiffs do not state facts to show how any communications by [the general manager to the defendant] were in furtherance of or even related to the alleged tortious activity.").

allege that their claim is substantiated by the inclusion of C-Bass bonds in the Rhinebridge September 2007 Portfolio — "[c]onstruing these facts in the light most favorable to plaintiffs, it is clear that [the defendants] met with Morgan Stanley and C-Bass in New York in connection with IKB Cam's ramp-up of assets for the Rhinebridge SIV."[41] Yet plaintiffs do not explain how Rhinebridge's possession of C-Bass assets on *September 7, 2007* — after both Reinke and Ortseifen terminated their employment with IKB — demonstrates that the defendants discussed Rhinebridge in a meeting that took place seventeen months earlier.[42] Indeed, plaintiffs did not depose C-Bass or question Reinke about this

---

[41]     Pl. Reinke Mem. at 7 (citing Sept. 6. 2007 Rhinebridge Portfolio Detail Report ("Portfolio"), Ex. 8 to Declaration of Jessica T. Shinnefield in Support of Plaintiffs' Opposition to Defendant Stefan Ortseifen's Renewed Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim ("Shinnefield Ortseifen Decl."). *Accord* Pl. Ortseifen Mem. at 6 (using the Portfolio to argue that the meeting must have discussed Rhinebridge because "IKB Bank purchased numerous assets from C-Bass that it then turned around and sold to the Rhinebridge SIV"). However, as Ortseifen points out, despite plaintiffs' reading of the notations in the Portfolio, "nothing in the exhibit indicates that the listed assets were purchased from C-Bass, or . . . by IKB AG (rather than by Rhinebridge directly . . .); nor does it indicate when, where or how any purchases occurred, or whether the amounts paid exceeded the values when purchased." Stefan Ortseifen's Reply Memorandum of Law in Further Support of His Renewed Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim at 3.  Nor does anything in the Portfolio connect it with defendants. *See id.*

[42]     *See* Pl. Ortseifen Mem. at 6.  *Cf. Weiss v. Brant*, No. 93 Civ. 750, 1995 WL 362394, at *3 (E.D.N.Y. May 31, 1995) ("[Defendant's] alleged activities in New York to solicit, or on behalf of, other investors, does not have a substantial relationship to [plaintiff's] claims.").

16

meeting at his deposition.[43]  Plaintiffs again offer only speculation, rather than evidence, to support their view that the meeting with C-Bass concerned Rhinebridge and was not just a routine periodic meeting, as Reinke and Ortseifen contend.

Nor do plaintiffs explain how the meeting was in furtherance of a fraudulent scheme, stating only in conclusory terms that these "meetings in New York regarding the ramping up of assets to be acquired, warehoused and then sold to the Rhinebridge SIV substantially relate to plaintiffs' claims . . . [because] the inclusion of low-quality, toxic mortgage backed assets" contributed to the fraud and Rhinebridge's collapse.[44]  Because plaintiffs offer no concrete facts to support their allegations about the subject of the April 2006 meeting with C-Bass or its relationship to the ultimate injury they suffered, the exercise of personal jurisdiction is not warranted on this basis.[45]

*Third*, plaintiffs allege that "[i]n April 2007, Reinke again returned to

---

[43]    *See Ball*, 902 F.2d at 100 (declining to find jurisdiction over defendant where plaintiffs failed to inquire about relevant information during defendants' depositions and thus had insufficient evidence to support their claims, although relevant evidence could well exist).

[44]    Pl. Reinke Mem. at 14.

[45]    *See McGlone v. Thermotex, Inc.*, — F. Supp. 2d —, No. 09 Civ. 2896, 2010 WL 3749356, at *2 (E.D.N.Y. Sept. 21, 2010) (citing *Jazini*, 148 F.3d at 184 ("Conclusory allegations based only on information and belief are not sufficient.")).

New York to transact business specifically relating to Rhinebridge."[46]  Namely, plaintiffs claim that the purpose of his visit was to sell Rhinebridge notes, and offer in support of their claim only the following two sentences: "During this business trip, Reinke orchestrated and attended a meeting in New York with Morgan Stanley and C-Bass, with the '*objective of placing junior capital notes and mezzanine capital notes at C-Bass.*'  On this same trip, Reinke also had separate meetings with Morgan Stanley and C-Bass in New York."[47]  Plaintiffs' depiction of the April 2007 meetings does not include facts suggesting a connection to any fraudulent activity related to the cause of action at issue, and thus cannot support the exercise of personal jurisdiction.

