UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X

KING COUNTY, WASHINGTON,
and IOWA STUDENT LOAN
LIQUIDITY CORPORATION,

    Plaintiffs,

   - against -

IKB DEUTSCHE INDUSTRIEBANK
AG, IKB CREDIT ASSET
MANAGEMENT, GmbH, MOODY'S
INVESTORS SERVICE, INC.,
MOODY'S INVESTORS SERVICE
LIMITED, THE McGRAW HILL
COMPANIES, INC. (d/b/a STANDARD
& POOR'S RATINGS SERVICES),
FITCH, INC., MORGAN STANLEY &
CO. INCORPORATED, and MORGAN
STANLEY & CO. INTERNATIONAL
LIMITED,

    Defendants.

------------------------------------------------------- X

**OPINION AND ORDER**

**09 Civ. 8387 (SAS)**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/17/12

SHIRA A. SCHEINDLIN, U.S.D.J.:

I.  INTRODUCTION

    The McGraw-Hill Companies, Inc. and other defendants in this action

seek to compel the production of a settlement agreement between plaintiffs and

former defendants IKB Deutsche Industriebank, AG, IKB Credit Asset

Management, GmbH, Cheyne Capital Management Ltd., Cheyne Capital

Management (UK) LLP, and/or Cheyne Capital International Ltd.  For the

following reasons, defendants' request is denied.

## II.    BACKGROUND[1]

Institutional investors King County, Washington and Iowa Student

Loan Liquidity Corporation bring this action to recover losses stemming from the

October 2007 collapse of Rhinebridge, a structured investment vehicle.  Plaintiffs'

Second Amended Complaint included claims of common law fraud, negligent

misrepresentation, negligence, beach of fiduciary duty, and aiding and abetting

against two individuals (who have since been dismissed from the action) and

several corporate entities (collectively, "defendants"):  IKB Deutsche

Industriebank AG and IKB Credit Asset Management, GmbH; The McGraw Hill

Companies, Inc. (d/b/a Standard & Poor's Rating Services); Moody's Investors

Service, Inc. and Moody's Investors Service Ltd.; Fitch, Inc.; Morgan Stanley &

Co. Incorporated and Morgan Stanley & Co. International Limited.

On June 25, 2012, plaintiffs entered into a Settlement Agreement and

Mutual Release ("Agreement") with IKB Deutsche Industriebank AG and IKB

---

[1]    This Opinion assumes familiarity with the facts discussed in this
Court's previous opinions in this case.

Credit Asset Management CmbH.[2]  The non-settling defendants now seek to

compel the production of the Agreement.  A conference was held on this request

on June 22, 2012.

## III.   LEGAL STANDARD

### A.   General Standard for Discovery

Pursuant to Rule 26(b)(1), "[p]arties may obtain discovery regarding

any non[-]privileged matter that is relevant to any party's claim or defense. . . . For

good cause, the court may order discovery of any matter relevant to the subject

matter involved in the action."  In particular, admissibility at trial is not a constraint

"if the discovery appears reasonably calculated to lead to the discovery of

admissible evidence."[3]  The burden of establishing relevance rests with the party

seeking to compel discovery.[4]  However, "[a] district court has wide latitude to

determine the scope of discovery . . . ."[5]

---

[2]      *See* Settlement Agreement and Mutual Release ("Agreement"), Jan. 25, 2012.

[3]      Fed. R. Civ. P. 26(b)(1).  *Accord Levick v. Maimonides Med. Ctr.*, No. 08 Civ. 03814, 2011 WL 1673782, at *2 (E.D.N.Y. May 3, 2011).

[4]      *See Small v. Nobel Biocare USA, Inc.*, 808 F. Supp. 2d 584, 587 (S.D.N.Y. 2011).

[5]      *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 103 (2d Cir. 2008).

## B.      Discovery of Settlement Agreements

While settlement agreements are often excluded at trial out of concern

for prejudice and the public interest in fostering compromise,[6] inadmissibility is no

bar to discovery.[7]  While courts in this Circuit disagree as to the standard that

applies to the discovery of settlement agreements,[8] the majority hold that the

required showing of relevance is no higher for settlements than it is for the

discovery of other kinds of information.[9]   Nonetheless, courts routinely refuse to

afford defendants access to settlement agreements that they deem irrelevant.[10]

---

[6]      *See Levick*, 2011 WL 1673782, at *2.

[7]      *See id.* (citing *Salgado v. Club Quarters, Inc.*, No. 96 Civ. 383, 1997 WL 269509, at *1 (S.D.N.Y. May 20, 1997)).

