UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- X

KING COUNTY, WASHINGTON,
and IOWA STUDENT LOAN
LIQUIDITY CORPORATION,

        Plaintiffs,

      - against -

IKB DEUTSCHE INDUSTRIEBANK
AG, IKB CREDIT ASSET
MANAGEMENT, GmbH, MOODY'S
INVESTORS SERVICE, INC.,
MOODY'S INVESTORS SERVICE
LIMITED, THE McGRAW HILL
COMPANIES, INC. (d/b/a STANDARD
& POOR'S RATINGS SERVICES),
FITCH, INC., MORGAN STANLEY &
CO. INCORPORATED, and MORGAN
STANLEY & CO. INTERNATIONAL
LIMITED,

        Defendants.

------------------------------------------------- X



__OPINION AND ORDER__

09 Civ. 8387 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.    INTRODUCTION

Institutional investors King County, Washington ("King County") and

Iowa Student Loan Liquidity Corporation ("ISL") bring this action to recover

losses stemming from the October, 2007 collapse of Rhinebridge, a structured

1

investment vehicle ("SIV").  Plaintiffs assert claims of common law fraud, negligent misrepresentation, and aiding and abetting fraud against:  The McGraw Hill Companies, Inc. d/b/a Standard & Poor's Rating Services ("S&P"); Moody's Investors Service, Inc. and Moody's Investors Service Ltd. (together, "Moody's"); Fitch, Inc. ("Fitch," and, with S&P and Moody's, the "Rating Agencies"); Morgan Stanley & Co. Incorporated and Morgan Stanley & Co. International Limited (together, "Morgan Stanley").  Defendants now move for summary judgment.  For the reasons set forth below, defendants' motions are granted in part and denied in part.

## II.   BACKGROUND

### A.   Facts

Familiarity with the facts is presumed.

### B.   Procedural History

In a related action ("the Abu Dhabi action") arising out of the collapse of a different SIV ("the Cheyne SIV"), King County and fifteen other plaintiffs brought similar claims against the defendants in this action (with the exception of Fitch, which did not issue a rating for the Cheyne SIV, and is therefore not a defendant in that action).  In early 2012, defendants in the Abu Dhabi action moved for summary judgment on all claims.  In a lengthy Opinion and Order in

which I dismissed some causes of action and the claims of some plaintiffs, I ruled on many of the legal questions at issue in this action.[1]  In two subsequent opinions, I granted partial reconsideration of the summary judgment opinion,[2] and ruled on an order to show cause as to why the negligent misrepresentation claim against Morgan Stanley should not be dismissed.[3]

The summary judgment briefing schedule in this action was triggered by the issuance of the *Abu Dhabi* summary judgment opinion — this was done so that the parties would not waste their (and the Court's) time addressing arguments the Court has already rejected.[4]  Accordingly, this summary judgment opinion leans heavily on the *Abu Dhabi* summary judgment opinion.

## III.   LEGAL STANDARDS

### A.   Summary Judgment

"Summary judgment is designed to pierce the pleadings to flush out

---

[1]     *See Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.* (*Abu Dhabi I*), No. 08 Civ. 7508, --- F. Supp. 2d ---, 2012 WL 3584278 (S.D.N.Y. Aug. 17, 2012).

[2]     *See Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, No. 08 Civ. 7508, --- F. Supp. 2d ----, 2012 WL 5438954 (S.D.N.Y. Nov. 7, 2012).

[3]     *See Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, No. 08 Civ. 7508, 2012 WL 4762039 (S.D.N.Y. Oct. 5, 2012).

[4]     That said, the parties did not have the benefit of the Court's reconsideration and order to show cause opinions.

those cases that are predestined to result in a directed verdict."[5]  Thus, summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[6]  "For summary judgment  purposes, a 'genuine issue' exists where the evidence is such that a reasonable jury could decide in the non-moving party's favor."[7]  "'A fact is material when it might affect the outcome of the suit under governing law.'"[8] [T]he burden of demonstrating that no material fact exists lies with the moving party . . . ."[9]  "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non[-]movant's claim."[10]

---

[5]     *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997).

[6]     Fed. R. Civ. P. 56(c).