Plaintiffs argue that the April 2007 meetings substantially relate to their fraud claims because "[d]efendants' scheme to defraud investors by selling them Rhinebridge notes is precisely what this case is all about."[48]  However, plaintiffs' fraud claim is predicated upon the false ratings given to Senior Notes and the misrepresentations surrounding their sale.[49]  The junior capital notes and

---

[46]     *Id.* at 7.

[47]     *Id.* (quoting Reinke Dep. at 84:23-85:11).

[48]     *Id.*

[49]     As Ortseifen highlights in his moving papers, the underlying events of which plaintiffs complain — "the communication to them of allegedly false

18

mezzanine notes were offered pursuant to an information memorandum, not the contested private placement memorandum at the heart of the alleged fraud.[50] Plaintiffs do not allege that Reinke otherwise attempted to market the Senior Notes during the meeting or his visit to New York. As Reinke points out, "since C-Bass declined to buy any notes, and the notes it was offered were either unrated or low-rated, the meeting was not directly connected to Plaintiffs' claim that they were misled into buying Rhinebridge's senior notes based on their AAA Ratings."[51] Nor does the class period encompass the April 2007 meeting. Because the April 2007

_____

ratings, their purchase of notes in alleged reliance on those ratings, and the damage allegedly resulting from the subsequent decline in the value of the notes" — took place in June 2007. Ortseifen Mem. at 6.

[50]    *See* Information Memorandum, Ex. 10 to Defendant Winfried Rienke's Notice of Motion to Dismiss the Complaint.

[51]    Winfried Reinke's Reply Memorandum of Law in Further Support of His Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim at 5. *Accord Katiroll Co., Inc. v. Kati Roll & Platters, Inc.*, No. 10 Civ. 1703, 2010 WL 2911621, at *4 (S.D.N.Y. July 9, 2010) ("To establish jurisdiction in New York based on a meeting, the meeting must be essential to the formation or continuance of a business relationship. Meetings in the forum state that are exploratory, unproductive, or insubstantial are insufficient to establish the requisite contacts with the state."); *McGowan v. Smith*, 52 N.Y.2d 268, 272 (1981) (holding that defendant exporter's visits to New York to conduct general marketing research did not "bear a substantial relationship" to products liability action arising from purchase of defendant's product in New York because "[w]hile these visits certainly may be characterized as 'purposeful' . . . the occurrence of these visits serves merely to establish [the defendant exporter's] transitory physical presence within the State.").

meetings appear to bear no more than a tangential relationship to the events giving rise to plaintiffs' injury, these contacts cannot support a finding of personal jurisdiction.[52]

### 2.    Agency Liability

Alternatively, plaintiffs attempt to establish long-arm jurisdiction over Reinke and Ortseifen in New York by imputing to each defendant the actions of IKB Bank and/or IKB Cam.[53]   Plaintiffs' agency theory fails on two independent grounds.[54]   *First*, they do not demonstrate that either defendant derived any personal benefits from IKB Bank and/or IKB Cam's dealings in New York.   For

---

[52]    *See Bozell Group, Inc. v. Carpet Co-Op of America Ass'n*, No. 00 Civ. 1248, 2000 WL 1523282, at *5 (S.D.N.Y. Oct. 11, 2000) (finding that defendant's New York meetings were insufficient to establish personal jurisdiction because "even if they were important to [defendant's] overall business strategy, these meetings were mere links in the chain of events leading to the claims for which relief is sought") (quotation marks and citations omitted).

[53]    *See* Pl. Reinke Mem. at 4 ("Because the Rhinebridge SIV did not have any employees, it could only operate through agents like defendant Reinke"); Pl. Ortseifen Mem. at 4 (same, but referring to defendant Ortseifen).