[8]      *See General Elec. Co. v. DR Sys., Inc.*, No. 06 Civ. 5581, 2007 WL 1791677, at *1 (E.D.N.Y. June 20, 2007) (reviewing split in authority in this Circuit).

[9]      *See ABF Capital Mgmt. v. Askin Capital*, Nos. 96 Civ. 2978, 95 Civ. 8905, 97 Civ. 1856, 97 Civ. 4335, 98 Civ. 6178, 98 Civ. 7494, 2000 WL 191698, at *1 (S.D.N.Y. Feb. 10, 2000) ("[N]o heightened showing of relevance need be made in order to justify the disclosure of a settlement agreement.").

[10]     *See Valiante v. VCA Animal Hosps., Inc.*, No. 09 Civ. 2115, 2011 WL 219672, at *2 (D. Conn. Jan. 20, 2011) ("Nothing in the agreement would provide [d]efendant with information regarding . . . [p]laintiff's injuries and ability to pay for medical procedures undertaken.  The settlement agreement itself provides no details regarding the injuries the settlement intended to redress, a breakdown of the settlement amount or the intended allocation of the monies paid to [p]laintiff."); *Highland Capital Mgmt., L.P. v. Schneider*, No. 02 Civ. 8089, 2007 U.S. Dist.

### 1.      Relevance to Damages

Courts routinely hold that settlement agreements may be withheld until after trial.[11]  In order to be discoverable earlier, there must be a "particularized showing of a likelihood that admissible evidence will be generated by the dissemination of the terms of a settlement agreement."[12]

The apportionment of damages in common law fraud suits is governed by New York's General Obligation Law ("G.O.L.").[13]  Under section 15-108 of the G.O.L., when plaintiffs settle with some (but not all) defendants, the settlement reduces the amount that a plaintiff may recover for the same tort from the non-settling defendants.[14]  Specifically, that amount will be offset

---

LEXIS 97453, at \*4-5, 9 (S.D.N.Y. Sept. 28, 2007) (denying discovery of the settlement agreement "[b]ecause there ha[d] been no showing that the settlement agreement or any of the documents related to the settlement agreement [we]re relevant at the . . . time").

[11]      *See Highland Capital*, 2007 U.S. Dist. LEXIS 97453, at \*8-9 ("[T]he Schneiders argue that the settlement amount paid to RBC will reduce RBC's damages claim against them.  Cases considering such an argument have typically determined that the settlement amount should be disclosed only following trial . . . ."); *Bottaro v. Hatton Assocs.*, 96 F.R.D. 158, 160 (E.D.N.Y. 1982) (holding that the amount of the settlement was irrelevant to whether former co-defendant was liable to remaining defendants for contribution as full liability of all defendants would not be known until after judgment).

[12]      *Bottaro*, 96 F.R.D. at 160.

[13]      *See Schipani v. McLeod*, 541 F.3d 158, 159 (2d Cir. 2008).

[14]      *See* N.Y. Gen. Olig. Law § 15-108 (McKinney 2007).

to the extent of any amount stipulated by the release or the covenant, *or* in the amount of the consideration paid for it, *or* in the amount of the released tortfeasor's equitable share of the damages under article fourteen of the civil practice law and rules, whichever is the greatest.[15]

"[A]s an affirmative defense, [section 15-108] must be pled by a tortfeasor seeking its protection."[16]   However, "the defendant . . . forfeits [his] right to a setoff in the amount of the settling defendant's equitable share [(the statute's third prong)] if it does not seek apportionment until after summary judgment is entered against it on the issue of liability."[17]   Thus, once a court finds a defendant liable in a summary decision, that defendant is only allowed to amend its original answer to request an offset by the amount paid or agreed to by any settling defendants.[18]

---

[15]    *Id*. (emphasis added).

[16]    *Schipani*, 541 F.3d at 161 (quotation marks omitted).

[17]    *Id.* at 159-60, 161-62 (since "apportionment of fault is a component of the liability determination . . . while the first two reductions [(the stipulated and paid amounts)] are available at any point before final judgment is entered, the third is lost where a defendant fails to seek apportionment of liability until after a jury's liability verdict").   *Accord Bonnot v. Fishman*, 88 A.D.2d 650, 651 (2d Dep't 1982) ("[Defendant], of course, has waived his right to prove the hospital's equitable share of the damages . . . (and to have the judgment against him reduced accordingly) . . . .").

[18]    *See Schipani*, 541 F.3d at 161 ("By failing to seek apportionment against [plaintiff], [defendant] foreclosed any possibility of the jury determining [his] equitable share of the fault, and in that respect foreclosed use of that prong of

However, a defendant can raise a section 15-108 defense without

knowing the settlement amount or its contents.