[7]     *Sanchez v. Connecticut Natural Gas Co.*, 421 Fed. App'x 33, 34 (2d Cir. 2011) (quoting *Nabisco, Inc. v. Warner–Lambert Co.*, 220 F.3d 43, 45 (2d Cir. 2000)).

[8]     *Carter v. Incorporated Vill. of Ocean Beach*, 415 Fed. App'x 290, 292 (2d Cir. 2011) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007)).

[9]     *Miner v. Clinton County, N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008) (citation omitted).

[10]    *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).

In a summary judgment setting, "[t]he burden is on the moving party to demonstrate that no genuine issue respecting any material fact exists."[11] "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence . . . on an essential element of the nonmovant's claim."[12] In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact.[13] The non-moving party "'must do more than simply show that there is some metaphysical doubt as to the material facts,'"[14] and cannot "'rely on conclusory allegations or unsubstantiated speculation.'"[15]

In deciding a motion for summary judgment, a court must "'construe the facts in the light most favorable to the non-moving party and must resolve all

---

[11]     *Mavrommatis v. Carey Limousine Westchester, Inc.*, No. 10 Civ. 3404, 2011 WL 3903429, at *1 (2d Cir. Sept. 7, 2011) (citing *Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1223 (2d Cir. 1994)).

[12]     *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009).

[13]     *Id.*

[14]     *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[15]     *Id.* (quoting *Federal Deposit Ins. Corp. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010)).

ambiguities and draw all reasonable inferences against the movant.'"[16]  However,

"'[c]redibility determinations, the weighing of the evidence, and the drawing of

legitimate inferences from the facts are jury functions, not those of a judge.'"[17]

"'The role of the court is not to resolve disputed issues of fact but to assess

whether there are any factual issues to be tried.'"[18]

### B.  Summary Judgment Standard for Fraud and Aiding and Abetting Claims

In New York, a plaintiff alleging fraud must establish each element of

its fraud claim by "clear and convincing evidence."[19]  The same is true for a

plaintiff asserting a claim of aiding and abetting fraud.[20]  Thus, the appropriate

summary judgment question is whether the evidence on the record could support a

---

[16]    *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)).

[17]    *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)) (emphasis removed).

[18]    *Brod*, 653 F.3d at 164 (quoting *Wilson v. Northwestern Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)).

[19]    *Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 181 (2d Cir. 2007).

[20]    *See de Abreu v. Bank of America Corp.*, 812 F. Supp. 2d 316, 322 (S.D.N.Y. 2011) ("'A claim for aiding and abetting fraud must be proven by clear and convincing evidence.'") (quoting *Primavera Familienstifung v. Askin*, 130 F. Supp. 2d 450, 488 (S.D.N.Y. 2001)).

reasonable jury finding that the plaintiff has shown each element of either a fraud or an aiding and abetting claim by clear and convincing evidence.[21]

## IV.    APPLICABLE LAW

### A.    Fraud

To recover damages for fraud under New York law, a plaintiff must prove: "'(1) a misrepresentation or a material omission of fact which was false and known to be false by defendant; (2) made for the purpose of inducing the other party to rely upon it; (3) justifiable reliance of the other party on the misrepresentation or material omission; and (4) injury.'"[22] "The claim also requires a showing of proximate causation, such that the injury 'is the natural and probable consequence of the defrauder's misrepresentation or . . . the defrauder ought reasonably to have foreseen that the injury was a probable consequence of his fraud.'"[23]

Under New York law, a fraud claim may not proceed past summary

---

[21]    *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253-56 (1986).

[22]    *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (quoting *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421 (1996)).