[54]    *See Arma v. Buyseasons, Inc.*, 591 F. Supp. 2d 637, 646 (S.D.N.Y. 2008) ("In order to attribute a corporation's New York contacts to an individual under CPLR § 302(a)(1), New York law requires a Plaintiff to convince the court that [the corporation] engaged in purposeful activities in this State in relation to [Plaintiff's] transaction for the benefit of and with the knowledge and consent of the [individual defendant] and that [the individual defendant] exercised some control over [the corporation] in the matter.") (quotation marks and citation omitted).

example, plaintiffs state only that "Reinke directly benefitted from his involvement in Rhinebridge, as his yearly bonuses were based upon his immediate areas of responsibility, which included Rhinebridge."[55] Even assuming that Reinke did receive compensation based in part on Rhinebridge's performance in New York, such an attenuated and generalized benefit is insufficient to support a theory of agency.

*Second*, plaintiffs do not establish that either defendant directed IKB Bank and/or IKB Cam to perform any act in New York.[56] Aside from the mere fact of their positions within the corporation, plaintiffs do not offer any evidence to indicate that either Reinke or Ortseifen exercised control over IKB's activities in New York.[57] "By grouping [their] activities in with the alleged conduct of [IKB],

---

[55]   Pl. Reinke Mem. at 16.

[56]   *See Karabu Corp.*, 16 F. Supp. 2d at 324 (dismissing complaint against individual defendants that was "completely devoid of any factual specificity indicating how each of the six defendants participated in the allegedly tortious conduct or what role they each played"). *See also id.* ("To make a prima facie showing of 'control,' a plaintiff's allegations must sufficiently detail the defendant's conduct so as to persuade a court that the defendant was a 'primary actor' in the specific matter in question; control cannot be shown based merely upon a defendant's title or position within the corporation, or upon conclusory allegations that the defendant controls the corporation.").

[57]   *See, e.g.*, Pl. Reinke Mem. (positing that jurisdiction is warranted on an agency theory because the defendant "had knowledge of, and participated in, IKB's activities in New York, . . . [and] exercised at least 'some control' over IKB Cam").

21

[plaintiffs] provide[] no basis for the Court to determine whether [Reinke or

Ortseifen] was a primary actor orchestrating the allegedly tortious conduct, or

[whether they were] named in the complaint simply because [their] name[s]

appear[] at the top of [IKB's] masthead."[58]  Indeed, "[c]ourts in this district have . .

. routinely granted 12(b) (2) motions for lack of personal jurisdiction where the

plaintiff made only broadly worded and vague allegations about a defendant's

participation in the specific matter at hand."[59]

**B.    Due Process**

Even if the requirements of New York's long-arm statute were met as

to Reinke or Ortseifen, due process considerations preclude the exercise of

personal jurisdiction over either defendant.  Their limited activities here do not

render it fair and reasonable to require them to defend themselves in New York.

*First*, subjecting either defendant to personal jurisdiction in the United States

---

[58]    *Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, 425 F. Supp.
2d 402, 420 (S.D.N.Y. 2006) (noting that control cannot be presumed and must be
established by allegations of specific actions). *Accord Ontel Prods. v. Project
Strategies Corp.*, 899 F. Supp. 1144, 1149 (S.D.N.Y. 1995) ("It is not enough that
[defendant], as President of P.S.C., likely possessed authority to direct all the
activities that gave rise to this suit.  If that were the case, the president of every
company would be subject to jurisdiction in New York based on activities with
which he or she had no personal involvement and over which he or she exercised
no decisionmaking authority.").

[59]    *Arma*, 591 F. Supp. 2d at 646 (quotation marks and citations omitted).

22

would impose upon him an undue burden in terms of travel, expense, and time. Both Reinke and Ortseifen are German residents who have not visited New York since 2007 and 2006, respectively. Moreover, both have retired and are no longer involved with IKB. *Second* and *third*, New York will preserve its interest in the case, and plaintiffs will be protected in their efforts to obtain effective and convenient relief, by the continuing adjudication of the underlying action against the corporate defendants. *Fourth*, an individual defendant cannot be expected to pursue and process evidence located abroad as quickly or efficiently as a corporate defendant, thereby delaying the ultimate resolution of the controversy. Moreover, while many of the defendant entities are headquartered in or have offices in New York, the individual defendants have no connection to the forum and thus lack any kind of infrastructure or network here to facilitate their litigation activities. *Fifth*, because Germany is conducting its own ongoing investigations into the underlying fraud, and has charged at least Ortseifen with "market manipulation" for his role therein, the interests of comity counsel against pursuing litigation and discovery again in another forum.[60] Taken together, consideration of these factors suggest that "traditional notions of fair play and substantial justice" are best served by