> Defendants point to General Obligations Law ("GOL") [section]
> 15-108 which . . . reduces the verdict by the settlement amount .
> . . . Defendants contend that disclosure of the settlement
> agreements is material and necessary in order to recalculate their
> maximum exposure should an unfavorable verdict be reached . .
> . . [H]owever, these arguments amount to nothing more than trial
> strategy. Although trial strategy is important to any party in
> litigation, defendants' "*need*" to obtain the settlement information
> arises not out of materiality or necessity but, rather, desirability.
> As much as defendants believe that obtaining this information
> now will better protect them at the time of trial, or assist them in
> assessing their risk of trial versus settlement, these are neither
> recognized nor accepted reasons for denying plaintiffs' motion
> and disclosing the terms of the settlement agreements.[19]

### 2.      Relevance to Witness Bias

Some courts have compelled the disclosure of settlement agreements

that could lead to evidence of bias, interest, or prejudice of trial witnesses.[20]  Those

are cases where the settlement includes, for instance, an agreement to testify on the

plaintiff's behalf. In those cases, settlements are relevant for the impeachment of

---

the statute's benefits.").

[19]      *In re New York Cnty. Data Entry Worker Prod. Liab. Litig.*, 616
N.Y.S.2d 424, 426 (Sup. Ct. N.Y. Co. 1994), *aff'd*, 635 N.Y.S.2d 641 (1st Dep't
1995) (emphasis added).

[20]      *See ABF Capital*, 2000 WL 191698, at *2; *Santrayll v. Burrell*, No. 91
Civ. 3166, 1998 WL 24375, at *2 (S.D.N.Y. Jan. 22, 1998); *Tribune Co. v.
Purcigliotti*, No. 93 Civ. 7222, 1996 WL 337277, at *2 (S.D.N.Y. June 19, 1996).

settling and testifying co-defendants.

## IV.   DISCUSSION

### A.   The Relevance of the Agreement to Damages

Defendants request that the Agreement be produced.  Plaintiffs agree

to do so but not until after trial.  The issue is whether to compel the disclosure at

this time.  I have conducted an in camera review of the Agreement.

First, defendants argue that the settlement amount may be so large that

should defendants win partial summary judgment on their loss causation

arguments, there will be no damages left and the case could be dismissed.

According to them, whether the settlement is large enough to make this a realistic

possibility will inform whether defendants make the strategic decision to focus on

loss causation in their memoranda of law.  In defendants' view, this entitles them

to the Agreement.  The cases defendants cite, however, are inapposite.[21]  At this

time, the Court is not in a position to determine whether the amount of the

settlement is or is not close to the total damages at issue and will revisit the issue

---

[21]   *See Conopco v. Wein*, No. 05 Civ. 9899, 2007 WL 10406076, at *5
(S.D.N.Y. Apr. 7, 2007) (finding a settlement agreement relevant due to a "strong
likelihood that it c[ould] be used for purposes of impeachment"); *Small*, 808 F.
Supp. 2d at 590 (finding a settlement agreement relevant to estimating damages in
a patent case, but inapposite here because damages in patent cases are based on the
court's estimation of what reasonable royalty the parties would have agreed to ex
ante and the amount that certain parties settled for can help the court make that
determination).

after the computation of damages is produced and after summary judgment is decided with particular attention to loss causation.

Alternatively, defendants insist that unless they obtain the Settlement Agreement now, they cannot raise a section 15-108 defense. Plaintiffs maintain, however, that under section 15-108 the apportionment of damages will be a mere "mathematical computation" conducted by the court *after* trial.[22] While defendants must assert a section 15-108 defense now, they do not need to know the settlement amount in order to do so. While fault apportionment certainly will be an issue at trial, the amount for which defendants settled is not probative of fault. In fact, fault apportionment is an issue that should not be affected by knowledge of the amounts that the settling defendants agreed to pay. Only after the jury has apportioned liability will the court compare the settling defendants' equitable shares with the settlement amount and determine which should be used as a set-off against the damage award.

Defendants do not need the Agreement in order to brief the issues on summary judgment. Undoubtedly, defendants will argue that plaintiffs cannot prove loss causation. It is also likely that they will argue that if plaintiffs do prove

---

[22]    6/11/12 Letter from Daniel Drosman, Counsel for Plaintiffs, to Defense Counsel, Ex. B to 6/14/12 Letter to the Court from Dean Ringel, Counsel for The McGraw-Hill Companies, Inc. ("Def. Mem.") .

loss causation, their damages are limited.  If the Court agrees with defendants'

assessment of damages, it is free to grant summary judgment on the ground that the

settlement exceeds any potential damage award.  Therefore, defendants have no

need to obtain the Settlement Agreement at this time.