[23]    *Suez Equity Investors, L.P. v. Toronto-Dominion Bank,* 250 F.3d 87, 104-05 (2d Cir. 2001) (quoting *Cumberland Oil Corp. v. Thropp*, 791 F.2d 1037, 1044 (2d Cir. 1986)).

judgment against a defendant unless an actionable misstatement can be attributed to it.[24] "Opinions 'may be actionable [in fraud only] if they misstate the opinions or belief held . . . *and* are false or misleading with respect to the underlying subject matter they address.'"[25]

The standard for evaluating whether plaintiffs have presented sufficient evidence of scienter is the same under New York common law as it is under Section 10(b) of the Securities Exchange Act of 1934 ("1934 Act").[26] Plaintiffs need not establish intent to defraud; rather "[p]laintiffs may satisfy the scienter requirement by producing 'evidence of conscious misbehavior or recklessness.'"[27] The Second Circuit has described recklessness as:

> "[A]t the least, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it."[] "An egregious refusal to see the obvious, or to investigate

---

[24] *See Abu Dhabi I*, 2012 WL 3584278, at *7. Note that this is not true for claims of aiding and abetting fraud and conspiracy to commit fraud. *See id.*

[25] *Id.* at *11 (quoting *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 111 (2d Cir. 2011)).

[26] *See Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 592 F. Supp. 2d 608, 639 (S.D.N.Y. 2009).

[27] *Gould v. Winstar Commc'ns, Inc.*, 692 F.3d 148, 158 (2d Cir. 2012) (quoting *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009)).

the doubtful, may in some cases give rise to an inference of . . . recklessness."[28]

The Second Circuit has further directed courts to be "'lenient in allowing scienter issues to withstand summary judgment based on fairly tenuous inferences,' because such issues are 'appropriate for resolution by the trier of fact.'"[29]

In addition to establishing scienter, plaintiffs must show that they reasonably relied on the false and misleading statements to their detriment.

> Reasonable reliance entails a duty to investigate the legitimacy of an investment opportunity where plaintiff was placed on guard or practically faced with the facts. Only [w]hen matters are held to be peculiarly within defendant's knowledge [is it] said that plaintiff may rely without prosecuting an investigation, as he ha[d] no independent means of ascertaining the truth.[30]

An "evaluation of the reasonable-reliance element [should involve]  many factors

---

[28]     *Chill v. General Elec. Co.*, 101 F.3d 263, 269 (2d Cir. 1996) (quoting *Rolf v. Blyth, Eastman Dillon & Co.*,  570 F.2d 38, 47 (2d Cir. 1978) and *Goldman v. McMahan, Brafman, Morgan & Co.*, 706 F. Supp. 256, 259 (S.D.N.Y. 1989)) (additional citations omitted).

[29]     *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 693 (2d Cir. 2009) (quoting *Press v. Chemical Inv. Servs. Corp.*, 166 F.3d 529, 538 (2d Cir. 1999)).

[30]     *Crigger v. Fahnestock & Co., Inc.*, 443 F.3d 230, 234 (2d Cir. 2006) (alterations and omissions in original) (quotation marks omitted).

to 'consider and balance,' no single one of which is 'dispositive.'"[31]  "Accordingly,

reasonable reliance is often a question of fact for the jury rather than a question of

law for the court."[32]

> **B.     Aiding and Abetting**

"To establish liability for aiding and abetting fraud, the plaintiffs must

show '(1) the existence of a fraud; (2) [the] defendant's knowledge of the fraud;

and (3) that the defendant provided substantial assistance to advance the fraud's

commission.'"[33]  Under New York law, a defendant must be shown to possess

actual knowledge of the underlying fraud.[34]

"The 'knowledge' element of an aiding and abetting fraud claim is not

identical to the scienter required for the underlying fraud."[35]  While a strong

inference of scienter can be satisfied by a showing of "'facts that constitute strong

circumstantial evidence of . . . recklessness,'" aiding and abetting requires a

---

[31]     *STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*, 648 F.3d 68, 81 (2d Cir. 2011) (quoting *Brown v. E.F. Hutton Grp., Inc.*, 991 F.2d 1020, 1032 (2d Cir. 1993)).

[32]     *Id.*

[33]     *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006) (quoting *J.P. Morgan Chase Bank v. Winnick*, 406 F. Supp. 2d 247, 252 (S.D.N.Y. 2005)).

[34]     *See id.* (citing *Kolbeck v. LIT America, Inc.*, 939 F. Supp. 240, 246 (S.D.N.Y. 1996)).