---

[60]     FAC ¶ 20.

dismissing the claims against Reinke and Ortseifen in this forum.[61]

## IV.   CONCLUSION

For the reasons discussed above, both defendant Winfried Reinke and defendant Stefan Ortseifen's respective motions to dismiss are granted. The Clerk of the Court is directed to close these motions [Docket Nos. 144, 149] and to terminate these defendants from the suit.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            January 18, 2011

---

[61]      *Asahi*, 480 U.S. at 113.

## - Appearances -

**For Plaintiffs King County, Washington and Iowa Student Loan Liquidity Corporation:**

Anne L. Box, Esq.
Patrick J. Coughlin, Esq.
Daniel S. Drosman, Esq.
Nathan R. Lindell, Esq.

Jessica T. Shinnefield, Esq.
David C. Walton, Esq.
Darryl J. Alvarado, Esq.
X Jay Alvarez, Esq.
Christina A. Royce, Esq.
Robbins Geller Rudman &
Dowd LLP
655 West Broadway, Suite
1900
San Diego, California
92101
(619) 231-1058

Samuel H. Rudman, Esq.
David A. Rosenfeld, Esq.
Robert M. Rothman, Esq.
Jarrett S. Charo, Esq.
Robbins Geller Rudman & Dowd LLP
58 South Service Road, Suite 200
Melville, New York 11747
(631) 367-7100

Luke O. Brooks, Esq.
Jason C. Davis, Esq.
Robbins Geller Rudman & Dowd LLP
Post Montgomery Center
1 Montgomery Street, Suite 1800
San Francisco, California 94104
(415) 288-4545

**For Defendants Morgan Stanley & Co., Inc. and Morgan Stanley & Co. International Limited:**

Antonio Jorge Perez-Marques, Esq.
James P. Rouhandeh, Esq.
Davis Polk & Wardwell L.L.P.
450 Lexington Avenue
New York, New York 10017
(212) 450-4559

**For Defendants IKB Deutsche Industriebank AG and IKB Credit Asset Management, GmbH:**

John D. McFerrin-Clancy, Esq.
Zachary D. Rosenbaum, Esq.
Lowenstein Sandler PC
1251 Avenue of The Americas
New York, New York 11020
(212) 262-6700

Thomas E. Redburn, Jr., Esq.
Jennifer Jane McGruther, Esq.
Lowenstein Sandler PC
65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2456

**For Defendants Moody's Investors Service Limited and Moody's Investors Service, Inc.**

James J. Coster, Esq.
Justin E. Klein, Esq.
James J. Regan, Esq.
Joshua M. Rubins, Esq.
Aaron M. Zeisler, Esq.
Satterlee Stephens Burke & Burke LLP
230 Park Avenue
New York, New York 10169
(212) 818-9200

**For Defendant The McGraw Hill Companies, Inc. d/b/a Standard & Poor's Rating Services**

Floyd Abrams, Esq.
Andrea R. Butler, Esq.
Jason M. Hall, Esq.
Brian T Markley, Esq.
Dean I. Ringel, Esq.
Tammy L. Roy, Esq.
Adam N. Zurofsky, Esq.
Cahill Gordon & Reindel LLP
80 Pine Street
New York, New York 10005
(212) 701-3000

**For Defendant Fitch, Inc.**

Andrew J. Ehrlich, Esq.
Martin Flumenbaum, Esq.
Roberta A. Kaplan, Esq.
Mark S. Silver, Esq.
Tobias J. Stern, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019
(212) 373-3166

**For Defendant Stefan Ortseifen:**

Thomas S. Wiswall, Esq.
Phillips Lytle LLP
1400 First Federal Plaza
Rochester, New York 14203
(716) 847-7031

**For Defendant Winfried Reinke:**

Fran M. Jacobs, Esq.
Duane Morris LLP
1540 Broadway
New York, New York 10036
(212) 692-1000

27