### B.      The Relevance of the Agreement to Witness Bias

Defendants additionally claim that regardless of whether the

Agreement contains explicit cooperation provisions, its terms could inform

questions of witness bias.[23]  Plaintiffs concede that the Agreement contains

confidentiality provisions but maintain that it does not contain any promises of

future cooperation or testimony nor any general admissions.[24]  This Court's in

camera review confirms that representation.  As such, the Agreement is not

relevant to cross-examining witnesses at trial.

Because the Agreement is not relevant to either damages or witness

bias at this time, defendants are not entitled to it now.  While defendants will

eventually obtain the Agreement for section 15-108 purposes, defendants' request

to compel the disclosure of the Agreement now is denied.

---

[23]     *See* Def. Mem. at 3.

[24]     *See* 6/19/12 Letter to the Court from Luke Brooks, Counsel for
Plaintiffs at 2.

## V.     CONCLUSION

For the foregoing reasons, defendants' request is denied at this time.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            August 17, 2012

**- Appearances -**

**For Plaintiffs King County, Washington and Iowa Student Loan Liquidity Corporation:**

Daniel S. Drosman, Esq.
Jessica T. Shinnefield, Esq.
Darryl J. Alvarado, Esq.
Anne L. Box, Esq.
James A. Caputo, Esq.
Patrick J. Coughlin, Esq.
Nathan R. Lindell, Esq.
David C. Walton, Esq.
X Jay Alvarez, Esq.
Christina A. Royce, Esq.
Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, California 92101
(619) 231-1058

Luke O. Brooks, Esq.
Jason C. Davis, Esq.
Robbins Geller Rudman & Dowd LLP
Post Montgomery Center
1 Montgomery Street, Suite 1800
San Francisco, California 94104
(415) 288-4545

Samuel H. Rudman, Esq.
Jarrett S. Charo, Esq.
David A. Rosenfeld, Esq.
Robert M. Rothman, Esq.
Robbins Geller Rudman & Dowd LLP
58 South Service Road, Suite 200
Melville, New York 11747
(631) 367-7100

**For Defendants Morgan Stanley & Co., Inc. and Morgan Stanley & Co. International Limited:**

James P. Rouhandeh, Esq.
Antonio Jorge Perez-Marques, Esq.
William Ross Miller, Jr. Esq.
Christopher Joseph Roche, Esq.
Andrew Dickens Schlichter, Esq.
Jessica Lynn Freese, Esq.
Davis Polk & Wardwell L.L.P.
450 Lexington Avenue
New York, NY 10017
(212) 450-4559

**For Defendants IKB Deutsche Industriebank AG and IKB Credit Asset Management, GmbH:**

John D. McFerrin-Clancy, Esq.
Zachary D. Rosenbaum, Esq.
Lowenstein Sandler PC
1251 Avenue of The Americas
New York, New York 11020
(212) 262-6700

Thomas E. Redburn, Jr., Esq.
Jennifer Jane McGruther, Esq.
Michael James Hampson, Esq.
Lowenstein Sandler PC
65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2456

**For Defendant The McGraw Hill Companies, Inc. d/b/a Standard & Poor's Rating Services**

Dean I. Ringel, Esq.
Andrea R. Butler, Esq.
Floyd Abrams, Esq.
Jason M. Hall, Esq.
Brian T. Markley, Esq.
Tammy L. Roy, Esq.
Adam N. Zurofsky, Esq.
Cahill Gordon & Reindel LLP
80 Pine Street
New York, New York 10005
(212) 701-3000

**For Defendants Moody's Investors Service Limited and Moody's Investors Service, Inc.**

Mario Aieta, Esq.
James J. Coster, Esq.
Dai Wai Chin Fenman, Esq.
Joshua M. Rubins, Esq.
Justin E. Klein, Esq.
James J. Regan, Esq.
Joshua M. Rubins, Esq.
Aaron M. Zeisler, Esq.
Satterlee Stephens Burke & Burke LLP
230 Park Avenue
New York, New York 10169
(212) 818-9200

**For Defendant Fitch, Inc.**

Andrew J. Ehrlich, Esq.
Martin Flumenbaum, Esq.
Donna M. Ioffredo, Esq.
Roberta A. Kaplan, Esq.
Mark S. Silver, Esq.
Tobias J. Stern, Esq.
Julia Tarver-Mason Wood, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019
(212) 373-3166