[35]     *Winnick*, 406 F. Supp. 2d at 253 n.4.

reasonable inference of actual knowledge.[36] The "substantial assistance"

requirement is satisfied where "'a defendant affirmatively assists, helps conceal or

fails to act when required to do so, thereby enabling the breach [or fraud] to

occur.'"[37]  "[T]he mere inaction of an alleged aider and abettor constitutes

substantial assistance only if the defendant owes a fiduciary duty directly to the

plaintiff."[38]

## V.    DISCUSSION

### A.    Fraud

#### 1.    Existence of an Actionable Misstatement

##### a.    Morgan Stanley

Plaintiffs argue that Morgan Stanley can be liable for participating in

a scheme to defraud even if no actionable misstatement can be attributed to it.[39]

---

[36]    *Id.* (quoting *Shields v. Citytrust Bancorp., Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)). *Accord id.* at 254 (finding plaintiffs' evidence sufficient to give rise to an inference of the defendants' actual knowledge of the fraud where e-mails submitted by plaintiffs "contain[ed] language which could reasonably be understood to demonstrate [the defendants'] actual knowledge" of the fraud).

[37]    *Lerner*, 459 F.3d at 295 (quoting *Kaufman v. Cohen*, 760 N.Y.S.2d 157, 170 (1st Dep't 2003)).  *Accord Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 470 (S.D.N.Y. 2001).

[38]    *Lerner*, 459 F.3d at 295 (quotation marks omitted).

[39]    *See* Plaintiffs' Omnibus Memorandum of Law in Support of Their Opposition to Defendants' Motions for Summary Judgment Pursuant to Federal

The plaintiffs in the Abu Dhabi action made the same argument, employing identical reasoning and citing the same cases.  I rejected those arguments because the existence of an actionable misrepresentation is an element of a fraud claim under New York law, and because plaintiffs were unable to provide "a single example of a New York fraud claim surviving summary judgment despite the lack of any actionable misstatements or omissions attributable to the defendant."[40]  As in the Abu Dhabi matter, the ratings — the only alleged misstatements — are attributable to the rating agencies and Morgan Stanley's participation in this alleged scheme to defraud amounts to at most aiding and abetting fraud.  Thus, the fraud claim against Morgan Stanley is dismissed.

### b.    The Rating Agencies

In the *Abu Dhabi* summary judgment opinion, I answered the question of whether credit ratings are facts or opinions as follows:

> While ratings are not objectively measurable statements of fact, neither are they mere puffery or unsupportable statements of belief akin to the opinion that one type of cuisine is preferable to another.   Ratings should best be understood as *fact-based opinions*.  When a rating agency issues a rating, it is not merely a statement of that agency's unsupported belief, but rather a statement that the rating agency has analyzed data, conducted an assessment, and reached a *fact-based* conclusion as to

Rule of Civil Procedure 56(c) ("Pl. Mem.") at 32-33.

[40]    *Abu Dhabi I*, 2012 WL 3584278, at *7.

12

creditworthiness. If a rating agency *knowingly* issues a rating that is either unsupported by reasoned analysis or without a factual foundation, it is stating a fact-based opinion that it does not believe to be true.[41]

I subsequently held that the rating agency defendants could "only be liable for fraud if the ratings *both* misstated the opinions or beliefs held by the Rating Agencies *and* were false or misleading with respect to the underlying subject matter they address."[42] To sustain a fraud claim against each rating agency, then, plaintiffs must provide evidence that the rating agency issued a rating that it knew was unsupported by facts or analysis — that the rating agency did the equivalent of issuing a restaurant review despite never having dined at the restaurant.

### i. Moody's

In *Abu Dhabi*, plaintiffs provided "statements by Moody's employees — in e-mails, deposition testimony, and internal memoranda — indicating concern with the paucity of data and the adequacy of the models used to rate Cheyne and SIVs in general."[43] I held that this was sufficient evidence from which a reasonable jury could infer that Moody's did not believe the Cheyne rating when it

---

[41]     *Id.* at *10 (citing *Fait*, 655 F.3d at 111-12; *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 179 (2011)) (additional citations omitted) (emphasis in original).

[42]     *Id.* at *11 (emphasis in original).

[43]     *Id*.

13

issued it.  Plaintiffs offer similar evidence here. *First*, plaintiffs provide a litany of e-mails, deposition quotes and internal documents indicating an awareness that the rating model was unsupported and a concern with the state of the Residential Mortgage Backed Securities ("RMBS") market.[44]  *Second*, plaintiffs offer ample evidence that Moody's viewed Rhinebridge as being extremely similar to Cheyne, and that it used the same rating model for both SIVs — for example, in a February 2007 internal memorandum, Moody's acknowledged that "Rhinebridge is [an] SIV proposed to be set up and managed by IKB, and arranged by Morgan Stanley . . . IKB's capital model is identical to that of Cheyne's."[45]  Further, a Moody's analyst described the Rhinebridge haircut matrices — used to determine how much capital would protect the commercial paper ("CP") issued by the SIV from losses — as "if not identical, very similar" to the Cheyne haircut matrices.[46]  Thus, as in the Abu Dhabi matter, plaintiffs' evidence is sufficient to create a disputed issue of fact as

---

[44]     *See* Pl. Mem. at 14-17.  As discussed in the *Abu Dhabi* summary judgment opinion, SIVs such as Cheyne and Rhinebridge invested heavily in RMBSs.

[45]     Tab 7 to Corrected Declaration of Daniel S. Drosman in Support of Plaintiffs' Omnibus Memorandum of Law in Support of Their Opposition to Defendants' Motions for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56(c) and Plaintiffs' Response to Defendant Fitch, Inc.'s Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 ("Drosman Decl."), at MDYS RHNB 012022.

[46]     Deposition of David Rosa, Moody's analyst, at 104:22-107:18.

to whether Moody's believed its rating when it issued it.

### ii.    S&P

Similarly, plaintiffs have offered evidence that S&P used the same

rating methodology for Rhinebridge as it did for Cheyne.[47]  I held in the *Abu Dhabi*

opinion that there was sufficient evidence from which a jury could infer that S&P

did not believe its Cheyne rating when it issued it.  Not only is there no reason to

believe that S&P was more confident in its SIV rating methodology when it rated

Rhinebridge, but plaintiffs have offered evidence that S&P was even *more*

concerned about the state of the RMBS market when it rated Rhinebridge than

when it rated Cheyne two years earlier.[48]

### iii.    Fitch

Plaintiffs have offered evidence that Fitch assigned its top rating to

Rhinebridge despite concerns just as pronounced as those held by Moody's and

S&P.[49]  There are documents and testimony indicating that Fitch was expecting the

---

[47]      *See* Deposition of Lapo Guadagnuolo, S&P analyst, at 76:11-78:4; 83:20-84:9; 86:18-25.

[48]      *See* Pl. Mem. at 10-13.  For example, weeks before it assigned a top rating to Rhinebridge, the Chairman of S&P's Board of Directors observed that "[t]he meltdown in the subprime mortgage market will increase both foreclosures and the overhang of homes for sale." Plaintiffs' Deposition Exhibit 292, Tab 55 to Drosman Decl.

[49]      *See* Pl. Mem. at 17-19.

mortgages underlying the RMBSs in Rhinebridge to see an increased delinquency rate.[50]  When Paddy Clerkin — one of the primary Fitch analysts assigned to Rhinebridge — learned that the SIV would be comprised of sixty percent home equity loans ("HELs"), he responded that the percentage was "aggressive" and "pushing the boundaries" of SIVs.[51]  When an analyst on the Rhinebridge rating committee asked Glenn Costello — Co-Head of Fitch's RMBS group — for analysis, Costello responded that he "[did] not have the resources to provide the kind of writeup [requested]."[52]  Despite the paucity of information and the risky boundary-pushing nature of Rhinebridge, Fitch assigned the Rhinebridge CP its *highest* rating.  That Fitch refused to rate Cheyne — an SIV very similar to Rhinebridge — is further support for the inference that Fitch viewed the rating of SIVs as a dubious endeavor.  In sum, plaintiffs have provided sufficient evidence from which a jury could infer that Fitch did not believe its Rhinebridge rating when it issued it.

### 2.   Scienter

"Plaintiffs may satisfy the scienter requirement by producing

---

[50]   *See id.*; Deposition of Stefan Bund, the head of European Structured Credit at Fitch, at 128:10-129:13.

[51]   Tab 37 to Drosman Decl. at FITCH-RHINE 00052662.

[52]   Tab 98 to Drosman Decl. at FITCH-RHINE 00052882-83.

'evidence of conscious misbehavior or recklessness.'"[53]  In the Abu Dhabi matter,

defendants made a number of arguments as to why they lacked the requisite intent.

Based on evidence similar to that cited above — evidence that each rating agency

issued a rating even though it knew its rating was inaccurate and unsupported — I

found that a jury could reasonably infer scienter.[54]  Given that such evidence is

present here, the same result is warranted.

### 3.    Reliance

### a.    King County

King County testified that it relied on *all three* ratings assigned to the

CP because it was required by its investment policies and Washington state law to

rely on the "highest short-term rating from at least two out of the three rating

agencies.  And if there's a third rating, which in this case, in Rhinebridge, there

was, it also ha[d] to be the top rating."[55]  King County also testified that the ratings

assigned to Rhinebridge were of "critical importance" to its decision to invest.[56]  I

found similar evidence to he sufficient in the Abu Dhabi matter, and the same

---

[53]    *Gould*, 692 F.3d at 158 (quoting *ECA*, 553 F.3d at 198).

[54]    *See Abu Dhabi I*, 2012 WL 3584278, at *12-13.

[55]    Deposition of Kenneth Guy, King County's 30(b)(6) designee, at 16:6-17:12.

[56]    *Id.* at 25:19-26:11.

17

result is warranted here.  Fitch argues that because some of King County's

documents do not contain the Fitch rating, there is no evidence of reliance.  This is

not so — King County's testimony is alone sufficient to create a disputed issue of

fact on reliance, especially given that "reasonable reliance is often a question of

fact for the jury rather than a question of law for the court,"[57] and that "[t]he

reliance element does not require complex legal analysis and may be satisfied

simply by plaintiff's testimony."[58]

       S&P and Moody do not argue that King County did not rely on their

ratings; instead, they argue that any such reliance was unreasonable and that

plaintiffs should have conducted their own investigation into the likelihood of

Rhinebridge's default.[59]  The Rating Agencies made — and I rejected — a similar

argument in the Abu Dhabi matter.  I found particularly relevant the fact that some

of the key information pertaining to the Cheyne SIV was available to the Rating

Agencies but not to investors.[60]  Without such information, I held, " plaintiffs had

---

[57]    *STMicroelectronics*, 648 F.3d at 81.

[58]    *Gabriel Capital L.P. v. NatWest Fin., Inc.*, 177 F. Supp. 2d 169, 174-75 (S.D.N.Y. 2001).

[59]    *See* Memorandum of Defendants Moody's and S&P in Support of Their Motions for Summary Judgment ("RA Mem.") at 5-15.

[60]    *See Abu Dhabi I*, 2012 WL 3584278, at *14.

no choice but to rely on the ratings and thus reliance may be presumed."[61]

Plaintiffs once again offer evidence that they did not have the same access to the

information about Rhinebridge that the Rating Agencies had.[62]  Defendants present

evidence and make arguments supporting a conclusion that reliance was not

justifiable.  While defendants may ultimately convince a jury that they are correct,

summary judgment is inappropriate given plaintiffs' evidence of asymmetric

access to information and the fact that SIVs like Rhinebridge were — as a

Moody's employee called them — "the most opaque structured credit vehicles and

transactions in the market."[63]

### b.   ISL

ISL offered sufficient evidence of reliance in the form of

testimony that it "relied on the ratings."[64]  As with King County, S&P and

Moody's dispute not whether ISL relied on their ratings but whether such reliance

---

[61]      *Id.*

[62]      *See* Pl. Mem. at 38-40.  For example, IKB employee Amrit Bains
testified that information on Rhinebridge's underlying assets "was information
which we knew and we had on our records, but essentially it was private
information as to . . . what prices and returns were generating on various assets."
Deposition of Amrit Bains at 176:13-22.

[63]      Deposition of Henry Tabe, Moody's employee, at 441:14-443:1.

[64]      Deposition of Ronald Foresman, ISL's 30(b)(6) designee, at 31:4-12.

was reasonable (and for the reasons stated above, their argument is also rejected with regards to ISL).  Fitch argues that there is no evidence of reliance because ISL's investment guidelines did not require a Fitch rating, and because certain ISL documents regarding the Rhinebridge CP did not reflect the Fitch rating.  However, ISL offers sufficient evidence that it relied on the Fitch rating via its testimony and a trade ticket on which Steve Nichols — the ISL employee responsible for approving the purchase of Rhinebridge CP — made a "+" notation over the Fitch rating.[65]  Fitch makes arguments as to why the "+" notation on the trade ticket should be disregarded, but these are arguments for a jury.  Combined with ISL's testimony, the trade ticket is sufficient to create an question of fact as to whether ISL considered and relied on Fitch's rating.

### 4.    Loss Causation

In the Abu Dhabi matter, defendants made — and I rejected — a number of arguments as to why defendants' losses were not caused by their alleged fraud.[66]  Of particular relevance was plaintiffs' retention of an expert on loss causation.  Plaintiffs have once again retained an expert to opine that some portion

---

[65]    Tab 294 to Drosman Decl.

[66]    *See Abu Dhabi I*, 2012 WL 3584278, at *19-20.

of their losses were caused by the allegedly fraudulent ratings.[67]  Defendants

recycle the same arguments as to why plaintiffs' losses were caused by a market

downturn (as opposed to any fraud) and that the credit ratings did not conceal any

risk that led to plaintiffs' losses.  I reject these arguments here for the reasons

stated in the *Abu Dhabi* opinion.[68]

### B.    Negligent Misrepresentation

In a May 4 Opinion and Order in this matter, I allowed plaintiffs'

negligent misrepresentation claim to proceed against Morgan Stanley and the

rating agencies.[69]  I conducted an extensive analysis of the relationship between

plaintiffs and the Rating Agencies and concluded that — even though plaintiffs

had not alleged direct contact with the Rating Agencies — plaintiffs had

sufficiently alleged a "special relationship" such that the Rating Agencies had a

duty to make no negligent misrepresentations to plaintiffs.[70]  Subsequently, the

---

[67]     *See* Declaration of Bjorn I. Steinholt, CFA, in Support of Plaintiffs' Omnibus Memorandum of Law in Support of Their Opposition to Defendants' Motions for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56(c).

[68]     *See Abu Dhabi I*, 2012 WL 3584278, at *19-20.

[69]     *See King County, Washington v. IKB Deutsche Industriebank AG*, 863 F. Supp. 2d 288 (S.D.N.Y. 2012), *reconsideration denied*, 863 F. Supp. 2d 317 (S.D.N.Y. 2012).

[70]     *See id.* at 306-12.

Second Circuit held in *Anschutz Corp. v. Merrill Lynch & Co.* that there can be no special relationship without direct contact.[71] After plaintiffs confirmed that they had no direct contact with the rating agencies, I dismissed their negligent misrepresentation claims against those defendants.

While plaintiffs now concede that they had no direct contact with Morgan Stanley, they argue that *Anschutz* is not controlling.[72]  In dismissing the negligent misrepresentation claims against the rating agencies, I already considered and rejected this argument.  Accordingly, plaintiffs' negligent misrepresentation claim against Morgan Stanley is also dismissed.

### C.    Aiding and Abetting

#### 1.    Rating Agencies

Just as in the Abu Dhabi action, plaintiffs have offered no evidence that any of the Rating Agency defendants knew what the other Rating Agency defendants were doing.  Nor is there any evidence that the Rating Agencies assisted one another.  Accordingly, the aiding and abetting fraud claims against the Rating Agency defendants are dismissed.

---

[71]    *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 115 (2d Cir. 2012) ("Here, there are no allegations of any direct contact between Anschutz and the Rating Agencies.  We therefore conclude that Anschutz has failed to state a claim for negligent misrepresentation under New York law.").

[72]    *See* Pl. Mem. at 33-34.

22

### 2.   Morgan Stanley

Morgan Stanley's role in structuring Rhinebridge was similar to its role in structuring Cheyne.  In the *Abu Dhabi* summary judgment opinion, I held that plaintiffs had "offered sufficient evidence from which a jury could infer that Morgan Stanley: (1) had actual knowledge of the Rating Agencies' fraud; and (2) provided substantial assistance to the Rating Agencies in perpetrating the fraud."[73] There is evidence that Morgan Stanley not only did the same with Rhinebridge, but that it was even more aware of how inaccurate the top ratings were.[74]

## VI.   CONCLUSION

For the foregoing reasons, defendants' motions to dismiss are granted in part and denied in part: (1) the fraud and negligent misrepresentation claims against Morgan Stanley are dismissed; (2) the aiding and abetting fraud claims against the Rating Agencies are dismissed; and (3) summary judgment on all other claims is denied.  The Clerk of the Court is directed to close this motion (Docket Nos. 283, 284, and 289).  A status conference is scheduled for January 14, 2013 at 3:30 p.m.

---

[73]   *Abu Dhabi I*, 2012 WL 3584278, at *22.

[74]   *See* Pl. Mem. at 25-32.  For example, Morgan Stanley's Gregg Drennan described Rhinebridge as having a "riskier portfolio than most [SIV]s." Tab 147 to Drosman Decl. at MS_RHI_000256588-0001.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:       New York, New York
             January 3, 2013

**- Appearances -**

**For Plaintiffs King County, Washington and Iowa Student Loan Liquidity Corporation:**

Daniel S. Drosman, Esq.
Jessica T. Shinnefield, Esq.
Darryl J. Alvarado, Esq.
Anne L. Box, Esq.
James A. Caputo, Esq.
Patrick J. Coughlin, Esq.
Nathan R. Lindell, Esq.
David C. Walton, Esq.
X Jay Alvarez, Esq.
Christina A. Royce, Esq.
Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, California 92101
(619) 231-1058

Luke O. Brooks, Esq.
Jason C. Davis, Esq.
Robbins Geller Rudman & Dowd LLP
Post Montgomery Center
1 Montgomery Street, Suite 1800
San Francisco, California 94104
(415) 288-4545

Samuel H. Rudman, Esq.
Jarrett S. Charo, Esq.
David A. Rosenfeld, Esq.
Robert M. Rothman, Esq.
Robbins Geller Rudman & Dowd LLP
58 South Service Road, Suite 200
Melville, New York 11747
(631) 367-7100

**For Defendants Morgan Stanley & Co., Inc. and Morgan Stanley & Co. International Limited:**

James P. Rouhandeh, Esq.
Antonio J. Perez-Marques, Esq.
William R. Miller, Jr. Esq.
Christopher J. Roche, Esq.
Andrew D. Schlichter, Esq.
Jessica L. Freese, Esq.
Davis Polk & Wardwell L.L.P.
450 Lexington Avenue
New York, NY 10017
(212) 450-4559

**For Defendant The McGraw Hill Companies, Inc. d/b/a Standard & Poor's Rating Services**

Dean I. Ringel, Esq.
Andrea R. Butler, Esq.
Floyd Abrams, Esq.
Jason M. Hall, Esq.
Brian T. Markley, Esq.
Tammy L. Roy, Esq.
Adam N. Zurofsky, Esq.
Cahill Gordon & Reindel LLP
80 Pine Street
New York, New York 10005
(212) 701-3000

**For Defendant Fitch, Inc.**

Andrew J. Ehrlich, Esq.
Martin Flumenbaum, Esq.
Donna M. Ioffredo, Esq.
Roberta A. Kaplan, Esq.
Mark S. Silver, Esq.
Tobias J. Stern, Esq.
Julia Tarver-Mason Wood, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019
(212) 373-3166

**For Defendants Moody's Investors Service Limited and Moody's Investors Service, Inc.**

Mario Aieta, Esq.
James J. Coster, Esq.
Dai Wai Chin Fenman, Esq.
Joshua M. Rubins, Esq.
Justin E. Klein, Esq.
James J. Regan, Esq.
Joshua M. Rubins, Esq.
Aaron M. Zeisler, Esq.
Satterlee Stephens Burke & Burke LLP
230 Park Avenue
New York, New York 10169
(212) 818-9200